**ORIGINAL**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIM SMITH | : |
|     PLAINTIFF | : |
| | : |
| VS. | :CIVIL ACTION NUMBER 1:01-0817 |
| | : |
| JAMES MORGAN et al., | : |
| | :(CALDWELL, J.) |
| | : |
| | :(MANNION, M.J.) |

FILED
HARRISBURG
JUL 11 2001
MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

AMENDED COMPLAINT

AND now comes Kim Smith pro-se petitioner without the aide of counsel prays a less stringent standard be applied to this pro-se pleading.

This amendment comes form a May 10, 2001 order of the Court to amend this complaint as state what each party did to plaintiff of deprived him of his rights.

WARDEN JAMES MORGAN S.C.I. SMITHFEILD P.O. BOX 999 1120 PIKE ST. HUNTINGDON PA. 16652
WARDEN FRANK GILLIS S.C.I. COAL TOWNSHIP PA. 17866-1021

Theses warden should be held liable for the failure to train and the subordinate act of staff in these institution in the failure to apply policy of the Department of Correction, and that some of the staff acted as policy makers for the Department of Correction, and inflicted their personal opinion that deprived an inmate of his federally protected rights.

Dr. Long Medical Director at S.C.I. Smithfeild in his professional responsibility when he denied plaintiff from getting to see specialist for these medical condiction. Sores on body that has lasted for over a 5 year period, to see a specialist for his diabetes, for astelo-arthritis with bone spurs and mild arthritis in rights shoulder foot fungus, low back condiction slipage in the L-5, S-1, L-4, sores on face, sleep apena resporator that these condiction has prosisted, and failure to treat Hepitis C

virus over a 5 year period as he watched this condiction get worse over the years. Failure in his professional responsibility and conduct medical neglect, and he knowing and intentional deprived plaintiff of his C-pap resparator in June of 2000 claiming that plaintiff refused to use this device, when at this institution their was not power in which to plug and adequately use this device, he deprive plaintiff adequate health care.

George Weaver S.C.I. Smithfeild for the discrimination of plaintiff in job placement claiming he had insomnia and was not fit for employment in the Cook School, but refused to treat this condiction, claiming that the Department of Correction was not required to treat these condiction, also dening plaintiff the C-Pap device claiming he refused when he did not and falsified records to that affect. and in June 2000 taking the resporator from plaintiff. Dr. Johns supported this abuse and made statement to this affect.

Edward Mason Business Office in the breach of cable contract when inmate requested cable service to be cut off when he was not in the institution, requiring that inmate get a signed request form staff before his cable would be cut off, and in 1999 their was not such a policy connected to the cable contract. Plaintiff was out on writ and requested cable to be cut off and it was not for 30 days after his request taking his funds. This officer knowingly and intentionally conspired with the Attorney Generals office to inflict harm and deprive plaintiff access to the court. In 1998 plaintiff account was $ 4.38 in the red and Mr. Mason refused to let his legal mail leave the institution. An inmate authorized plaintiff and signed his name to one of his free envelopes to plaintiff could send out legal mail to the Attorney General and explain why the legal mail was coming to his office in this matter. His office contacted the jail and Edward Mason office and they issued a misconduct and place plaintiff in the whole for 30 days causing him to lose his job and custody level. No where in the D.O.C. policy is it stated that another inmate could not send out another inmates legal mail, nor is it stated that an inmate would be punished for such and act, plaintiff did not use unauthorized mail. And suffered because of the act of this business office and this also violated the indigent policy that provides inmates to be billed to send out legal mail, Edward Masons act were knowingly and intentionally done set to deprive plaintiff of his rights and access to the courts. They also took plaintiffs funds unwarrantly and caused other harms by the denial of letting his legal mail leave the jail to courts and respondents in the cases that are pending in court at that time.

