

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIM SMITH,                              :

      Plaintiff,                   :

                    : Civil No. 1:01-0817

                    :

      v.                           : (Judge William W. Caldwell)

                    :

JAMES MORGAN, et al.,                  : (Magistrate Judge Malachy E. Mannion)

                    :

      Defendants.                  :

## CORRECTIONS DEFENDANTS' BRIEF IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR A TRO

## STATEMENT OF THE CASE

### A.    Identity of the Parties and Statement of Claim

Plaintiff Kim Smith is an inmate currently incarcerated at the State

Correctional Institution at Coal Township ("SCI-Coal Township").[1] The

Department of Corrections Defendants ("Corrections Defendants") include: (1)

Kathy Allen; (2) Nancy Ambrose; (3) Mary Bernas; (4) Sharon Burks; (5) Kandis

Dascani; (6) John Dunn; (7) Harry Ersek; (8) Frank Gillis; (9) Robert Glenny; (10)

Robert Gooler; (11) Dr. Robyn Johns; (12) Roy Johnson; (13) Tim Jordan; (14)

Bernon Lane (15) John Learn; (16) Edward Mason; (17) Miller; (18) James

---

[1]    See Amended Complaint (doc. 20), p. 12

Morgan; (19) Wilma Sewell; (20) Raymond Smith; (21) David Varano; (22)

Voeckler; (23) George Weaver; (24) Lynn Wolfgang; (25) Gerald Whysong; (26)

Pat Yarger; (27) Angela Zimmerman; (28) Hazel Zimmerman.[2]  Smith also names

as Defendants Wexford Health Sources, Inc. and Dr. Ronald Long who are

represented by James D. Young, Esquire.[3]

In this 42 U.S.C. §1983 action, Smith alleges that the Corrections

Defendants violated his First, Eighth, and Fourteenth Amendment rights under the

United States Constitution.[4]  Smith is suing the Corrections Defendants in their

individual capacities.[5]  Smith seeks injunctive relief, as well as, compensatory and

punitive damages.[6]

**B.**    **Relevant Procedural History**

Smith initiated this action with the filing of a Complaint and an Application

for *In Forma Pauperis* status on May 10, 2001.[7]  The Court, by Order dated June 6,

2001, directed Smith to file an Amended Complaint on or before July 6, 2001.[8]  On

June 18, 2001, Smith filed a Motion for Limited Discovery to compel the

---

[2]    See Entry of Appearance (doc. 28).
[3]    See Amended Complaint, pp. 1-16.
[4]    Id.
[5]    See Amended Complaint, p. 8.
[6]    Id.
[7]    See Complaint (doc 1); Application to Proceed IFP (doc 2).
[8]    See Order dated June 6, 2001 (doc 8).

Department of Corrections to produce his grievance history so that he could prove to the Court he exhausted administrative remedies.[9]

The Court, by Order dated June 20, 2001, directed the Department of Corrections to serve upon the Court and Smith, any and all information relating to Plaintiff's exhaustion of administrative remedies.[10]  The Department of Corrections complied with the Order on July 19, 2001.[11]  Additionally, the Court issued an Order on July 3, 2001, directing Smith to file, on or before July 20, 2001, an Amended Complaint that complied with Federal Rule of Civil Procedure 8(a).[12] Smith filed his Amended Complaint on July 11, 2001.[13]

The Court, by Order dated August 3, 2001, found that Smith's Amended Complaint substantially complied with its previous orders, and directed the Clerk of Court to serve process upon the Defendants.[14]  On November 6, 2001, the Corrections Defendants waived their right to reply to Plaintiff's Amended Complaint pursuant to 42 U.S.C. §1997(e).[15]  On December 6, 2001, the Court directed the Defendants to file responses to Plaintiff's three *pro se* Motions for

---

[9]     See Motion to Compel Discovery (doc 12).
[10]    See Order dated June 20, 2001 (doc. 13).
[11]    See Response dated July 19, 2001 (doc. 22).
[12]    See Order dated July 3, 2001 (doc. 14).
[13]    See Amended Complaint (doc 20).
[14]    See Order dated August 3, 2001 (doc. 24).
[15]    See Waiver of Reply (doc.33).  The parties have been exchanging discovery since that time.

