2 Ct

(104)
12/29/02

FILED
HARRISBURG, PA
DEC 19 2002

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

|  |  |  |
|---|---|---|
| KIM SMITH, | : |  |
|  | : |  |
| Plaintiff, | : |  |
|  | : | Civil No. 1:01-0817 |
|  | : |  |
| v. | : | (Judge William W. Caldwell) |
|  | : |  |
| JAMES MORGAN, et al., | : | (Magistrate Judge Malachy E. Mannion) ✓ |
|  | : |  |
| Defendants. | : |  |

## SUPPORTING DOCUMENTS TO CORRECTIONS DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Unsworn Declaration of Kandis K. Dascani Pursuant to
28 U.S.C. §1746   .............................................................................Exhibit 1

Respectfully submitted,
Office of General Counsel

John J. Talaber
Assistant Counsel
PA Department of Corrections
55 Utley Drive
Camp Hill, PA  17011
(717) 731-0444
Attorney Id. No. 83279

Dated:   December 19, 2002

**EXHIBIT**

1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIM SMITH,                          :
                                    :
      Plaintiff,                  :
                                    : Civil No. 1:01-0817
                                    :
      v.                          : (Judge William W. Caldwell)
                                    :
JAMES MORGAN, et al.,               : (Magistrate Judge Malachy E. Mannion)
                                    :
      Defendants.                 :

## UNSWORN DECLARATION OF
## KANDIS K. DASCANI PURSUANT TO 28 U.S.C. §1746

I, Kandis K. Dascani, hereby declare under penalty of perjury that the following statements are true and correct, based on my personal belief or knowledge:

Professional Background:

1. The Commonwealth of Pennsylvania, Department of Correction ("DOC"), employs me as the Assistant to the Superintendent at the State Correctional Institution at Coal Township ("SCI-Coal Township"). See Corrections Superintendent Assistant 2 Job Description, attached hereto as Exhibit A.

2. I have been employed at SCI-Coal Township in such capacity since February of 1993. I was employed in the same capacity at the State Correctional Institution at Frackville from 1991 to 1993.

3.  My general duties are to provide professional and administrative assistance for the overall operation of the institution.  My work is performed under the general supervision of the Superintendent.  Specifically, I am the Institutional Accreditation Coordinator to insure that SCI-Coal Township complies with National Correctional Accreditation Standards.  I am the Public Information Officer of SCI-Coal Township that sometime requires press releases and communications with news media.  I also provide Deputy Superintendents and Department heads with explanations and interpretations of institution and department policies and procedures.  Additionally, I prepare reports and memoranda for the Superintendent and DOC's Central Office regarding SCAN information and annual reports.

4.  A substantial portion of my workday is involved with coordinating the inmate grievance system at SCI-Coal Township and, in this capacity, I review all grievances, make assignment to the grievance officer, ensure responses are done in a timely manner, and oversee the grievance tracking system.

5.  Similarly, I am the Litigation Coordinator at SCI-Coal Township.  This responsibility requires that I coordinate with DOC's Office of Chief Counsel and the Office of Attorney General personnel on all matters involving lawsuits against institutional staff.  This entails researching allegations,

2

preparing reports to the attorneys involving a particular incident, and assisting in the response to discovery requests necessary for Court proceedings. Id.

Overview of DOC Release of Information Policy:

6.    "It is the policy of the Department to establish procedures governing responses to requests for information and to assure that information is released in accordance with applicable law and Department policy." See DC-ADM 003, Release of Information Policy, effective April 9, 2001, attached hereto as Exhibit B.

7.    Inmates are made aware of this policy and copying charges that apply via the Inmate Handbook.  See Inmate Handbook 2002 edition, p. 3, copy of which is attached hereto as Exhibit C.

8.    The DOC has provided staff with a procedure manual relating to this Policy that specifies the type of information that may be disclosed to the general public and inmates.

9.    If a request for information relates to an action whereby DOC is involved in the litigation, albeit the Department as a party or the Department in its capacity as an indemnifier of the individual correctional employees, I must forward the information request to DOC's Office of Chief Counsel before it is released.

3

10.    It is my understanding that the material is screened to ensure that the DOC is complying with appropriate relevant statues involving confidentiality of information, and is also reviewed for possible privileges that may be raised by attorneys on behalf of the DOC.

11.    Ultimately, information not subject to the aforementioned limitations is released to the general public or inmate for examination and review.

12.    The DOC's policy regarding medical records is that they may not possess original medical/dental records.  However an "inmate that is representing him/herself in actual litigation is permitted to obtain a copy of general medical/dental records pertaining to his or her case *if he/she pays the applicable photocopying costs*.  See DOC Release of Information Procedure Manual, p. 4-7, released with permission of the Secretary of Corrections, attached hereto as Exhibit D.

