ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIM SMITH,                          :
                                    :
            Plaintiff,              :
                                    :
                                    : Civil No. 1:01-0817
                                    :
      v.                            :
                                    : (Judge William W. Caldwell)
                                    :
JAMES MORGAN, et al.,               : (Magistrate Judge Malachy E. Mannion)
                                    :
            Defendants.             :

### CORRECTIONS DEFENDANTS' BRIEF IN OPPOSITION
### TO PLAINTIFF'S MOTION TO COMPEL

### STATEMENT OF THE CASE

**A.      Identity of the Parties and Statement of Claim**

Plaintiff Kim Smith is an inmate currently incarcerated at the State

Correctional Institution at Coal Township ("SCI-Coal Township").[1]  The

Department of Corrections Defendants ("Corrections Defendants") include: (1)

Kathy Allen; (2) Nancy Ambrose; (3) Mary Bernas; (4) Sharon Burks; (5) Kandis

Dascani; (6) John Dunn; (7) Harry Ersek; (8) Frank Gillis; (9) Robert Glenny; (10)

Robert Gooler; (11) Dr. Robyn Johns; (12) Roy Johnson; (13) Tim Jordan; (14)

Bernon Lane (15) John Learn; (16) Edward Mason; (17) Miller; (18) James

---

[1]      See Amended Complaint (doc. 20), p. 12

Morgan; (19) Wilma Sewell; (20) Raymond Smith; (21) David Varano; (22)

Voeckler; (23) George Weaver; (24) Lynn Wolfgang; (25) Gerald Whysong; (26)

Pat Yarger; (27) Angela Zimmerman; (28) Hazel Zimmerman.[2]  Smith also names

as Defendants Wexford Health Sources, Inc. and Dr. Ronald Long who are

represented by James D. Young, Esquire.[3]

In this 42 U.S.C. §1983 action, Smith alleges that the Corrections

Defendants violated his First, Eighth, and Fourteenth Amendment rights under the

United States Constitution.[4]  Smith is suing the Corrections Defendants in their

individual capacities.[5]  Smith seeks injunctive relief, as well as, compensatory and

punitive damages.[6]

**B.      Relevant Procedural History**

This action is currently proceeding on Smith's Amended Complaint of July

11, 2001.[7]  On November 6, 2001, the Corrections Defendants waived their right to

reply to Plaintiff's Amended Complaint pursuant to 42 U.S.C. §1997(e).[8]  Smith,

on June 10, 2002, July 12, 2002, and July 15, 2002, filed what can be construed as

---

[2]      See Entry of Appearance (doc. 28).

[3]      See Amended Complaint (doc. , pp. 1-16.

[4]      Id.

[5]      See Amended Complaint, p. 8.

[6]      Id.

[7]      See Order dated July 3, 2001 (doc. 14).

[8]      See Waiver of Reply (doc.33).  The parties have been exchanging discovery since that time.

"Motions" to Amend his Complaint that included a request for a Court Order to have an outside physician examine him pursuant to Fed.R.Evid. 706.[9] The Corrections Defendants take no position on Smith's Motion to Amend regarding adding Dr. Breen and Prison Health Services, Inc., however, the Corrections Defendants' Brief in Opposition to Smith's fourth Motion for Temporary Restraining Order noted that they objected to the portion in his Motion to Amend regarding an outside medical expert for the reasons discussed their August 27, 2002 Brief.[10] A decision is pending on Plaintiff's motions to amend his Amended Complaint.

Additionally, on August 27, 2002, the Corrections Defendants filed a motion, with the concurrence of counsel for the non-Corrections Defendants, to have discovery and dispositive motion deadlines set to aid in bringing this case to a timely resolution.[11] The Court, by Order dated October 24, 2002, granted Defendants' Motion and directed that discovery in this matter shall be completed on or before November 13, 2002, and any dispositive motions must be filed on or before December 13, 2002.[12]

---

[9]    See "Request by Kim Smith to Amend complaint" (docs. 63,68, 71).
[10]    See Corrections Defendants' Brief in Opposition to Plaintiff's fourth Motion for a Temporary Restraining Order, (doc. 84), p. 8, n.27.
[11]    See Motion by Defendants for Discovery and Dispositive Motion Deadlines (doc. 83).
[12]    See Order dated October 24, 2002 (doc. 89). Noteworthy is that Smith untimely and without court approval filed a Brief in Opposition to the Defendants'

On December 13, 2002, all the Defendants filed Motions for Summary judgment through their respective attorneys.[13]  Smith did not file a dispositive motion.  The Corrections Defendants will file within the next two weeks their Supporting Brief to their Motion for Summary Judgment.

However, in addition to what was noted above, there are two of Smith's Motions that need addressed for resolution by the Court: (1) Smith's fifth Motion for Temporary Restraining Order; and (2) Smith's Motion to Compel.  The Corrections Defendants, by separate Brief in Opposition simultaneously filed, is addressing the merits of Smith's fifth Motion for a Temporary Restraining Order.[14]  Accordingly, this Brief will respond to the merits of Smith's Motion to Compel Discovery.

Smith filed a Motion to Compel, without a Supporting Brief[15], on November 5, 2002, seeking court resolution on three matters.  First, Smith seeks a court order

---

Motion for Deadlines on November 5, 2002, after the Court had already decided to establish the above-mentioned deadlines (docs. 90, 91).

