# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIM SMITH,
              Plaintiff

        vs.

WEXFORD HEALTH SOURCES,
INC., et al.,
              Defendants

:
:
:
:
:
:
:
:
:

NO.: I:CV01-0817

(Caldwell, J.)

(Mannion, M.J.)

JURY TRIAL DEMANDED

FILED
HARRISBURG, PA

JAN 2 1 2003

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

## DEFENDANTS, WEXFORD HEALTH SOURCES, INC.'S STATEMENT OF UNDISPUTED MATERIAL FACTS

1.  Ronald Long is a medical doctor licensed by the Commonwealth of Pennsylvania and has been so licensed continuously since 1986. He is Board certified in the field of Family Practice with added qualifications in geriatric medicine. (Long Declaration par. 1)

2.  Since September, 1996, Wexford Health Sources, Inc. has been the contracted medical provider at SCI-Smithfield to provide medical

services to inmates at the facility, including utilization review and case management. (Long Declaration par. 2)

3.    Dr. Long has served as the contract Medical Director at SCI-Smithfield since September, 1996 and has provided medical services to inmates at SCI-Smithfield.  Those services included the examination, diagnosis and treatment of inmates at the facility, as well as referral of inmates for consultations with outside physicians whenever medically necessary. (Long Declaration par. 3)

4.    It is the policy, practice and custom of Wexford Health Sources, Inc. that all inmates are to receive reasonable and medically necessary care in accordance with state and federal laws and the United States Constitution. (Long Declaration par. 4; Hoffman Declaration par. 3)

5.    In the ordinary course of business, SCI-Smithfield maintains prison medical records on each of the inmates incarcerated at the facility, including the Plaintiff, Kim Smith.  True and correct copies of the pertinent portions of Plaintiff's prison medical records are attached as an exhibit in the Appendix of Exhibits in support of the Wexford Defendants' Motion for Summary Judgment. (Long Declaration par. 5)

6.    Dr. Long is familiar with the standard practices and procedures utilized in compiling and maintaining medical records at SCI-Smithfield relating to the medical treatment afforded inmate Smith while he was incarcerated at that facility.  (Long Declaration par. 6)

7.    Dr. Long is personally familiar with inmate Smith's medical history as reflected in the medical records from SCI-Smithfield, including the treatment provided to him by other treating professionals.  Inmate Smith was evaluated and treated by the Medical Department at SCI-Smithfield on nearly a weekly basis for a variety of conditions including diabetes; sleep apnea; Hepatitis "C"; skin rashes of the arms, legs and torso; mild post-traumatic arthritis of the left knee; chronic shoulder and back pain; boils on the buttocks; and other problems.  Inmate Smith also received various laboratory tests, diagnostic studies and consultations with specialists outside of SCI-Smithfield.  Inmate Smith was also supplied with a knee sleeve and a lumbar support while at SCI-Smithfield.   (Long Declaration par. 7)

8.    The care provided to inmate Smith at SCI-Smithfield was at all times in accordance with acceptable medical standards and, based upon Smith's prison medical records, no Wexford Health Sources, Inc. personnel

3

were deliberately indifferent to any serious medical need of inmate Smith while he was incarcerated at SCI-Smithfield. (Long Declaration par. 8)

9.    In Dr. Long's professional medical opinion, inmate Smith was provided with reasonable and appropriate medical attention on every occasion that a request was brought to the attention of medical personnel, on every occasion that medical personnel deemed intervention necessary, whether or not initiated by a request from Mr. Smith while he was incarcerated at SCI-Smithfield. (Long Declaration par. 9)

10.    At no time during Mr. Smith's incarceration at SCI-Smithfield was Dr. Long ever deliberately indifferent to any serious medical need of the Plaintiff.    To the contrary, throughout his incarceration at SCI-Smithfield, Mr. Smith was evaluated, monitored and treated appropriately by Dr. Long and other medical personnel at SCI-Smithfield.    (Long Declaration par. 10)

11.    As the contract Medical Director at SCI-Smithfield, Dr. Long is not responsible for nor does he have any personal involvement with the preparation and/or drafting of the protocol for Hepatitis C identification and treatment developed by the Pennsylvania Department of Corrections. (Long Declaration par. 11)

12.    In the fall of 1998, the Department of Corrections established a task force to address the issue of Hepatitis C identification and treatment for the inmate population.    The task force was charged with the responsibility of working as a team to identify all the issues involved in the identification, education, treatment and follow-up care of those inmates who tested positive for Hepatitis C.    They were also charged with the responsibility to ensure that the care provided in treating Hepatitis C positive inmates was consistent with community standards.    (Long Declaration par. 12)