**STATEMENT OF FACT**

I was sent to S.C.I. Western to S.C.I. Camp Hill after 65 days and given medical treatment I was told I had a double hernia and other health problems. I was sent to S.C.I. Smithfeild where I had my medical problems address and had two operation and a lipoma remover form forhead. At that time I was having problems getting health care for the sores on body that would not heal and foot fungus problem that after 5 years these two condiction have remained. And at this time I was subjected to violation of Medical Service section 201, 206, 506, and 901(b) of the Adm. Code 1989 Act of April 1929, P.S. 1011 et esq. and Act 53 of 1996 that required inmates to pay a co-payment of fees for certain medical treatment provided to inmates. Also under D.O.C. policy Directive Adm. 820 Co-Pay medical service under this policy it is stated in section IV Procedure (A) Fees (G) Medication, prescription subsequent to the inital medication prescription provided to an inmate for the same illness or condiction. Medical department has adopted a policy that when an inmate signs up for sick call they are charge a $ 2.00 co-pay and it is even when they are having medication renewed, Or at least I have been subjected to this violation for a 7 year period when renewing medication or for being treated for chronic condiction. Hazel Zimmerman Of S.C.I. Smithfeild has enfored this abuse and have repeatedly taken my money for the same condiction of chronic illnesses.

Dr Long, Kathy Allen RN, George Weaver, Mrs. Burks Pat Yarger, Wendy Wright, have all stated a non-existent policy and have acted as policymakers for the DEPARTMENT OF CORRECTION in the application of this policy. Kathy Allen claimed that degenterating arthritis, and my low back condiction, as well as sinus problem, right shoulder problem, foot problem, left wrist condiction, sores on body were recurrent and gose into remission and none of these condiction have ever went away. Dr. Long also states that these condiction are not chronic and I should be charge when seeing medical staff, the C.H.C.A. Geogre Weaver as well as the warden James Morgan, and Centeral Office has since supported this abuse and I'm being subjected to the same abuse of this policy at S.C.I. Coal. Grievances were filed and denied and appealls were taken and this abuse was supported by the D.O.C. The reason I had to repeatedly return to medical was that I never got adequate health care in the first place, since most of my condiction has lasted over 6 months the should be considered chronic, but Dr. Long claims he has the authority to determine what is chronic or not violation the co-pay policy.

A Pa. Hoffman tried to force plaintiff to take medication that had adverse affects on plaintiff before he would treat plaintiff, when stating this medication makes me sick he stated that I must take it before he would treat he made a determination without

first getting a x ray. After about 120 days a x ray was taken and then it was determined that plaintiff had alsteo-arthritis, mild arthritis, and bone spurs in rights shoulder and no treatment was ever given and plaintiff has since endure pain in this area. This was in 2000, Dr Long also claimed that plaintiff had no problem with left wrist when x rays clearly shows that their were bones in the left wrist that were over lapping. Then their was a 5 year delay by George Weaver, Capt. Glenny and Dr. Long in the treating my sleep apena in which during a hour of sleep I stop breathing 16 or more time and 16 or more seconds each time. This medical staff knew of this condiction had me tested for such but took 5 years in treating this condiction. They knew or should have known of the damaging affect it would have on plaintiff reporatory system, heart, lung, liver, brain when plaintiff does not get enough oxygen in his blood stream.

    These medical staff claimed that the treatment of these condition were not a necessity that required to see a specialist, as well to see a specilist for my diabetes.

    Dr. Johns, and Dr. Long and George Weaver discriminated against plaintiff in job placement claim the institution and the D.O.C. does not have to treat insomia, or my sleep apena when I was seeking employment in the night cook school, it was also stated that I must have regular sleep hours before I would be considered for this employment, but without adequate treatment for these condiction it would be had without adequate health care that would address these condiction which I was being told that these condiction are not required treatment by the D.O.C. the failure to treat these condiction put me at risk for serious health problems.