Temporary Restraining Orders.[16]  After the issues were fully briefed, the

Honorable Malachy E. Mannion issued a Report and Recommendation that denied

all three Motions for Temporary Restraining Orders, that was adopted by the

Honorable William W. Caldwell by Order dated March 29, 2002.[17]  The discovery

process has been ongoing in this action.[18]  Smith recently filed a Motion to Amend

---

[16]   See Order (doc. 40).

[17]   See Report and Recommendation (doc. 57); Order (doc. 58).

[18]   Regarding discovery, as this Court noted in its August 1, 2002 Order (doc.
76), the Corrections Defendants served Smith with a formal response to his
informal request for production of documents, that included his Department
of Corrections Medical File.  Smith was recently presented with the choice
of purchasing his medical records with a special waiver by the
Superintendent at SCI-Coal Township allowing him to charge his inmate
account two-hundred ten dollars ($210.00) for his entire record, or parts
thereof that he so chose.  This special waiver was a good-faith gesture on
behalf of the Department as normally inmates are not allowed to "charge"
their inmate account into negative figures and this concession was in
essence, a short term (interest free) loan that he could pay back over the next
few years.  Quite frankly, this is a gesture that non-incarcerated *in forma
pauperis* plaintiff do not receive  in litigating their actions.  In the
alternative, his medical file was organized in specific categories for easy
review and Smith was told that he had four (4) hours to examine his medical
records to take notes (or pay for specific pages).  However, because of the
expense and inconvenience to the staff at SCI-Coal Township in watching
one particular inmate review the records, Smith would only receive four
hours for his inspection and review.  Recently, counsel received two letters
from Smith that were also filed with the Court (docs. 79, 81).  Counsel now
represents to the Court that on August 26, 2002, Smith was provided with
four (4) hours to inspect and examine the discovery materials of Julky 31,
2002.  However, it is counsel's understanding from the staff at SCI-Coal
Township that Smith only reviewed one-forth (1/4) of the documents and
would like additional time.  The Department of Corrections and the
Corrections Defendants, as evidenced above, have been very generous to
Smith in this matter; however, absent a Court order, Smith will not be

his Complaint that includes a request for a Court Order to have an outside physician examine him pursuant to Fed.R.Evid. 706. The Corrections Defendants take no position on Smith's Motion to Amend regarding adding Dr. Breen and Prison Health Services, Inc. However, Smith has filed yet another Motion for a Temporary Restraining Order with a very lengthy Supporting Brief.[19] The Corrections Defendants now timely respond to Smith's Motion for a TRO and the portion of his Motion to Amend regarding an outside medical expert (*infra*, n. 27).

## C.    Statement of Alleged Facts

Inmate Smith's Amended Complaint generally alleges claims of deliberate indifference to his medical needs, violations of his right to access the Courts, and due process deficiencies under the United States Constitution.[20]

---

provided because his request is unreasonable, manipulative, overly burdensome and not in good-faith. Accordingly, counsel anticipates that Smith will soon file another Motion to Compel, at which time the Corrections Defendants will supplement the record via verifications from the staff involved.

[19]    See Motion for Temporary Restraining Order Nunc Pro Tunc (doc. 77); Supporting Brief (doc. 78).

[20]    See Amended Complaint, pp.1-16; see also Wexford Defendants' Brief in opposition to Plaintiff's Request for Injunctive Relief (doc. 47) , pp. 2-4.