13.    The DOC has two sets of charges depending on the information involved. First, if the information is not for medical records, the DOC charges the general public (including inmates) a fifteen-dollar ($15.00) search and retrieval fee.  If the record is maintained on paper, the DOC charges a fee of one dollar ($1.00) for the first page, and twenty-five (.25) for each additional page.  If the information involves medical records, than in accordance with Act 26 the following charges are imposed for reproduction of medical

4

records: (1) a $16.24 search and retrieval fee is imposed on the general public (including inmates); (b) a fee of one dollar and nine cents ($1.09) is imposed per page for copies of pages 1 to 20; (c) a fee of eighty-two cents (.82) per page is imposed for pages 21 to 60; and (d) a fee of twenty-eight cents (.28) per page is imposed of pages 61 and the remaining pages. See DOC Release of Information Procedure Manual, p. 4-16 and Attachment J, released with permission of the Secretary of Corrections, and respectively attached hereto as Exhibits E and F; see also memorandum from Bureau of health Care Services Director Catherine C. McVey to Superintendent's date January 4, 2002 modifying copying costs, attached hereto as Exhibit G.. Accord Policy 3.4.5-1, *Photocopying Services for Inmates Bulletin,* effective May 28, 2001, attached hereto as Exhibit H.

Involvement in Plaintiff Kim Smith's Action:

14.  In conjunction with Defendant's Response to Plaintiff's First Request for Production of Documents, Kim Smith was instructed by Assistant Counsel Talaber to contact me to make arrangements to view his medical records.

15.  I sent a memorandum to Smith on August 16, 2002, explaining that I was in receipt of the records responsive to his request from Assistant Counsel Talaber, and informed him of his option as follows: (1) he could purchase photocopies of all the records at a cost of three hundred thirty nine dollars

and nineteen cents ($339.19); (2) he could purchase portions of the records subject to the appropriate costs noted above; and (3) either way, with the permission of the Superintendent, he would be allowed to put his inmate account into a negative balance and would have to pay the money back over a period of time in accordance to relevant DOC policies.   In essence, recognizing his *in forma pauperis* status and incarceration, we presented him with the option of an interest free short term loan that the general public, and in particular, a *pro se* indigent non-incarcerated person, is <u>not</u> given in this regard.  <u>See</u> Memorandum dated August 16, 2002 from Kandis K. Dascani to Kim Smith, attached hereto as Exhibit I.

16.  In alternative, Smith was informed that he would be provided with four (4) hours to inspect and examine the documents and take notes. <u>Id.</u>

17.  Smith chose not to purchase the record, and instead used the four (4) hour time period to inspect and examine the materials.

18.  On August 26, 2002, at 11:00 a.m. Smith was called down to the non-contact visiting room to review his records, where I met him and provided him with the records for his review.

19.  I returned to the visiting room on August 26, 2002, shortly after 3:00 P.M., at which time Smith informed me that he had only had time to review about one fourth (1/4) of his records.  At that time Smith indicated that he intended

to petition the Court for additional time.  I informed Smith that I would have to contact Assistant Counsel Talaber regarding this issue.

20.    On August 30, 2002, I received a request slip from Smith inquiring as to if and when he would have the opportunity to complete a review of his records.

21.    On September 6, 2002, after consulting with Assistant Counsel Talaber, I sent a response to Smith's request slip denying his request for additional time to review the records.   Specifically, I informed him that he had the opportunity to review his records on August 26, 2002 during the reasonable time allotted.  Moreover, prior to this examination and inspection, Smith was given the opportunity to meet with the SCI-Coal Township Medical Records Technician to review his records.   This meeting was also more than is required by the DOC policy. See Memorandum dated September 6, 2002 from Kandis Dascani to Kim Smith, attached hereto as Exhibit J.

Rational for Denying Plaintiff's Request for Additional Time:

22.    The information Assistant Counsel Talaber presented to Smith was in a very organized manner subdivided into categories (e.g. physician's notes, consultation records, etc.) and was in chronological order.

23.   It is my opinion that given the manner presented, and the time-period of four (4) hours, it was completely reasonable for layperson to inspect and review the documents and take notes as to what was relevant to his case.

24.   Moreover, at the time Smith was given the opportunity to review the documents (August 2002), there were between one thousand seven hundred eighty-one (1,781) inmates incarcerated at SCI-Coal Township.

25.   As a Prison Administrator, in conjunction with the Superintendent, it is our obligation to ensure that staff resources are appropriately allocated for the safety of the inmates and staff at the institution.

26.   Despite Smith's averments that there was no inconvenience to SCI-Coal Township in placing him in the visiting room to review his records, he is wrong.

27.   Logistically, Smith's request requires he be issued a pass for the visiting room and subject to a pat search before entering the visiting room. A DOC staff is required to stay close by while Smith reviews the information for a four-hour duration.

28.   Moreover, it is my belief that Smith uses opportunities such as this to manipulate prison resources, and to take advantage of the DOC's generosity and good-faith efforts to balance his right to access the courts with their need

8

to maintain a safe, secure, corrections institution with limited financial and human resources.

29.  It is my opinion, as a professional Prison Administrator, that Smith had adequate options, albeit not to his preference or liking, to inspect and examine or copy his medical records and that he should not be given additional time to review the materials based on the aforementioned facts.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this _18th_ day of December 2002.