[13]    See Motions for Summary Judgment (docs. 99, 100)

[14]    See Smith's Motion for a Temporary Restraining Order (doc. 93)

[15]    The Local Rules state in relevant part that: "Within ten (10) days after the filing of any motion filed prior to trial, the party filing the same shall file an original and two (2) copies of a brief with the clerk and shall serve copies on all parties . . . .  Unless otherwise ordered by the court, if supporting legal briefs are not filed within the time provided in this rule such motion shall be deemed to be withdrawn."  Pa.MDLR 7.5.  Further, as noted in the Court's Standing Practice Order that was provided to Smith on May 10, 2001 (doc. 5), even *pro se* litigigants are expected to follow this Rule.  This alone would be a basis for this Honorable Court's denial of Smith's Motion to Compel.  However, in the interest of moving

the Correctional Defendants to provide petitioner with a copy of the DOC

Directive that ordered the Department of Corrections to cut off power in all

institutional cells.  Second, Smith seeks a court an order requesting the

Maintenance Department at SCI-Smithfield to provide petitioner a report of the

status of plug sockets in the RHU on H-2 and any repairs made from January 2000.

Finally, Smith seeks a court order directing the medical records Department at

SCI-Coal Township to provide him with a copy of certain medical records as

evidence to support his claim and to show that the medical department deferred

from medical orders.[16]  The Corrections Defendants, for the reasons presented in

their Argument, *infra*, pp. 7 to 11, the Corrections Defendants submit the Smith's

Motion to Compel be denied.[17]

---

this matter forward, and given the considerable generosity from this Court in
granting enlargements of time through the court of the action, counsel for the
Corrections Defendants is responding on the merits of Smith's claims so that the
Court will have a clearer understanding of the events surrounding the discovery
process in this action.

[16]    See Smith's Motion to Compel (doc. 92), pp. 1-2.

[17]    Additionally, as a point of clarification, on December 19, 2002, the
Corrections Defendants' filed with the Clerk of Court's a Document captioned
"Supporting Documents to Corrections Defendants' Brief in Opposition to
Plaintiff's Motion to Compel."  However, the Office Messenger mistakenly failed
to take with her the Corrections Defendants' Supporting Brief.  Given that the
undersigned attorney, *de facto*, was provided with additional time, he is now
supplementing the Supporting Documents filed on December 19, 2002, with
documents filed today.  Additionally, counsel respectfully requests this Honorable
Court, pursuant to Fed.R.Civ.P. 6(b), to grant the Corrections Defendants' leave to
file this Brief and Supplemental Supporting Documents on December 20, 2002,
and deem it timely filed.  There will be no harm to Smith in granting this request.

### C.   Statement of Alleged Facts

Inmate Smith's Amended Complaint generally alleges claims of deliberate indifference to his medical needs, violations of his right to access the Courts, and due process deficiencies under the United States Constitution.[18]

---

[18]   See Amended Complaint, pp.1-16; see also Wexford Defendants' Brief in Opposition to Plaintiff's Request for Injunctive Relief (doc. 47) , pp. 2-4.

## QUESTIONS PRESENTED

I.      SHOULD THE COURT DENY SMITH'S MOTION TO
        COMPEL A FURTHER REVIEW OF HIS INMATE MEDICAL
        RECORDS, ABSENT HIS PURCHASING THE DOCUMENTS,
        BECAUSE THE FACTUAL CIRCUMSTANCES PRESENTED
        HEREIN DO NOT WARRANT HIM BEING PROVIDED
        MORE TIME FOR EXAMINATION AND INSPECTION?

        SUGGESTED ANSWER:     YES

II.     SHOULD THE COURT DENY SMITH'S MOTION TO
        COMPEL RELATING TO "MAINTENANCE RECORDS"
        BECAUSE THE REQUESTED RECORDS DO NOT EXIST?

        SUGGESTED ANSWER:     YES

## ARGUMENT

**I.    THE COURT SHOULD DENY SMITH'S MOTION TO
COMPEL A FURTHER REVIEW OF HIS INMATE MEDICAL
RECORDS, ABSENT HIS PURCHASING THE DOCUMENTS,
BECAUSE THE FACTUAL CIRCUMSTANCES PRESENTED
HEREIN DO NOT WARRANT HIM BEING PROVIDED
MORE TIME FOR EXAMINATION AND INSPECTION.**

Smith's status as a *pro se* incarcerated litigant creates impediments in
discovery that are ordinarily not faced by a non-incarcerated *pro se* litigant.[19]
Courts have encouraged the parties to find other reasonable means to accomplish
the spirit of discovery by exchanging information in an environment that is subject
to liberty restrictions and security interests.[20]  However, even in litigation with *pro
se* incarcerated inmates, there must be limits in the discovery process.

Specifically, in matters of discovery, there must be a balance in the inmate's
right of access to the Court, with the inherent need of prosecuting his case, against
the equally strong need for correction administrator's to utilize the resources they
have, both physical and human, in maintaining safe, secure, and orderly-run
facilities.  Recognizing the above principles, the Corrections Defendants submit
that in the factual situation surround Smith's Motion to Compel, he has been
provided with the ability to prosecute his case, and was forced to make choices,

---

[19]    See generally <u>Belle v. Faust</u>, No. 91-8013, 1993 WL 59291 (Pa. E.D. March
8, 1993)(recognizing the modifications and logistical problems incurred in
conducting discovery with incarcerated pro se litigants), a copy of which attached
hereto pursuant to Pa.M.D.L.R. 5.1, as Exhibit 1.

8

albeit not to his liking, that satisfy the balancing of competing interests in favor of the Corrections Defendants.

Factually, in responding to Smith's First Request for Production of Documents, Number Three (3), the Corrections Defendants informed Smith that they "will provide [to him] for his review and/or copying all medical records, correspondence reports, diagnostic tests, and x-ray reports the Department of Corrections has in its possession."[21]  Smith was informed to submit a request to SCI-Coal Township Litigation Coordinator Kandis Dascani,[22] who would provide him with an opportunity to examine his medical records.  In the alternative, Smith was also given the opportunity to "obtain copies of the documents at his expenses . . ." pursuant to Department of Corrections Policy DC-ADM 003 and its Procedure Manual.