13.    In January, 2000, the Bureau of Healthcare Services, Pennsylvania Department of Corrections, implemented a protocol for Hepatitis C identification and treatment.  This protocol was provided to all medical vendors to be used as an evaluation and treatment guide for Hepatitis C and all Department of Corrections' institutions, including SCI-Smithfield.  Pursuant to that protocol, for those inmates/patients who meet criteria for treatment and are not excluded for medical, psychiatric or other reasons, several medications were available for use and treatment.  These medications were Interferon, either monotherapy or dual therapy. However, the medications had limited effectiveness, had significant side

effects and could not be used in the instance of ongoing substance abuse. Accordingly, the protocol required that potential recipients of the medication had to undergo evaluation for treatment candidacy pursuant to the protocol for Hepatitis C identification and treatment. (Long Declaration par. 13)

14.     Wexford Health Sources, Inc. then implemented the protocol for Hepatitis C identification and treatment at the facilities where it serves as the contracted medical provider, including SCI-Smithfield. (Long Declaration par. 14)

15.     Prior to the implementation of the Hepatitis C protocol, inmate Smith received appropriate treatment for his condition at SCI-Smithfield. He was Hepatitis C positive, but not did have any current symptoms from the disease. Moreover, Interferon had significant side effects such as flu-like symptoms; fatigue; irritability, depression and anxiety; loss of appetite; nausea and diarrhea; and mild hair loss. Moreover, the drug therapy had a limited long-term success rate. There was, therefore, no compelling or immediate need to initiate Interferon drug therapy for inmate Smith's Hepatitis C condition. Inmate Smith was examined by the medical staff

and underwent laboratory testing to monitor his liver enzyme levels. (Long Declaration par. 15)

16.    In August, 2000, a viral lode-quantitative PCR testing was performed on inmate Smith which showed that his Hepatitis C viral lode was 288,000 international units.  At that time, inmate Smith's liver enzymes (ALT) were slightly elevated.  (Long Declaration par. 16)

17.    On August 30, 2000, Dr. Long met with inmate Smith to discuss his abnormal lab results and the risks and benefits of the drug therapy for that condition.   At that time, inmate Smith indicated that he wanted to receive the drug therapy and thereafter he was evaluated for treatment candidacy in accordance with the Hepatitis C protocol.  (Long Declaration par. 17)

18.    In late September, 2000, inmate Smith began receiving the dual drug therapy in accordance with the Hepatitis C protocol.  He continued to receive that treatment at SCI-Smithfield until January 10, 2001, when he was transferred to SCI-Coal Township.  (Long Declaration par. 18)

19.    While incarcerated at SCI-Smithfield, inmate Smith also received ongoing evaluation and treatment for sleep apnea, including

referrals to pulmonary specialists and outside facilities for sleep apnea studies. (Long Declaration par. 19)

20.    Consultation requests were submitted for therapeutic C-PAP study and to put inmate Smith on a C-PAP machine at night.    Those consultation requests were denied by Wexford's Utilization Review Department as not medically warranted. (Long Declaration par. 20)

21.    Further studies were performed and a consultation request was approved to provide inmate Smith with a C-PAP machine on February 10, 2000. (Long Declaration par. 21)

22.    On June 15, 2000, inmate Smith was transferred to the RHU (disciplinary segregation).   On June 15, 2000, Nurse Allen noted that inmate Smith was given his C-PAP machine to use in his cell in RHU, but he refused to use the C-PAP device unless he was provided with an extension cord.   Inmate Smith was then counseled about his refusal to use the C-PAP machine as a treatment for his diagnosis of sleep apnea by the nursing staff. (Long Declaration par. 22)

23.    On October 24, 2000, Dr. Long spoke with Physician Assistant Baker who indicated that inmate Smith had not used his C-PAP device since June, 2000 without any change in his condition.   In Dr. Long's

professional judgment, it was no longer medically necessary for inmate Smith to use the C-PAP device. (Long Declaration par. 23)

24.    On January 5, 2001, Dr. Long discontinued the order for the C-PAP device because the patient had been non-compliant for a number of months; there had been no significant change in his condition; and it was not medically necessary for inmate Smith to use a C-PAP device at that time. (Long Declaration par. 24)

25.    On or about January 10, 2001, inmate Smith was transferred from SCI-Smithfield to SCI-Coal Township.  Dr. Long had no further involvement with his medical care after that date. (Long Declaration par. 25)