    After having a fisher removed and dress the wound on my own Kathy Allen claims that for me to have this dressing in my cell was a security issue and inmates were prohibited from having such their was no D.O.C. policy to suppurt this issue, and plaintiff was subjected to sexual harrasment by the repeatedly having to bare it for nurses to see, as plaintiff should have been afforded the right to dress his own wound, since their is no D.O.C. policy to support the act of Kathy Allen she acted as policy maker for the D.O.C. A Grievance was filed in which Mrs. Burks claimed the Dr. Haresty and Dr. Solomn never order that this open wound that was having a discharge to be dressed, and if that was the case it would be neglect. More over because of the intervention of Kahty Allen I had to dress this open wound that was still draining with tolet paper putting me at risk for an affection.

    Pa. Melody Baker deprived me adequate health care for an ear infectionthen went on to falsify medical record claiming that I refused to use the C-Pap device when it could not be used in the RHU in S.C.I. Smthfeld when their was no power n the cell, DR. Long and George Weaver as well as the warden supported ths abuse and t has snce followed

me to S.C.. Coal and I'm still being dened ths treatment by medical staff claiming refused t as S.C.. Smthfeild. This act is putting me at rsk for serious health condiction, when my body dose not get enough oxygen nto the blood stram during sleep.

March of 2000 after 5 year of trying to get treated and the delay was granted the use of the C_Pap device for my sleep apena. I spoke to George Weaver on tuesday and was told Iwould pick up the device on thursday on nurse line that I was to return the devce to nures lne every thursday and have a securty check. Hazel Zimmerman takes the devce to the block and gave t to F Block Officers to turn over to me which they faled to do. On thursday I go to medical department wthout the device that was never issed to me, nurse Bular stated where the devce I told her I dd not have it, she claimed that it was sent to the block I told her that officers did not issue or give this device to me. She calls the block and spoke to C.O. Ersek who refused to issue or turn over the device to me then wthout authority he ordered me to return to medical and sign a refuseal of medcal treatment for whch was not refuing health care. He knowingly and intentionally interferred wth plaintiff health care by refusng to turn over plantiff's health care device after he was informed to do so by a medical staff. This officer issued a msconduct for failure to obey and order when he had no authority to order in inmate to sing and refusal form wwhen he was knowngly and intentionall with hold plaintiff's health care device. Then the block officers on the 6-2 shift as well as the 2-10 shift conspred to deny health care claiming that George Weaver put a sign on the device that told officers not to ssue it. When addressng this ssue to George Weaver he clamed he did not put a sign statng to officers not to issue. C.O. Whysong signed a affidavit to that affect. A misconduct hearng plaintiff was given 30 days cell restriction for not signing a refusal form and dsobey C.O. Erseks order to do such, had plantiff returned to the medical department without the device they would have issued a misconduct. The Department of Correction, Warden Morgan, George Waver, Dr. Long , Mrs. Burks, Bureau of Health Services, Pat Yarger, Hazel Zimmerman, Bureau of Occupatonal and Professional Standard,supported this abuse and affirmed all appeals when plaintiff did nothing wrong that would warrant this kind of abuse and interfearence with health care.

In June 2000 plaintiff was issued a misconduct by C.O. Whysong who claimed he saw it fit to deny plaintiff access to law libary, and name calling thing took place n whch plaintff was gven 30 days n the hole for this msconduct, on June 18, 2000 or soon ther before or after durng strp search after misconduct hearng a C.O. repeatedly forced plaintiff face nto a wall knocking out his left front tooth, without cause or reason to use such force durng strip search. All appeals and even the Pa. State Polce refused

to address ths issue. Paintff was given another 60 days n the hole for a clamed threat to staff memeber that never took place, then Angel Zirmerman claimed that plaintiff must show staff that he would not cause any trouble if released to populaton and placed plantiff on control unit for 45 days after D/C time was over, then placed plaintiff back in the Hole on A/C status pendng transfer, after 7 months in the hole plaintiff was transfered to S.C.I. Coal. In whch plantff was denied his back support brace by Dr. Kort and s still being dended such by the medical staff at this institution, and plaintiff Hepitis C Treatment was terminated by this same Dr. This comes after a 5 year delay n which Dr. Long watched this condiction get worse claim the the D.O.C. prohibited him from treating such illnesses. Dr. Krt terminated this treatment prematurely the claimed plaintiff's back x rays were normal and the are not plantif has a slipage at the L-5, S-1, L-4 and this comes from a work related injury on the street. This Dr also refused to treat sore on body, or foot condiction, or any of plaintiff illnesses.