## QUESTION PRESENTED

**SHOULD SMITH'S MOTION FOR A TEMPORARY
RESTRAINING ORDER BE DENIED BECAUSE HE FAILED
TO ALLEGE FACTS SUFFICIENT FOR ESTABLISHING
ENTITLEMENT TO INJUNCTIVE RELIEF?**

**SUGGESTED ANSWER: YES**

## ARGUMENT

**SMITH'S MOTION FOR A TEMPORARY RESTRAINING ORDER SHOULD BE DENIED BECAUSE HE FAILED TO ALLEGE FACTS SUFFICIENT FOR ESTABLISHING ENTITLEMENT TO INJUNCTIVE RELIEF.**

A preliminary injunction is an extraordinary remedy that should be granted only in exceptional or limited circumstances.[21] It is well established that an individual or parties seeking a preliminary injunction must show:

(1)   A reasonable probability of eventual success on the merits of the action;

(2)   A showing that the moving party will be irreparably harmed by denying injunctive relief;

(3)   A showing of no adverse impact upon other parties interested in the proceedings; and;

(4)   A showing that injunctive relief would serve the public interest.[22]

A preliminary injunction should not be issued unless the moving party can demonstrate both a likelihood of succeeding on the merits of the case and the likelihood of suffering irreparable harm if the injunction is not granted.[23]   A court should not sustain a preliminary injunction "where either or both of these

---

[21]   See Instant Air Freight Co. v. C. F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989) (citing Frank's GMC Truck Center, Inc. v. GMC, 847 F.2d 100 (3d Cir. 1988)).

[22]   See Alessi v Pa. Department of Public Welfare, 893 F.2d 1444 (3d Cir. 1990).

[23]   See Morton v. Beyer, 822 F.2d 364, 367 (3d Cir. 1987).

7

prerequisites are absent."[24] Usually, the burden on the party seeking relief is to make a *prima facie* case showing that he will prevail on the merits.[25]

In cases such as the one at bar, where the moving party is seeking to alter the *status quo*, the burden is even more restrictive and exacting. When a court considers a mandatory injunction request -- one which orders affirmative relief -- the movant must show a substantial rather than mere likelihood of success on the merits.[26] Based on the pleadings and motions filed to date, Smith has little or no likelihood of succeeding on the merits of this action.[27]

---

[24]  In re Arthur Treachers' Franchisee Litigation, 689 F.2d 1137, 1143 (3d Cir. 1987); Morton v. Beyer, 822 F.2d at 367.

[25]  See Oburn v. Shapp, 521 F.2d at 148. See also, Croskey Street Concerned Citizens v. Romney, 459 F.2d 109, 112 (3d Cir. 1972)(Aldisert, J. concurring).

[26]  See Abdul Wali v. Coughlin, 754 F.2d 1015, 1025-1026 (2d Cir. 1985). See also Barton v. Eichelberger, 311 F. Supp 1132 (M.D. Pa. 1970), aff'd. 451 F.2d 263.

[27]  Regarding the Plaintiff's burden of showing no adverse impact upon other parties interested in the proceedings, the Corrections Defendants submit that in this case any preliminary injunctive relief granted would overstep the delicate balance between the Court and the Department of Correction's administration of the prison system in the Commonwealth of Pennsylvania. See Turner v. Safley, 482 U.S. 78, 84 (1987)(noting that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government). Additionally, regarding the public's interest, this Honorable Court has already recognized in its March 8, 2002 Report and Recommendation, that Smith does not have a constitutional right to have an outside consultation for his medical conditions based on his *in forma pauperis* status. Accordingly, Smith's Motion should once again be denied to the extent his asking for the same relief that is not in the public's interest.