Kandis K. Dascani
Kandis K. Dascani
Assistant to the Superintendent
SCI-Coal Township

9

EXHIBIT

A

| Class Code | Pay Range | Pay Schedule | Bargaining Unit | Civil Service or Non-Civil Service | Executive Board Change | Last Change Effective |
|---|---|---|---|---|---|---|
| 47410 | 08 | S | A3 | N | 598- | 1/24/1997 |

**Click on Class Code for current expanded information, on Pay Schedule for current Pay Schedule, on Civil Service or Non-Civil Service to obtain the Evaluation Guide (if available), on Executive Board Change to obtain the Executive Board amendment listed and on Last Change Effective to obtain history.**

01/24/1997                                    47410

CORRECTIONS SUPERINTENDENT ASSISTANT 2

DEFINITION:  This is professional and administrative work in providing
staff and program support for the overall operation in a State Correctional
Institution with an inmate population of 1,000 or more for continuous six
month period; or a State Correctional Institution which serves as the
statewide Diagnostic and Classification Center for female inmates, and
houses all long term disciplinary custody and capital case female inmates;
or a State Correctional Institution which has a licensed mental health
services unit, a special management unit, and has a significant
percentage of the inmate population classified as L4.

An employee in this class serves as institutional or facility accreditation
coordinator which involves insuring compliance with operating standards
for adult correctional institutions established by the Commission on
Accreditation for Corrections.  Work also includes the administration of
the inmate complaint system; the conduct of investigations and preparing
reports relative to legal actions filed by inmates against institutional
personnel; and acting as public information officer which involves the
preparation of news media releases and holding press conferences.  An
employee in this class also responsible for chairing a variety of institutional
committees, and preparing correspondence and special reports for the
superintendent.  The employee in this class  is required to serve as an
administrative duty officer with other institutional management staff.  Work
is performed under the general supervision of the superintendent and
effectiveness is determined through conferences and reports.

EXAMPLES OF WORK:   Audits, reviews, collects, and organizes
documents of various accreditation standards that must be implemented
within the institution or facility; serves as chairman of the institution
accreditation committee that prioritizes the implementation of the
standards process.

Administers the Inmate Complaint system; receives records, and reviews
all complaints filed by inmates; investigates or resolves disputes, or
makes specific recommendations to the Superintendent.

Prepares news media releases and conducts press briefings during any
emergency situation at the institution or facility.

Prepares a variety of correspondence for the superintendent to include
reports on population figures, emergency plans, and annual reports.

Coordinates with the Department of Corrections' Chief Counsel and Office
of Attorney General all matters involving lawsuits of inmates against
institutional staff; conducts research into the allegations and prepares
reports on the specifics of each case.

Prepares affidavits and interrogatories necessary for court proceedings.

Coordinates and chairs the institution or facility Publications Committee.

Provides deputy superintendents and department heads with explanations and interpretations of institution or facility and department policies and procedures.

Coordinates visits into the institution or facility for various groups from colleges, churches, local and state government officials, and judges.

Employees in this class may participate in the performance of their subordinates work consistent with operational or organizational requirements.

Performs related work as required.

REQUIRED KNOWLEDGES, SKILLS, AND ABILITIES:  Knowledge of the organizations of a correctional institution or facility, and the role and responsibilities of each department within  an institution.

Knowledge of the Department of Corrections administrative directives and institutional or facility policies and procedures.

Knowledge of modern correctional principles and practices.

Knowledge of inmate behavior and activities within a correctional institution or facility.

Knowledge of the Department of Corrections inmate complaint system.

Ability to learn institution or facility standards required for accreditation as an adult correctional institution by the Commission on Accreditation for Corrections, a branch of the American Correctional Association.

Ability to learn how to conduct investigations and satisfactorily resolve complaints within the frame work of good correctional management.

Ability to communicate effectively, both orally and in writing.

Ability to analyze written policies and procedures pertaining to inmates and institutional operations and to provide interpretations and guidance on implementation.

Ability to coordinate a wide variety of administrative activities in an effective manner.

Ability to learn to prepare and present formal presentations to the media as well as various community and government groups.

Ability to prepare written correspondence and reports.

MINIMUM EXPERIENCE AND TRAINING:  Six (6) years of experience in a Commonwealth correctional institution or facility in the areas of counseling, education. security, vocational placement, vocational training, professional personnel management, or work of an administrative/managerial nature.  Appropriate college level training may be substituted for experience on a year for year basis to a maximum of three years.

or

Any equivalent combination of experience and training.

EXHIBIT

tabbies®    B

**POLICY STATEMENT**
Commonwealth of Pennsylvania • Department of Corrections

| Policy Subject: | | Policy Number: |
|---|---|---|
| **Release of Information** | | **DC-ADM 003** |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| **March 12, 2001** | *JcABeard*  Jeffrey A. Beard, Ph.D. | **April 9, 2001** |

## I.    AUTHORITY

The Authority of the Secretary of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, 71 P.S. §§61, 66, and 186, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II.    PURPOSE

This policy establishes the procedures to be used to responding to requests for information from the Department.

## III.    APPLICABILITY

This policy is applicable to all Department employees, volunteers, contract personnel, visitors, and inmates.[1]

## IV.    DEFINITIONS

### A. Department

The Pennsylvania Department of Corrections.

### B. Department Information

"Department Information" is information pertaining to the overall administration and operation of the Department. This category includes Department financial, personnel,

---

[1] 3-4068, 1-ABC-1E-06, 3-4099

*DC-ADM 003, Release of Information Policy*

security, and statistical information, as well as general information about inmate programs. Department information is divided into the following categories:

1. Financial Data - Records pertaining to an expenditure of funds by the Department.

2. Personnel Data - Records pertaining to current or former Department employees. This category is limited to information maintained by the Department's Central Office Bureau of Human Resources.