Further, Smith was informed that he could choose which documents to copy, including his requested non-medical records, or have all the documents copied (at the costs of three hundred thirty nine dollars and nineteen cents ($339.19) after

---

[20]    Id.

[21]    See Defendants' Response to Plaintiff's First Request for Production of Documents ("Response"), p. 4, attached to the Supplemental Supporting Documents as Exhibit B.

[22]    An Unsworn Declaration from Kandis Dascani is attached to the Corrections Defendants' Supporting Documents to the Brief in Opposition to Plaintiff's Motion to Compel, attached thereto as Exhibit 1.  That same declaration provides verified factual support for the following paragraphs in this Argument.  Id.

submitting a cash slip.[23]  Smith chose not to purchase the documents, and instead used the four (4) hour time period to inspect and examine the materials.  On August 26, 2002, at 11:00 a.m. Smith was called down to the non-contact visiting room to review his records, where Ms. Dascani met him and provided him with the records for his review.  When Ms. Dascani returned to the visiting room later that day, shortly after 3:00 P.M., Smith informed her that he had only had time to review about one fourth (1/4) of his records.  At that time Smith indicated that he intended to petition the Court for additional time.

On September 6, 2002, Ms. Dascani sent a response to Smith's request slip denying his request for additional time to review the records.  Specifically, she informed him that he had the opportunity to review his records on August 26, 2002 during the reasonable time allotted.  Moreover, prior to this examination and inspection, Smith was given the opportunity to meet with the SCI-Coal Township Medical Records Technician to review his records.  This meeting was also more than is required by the DOC policy.

Defendants submit that Plaintiff was given a reasonable time to review the records as the materials were presented to Smith was in a very organized manner subdivided into categories (e.g. physician's notes, consultation records, etc.) and were in chronological order.  Further, as noted in Ms. Dascani's declaration, it is

---

[23]   Id.

10

her opinion as a professional correction administrator that, given the manner presented, and the time-period of four (4) hours, it was completely reasonable for layperson to inspect and review the documents and take notes as to what was relevant to his case. Moreover, at the time Smith was given the opportunity to review the documents (August 2002), there were between one thousand seven hundred eighty-one (1,781) inmates incarcerated at SCI-Coal Township. Ms. Dascani, as a Prison Administrator and in conjunction with the Superintendent, must ensure that staff resources are appropriately allocated for the safety of the inmates and staff at the institution.

Ms. Dascani notes that, despite Smith's averments that there was no inconvenience to SCI-Coal Township in placing him in the visiting room to review his records, he is wrong. Logistically, Smith's request requires he be issued a pass for the visiting room and subject to a pat search before entering the visiting room. A Department employee is required to stay close by while Smith reviews the information for a four-hour duration. Ms. Dascani opines that Smith uses opportunities such as this to manipulate prison resources, and to take advantage of the DOC's generosity and good-faith efforts to balance his right to access the courts with their need to maintain a safe, secure, corrections institution with limited financial and human resources. Accordingly, given the alternatives presented to Smith, the choices he made, and the effect this has on the prison resources, the

Corrections Defendants' respectfully submit that the Court deny Plaintiff's Motion to Compel additional time to review his medical records.

## II.    THE COURT SHOULD DENY SMITH'S MOTION TO COMPEL RELATING TO "MAINTENANCE RECORDS" BECAUSE THE REQUESTED RECORDS DO NOT EXIST.

Smith's Request for Production of Documents also sought the following: (1) a copy of the DOC policy that terminates power in all state institutions RHU; and (2) to provide copies of all Maintenance reports, or repairs done in the RHU H Block to plug sockets, and the status of plug sockets in RHU H Block.[24]  The Corrections Defendants, as stated on their Response, produced for Smith's examination and inspection, with an option to purchase copies, of documents that were arguably within the scope of his request.

However, exact documents of what Smith "thinks exists" and the reality of what the Department of Corrections has do not match.  Simply put, as stated in their Response, the documents do not exist.  Moreover, lest there be any doubt, counsel for the Department of Corrections submits the Unsworn Declaration of Lisa Hollibaugh, Acting Assistant to the Superintendent at SCI-Smithfield that

---

24    See Defendants' Response to Plaintiff's First Request for Production of Documents ("Response"), pp 1-5, attached to the Supplemental Supporting Documents as Exhibit 2.

supports this position.[25]  Accordingly, Smith's Motion to Compel should be

denied.

## CONCLUSION

**WHEREFORE**, in light of the foregoing, the Corrections Defendants

respectfully request this Court to deny Plaintiff's Motion to Compel.

Respectfully submitted,
Office of General Counsel

BY: _____
John J. Talaber
Assistant Counsel
PA Department of Corrections
55 Utley Drive
Camp Hill, PA  17011
(717) 731-0444
Attorney No. 83279

Dated:  December 20, 2002

---

25    See Unsworn Declaration of Lisa Hollibaugh, attached to the Supplemental
Supporting Documents as Exhibit 3.

1993 WL 59291
(Cite as: 1993 WL 59291 (E.D.Pa.))

**H**
Only the Westlaw citation is currently available.


United States District Court, E.D. Pennsylvania.

ROBERT STEVEN BELLE
v.
R. CRAWFORD J. FAUST, et al.

**No. CIV. A. 91-8013.**

March 8, 1993.


MEMORANDUM AND ORDER


VANARTSDALEN.