26.    It is Dr. Long's professional opinion, within a reasonable degree of medical certainty, that inmate Kim Smith received reasonable and appropriate medical treatment for his various medical conditions while incarcerated at SCI-Smithfield. (Long Declaration par. 26)

27.    Steward Craig Hoffman is a physician's assistant licensed by the Commonwealth of Pennsylvania and has been so licensed continuously for the past six years. (Hoffman Declaration par. 1)

28.    For the past four and a half years, P.A. Hoffman has been employed by Wexford Health Sources, Inc. as a physician's assistant at SCI-Smithfield to provide medical services to inmates at SCI-Smithfield. (Hoffman Declaration par. 2)

29.    On numerous occasions, P.A. Hoffman evaluated and/or treated inmate Smith for a variety of medical conditions while Smith was incarcerated at SCI-Smithfield. (Hoffman Declaration par. 4)

30.    At no time during Mr. Smith's incarceration at SCI-Smithfield, was P.A. Hoffman ever deliberately indifferent to any serious medical need of the Plaintiff. To the contrary, P.A. Hoffman always exercised sound professional judgment when evaluating, treating and/or monitoring inmate Smith's various medical conditions. (Hoffman Declaration par. 5)

31.    On January 24, 2000, P.A. Hoffman evaluated inmate Smith at sick call. At that time, he was complaining of right shoulder pain with movement and occasional swelling. He denied any history of trauma and any loss of function. He was also complaining of left wrist pain and occasional numbness however denied any recent trauma. He was status post-surgery, open reduction internal fixation of the left wrist approximately 17 years ago and indicated that repetitive motions in his

kitchen job worsened his symptoms. Inmate Smith also complained of left knee pain x 6 days; denied any recent history of injury; and indicated that he had a history of degenerative joint disease in his left knee. (Hoffman Declaration par. 6)

32.    P.A. Hoffman evaluated inmate Smith on January 24, 2000 and his assessment was right shoulder pain with questionable AC joint degenerative joint disease; left knee instability – degenerative joint disease; and left wrist tendonitis. Based upon his professional judgment, P. A. Hoffman believed it was appropriate to prescribe non-steroidal anti-inflammatories or Tylenol for inmate Smith's complaints of knee, shoulder and wrist pain. Inmate Smith, however, refused to take anti-inflammatories or Tylenol for the pain. (Hoffman Declaration par. 7)

33.    It is entirely within the bounds of appropriate medical care to treat chronic joint pain and/or inflammation with non-steroidal anti-inflammatories and/or Tylenol. (Hoffman Declaration par. 8)

34.    There are a number of non-steroidal anti-inflammatories available in the formulary at SCI-Smithfield. Moreover, an inmate's known drug allergies are listed on the inmate's prison medical chart and P. A.

Hoffman takes that information into account when prescribing medications. (Hoffman Declaration par. 9)

35. Wendy Wright has been employed by Wexford Health Sources, Inc. as the Healthcare Unit Administrator at the State Correctional Institution-Smithfield since June, 1999. (Wright Declaration par. 1)

36. Wendy Wright is trained and certified as a paralegal and she serves as the liaison between the medical department and the staff at SCI-Smithfield. She is responsible for the administrative oversight and implementation of Wexford's contractual agreements with the Pennsylvania Department of Corrections to provide healthcare services at SCI-Smithfield. (Wright Declaration par. 3)

37. Wendy Wright is not a healthcare professional and she is not involved in providing evaluation and/or treatment for inmates at SCI-Smithfield, including the Plaintiff, Kim Smith. (Wright Declaration par. 4)

Respectfully submitted,

Lavery, Faherty, Young
Patterson, P.C.

By: _____
     James D. Young, Esquire
     Atty No. 53904
     225 Market Street, Suite 304
     P.O. Box 1245
     Harrisburg, PA 17108-1245
     Attys for Wexford Defendants

DATE: __1/21/2003__

## CERTIFICATE OF SERVICE

I, Linda L. Gustin, an employee with the law firm of Lavery, Faherty, Young & Patterson, P.C., do hereby certify that on this 21st day of January, 2003, I served a true and correct copy of the foregoing **Defendants, Wexford Health Sources, Inc.'s Statement of Undisputed Material Facts,** via U.S. First Class mail, postage prepaid, addressed as follows:

Kim Smith
CT-2162
SCI-Coal Township
1 Kelley Drive
Coal Township, PA 17866-1020

John Talaber, Esquire
Assistant Counsel
Pennsylvania Department of Corrections
Office of Chief Counsel
55 Utley Drive
Camp Hill, PA 17011

_Linda L. Gustin_
Linda L. Gustin