Nurse Ambrose, Wolfgang, Bernas, advised plaintiff that the D.O.C. had a policy that type two diabetics are prohbted frrom getting accu-chek for blood sugar. Dr. McLaughln supported such as well as the Warden and Mrs Sewell. In March 2001 nurse Ambrose and Wolfgang after C.O. Parwald called medical for plaintiff to get an accu-chek and when plaintiff went nurse Wolfgang told plaintiff that he could not come to medical for such then she issued a misconduct claiming plaintiff was in an unauthrized area, and without a pass, plaintff had a pill pass and was invited to come to get a blood sugar check, by this nurse. Plaintiff blood sugar was high. Then in April 2001 when seeking health care a Pa. refused to treat, claiming plaintiff must pick one or two of his condictions, if I did not do such I would get know treatment, and that if I seeked health care ansmiscinduct would be issued for disobeying a order. On April 17, 2001 I saw a Dr. Adamson who oreder a weekl worth of accu-cheks and a increase in diabetic medication, and a blood test to see why red blood ceels level was high, and a threputic diet, the increase in medication was to be on line 3, and on April 18, 2001 nurse Bernas knowingly and intentionally cut plaintiff a.m. medication putting paintiff at risk for harms and or even death, such act was done without authority or orders of a Dr. that she acted on her own and as a policy maker for the D.O.C. when she delibrately cut my medication. When showing this nurse he error she refused to address or correct it claiming that is the way things are and that their was nothing that plaintiff could do about this abuse. A call came into medical an inmate in chow hall with chest pain, two nurse went with a wheel chair and then nurse Bernas went out with a wheel chair. Im not sure when two wheel chairs would be used to pick up oine inmate and three nurses. When nurse Bernas returned she had Lt. Jordan in tow and when she entered the medical lobby

stating see I told you. Upon asking to speak to Lt. Jordan in which he refused claiming that he was busy but never left the medical lobby, started ordering plaintiff to leave medical before he could solve the problem about his medication that was taken by nurse Bernas. Before plaintiff could comply with Lt. Jordans order this officer put his hands on plaintiff and had him cuffed, and issued a misconduct in which he states plaintiff disobeyed his order. C.O. Learn, Nurses Bernas, Ambrose, Wolfgang conspired to deprive plaintiff his health care, since none of these parties draw blood for testing the denied plaintiff and interferred with plaintiff from getting his blood test claiming that they were done with plaintiff. This act was done to justify the incompetence of nurse Bernas in which Lt. Jordan enforced this abuse by this nurse claiming no matter what this nurse dose she is right. This Lt. also claimed that plaintiff threaten him which he did not and he falsified the record without evidence to support his claim.

    Lt. Jordan then went on to conspire with other parties and wantonly inflicted horms by conspiring with U/M Smith, Mr. Miller, Lt. Gula, Xanbis Dascani, Major Vareno Deputy Lane, and other R.H.U. staff by placing plaintiff in a hard cell without provocation claim that during strip search that plaintiff displayed an attitude that for 45 days plaintiff had to endure this cruel punishment when on the tape their is nothing that would support this level of punishment. Then they claimed that they were punishing plaintiff for the exercising his first amendment rights. Then it is also claimed that plaintiff was not being punished because of his behavior, and the reason given do not justify the abuse. Last I heard having an attitude was not a punishable offense, and this act violated plaintiff constitutional rights and federal safeguards. Then after I done the 45 days D/C time I was once again subjected to cruel punishment when they claimed that their was no bed space on D-1 when I was to be released but their was several empty beds and the was no cause to keep plaintiff in the hole and hard cell for an additional 2 days, and subjected plaintiff to additional cruel punishment. Then U/M Smith, Counselor Dunn, Mr. Vocelker Employment Office Deputy Johnson, Xanbis Dascani stated that plaintiff was not entitled to idel pay for 60 days after release for R.H.U. coupled with that plaintiff must wait an additional 90 days before he will be place on a list for employment which their is no D.O.C. policy to support this action by staff, and at present this is interferring with plaintiff's access to the court and to provide personal needs, this act also is an act of discrimination against plaintiff as he is the only one that is being subjected to this type of abuse.