Smith's most recent Motion seeking injunctive relief centers, once again, on the medical treatment he is receiving at SCI-Coal Township. Smith again takes issue with the diagnosis and treatment of his "lump behind his left knee," his right shoulder, and his "C-Pap device."[28] Additionally, Smith makes allegations to events in the Restricted Housing Unit ("RHU") while was incarcerated at the State Correctional Institution at Smithfield ("SCI-Smithfield"); however, Smith is no longer incarcerated at that facility, and therefore, his need for injunctive relief relating to the C-Pap device at that institution is now moot[29]

Smith's allegations concerning his medical treatment amount to nothing more than his lay person disagreement with numerous medical professionals' recommended course of treatment. A "serious medical need" has been defined as "one that has been diagnosed by a physician, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."[30] On its

---

28    See Smith's Motion for Temporary Restraining Order dated August 12, 2002, pp.1-2. Additionally, the undersigned attorney is responding to the averments contained in Smith's Motion regarding his allegations of deliberate indifference to his medical needs. To the extent that Smith has inserted other claims in his thirty-seven (37) page, ten (10) point font, one and a half (1 ½) line spaced "Brief," raising at least seventy (70) different "Questions Presented" for this Honorable Court's review, counsel is not responding to Smith's stream of conscious gripes and allegations. Further, counsel submits that even deferring to Smith's *pro se* status, a response to all the allegations and complaints contained therein is oppressive, burdensome, and goes beyond the scope of the underlying action.

29    Id.

30    See Sheldon v. Pezley, 49 F.3d 1312, 1316 (8th Cir. 1995).

face, the alleged medical conditions Smith avers he is not receiving treatment for

do not qualify as condition that would be "apparent to even a layperson." The

treatment for his knee, shoulder, and the need for a C-Pap device are not needs that

are readily apparent to laypersons. Indeed, Smith's own allegations indicate that

he was diagnosed only after x-rays and an ultrasound were taken.[31] Determining

the propriety of treatment for Smith's medical conditions, as contrasted with a

bleeding wound, opens the door for impermissible, second guessing of the course

of treatment that a trained physician provided. Courts disavow any attempt to

second-guess a particular course of treatment, which remains a question of sound

professional judgment.[32]

Further, a disagreement between the doctor and a plaintiff as to the medical

diagnosis and treatment does not constitute deliberate indifference.[33] Yet, this is

precisely what Smith attempts to do through this §1983 action and this Motion.

Smith inappropriately asks this Court to substitute its judgment for the trained

medical personnel who regularly saw (and see) him during his incarceration. As

---

[31]    See Motion for Temporary Restraining Order Nunc Pro Tunc (doc. 77), p. 1-
2.

[32]    See Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir.
1979); McAleese v. Owens, 770 F. Supp. 255, 258 (M.D. Pa. 1991).

[33]    See Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir.1987). Bednar v.
County of Schuylkill, 29 F.Supp.2d 250, 253 (E.D. Pa. 1998). Accord
Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d
326, 346 (3d Cir. 1987).

the Third Circuit has correctly recognized "[c]ertainly, no claim is presented when

a doctor disagrees with the professional judgment of another doctor. There may,

for example, be several ways to treat an illness."[34] The Third Circuit reasoned that

if differences in opinion between two medical professionals cannot be a basis for

an Eighth Amendment claim, then a medically untrained correctional official

cannot be found liable if he relies on the opinions of a medical professional.[35]

Further, to the extent Smith wants the Corrections Defendants to disregard

the state licensed physicians judgment and intervene in his treatment, a request he

routinely makes through his letters and grievances, his deliberate indifference

claim fails. The Third Circuit has established that "a non-physician defendant

cannot be considered deliberately indifferent for failing to respond to an inmate's

medical complaints when he is already receiving treatment by the prison's medical

staff."[36] It is simply not warranted for the Corrections Defendants to intervene and

for the Court to grant this Motion when by Smith's own admissions: (1) has been

receiving ongoing examinations and treatments for his medical conditions; (2) has

had diagnostic tests including x-rays and ultrasounds; and (3) has had trained

---

[34]   See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).
[35]   See Durmer, 991 F.2d at 69 ("Neither of these defendants, however, is a
       physician, and neither can be considered deliberately indifferent simply
       because they failed to respond directly to the medical complaints of a
       prisoner who was already being treated by the prison doctor.")
[36]   Id.

medical personnel examine him and his file and determine that a biopsy for his knee, a back brace, and a C-Pap device was unnecessary.[37] Therefore, the Corrections Defendants have their Constitutional obligations as set forth in Estelle v. Gamble to provide medical care to Smith.[38] Smith has failed to show a substantial likelihood to be successful on his claims of deliberate indifference, therefore, this Motion should be denied.