3. Security Records - Information maintained by the Central Office Security Division to assure the safe operation of the Department and its facilities. Information maintained by a particular facility's Security Office is termed "Facility Security Information."

4. Statistical Records - Data pertaining to one or more identifiable segments of the inmate population. This includes Inmate Programming Data which is information pertaining to programs administered by the Department and intended to facilitate an inmate's return to society. This category is intended to apply to general requests for information about programs that are operated at more than one Department facility rather than information about a particular inmate's participation in a Department program.

## C. Facility Manager

The Superintendent of a State Correctional Facility or Regional Correctional Facility, Commander of a Motivational Boot Camp, Director of a Community Corrections Center, Director of the Training Academy.

## D. Inmate Information[2]

"Inmate Information" is information pertaining to a specific inmate or to several specific inmates. Inmate information is divided into the following categories:

1. Census Data - Information consisting of the inmate's name, facility number, date of birth, date of death, gender, facility location, race, and religion.

2. Contact Data - Persons with whom the inmate has indicated he or she wishes to have either verbal or written contact, including telephone and visiting information.

3. Disciplinary Records - Information pertaining to the inmate's conduct while incarcerated.

4. Educational Data - Information pertaining to academic, technical or vocational courses in which the inmate has participated while incarcerated.

5. Financial Data - Records pertaining to the receipt and disbursement of an inmate's funds.

---

[2] 1-ABC-1E-07, 3-4095, 3-ACRS-1E-07

6. Housing Records - Non-disciplinary records reflecting interactions between the inmate and housing unit staff and, except as defined elsewhere, non-disciplinary records reflecting interactions between the inmate and non-housing unit staff.

7. Medical Records - Records pertaining to the inmate's medical condition.

8. Mental Health Records - Records pertaining to mental health treatment provided to the inmate.

9. Psychiatric/Psychological Information not Pertaining to Mental Health Treatment – Records compiled in connection with mental health treatment provided to an inmate who has not been committed under the Mental Health Procedures Act.

10. Prescriptive Programming Data - Information pertaining to an inmate's participation in programs intended to facilitate the inmate's return to society.

11. Property Data - Information pertaining to the receipt, storage, shipment, and return of an inmate's personal property.

12. Sentencing Data - Information pertaining to the duration of the inmate's confinement, including, but not limited to, the crime committed, the sentence imposed and dates of incarceration.

13. Work Records - Information pertaining to the inmate's work assignments while incarcerated.

**E. Public Information Officer (PIO)**

The person designated by the Facility Manager as the official spokesperson for the facility.

**F. Release of Information Coordinator**

The Executive Assistant to the Secretary shall act as the Release of Information Coordinator for Central Office. The Corrections Superintendent's Assistant shall act as the Release of Information Coordinator at the facility.

**V.  POLICY**

It is the policy of the Department to establish procedures governing responses to requests for information and to assure that information is released in accordance with applicable law and Department policy.[3]

---

*DC-ADM 003, Release of Information Policy*                                                          **Page 4**

## VI.  PROCEDURES

### A. Requests for Inmate Information

1. An inmate may seek access to Inmate Information maintained at the facility where incarcerated by submitting an **Inmate's Request to Staff Member (DC-135A)** to the appropriate individual noted in **Section VI, A, 2** below.  If the inmate is unsure who to send a request to for specific information the request should be sent to the Corrections Superintendent's Assistant who will reply or forward the request to the appropriate individual.

2. The Release of Information Coordinator or appropriate staff member shall respond based upon the type of information being requested as follows:

   a. Census Data – the facility's Inmate Records Supervisor.

   b. Contact Data – the facility's Inmate Records Supervisor.

   c. Disciplinary Records – the facility's Inmate Records Supervisor.

   d. Educational Data – the Corrections Superintendent's Assistant.

   e. Financial Data – the facility Business Manager.

   f. Housing Records – the Corrections Superintendent's Assistant.

   g. Medical Records – the facility's Medical Records Supervisor.

   h. Mental Health Records – the facility's Medical Records Supervisor.

   i. Prescriptive Programming Data – the Corrections Superintendent's Assistant.

   j. Property Data – the Corrections Superintendent's Assistant.

   k. Sentencing Data – the facility's Inmate Records Supervisor.

   l. Work Records – the Corrections Superintendent's Assistant.

3. Persons other than inmates may seek access to Inmate Information by submitting a written request to the facility's Release of Information Coordinator.

4. All requests for Inmate Information must be accompanied by a **DC-108, Authorization for Release of Information (See Attachment)** when required, and signed by the inmate who is the subject of the information.[4]  The executor or administrator of a deceased inmate's estate may sign a release for information pertaining to the deceased inmate.  The furnishing of an appropriate release is a

---
[4] 2-CO-1E-07, 3-ACRS-1E-08, 3-4096, 1-ABC-1E-08

prerequisite to consideration of the request and does not determine whether the Department will actually release the information.