 *1 On February 8, 1993, plaintiff, Robert Steven Belle, filed several motions in
this action.  The various motions include:  a "Request for a Photo- Copy of the
Original Complaint and a Copy of the 'Gratis docket' Listing," (filed Doc. No. 15);
a "Motion for [Extension] of Time in Which to File a Supplemental Complaint
Pursuant to Rule 15(d) and/or Allowance to File an Amended Complaint Pursuant to
Rule 15(a) of the Federal Rules of Civil Procedure," (filed Doc. No. 16);  Motions
to Depose Rev. George S. Christopher, Mr. Michell A. Kaufman, Mr. Anthony Campbell,
Mr. Jose Louis Colon, Mr. Tyrone Payne, Mr. Jerry Ivy, and Mrs. Christopher, (filed
Docs. Nos. 17-23, respectively);  and a "Motion Requesting Waiver of Fees for
Depositions, Pursuant to the Federal Rules of Civil Procedure, Rules 30 [Through]
36 et. seq., and Supporting Information," (filed Doc. No. 24).   Plaintiff,
presently incarcerated at the State Correctional Institution at Dallas (SCI
Dallas), Pennsylvania, proceeds *in forma pauperis.*


Plaintiff's Request for Copies

 The first motion by plaintiff involves a request for the court to furnish him with
a copy of the "gratis docket," his complaint, and the local rules. (filed Doc. No.
15, at 1-2).   In light of plaintiff's description of the "gratis docket," I
understand him to mean that he wants the Clerk of Court to furnish him with a
docket sheet for this case.   Plaintiff also requests a copy of his complaint
because allegedly "plaintiff's copy was thrown into the trash, as other documents
and legal documents were thrown into the trash and removed from plaintiff's
personal property." (filed Doc. No. 15, at 2).   Accordingly, I will direct the
Clerk of Court to send a copy of the complaint with the current docket sheet and a
copy of the Local Rules for the Eastern District of Pennsylvania to plaintiff as
requested.


Plaintiff's Motion to Amend the Complaint

 Plaintiff has moved the court for, inter alia, allowance to amend and/or
supplement his complaint pursuant to Federal Rule of Civil Procedure 15(a) and (d).
(filed Doc. No. 16).   Federal Rule of Civil Procedure 15 provides in pertinent
part:
 (a) Amendments. A party may amend the party's pleading once as a matter of course
at any time before a responsive pleading is served or, if the pleading is one to
which no responsive pleading is permitted and the action has not been placed upon

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

the trial calendar, the party may so amend it at any time within 20 days after it is served.  Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party;  and leave shall be freely given when justice so requires.
...
(d) Supplemental Pleadings.  Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.

**\*2** Fed.R.Civ.P. 15(a) & (d).  Federal Rule of Civil Procedure 15(d) governs amendments to pleadings that seek to update a previously filed pleading with information about related matters occurring subsequent to the time of the original pleading.  Plaintiff explains in his motion that he seeks to add information which was available at the time he originally filed the pleading. Therefore, Federal Rule of Civil Procedure 15(d) is inapplicable.

 As correctly pointed out by defendants, plaintiff has not provided the court or opposing counsel with the proposed amendment and/or supplement.  (Defs.' Response to Pl.s' Motion for Allowance to File a Supplemental and/or Amended Complaint, filed Doc. No. 26, at 2, ¶ 4).  However, plaintiff does reveal what information he intends to include in this amended complaint.  Plaintiff requests the opportunity to file this amended complaint "in order to name all unnamed defendants in this matter, [specifically] state the role of these individuals in the matter at bar, and to serve each individual with a copy of the complaint." (Pl.'s Motion for Allowance to File a Supplemental and/or Amended Complaint, filed Doc. No. 16, at 2).

 Plaintiff further points out in this motion that he seeks leave to make these amendments and supplements while in the initial stages of discovery.  *Id.* What plaintiff fails to mention is the fact that he chose to appeal my previous decision to dismiss his complaint, rather than utilize the leave to amend that I originally granted to him.  Quizzically, after succeeding on appeal, plaintiff seeks leave to amend his complaint at this time.

 On January 7, 1992, I dismissed plaintiff's complaint as frivolous pursuant to 28 U.S.C. § 1915(d), with leave to amend as specified in the memorandum accompanying my order.  In the memorandum I detailed what I found to be defective in Mr. Belle's complaint and what Mr. Belle should do to correct those defects.  In granting leave at that time to file an amended complaint, I stated "[i]n plaintiff's amended complaint he should set forth in paragraphs and in precise and clear language each individual by name that he intends to sue and the role they played in the alleged constitutional deprivations." *Belle v. Crawford,* No. 91-8013, slip op. at 2 (E.D. Pa. January 7, 1992).

 Although plaintiff could have refiled an amended complaint, plaintiff chose to forego this opportunity and instead "stood on his complaint."  When plaintiff appealed my order dismissing his complaint without prejudice, the appellate court had jurisdiction of the appeal only by virtue of the fact that plaintiff refused to file a new complaint. [FN1]  On appeal, the

 Court of Appeals for the Third Circuit ruled that Belle's *pro se* complaint was not frivolous, vacated my order, and "remand[ed] the case for service of process on the defendants and for further proceedings consistent with [their] opinion." *Belle v. Crawford,* No. 92-1092, slip op. at 2 (3d Cir. November 30, 1992).

 **\*3** What plaintiff attempts to do now flies in the face of reason and is precisely

why I originally dismissed his complaint as frivolous.   The purpose behind Congress' grant of authority to this court to dismiss frivolous *in forma pauperis* cases pursuant to 28 U.S.C. § 1915(d) is to conserve the important resources of the district courts.   *See Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827 (1989). [FN2]   The appellate court pointed out in its opinion that a dismissal without prejudice is ordinarily not an appealable order; however, when the plaintiff "declares his intention to stand on his complaint ... the order become[s] final and appealable."  *Belle v. Crawford,* slip op. at 3, n.1 (3d Cir. November 30, 1992) (quoting *Borelli v. City of Reading,* 532 F.2d 950, 951 (3d Cir.1976)).   Plaintiff cannot argue that justice favors allowance for him to amend the complaint in accordance with my memorandum at this time.  [FN3]