## CONCLUSION

These parties knowingly and intentionally with malice and malicious intent, deprived plaintiff of his fundamental constitutional rights and constitutional safeguards and civil rights, these act were done under the color of state law and D.O.C. policy that is non-existent causing emotional distress, falsifing record in their individual and office capacity with intent to inflict harm. Plaintiff was also denied regular accu-cheks for his type two diabetes claiming that the D.O.C. has a policy that prohibits inmates with this illness for getting regular checks, and they also claimed that this is a practice in the community. Because of the lack of adequate health care it could result in death. This abuse coupled with 7 months in the hole for a name calling thing with a C.O. then having his face repeatedly smashed into a wall causing the lose of a front tooth, since June of 2000 at S.C.I.S. and then once again at S.C.I.C. and plaintiff is still being denied adequate health care, namely his C-Pap resparator, and treatment for sores on body, accu-cheks, right shoulder problem, left shoulder and ear infection, foot fungus problem, left knee problem, low back problem slipage the L-5, S-1, L-4, I still being denied to see a specialist for these condiction that has lasted over a 5 year period.

Wherefore plaintiff prays that this honorable court will issue an order granting discovery, Deposition of plaintiff for the record, appointment of counsel, to better state this claim in Court. And the T.R.O. filed to stop the abuses of this institutional staff.

Discovery should be granted to address each grievance and misconduct independently and to show a pattern of abuse. Since when appealing administrative decision, on appeals for grievances and misconducts their is no separate and independent file number for each stage of the administrative appeal process at first and second and third level of appeal in this administrative process. It is inadequate and the claim of exhaustion of administrative remedies can be easily claimed if staff and centeral office fails to reply to appeals from grievance and misconducts. As this being the case here a number of his grievances has not been relied to if a reply was sent the institutional staff has since read and destoried the replies as plaintiff never got any replies, and feels the is a deliberate act sent to deprive plaintiff his access to the court and administrative remedies, which hinder, impinges, impedes and denies access to the court and administrative remedies. As On June 18, 2001 plaintiff gave to D Block Officers legal work to be sent to the court and plaintiff is not sure that it ever left the institution and is concerned in institutional staff is stopping his legal mail from leaving the institution moreover in coming legal mail post marked June 8, 2001 does

not get to plaintiff until June 16, 2001 and he is also concerned that if his mail is being hindered.

Plaintiff prays that this honorable court would consider this filing and amendment as well as the legal mailing sent to the court with a T.R.O. sent June 15, 2001 and the attached exhibits of proof of abuse. That consideration would be given to plaintiff request for court orders.

RESPECTFULLY SUBMITTED

_____

ORDER OF THE COURT

AND now this _____ day of _____, _____ it is an order of this Court that a Deposition is ordered and plaintiff's motion for discovery is granted and the parties are to provide plaintiff with all records, and the T.R.O. is in place for any and all violation and that a soantion be imposed for money damages for any institutional staff the violates or hinders impeds impinges on plaintiff in the exercise of any of his rights.

_____
BY THE COURT

PROOF OF SERVICE

    I certify a true and correct copy of this amended complaint was sent to the lower listed parties by turning over and legal envelope to D Block officers to be mailed to the Court on the 2 to 10 shift, to be sent to institutional mail room to be forwarded to the United Stated Postal service to mail to the courts
    I certify the forgoing is true and correct under the penality of perjury.