**B.    Plaintiff Fails To Demonstrate Imminent, Irreparable Harm.**

One of the most important prerequisites for the issuance of a preliminary injunction is being able to show that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be made.[39] The moving party's burden of demonstrating harm is more exacting (than in the context of the underlying suit) in that the harm must be irreparable.[40] To be irreparable, the threatened injury or harm must be imminent and must be such that it cannot be repaired, and not merely speculative.[41]

---

37    See Plaintiff's Motion for TRO, pp. 1-2.

38    See generally Estelle v. Gamble, 429 U.S. 97 (1976) (holding the government has an obligation to provide medical care to those it is punishing by incarceration).

39    See Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL, Section 2948 at 431 (1974).

40    See Oburn v. Shapp, 521 F.2d at 151.

41    See Olson v. Murphy, 423 F. Supp. 381 (W.D. Pa. 1976); Raitport v. Provident National Bank, 451 F. Supp. 522 (E.D. Pa. 1978). See also Cargill, Inc. v. Hartford Acc. And Indemn. Co., 531 F. Supp 710 (D.C. Minn. 1982).

At most, Smith asserts a speculative claim of future medical injuries based on his layperson of highly a speculative and remote future injuries.[42]  Smith's motions and pleadings to date clearly show that he has been receiving competent medical treatment for his alleged serious medical conditions.  Accordingly, Smith's Motion for a TRO lacks legal merit and factual support of imminent and irreparable harm without the extraordinary measure of a preliminary injunction; accordingly, the Motion should be denied.

---

[42]    See Raitport, 451 F. Supp. at 526, quoting Holiday Inns of America, Inc. v. B & B Corp., 409 F.2d 614, 618 (3d Cir. 1969).

## CONCLUSION

**WHEREFORE**, in light of the foregoing, the Corrections Defendants

respectfully request this Court to deny Plaintiff's Motion for a Temporary

Restraining Order finding that preliminary injunctive relief unnecessary.

Respectfully submitted,
Office of General Counsel

BY: _____

John J. Talaber
Assistant Counsel
PA Department of Corrections
55 Utley Drive
Camp Hill, PA  17011
(717) 731-0444
Attorney No. 83279

Dated:  August 27, 2002

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIM SMITH,                                            :
                                                      :
        Plaintiff,                             :
                                                      : Civil No. 1:01-0817
                                                      :
        v.                                     : (Judge William W. Caldwell)
                                                      :
JAMES MORGAN, et al.,                                 : (Magistrate Judge Malachy E. Mannion)
                                                      :
        Defendants.                            :

## CERTIFICATE OF SERVICE

I undersigned hereby certifies that a copy of the Corrections Defendants'

Brief in Opposition to Plaintiff's Motion for a TRO in this matter was served upon

the person(s) in the manner indicated below.

Service by first-class mail
addressed as follows:

Kim Smith, CT-2162                    James D. Young, Esquire
SCI-Coal Township                     Lavery, Faherty, Young and Patterson, P.C.
1 Kelley Drive                        301 Market Street
Coal Township, PA  17866-1020         P.O. Box 1245
                                      Harrisburg, PA  17108-1245

                                      _____
                                      John J. Talaber
                                      Assistant Counsel

PA Department of Corrections
55 Utley Drive
Camp Hill, PA  17011
(717) 731-0444
Dated: August 27, 2002