5. Inmates are prohibited from receiving Inmate Information pertaining to inmates other than themselves.

## B. Requests for Department Information

1. All requests for Department Information may be made by submitting a written request to the Central Office Release of Information Coordinator. The Release of Information Coordinator will record the request, and forward it to the appropriate individual listed below for response.

   a. Financial Data – the Director of the Bureau of Administration.

   b. Inmate Programming Information – the Director of the Bureau of Inmate Services.

   c. Medical/Mental Health Services – the Director of the Bureau of Health Care Services.

   d. Personnel Data – the Director of the Bureau of Human Resources.

   e. Security Records – the Chief of the Department's Security Division.

   f. Statistical Records – the Chief of the Planning, Research, and Statistics Division of the Department's Bureau of Management Information Services.

2. Requests for information not included above shall be directed to the appropriate Regional Deputy Secretary.

3. When an inmate's location is not known to the requestor, the requestor may use the Inmate Locator on the Department's website @ www.cor.state.pa.us. Requests for information pertaining to an inmate's crime or sentence may also be submitted to the Department's Chief, Bureau of Inmate Service's, Classification Division.

4. The **"Freedom of Information Act"** is a federal statute that governs access to information maintained by federal agencies. The Pennsylvania Department of Corrections is a Pennsylvania executive agency and not a federal agency. Accordingly, the Department is not subject to the Freedom of Information Act. Individuals requesting information under the Freedom of Information Act shall be sent a standard letter denying the request.

5. The **"Right-to-Know Act"** permits Pennsylvania citizens to inspect and copy certain Department "public records." The term "public record" includes, but is not limited to, accounts, vouchers, or contracts dealing with the disbursement of funds, or the acquisition, use or disposal of services or supplies.

### C. Print and Electronic Media Inquiries

Members of the print and electronic media seeking information pertaining to a specific inmate are asked to contact the Release of Information Coordinator of the facility where the inmate is incarcerated, if known. An inmate's location may be determined by using the Inmate Locator on the Department's website @ www.cor.state.pa.us. All other requests for information by members of the print and electronic media are to be made to the Department's Press Office.

### D. Staff Responsibilities

1. All staff responding to requests for information shall inform the Release of Information Coordinator at the facility of the request.

2. The Release of Information Coordinator is responsible for logging and tracking all requests for information.

3. Specific staff responsibilities for the dissemination of information are contained in the confidential procedures manual that accompanies this policy.

## VII. SUSPENSION DURING AN EMERGENCY

In an emergency or extended disruption of normal facility operation, the Secretary, or designee may suspend any provision or section of this policy, for a specific period.

## VIII. RIGHTS UNDER THIS POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility to be consistent with law and to permit the accomplishment of the purpose(s) of the policies of the Department of Corrections.

## IX. RELEASE OF INFORMATION AND DISSEMINATION OF POLICY

### A. Release of Information

#### 1. Policy

This policy document is public information and may be released to members of the public, staff, legislative, judicial, law enforcement and correctional agencies and/or inmates upon request.

#### 2. Procedures Manual (if applicable)

The procedures manual for this policy is not public information and shall not be released in its entirety or in part, without the prior approval of the Secretary of Corrections or designee. This manual or parts thereof, may be released to any Department of Corrections employee on an as needed basis.

### B. Distribution of Policy

#### 1. General Distribution

The Department of Corrections' policy and procedures manuals (when applicable) shall be distributed to the members of the Central Office Executive Staff, all Facility Managers, and Community Corrections Regional Directors on a routine basis. Distribution to other individuals and/or agencies is subject to the approval of the Secretary of Corrections or designee.

#### 2. Distribution to Staff

It is the responsibility of those individuals receiving policies and procedures, as indicated in the "General Distribution" section above, to ensure that each employee expected or required to perform the necessary procedures/duties is issued a copy of the policy and procedures.

## X. SUPERSEDED POLICY AND CROSS REFERENCE

### A. Superseded Policy

#### 1. Department Policy

DC-ADM 003, Release of Information issued May 1, 1984, by former Secretary Glen R. Jeffes.

03.04.04, Photocopying Charges issued January 9, 1990 by former Secretary David S. Owens, Jr.

#### 2. Facility Policy and Procedures

This document supersedes all facility policy and procedures on this subject.

### B. Cross Reference(s)

#### 1. Administrative Manuals

a. 16.3.1, NCIC/CLEAN System

#### 2. ACA Standards

a. Administration of Correctional Agencies: 2-CO-1E-07, 2-CO-1E-08

b. Adult Correctional Institutions: 3-4068, 3-4095, 3-4096, 3-4099

c. Adult Community Residential Services: 3-ACRS-1E-07, 3-ACRS-1E-08

d. Adult Correctional Boot Camp Programs: 1-ABC-1E-06, 1-ABC-1E-07, 1-ABC-1E-08

    e.  Correctional Training Academies:  None

3.  **Other**

    a.  Management Directive 505.18, Maintenance, Access, and Release of Employee Information

    b.  Peer Review Protection Act, 63 P.S. §425.1

    c.  Vital Statistics Law of 1953, 35 P.S. §450.101, et seq.

    d.  Disease Protection and Control Law of 1955, 35 P.S. §521.1

    e.  Mental Health Procedures Act, 42 Pa.C.S.A. §5944



EXHIBIT

tabbies'

C

*Inmate Handbook*                                              *Page 3*

### C. Copying Charges

You may have papers and other documents copied, but you will have to pay for them. The cost for copies of information contained in your inmate file and your medical file differ. (See the **DC-ADM 003, "Release of Information Policy."**) To have things copied that you have in your possession or that are in the library, you should refer to your **Facility Inmate Handbook Supplement**.