  The decision whether to grant leave to amend is discretionary, but that "discretion should be exercised within the context of liberal pleading rules." *Berkshire Fashions, Inc. v. M.V. Hakusan II,* 954 F.2d 874, 886 (3d Cir.1992).   In accordance with this liberal pleading policy, the district court may exercise discretion to deny leave to amend based on a determination that "the plaintiff's delay in seeking the amendment is undue, made in bad faith, [or] prejudicial to the opposing party."  *Id.*

  Cases interpreting Rule 15 generally favor granting leave to allow amendment when the case is in the early stages of litigation because a court is unlikely to find undue delay on the part of the plaintiff or prejudice to the defendant at such a time.   Cf. 6 Charles A. Wright, Et Al., Federal Practice & Procedure § 1488, at 670 (1990) ("As a general rule, the risk of substantial prejudice increases with the passage of time."), *cited with approval in Robinson v. Cuyler,* 511 F.Supp. 161, 165 (E.D.Pa.1981).   Delay alone is generally not sufficient reason to deny leave to amend, but "delay can itself be evidence of bad faith justifying denial of leave to amend." *Adams v. Gould, Inc.* 739 F.2d 858, 868 (3d Cir.1984), *cert. denied,* 469 U.S. 1122 (1985).

  Undue delay may be found when a party seeks to amend a pleading close to trial or after the close of discovery.  *See e.g. Gay v. Petsock,* 917 F.2d 768 (3d Cir.1990) (denial of attempt to amend on the first day of trial affirmed); *Weinerman v. City of Philadelphia,* 785 F.Supp. 1174 (E.D.Pa.1992) (denial of attempt to amend answer to complaint when original answer was filed eight months prior to motion and motion was made close to trial date).   The amount of time lapsing before a party seeks leave, however, is perhaps not as important as the "timing" of the request or posture of the case when the request is made.   If a party is offered leave to amend and makes a decision not to amend, then a subsequent request may reasonably be perceived as unduly delayed and may also be evidence of bad faith.   Moreover, when the request occurs subsequent to that party's successful appeal of a dismissal, the party seeks, in effect, nullification of the appellate ruling in its favor.   On this basis, the plaintiff's motion should be denied as unduly delayed and in bad faith.

  **\*4** Furthermore, the judicial estoppel doctrine provides support to the above stated conclusion.   "The judicial estoppel doctrine seeks to prevent a party from playing fast and loose with parties by asserting contradictory positions."  *United States v. Vastola,* Nos. 91-5727 and 91-5772, 1993 U.S.App. LEXIS 2534, at \*16 (3d Cir. February 18, 1993).   The doctrine is generally applied when a party seeks to take a position contrary to one the party successfully assertedin a prior case. When a party seeks to do this within the same case it is even more offensive to the integrity of the courts.

  The Court of Appeals for the Third Circuit in *Biesenbach v. Guenther,* 588 F.2d 400 (3d Cir.1978), rejected the argument asserted on appeal that if that court affirmed

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

the district court's dismissal of plaintiffs' federal claims pursuant to Federal Rule of Civil Procedure 12(b)(6), then the district court should entertain a motion by the plaintiffs for leave to amend their complaint.   Although not applying the judicial estoppel doctrine directly, Judge Rosenn, in commenting on the courts rejection of plaintiffs' argument, remarked that plaintiffs had "decided to appeal rather than attempt further amendment." *Id.* at 403.   The court thereby indicated that plaintiffs' chosen course estopped plaintiffs from successfully advancing that argument.

In requesting leave to file an amended complaint now, plaintiff, who has been granted *in forma pauperis* status at the trial and appellate levels, [FN4] would have both appellate and district court resources squandered at his whim.   If his original complaint is not frivolous, as the appellate court so held, than what plaintiff attempts to do now certainly is.   Plaintiff chose to appeal instead of amend as I would have allowed him. [FN5]

Therefore, plaintiff's present request for leave to amend his complaint in accordance with my opinion dated January 7, 1992, will be denied.

Defendants' assert in their response that the court cannot grant plaintiff's motion to file an amended complaint unless and until plaintiff files a proposed copy of the amended complaint. (filed Doc. No. 26, at 2, ¶ 7).   Plaintiff has, however, indicated precisely how he wishes to amend his complaint.   Regardless of plaintiff's failure to supply the proposed document, I will not allow plaintiff leave to file an amended complaint.   If, in accordance with Federal Rule of Civil Procedure 15(a), defendants wish to give written consent to the plaintiff allowing him to amend his complaint, they should feel free to do so.   Assuming defendants give written consent, I will have no choice but to allow the amendment.   *See* Fed.R.Civ.P. 15(a);  6 Charles A. Wright, Et Al., Federal Practice & Procedure § 1490, at 700 (1990).

Plaintiff should note that I issued a scheduling order dated January 25, 1993, which stated that "[a]ny motion to join any additional parties shall be filed on or before March 31, 1993." (filed Doc. No. 13, ¶ 2).   My resolution of plaintiff's attempt to amend his complaint does not prevent him from proceeding pursuant to Federal Rules of Civil Procedure 19 through 21 in accordance with the previously entered order.

### Plaintiff's Motions for Leave to Depose Certain Individuals

**\*5** Plaintiff also filed motions requesting leave to depose seven individuals, three of whom, like the plaintiff, are incarcerated. [ (filed Doc. No. 24, at 4), referring to (filed Docs. Nos. 17-23) ]. [FN6]   In support of this discovery request, plaintiff avers that the listed individuals "may bear physical, documentary and other evidence," (filed Doc. No. 24, at 5), relevant to his case.

As plaintiff's motions include requests to depose incarcerated individuals, rules governing such discovery are thereby implicated in resolving his motions.   Federal Rule of Civil Procedure 30, governing the testimony of individuals by deposition upon oral examination, provides that "[t]he deposition of a person confined in prison may be taken only by leave of court on such terms as the court prescribes." Fed.R.Civ.P. 30.   This provision applies equally to depositions upon written questions as governed by Federal Rule of Civil Procedure 31.