OFFICE OF THE CLERK
U.S. DISTRICT COURT
228 N. WASHINGTON AVE
P.O. BOX 983 HARRISBURG    PA, 17108

KIM SMITH
*[signature]*

KIM SMITH CT-2162
1 KELLEY DR.
COAL TOWNSHIP  PA. 17866-1021


JULY 13, 2001



GRIEVANCE OFFICE
CAMP HILL PA.


IN RE:   GRIEVANCE # 0485-01 DATED JUNE 4, 2001
         ISSUE PLACEMENT IN A HARD CELL WITHOUT REASON



Dear Sir;

   The reason for this letter is that Warden Gillis has failed in his professional responsibility to reply to the above listed grivance compliance with the D.O.C. policy for appeals from initial review of grievance.  This act deprives plaintiff in his ability to seek administrative remedies, and to address issue in court.  If administrative remedies are not exhausted plaintiff is denied his access to court if in the process and official fails to do his owned duty, either threw the knowingly and intentionally, or deliberate acts set to deprive or bring about what was certain to follow.  This act is done with malice and malicious entent
set to deprive, and hinder access to court or to be heard.  The denial of this right has harmful conseuences, and is an act to cover up the abusive act of this officer subordinate acts.

                                                          RESPECTFULLY,
                                                          [signature]


PROOF OF SERVICE SENT TO BELOW LISTED PARTIES
WARDEN GILLIS
K. DASCANI
CAMP HILL

That Dr. Kort knowingly and intentionally denied treatment for Hep.-C claiming a none existent D.O.C. policy, denied back support after plaintiff was granted such for over 5 years claiming that x-rays showed that their was no back condiction. Plaintiff has a slippage at the L-5, S-1, L-4 in a lumbar problem form a work related injury on the streets. Also denying the use of my C-pap device basing his decision on that from S.C.I.S. in which plaintiff was denied its use while in RHU since the cells had no power for it use. Melody Baker, Dr. Long, Geroge Weaver, Sharon Burks have since supported this act, and falsiftied records as plaintiff never refused it use. And at S.C.I.C. they have since denied its use claiming plaintiff refused such at S.C.I.S. and this has since been supported by Dr. Mclaughlin, Wilma Sedwell, Kanbis Dascaini, and Warden Gillis.

Lastly on July 4, 2001 at 8 a.m. or soon after during yard line movement Kim Smith put up a curtesy curtain to use the tolet, seconds after a C.O. Pastuzak advised Smith he had to take such down, at which time Smith states he is on the tolet and would do such when he was done. This C.O. then places it on the speaker to take the paper down seconds later, the in a few second a Cpt. Wetz and a C.O. Cory was at Smiths door stating to take down the paper Smith once again stated he was on the tolet and if they could not wait until he was done then open the door to take paper down which they did. Upon the compleation of the act these officers just stood their and looked at plaintiff while he was on the tolet and it was not until C.O. Cory stated let him get a better look that plaintiff then felt he was being sexually harrassed as their was not a reason for these officers to stand their with Smith door open looking at him after they took down the curtesy curtain for several minutes. A misconduct was issued for disobeying a order and abusive language, as if plaintiff had no rights to use the tolet, and plaintiff feels this act is in retealtion for bringing this claim as their was no justification for this act. Plaintiff feels the assinine decision of staff was not justified as in the 7 1/2 years of incarceration plaintiff had never had a reason for any staff or projected such that he was involoved in any sexual behavior. All the officer had to do was check his record and he would have seen that plaintiff was alone in cell and doing what he said he was.

Since Warden Gillis has failed in his professional responsibility to provide plaintiff with the discovery as well as Camp Hill, and has since failed to comply with D.O.C. policy for appeals to his office from grievance is dening plaintiff his rights to administrative remedies and to bring action in court as they are dening plaintiff the right of exhaustion. The appeal is for a 4-18-01 placement in a hard cell for 48 days without provocation or justification. It was claimed plaintiff was being punished

because he had a attitude, then that plaintiff had a behavioral problem, but none of this is supported by the vedio tape of that date to support this type of punishment, or abuse that plaintiff was subjected to.