EXHIBIT

tabbies®     D



**PROCEDURES MANUAL**
**Commonwealth of Pennsylvania • Department of Corrections**

| Policy Subject: | | Policy Number: |
|---|---|---|
| **RELEASE OF INFORMATION** | | **DC-ADM 003** |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| March 12, 2001 | *Jeffrey A. Beard* | April 9, 2001 |
| | Jeffrey A. Beard, Ph.D. | |

Release of Information:

**Policy Document**: The Department of Corrections' policy document on this subject is public information and may be released to members of the public, staff, legislative, judicial, law enforcement and correctional agencies and/or inmates upon request.

**Procedures Manual**: This Procedures Manual is **not public information** and **will not be released** in its entirety or in part, without the prior approval of the Secretary of Corrections or designee. This manual or parts thereof, may be released to any Department of Corrections employee on an as needed basis.

**Procedure Development**: All required procedures will be developed in compliance with the standards set forth in this manual and/or the governing policy. These standards may be exceeded, but in all cases, these standards are the minimum standard that must be achieved. In the event a deviation or variance is required, a written request is to be submitted to the appropriate Regional Deputy Secretary and the Standards and Practices Unit for review and approval prior to implementation. Absent such approval, all procedures set forth in this manual must be met.



*DC-ADM 003, Release of Information Procedures Manual*
*Section 4 – Information Categories*

7. Health Care Information

Health Care information is comprised of three major classifications of records; medical records (which are further divided into General Medical/Dental Information, HIV-Related Information, and Drug and Alcohol Treatment Information), mental health treatment records and psychiatric/psychological records not pertaining to mental health treatment. All three classifications of records are maintained, at least to some degree, in the inmate medical record. The three classifications of records, as well as the three subdivisions of medical records, are considered separately for purposes of dissemination. This reflects the differing laws and concerns that govern their dissemination. Nothing in this Procedures Manual or the Release of Information Policy is intended to change the requirement that medical, mental health and psychiatric/psychological records be maintained in an integrated file.

Questions concerning the release of health care information, other than the release of health care information in connection with actual litigation, are to be referred to the Central Office Bureau of Health Care Services Medical Records Director.

a. General Medical/Dental Information

(1) An inmate is permitted to discuss his/her general medical/dental records with members of the health care treatment staff or Department staff regarding an investigation being conducted by Security or the Office of Professional Responsibility. A release is not required for such discussions. Except as discussed below, a release signed by the inmate (or the inmate's substitute as discussed below) must be obtained prior to releasing general medical/dental information.

(2) Inmates may not possess the original of their general medical/dental records. An inmate that is representing him/herself in actual litigation is permitted to obtain a copy of general medical/dental records pertaining to his/her care if he/she pays the applicable photocopying charges.

(3) A copy of general medical/dental records will be disseminated to the inmate's attorney, a person or organization to which the inmate is applying for benefits or which is or may be providing treatment to the inmate and to state or federal agencies provided that the inmate has signed a release authorizing the dissemination, except that medical records pertaining to one inmate may not be disseminated to another inmate. General medical/dental records also may be disseminated without a release to an attorney representing a Department employee or contractor in litigation in which the inmate's medical condition is at issue. The applicable search and photocopying charges are to be imposed for records disseminated pursuant to this paragraph except when dissemination is made for Department purposes (such as to an outside hospital treating the inmate) or to another Commonwealth agency.

(4) The original inmate medical record is to be maintained at the facility housing the inmate except that the original medical record may be provided to:

(a) the Central Office Bureau of Health Care Services; and

(b) an attorney representing the Department or its officials or employees, including attorneys employed by the Office of General Counsel and Office of Attorney General, provided that such attorney forwards to the facility written confirmation that the original record is required in connection with the court or administrative agency proceeding. A faxed copy of such written confirmation shall be sufficient for this purpose.

(5) In all situations in which an original medical record is permitted to leave the facility, a copy of the record shall be made and retained at the facility. The original medical record shall be returned to the facility as quickly as possible. The original shall remain in the custody of a medical records person.

(6) A copy of general medical/dental records pertaining to an inmate may be provided to a health care provider for use in the defense of a legal action brought by the inmate because of his/her health care. The health care provider shall be required to pay the applicable photocopying charges.

(7) A copy of general medical/dental records pertaining to an inmate may be provided to a Department employee if, in the opinion of the Facility Manager, such employee has a legitimate need to access the information in the performance of his/her duties.

b. HIV-Related Information

(1) An inmate is permitted to discuss HIV-Related information pertaining to him or her with members of the health care treatment staff. A release is not required for such discussions. Except as discussed below, a release signed by the inmate (or the inmate's substitute as discussed below) must be obtained prior to releasing HIV-Related information.