Plaintiff also states that "upon grant of motion(s) to depose an individual, the court can request the transfer of an individual prisoner to a location to where a deposition(s) are to be held." (filed Doc. No. 24, at 5).   Apparently, plaintiff

1993 WL 59291
(Cite as: 1993 WL 59291 (E.D.Pa.))

believes that in civil actions in federal court involving plaintiffs who are
incarcerated at state institutions, the district court judge routinely orders the
state to transfer that prisoner to locations convenient for the prisoner to conduct
discovery through his preferred method.   Unfortunately, granting of plaintiff's
motions would entail such a transfer.

 Defendants aptly argue the difficulties attending plaintiff's proposed discovery.
 Every time an inmate is transferred from one institution to another, the sending
 and receiving institutions are burdened....  Personnel at the sending institution
 must do the necessary paperwork, make certain arrangements, ... [and p]ersonnel at
 the receiving institution must also process the necessary paperwork....  [G]reater
 security risks are present during the actual transport, ... and in actually
 getting the inmate into custody at the receiving institution.

 (Defs.' Response to Pl.'s Motion Requesting Waiver of Fees for Depositions, filed
 Doc. No. 27, at 5-6, ¶  14).   Understandably, defendants oppose transfer of
 plaintiff to conduct discovery and oppose leave for plaintiff to depose upon oral
 examination incarcerated individuals at other institutions.

 In their supplemental responses to plaintiff's motions, defendants further point
 out that plaintiff "has been officially separated from two inmates who are
 presently incarcerated at SCI Pittsburgh."  [ (Defs.' Supplemental Response to
 Pl.'s Motions to Proceed Upon Oral Depositions, filed Doc. No. 30), incorporating
 argument by reference to (Defs.' Supplemental Response to Pl.'s Motion Requesting
 Waiver of Fees for Depositions, filed Doc. No. 29, at 1, ¶  2) ]. Not only is
 transfer of plaintiff for discovery purposes unwarranted, a transfer of plaintiff
 to SCI Pittsburgh could very likely be an unsafe course of conduct.

 *6 Plaintiff's status as a prisoner and the status of certain alleged witnesses
creates impediments to certain methods of discovery.   However, despite the
requirement of leave to depose incarcerated individuals, the federal rules
governing discovery are quite liberal.   In fact, Federal Rules of Civil Procedure
29 and 30 provide alternatives to general discovery practice and procedure.

 Federal Rule of Civil Procedure 29 provides for the parties to stipulate to
discovery procedures in variance from some of the discovery rules.   Rule 29
provides:
 Unless the court orders otherwise, the parties may by written stipulation (1)
 provide that depositions may be taken before any person, at any time or place,
 upon any notice, and in any manner and when so taken may be used like other
 depositions and (2) modify the procedures provided by these rules for other
 methods of discovery, except that stipulations extending the time provided in
 Rules 33, 34, and 36 for responses to discovery may be made only with the approval
 of the court.

 Fed.R.Civ.P. 29.  Federal Rule of Civil Procedure 30 permits the parties to
stipulate that depositions may be taken by telephone and also grants the court
authority to order on motion that an oral deposition be taken by telephone.
Fed.R.Civ.P. 30(b)(7).

 In light of his situation, plaintiff should explore other means to prepare for
trial.   In their brief, defendants suggest less expensive and less burdensome
means for plaintiff to obtain information from individuals who are not
incarcerated.   As indicated by defendants, plaintiff may place a collect telephone
call to a non-incarcerated witness, and may write to that witness seeking
information and/or an affidavit from that individual.   (Defs.' Response to Pl.'s
Motion Requesting Waiver of Fees for Depositions, filed Doc. No. 27, at 3, ¶  6).

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

1993 WL 59291
(Cite as: 1993 WL 59291 (E.D.Pa.))

Defendants, however, assert that certain prison regulations prohibit plaintiff from communicating with inmates of other institutions, as well as former inmates or probationers. *Id.* at 3, ¶ 7, and n.1.

The regulation defendants cite to, Commonwealth of Pennsylvania, Bureau of Corrections Administrative Directive 803, provides: "Correspondence with inmates of other institutions, former, inmates, probationers or victims of the criminal acts of the inmate will not be permitted except upon special approval of the Superintendent." Pennsylvania BC-ADM 803 § II(C)(1) (Inmate Mail Privileges) (emphasis added). Defendants' state that there is no alternative method by which plaintiff can discover information from an inmate at another institution. (Defs.' Response to Pl.'s Motion Requesting Waiver of Fees for Depositions, filed Doc. No. 27, at 3, ¶ 7, and n.1). This assertion fails to acknowledge the potential application of the noted exception, however difficult it may be for Mr. Belle, in furtherance of discovery, to procure the superintendent's special approval for the generally prohibited communication.

In light of the special difficulty and disruption to the correctional institution attending the taking of an incarcerated individual's deposition upon oral examination by another incarcerated individual, plaintiff will not be granted leave to depose upon oral examination any of the incarcerated individuals. Plaintiff will have to seek leave to employ another method by which such discovery from those incarcerated individuals can be effected. Further, plaintiff's motion for leave to depose upon oral examination the individuals not currently incarcerated and request to be transported to conduct discovery will be denied.

**\*7** Plaintiff and defense counsel should contact each other to arrange for the taking of any necessary depositions and for working out problems with discovery. Defendants should inform the court through counsel of any additional administrative prohibitions relating to discovery conduct, and further provide the court with a copy of these regulations. Both parties should inform the court of stipulations made pursuant to Federal Rule of Civil Procedure 29.