On 7-6-01 plaintiff was denied his diabetic medication by the a.m. pill line nurse at about 6:45 a.m. claiming this medication was on order, and then plaintiff had is counselor call medical and such was stated again. Plaintiff's perscription does not expire until 7-10-01 and their should have been no reason to deny plaintiff his medication that has since resulted in kidney pain all day from no having his medication.

This abuse still continues and plaintiff is being subjected to levels of disrespect and abuse on a continually bases, and at present he is fearing for his safety as certain acts may and can result in death if not treated correctly, or denied treatment. It hard to believe in such a place they would not have a supply of diabetic medication for when they run out and since my due date is not until 7-10-01 plaintiff should have been medicated.

This act coupled with othere plaintiff is now in fear for his safety and fear he maybe subjected to repeated abuse.

Wherefore plaintiff prays that his two T.R.O. will be granted to stop the abuse, it a shame that an inmate can not use the tolet without being harrased by staff as if he has not rights to do such a human funcition. And out of fear plaintiff appeals to this court to enforce such order.

RESPECTFULLY
*[signature]*

PROOF OF SERVICE
    That a copy of this was sent to the below parties on 7-12-01.

OFFICE OF THE CLERK
U.S.D.M.

KIM SMITH

DC-ADM 804, Inmate Grievance System

Attachment B

DC-804
Part 2

**COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA 17001**

OFFICIAL INMATE GRIEVANCE
INITIAL REVIEW RESPONSE

GRIEVANCE NO. | 0485-01

| TO: (Inmate Name & DC No.) | FACILITY | HOUSING LOCATION | GRIEVANCE DATE |
|---|---|---|---|
| **Kim Smith, CT-2162** | SCI COA | D-154 | June 4, 2001 |

The following is a summary of my findings regarding your grievance:

I am responding to your grievance, however, this subject matter would have been more appropriately addressed through a request slip.

Your placement in the hard cell was done due to your behavior. If you wanted specific information on your placement, you had the opportunity to address your questions to the Program Review Committee during your review with them.

In reference to your question of why you haven't gotten a reply to the six grievances you filed on this issue, we checked our records and this is the first grievance we received from you on this matter.

Since you are no longer housed in the RHU, the subject matter of this grievance is moot. In the future questions as contained in this grievance should be addressed in a request slip.

cc: Superintendent Gillis
    Deputy Johnson
    DC-15

| Print Name and Title of Grievance Officer | SIGNATURE OF GRIEVANCE OFFICER | DATE |
|---|---|---|
| **Kandis K. Dascani**<br>Corrections Superintendent's Assistant | *Kandis K Dascani* | 6/19/01 |

DC-804
PART 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA. 17001-0598

Received
SCI Coal Township
JUN -6 AM 9:14

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO. 0485-01

| TO: GRIEVANCE COORDINATOR Superintendent's Assistant Office | INSTITUTION | DATE |
|---|---|---|
| K Dascani | SCI C | 6-4-01 |

| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE |
|---|---|
| Kim Smith CT2162 | Kim Smith |

| WORK ASSIGNMENT | QUARTERS ASSIGNMENT |
|---|---|
| C/A | D-2-54 |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

Could you please tell me why I was placed in a hard cell from 4-18-01 till 6-4-01 without provocation. I'm dissatisfied with what Lt Gula states. And could you please tell me why I've not gotten a reply to the 6 grievances I filed on this issue.

B. Actions taken and staff you have contacted before submitting this grievance:

Lt Gula, Miller, Fane, Johnson, Pursel, Smith, Navarro, Gillis, Dascani

Your grievance has been received and will be processed in accordance with DC-ADM 804.

K Dascani
Signature of Grievance Coordinator

6/8/01
Date