(2) Inmates may not possess the original of HIV-Related information. An inmate who is representing him/herself in actual litigation is permitted to obtain a copy of HIV-Related information pertaining to his/her care if he/she pays the applicable photocopying charges.

(3) A copy of HIV-Related information also will be disseminated to a person or organization designated in a release signed by the inmate, including persons representing the inmate in litigation, except that HIV-Related information pertaining to one inmate may not be disseminated to another inmate. A copy of HIV-Related records will be disseminated to the inmate's attorney, a person or organization to which the inmate is applying for benefits or which is or may be providing treatment to the inmate and to state or federal agencies provided that the inmate has signed a release authorizing the dissemination, except that HIV-Related records pertaining to one inmate may not be disseminated to another inmate. HIV-Related records also may be disseminated without a release to an attorney representing a Department employee or contractor in litigation in which the inmate's medical

sentenced, sentence term and type, sentencing judge's name, reason for change of sentence, court docket number/offense, FBI number, fine(s) imposed, maximum date of sentence, incarceration credit time, facility of confinement (except for inmates for which there is a confidential flag), judicial district of confinement, mandatory release date (if any), method of commitment or discharge, register number, release destination (except for highly sensitive cases or inmates in the witness protection program), and time served. Requests for Rap Sheet information on inmates or staff shall automatically be referred to the PSP. No photocopying of Rap sheets is permitted for dissemination purposes.

10. Work Records

Inmate work records may be disseminated to the inmate who is the subject of the data and to any person or organization identified in a release signed by the inmate except that work records pertaining to one inmate may not be released to another inmate. Inmate work records may be disseminated without a release to any criminal justice agency that is investigating or prosecuting a crime in which the inmate may have been involved as a perpetrator, conspirator, or victim. Inmate work records include, but are not limited to, the **Work Assignment Form (DC-18X), Vocational Cumulative Adjustment Record (DC-47C), Inmate Pay Form (DC-58, 58 A and 59), and Inmate Time Card (DC-290).**

11. Copying Charges

a. Criminal History Records Information shall be furnished to other criminal justice agencies without charge.

b. The fees imposed for the reproduction of medical records are listed on **Attachment J.**

c. The following charges shall be imposed for reproduction of any other records:

(1) a $15.00 search and retrieval fee, except that the search and retrieval fee shall not be charged to any Commonwealth agency, or district attorney;

(2) for records maintained on paper, a fee of $1.00 for the first page and $.25 per page thereafter;

(1) for records maintained on microfiche, photographic records or other non-paper records, a fee equal to the actual cost of reproducing the records.

d. The business office of the facility reproducing the records and the Bureau of Administration for Central Office shall be responsible for producing an invoice for reproduction charges. The person responsible for responding to the record request shall be responsible for advising the business office or Bureau of Administration of the number of pages being reproduced and the address of the person requesting reproduction.

e. Prepayment for record reproduction charges is preferred, but not required. It is appropriate to allow payment following delivery of records when requiring prepayment



EXHIBIT

tabbies®

E

*DC-ADM 003, Release of Information Procedures Manual*
*Section 4 – Information Categories*

would make the production untimely, when reproduction is requested by persons with whom the facility has established a satisfactory course of dealings or for other reasons approved by the Facility Manager.

f.  A fee may be imposed for requests for information which requires transmittal via electronic means, i.e. disk, tapes, etc.  The Department will not make a special release of information that is readily accessible via the Department's web site www.cor.sate.pa.us .

*DC-ADM 003 Release of Information Procedures Manual*                    ***Attachment J***

EXHIBIT

F

## Copying Charges for Medical Records

Fees imposed for the copying of medical records shall be in accordance with **Act 26**. The following charges shall be imposed for reproduction of medical records:

1. a $15.39 search and retrieval fee, except that the search and retrieval fee shall not be charged to any Commonwealth agency, or district attorney;

2. a fee of $1.03 per page for pages 1 - 20;

3. a fee of $.77 per page for pages 21 - 60; and

4. a fee of $.26 per page for pages 61 to end.

All requests for medical records shall be mailed first class. The person/group requesting the records is responsible for the actual cost of postage. The business office of the facility reproducing the records and the Bureau of Administration for Central Office shall be responsible for producing an invoice for reproduction charges. The postage fee shall be included on the invoice provided to the requestor.

DEC-06-2002 FRI 03:28 PM                    FAX NO.

**EXHIBIT**

G

**BUREAU OF HEALTH CARE SERVICES**   PENNSYLVANIA DEPARTMENT

*P.O. Box 598/2520 Lisburn Road Camp Hill, PA 17001-0598*

*Telephone Number: (717) 731-7031*
*Fax Number: (717) 731-7000*

January 4, 2002

**SUBJECT:**        Copy Fees for Medical Records

**TO:**        Superintendents    Attn: Business Office Managers
                                        CHCA's
                                        Medical Records Directors
                                        Medical Records Technicians

**FROM:**        Catherine C. McVey
                Director
                Bureau of Health Care Services

The Department of Corrections follows the Act 26 fee schedule when completing requests for copies of medical records received from inmates, attorneys, court orders, or subpoenas. The Secretary of Health annually adjusts the amounts, which may be charged by a health care facility or health care provider upon receipt of a request or subpoena for production of medical records.