In his filed requests to depose various individuals, plaintiff generally states that the individuals he wishes to depose have "information and evidence, materially important to this matter at bar, in proving the facts of plaintiff's case." (filed Docs. Nos. 17 through 23, at 2). Plaintiff, in communicating with the Deputy Attorney General in regard to arranging for any depositions and in future requests made to the court, should set forth more specifically the necessity of deposing particular individuals, what discoverable information he anticipates they can provide, and why that information is unobtainable from other sources. As cautioned by defendants, absent special permission from the Superintendent, Pennsylvania BC-ADM 803 by its terms prohibits communication with inmates at other institutions, former inmates, and probationers. Therefore, future requests should indicate whether the individual from whom plaintiff seeks information is an inmate, former inmate, or probationer. Further, if plaintiff seeks leave to depose an incarcerated individual upon written questions or otherwise, he should include proposed questions with such motion.

### Plaintiff's Request for Waiver of "Fees and Costs"

In his "Motion Requesting Waiver of Fees for Depositions, Pursuant to the Federal Rules of Civil Procedure, Rules 30 [Through] 36 et. seq., and Supporting Information," (filed Doc. No. 24), plaintiff argues that based on his status as an indigent prisoner, as evidenced by my grant to him of leave to proceed *in forma pauperis,* he should be allowed to take depositions, and presumably conduct other discovery, without payment of costs and fees. *Id.* at 2.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

   Defendants' point out that plaintiff failed to articulate what fees and costs he
desires the court to order waived and who should bear the costs for waived fees.
Opposing plaintiff's motion, defendants maintain that plaintiff must bear the costs
of any depositions, and that neither defendants' nor the Government should have to
shoulder plaintiff's expenses because of plaintiff's *in forma pauperis* status.
(Defs.' Response to Pl.'s Motion Requesting Waiver of Fees for Depositions, filed
Doc. No. 27, at 2, ¶ 4).

   28 U.S.C. § 1915 provides access to the court to indigent individuals by waiving
certain filing and transcript fees.  In providing this relief; however, Congress
did not evidence an intent to fund an indigent individual's litigation efforts.
The statutory language of 28 U.S.C. § 1915 "does not mean that the *in forma
pauperis* plaintiff's discovery costs either are underwritten or are waived."
*McAleese v. Owens*, No. 88-1669, 1990 U.S. Dist. LEXIS 4539, *11 (M.D. Pa. March 29,
1990); *see also Doe v. United States*, 112 F.R.D. 183 (S.D. N.Y.1986), *Moss v. ITT
Continental Baking Co.*, 83 F.R.D. 624 (E.D. Va.1979), and *Ebenhart v. Power*, 309
F.Supp. 660 (S.D. N.Y.1969).  Unlike provisions for costs in criminal cases
involving indigent defendants, there is no general provision for the payment of
discovery fees and costs on behalf of an indigent party in civil actions.  *See Id.*
at *11.  [FN7]

   **8** The court in *McAleese*, discussing the same issue raised by plaintiff in his
motion for waiver of fees, commented that
     courts "uniformly" have refused to authorize the expenditure of federal funds to
     underwrite the discovery costs of an indigent's civil action....  [T]he plaintiff
     in his case also cannot look to the named defendants for payment of fees and costs
     connected with a deposition....  Litigants generally bear their own deposition
     expenses initially.  A defendant is not required to advance the plaintiff's
     deposition expenses merely because the plaintiff is unable to pay for such costs
     and fees.  And, once again, the in forma pauperis statute, Title 28 United States
     Code, section 1915, likewise does not require the Government to advance funds for
     deposition expenses.

   *McAleese v. Owens*, No. 88-1669, 1990 U.S. Dist. Lexis 4539 at *16  (citations
omitted).

   In *Boring v. Kozakiewicz*, 833 F.2d 468 (3d.  Cir.1987), *cert. denied*  485 U.S.
991 (1988), the Court of Appeals for the Third Circuit simultaneously ruled that
the indigent plaintiffs' case required expert testimony in order to meet the burden
of proof and that the district court was correct in refusing to provide funds for
plaintiffs' to obtain the required expert testimony.  Despite the appellate
court's recognition of "the plaintiffs' dilemma in being unable to proceed in [the]
damage suit because of the inability to pay for expert witnesses," *Id.* at 474, the
court's decision indicated that district courts lack authority to provide indigent
plaintiffs with funding for expert witnesses, absent specific legislative
provisions. *See id.*

   Legislative provision for the funding of certain defense expenses of indigent
criminal defendants and certain filing and transcript expenses of indigent civil
litigants recognizes that the interests of justice and fairness in the legal system
require taxpayers to bear certain monetary costs in the litigation process.
However, those interests do not extend to government funding of plaintiff's trial
preparation in this civil case.  Therefore, plaintiff's motion for waiver of fees
and costs will be denied.

                      Plaintiff's Certification of Service

                  Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

In many of plaintiff's motions, plaintiff certified service on the Clerk of Court, Michael Kunz. <u>Federal Rule of Civil Procedure 5</u> requires filing of papers upon the opposing party with a certificate of service.  That rule provides:
  every pleading subsequent to the original complaint ..., every paper relating to discovery required to be served upon a party ..., [and] every written motion other than one which may be heard ex parte, ... shall be served upon each of the parties.

<u>Fed.R.Civ.P. 5(a)</u> (emphasis added).   Subpart (d) further provides that  "[a]ll papers after the complaint required to be served upon a party, together with a certificate of service, shall be filed with the court." <u>Fed.R.Civ.P. 5(d)</u> (emphasis added).

Proper service must be certified and made upon defendants' counsel, Deputy Attorney General Denise Kuhn.