Effective January 1, 2002, the following fees shall be charged by the Department of Corrections for the copying of inmate medical records in response to requests and subpoenas:

❖ Search and retrieval of records:                     $16.24
❖ Amount charged per page for pages 1-20               $ 1.09
❖ Amount charged per page for pages 21-60              $ 0.82
❖ Amount charged per page for pages 61-end            $ 0.28
❖ Amount of First Class Postage: Dollar amount determined by weight

Other charges:

&#10022; Flat fee for supplying records requested by a District Attorney. **Do not charge District Attorney's if they are prosecuting a crime that occurred in a DOC facility.**                                                         $16.24

&#10022; Flat fee for production of records to support claims under the Social Security Act or claims under other Federal or State financial needs based benefit programs. **This applies to claims from outside the state of Pennsylvania.**                                                     $20.57

In accordance with DC ADM 003, the Medical Records Director/Technician should copy the records and submit the page totals and postage charge to the Business Office. It is the responsibility of the Business Office to generate an invoice and return it to the Medical Records Director/Technician. The Medical Records Director/Technician should then mail the copied records and invoice via first class delivery.

If you have any questions, please contact Jennifer Neye or Philip Coady, Medical Records Directors at the Bureau of Health Care Services.

CM/JN/PC/em
cc:   John Shaffer, Ph.D., Deputy Secretary for Administration
      Randall Sears, Deputy Chief Counsel
      J.D. Shutt, Director, Standards & Practices
      Kay Kishbaugh
      Jennifer Neye, RHIT
      Philip Coady, MS, RHIA
      File (Copy Fees.PC.1.2.02)

*cc: Deputy Johnson*



EXHIBIT

H

**BULLETIN**
**Commonwealth of Pennsylvania • Department of Corrections**

| TO: Executive Staff Superintendents Boot Camp Commander Regional Directors | Policy Subject: Photocopying Services for Inmates |
|---|---|
| | Policy Number: **3.4.5-1** |
| | Policy Issue Date: January 9, 1990 |

| Date of Issue: **May 18, 2001** | Authority: *Jeffrey A. Beard, Ph.D.* | Effective Date: **May 28, 2001** |
|---|---|---|

The purpose of this bulletin is to amend the 3.4.5 Photocopying Services for Inmates policy.

The charges for copies set forth in this policy shall apply only to copies of documents that the inmate has in his/her possession or for copies of materials available to all inmates (e.g. library materials, newspaper articles, etc.) Charges for copies of documents contained in the inmate's DC-15 and/or Medical Record shall be in accordance with the copying charges contained in the **DC-ADM 003, "Release of Information"** procedures manual Section 4, subsection B 11.

EXHIBIT

I

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**State Correctional Institution at Coal Township**
(570) 644-7890
August 16, 2002

**SUBJECT:**    Request to Review Documents

**TO:**    Kim Smith, CT-2162
D-B-1019

**FROM:**    Kandis K. Dascani
Corrections Superintendent's Assistant

I am in receipt of the records you requested to review from Assistant Counsel Talaber. Please advise which of the options you wish to pursue relative to this record review:

1. You will be permitted to run your account into the red for the cost of the copies of the records. The cost is $339.19. You must submit a cash slip for this amount to my office and then the records will be forwarded to your attention. Remember that 50% of all incoming monies will be taken until this debt is clear.

2. You wish to review the documents and will be given four (4) hours to complete this review.

KKD/kd

cc:    File

EXHIBIT

J

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**State Correctional Institution at Coal Township**
(570) 644-7890
September 6, 2002

**SUBJECT:**   Response to Request Slip

**TO:**        Kim Smith, CT-2162
               D-B-1019

**FROM:**      Kandis K. Dascani
               Corrections Superintendent's Assistant

Your request for additional time to review the documents forwarded from Assistant Counsel Talaber is denied. This decision is based on the fact that we provided you with three options in regards to these documents in my memo to you dated August 16, 2002. You chose the option allowing you four hours to review the information and make notes. On August 26, 2002 you were provided with four hours to review the information as agreed upon.

Ms. Dickson, medical records technician also met with you recently and you were permitted to review your medical records.

KKD/kd

cc:    Mr. Talaber
       File

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIM SMITH,     :
          :
  Plaintiff,    :
          : Civil No. 1:01-0817
          :
  v.      : (Judge William W. Caldwell)
          :
JAMES MORGAN, et al.,  : (Magistrate Judge Malachy E. Mannion)
          :
  Defendants.   :

## CERTIFICATE OF SERVICE

I undersigned hereby certifies that a copy of the Corrections Defendants' Supporting Documents to Corrections Defendants' Brief in Opposition to Plaintiff's Motion to Compel in this matter was served upon the person(s) in the manner indicated below.

Service by first-class mail
addressed as follows:

Kim Smith, CT-2162    James D. Young, Esquire
SCI-Coal Township     Lavery, Faherty, Young and Patterson, P.C.
1 Kelley Drive      301 Market Street
Coal Township, PA  17866-1020 P.O. Box 1245
          Harrisburg, PA  17108-1245

Marilyn Jones
Clerk Typist II

PA Department of Corrections
55 Utley Drive
Camp Hill, PA  17011
(717) 731-0444
Dated:  December 19, 2002