**\*9** As filed Document No. 15 lists the various motions subsequently filed as Documents Nos. 16 through 24, and in filed Document No. 15 the plaintiff certified service to Deputy Attorney General Denise Kuhn for those subsequent documents, that certificate of service shall satisfy the requirement of Federal <u>Rule 5(b)</u> for plaintiff's motions filed as Documents Nos. 16 through 24.   Rather than providing a "blanket" certification of service, plaintiff should in the future properly certify service on the opposing party and any other necessary individuals with each document filed which requires such a certification.

Conclusion

I will order the Clerk of Court to send copies of certain specific documents to the plaintiff.   I will deny plaintiff leave to amend his complaint, without prejudice to join additional parties.   I will deny plaintiff's motions for leave to depose upon oral examination the seven identified individuals. Further request for leave to depose, through other means, an incarcerated individual should detail for what specific purpose plaintiff needs to depose that individual, what information or evidence plaintiff anticipates that incarcerated individual possesses, and why the information cannot be obtained through other sources and means.   Plaintiff also should include such detail in future requests to depose individuals who are not incarcerated and should indicate if that individual is a former inmate or probationer.   In regard to future requests, however, I will not order that plaintiff be transported from his place of incarceration to another correctional facility for discovery.   As plaintiff will not be so transported, he should contact defense counsel todetermine other possible means for discovery pursuant to, inter alia, <u>Federal Rules of Civil Procedure 29</u> and <u>31</u>.

An appropriate order follows.

ORDER

WHEREAS, plaintiff filed a motion to amend his complaint and various discovery motions, including a motion for waiver of fees and costs, it is ORDERED as follows:

1. Plaintiff's request for a copy of the complaint, docket sheet, and local rules, (filed Doc. No. 15), is GRANTED.   The Clerk of Court shall send a copy of the complaint in Civil Action No. 91-8013, with the docket sheet of that action and a copy of the Local Rules for the Eastern District of Pennsylvania to the plaintiff at his address of record as requested.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

2. Plaintiff's request for leave to file an amended complaint, (filed Doc. No. 16), is DENIED.

3. Plaintiff's petition for waiver of fees and costs for taking depositions, (filed Doc. No. 24), is DENIED.

4. Plaintiff's requests for leave to take the deposition upon oral examination of Rev. Christopher, Mr. Kaufman, Mr. Campbell, and Ms. Christopher, (filed Docs. Nos. 17-19, 23), are DENIED.

5. In accordance with Federal Rule of Civil Procedure 30, plaintiff's requests for leave to take the deposition upon oral examination of Mr. Colon, Mr. Payne, and Mr. Ivy, three incarcerated individuals, (filed Docs. Nos. 20-22), are DENIED.

*10 6. In future requests for leave to depose witnesses, plaintiff shall specify for what particular purpose he intends to depose that identified witness; shall explain what methods of discovery he intends to employ and why; shall indicate whether the individual is an inmate, former inmate, or probationer; and shall supply the court with proposed questions if plaintiff seeks leave to depose an incarcerated individual upon written questions.

7. Plaintiff and defendants' counsel shall communicate as to scheduling and arranging for discovery in this case.

8. The parties shall advise the court of procedures stipulated to by plaintiff and defense counsel for the taking of depositions by plaintiff, an inmate at State Correctional Institution at Dallas, Pennsylvania.

9. The scheduling order dated January 25, 1993, shall remain in full force and effect.

FN1. "In doing so, he elected to stand on his original complaint. Accordingly, [the appellate court had] jurisdiction under 28 U.S.C.A. § 1291 (West Supp.1992)." *Belle v. Crawford,* 92-1092, slip op. at 3 (3d Cir. November 30, 1992).

FN2. Justice Marshall in *Neitzke v. Williams,* commented on the purpose of § 1915(d), stating "[s]ection 1915(d) is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11." *Neitzke, 109 S.Ct. at 1832-33.*

FN3. If plaintiff felt his complaint was insufficient, as I originally considered it to be, he should have amended his complaint at that time.

FN4. Leave to proceed *in forma pauperis* was granted to Mr. Belle at the trial level by my order dated January 7, 1992, and at the appellate level by order filed March 24, 1992.

FN5. I stated in dismissing his complaint, "[s]ince plaintiff is pro se

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

however, he will be given leave to amend his complaint." *Belle v. Crawford,* No. 91-8013, slip op. at 2 (E.D. Pa. January 7, 1992).

FN6. "Plaintiff requests to be permitted to depose the seven individuals, two [of] whom are prisoners at the state correctional institution at Pittsburgh, one person who is a prisoner at the state correctional institution at Smithfield, Pennsylvania, and four individuals whom are residents of the city of Pittsburgh, Pennsylvania." (filed Doc. No. 24, at 4-5).

FN7. In habeas corpus proceedings, however, there is an exception to this general rule. *See* 28 U.S.C. § § 1825 & 2255.

1993 WL 59291, 1993 WL 59291 (E.D.Pa.)

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIM SMITH,                :
                              :

     Plaintiff,          :
                              :  Civil No. 1:01-0817
                              :

        v.               :  (Judge William W. Caldwell)
                              :

JAMES MORGAN, et al.,   :  (Magistrate Judge Malachy E. Mannion)
                              :

     Defendants.      :

## CERTIFICATE OF SERVICE

I undersigned hereby certifies that a copy of the Corrections Defendants'

Brief in Opposition to Plaintiff's Motion to Compel in this matter was served upon

the person(s) in the manner indicated below.

Service by first-class mail
addressed as follows:

Kim Smith, CT-2162          James D. Young, Esquire
SCI-Coal Township           Lavery, Faherty, Young and Patterson, P.C.
1 Kelley Drive                301 Market Street
Coal Township, PA  17866-1020   P.O. Box 1245
                            Harrisburg, PA  17108-1245

                            *Marilyn Bas*
                            Marilyn Jones
                            Clerk Typist II

PA Department of Corrections
55 Utley Drive
Camp Hill, PA  17011
(717) 731-0444

Dated:  December 20, 2002