IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Kim Smith | :Civil No. 1:01-0817 |
|     Plaintiff | : |
| | :(Judge William W. Caldwell) |
|   v. | : |
| | :(Magistrate Judge Malachy E. Mannion) |
| | : |
| James Morgan et, al., | : |
|      Defendants | : |
| | : |
| | : |
| | : |

**FILED**
**SCRANTON**

FEB 2 4 2003

PER ___ _____
DEPUTY CLERK

## PLAINTIFF BRIEF IN SUPPORT OF OBJECTION

**AND NOW,** comes plaintiff Kim Smith a lay person not lettered in legal matters and without the aid of counsel, prays a less stringent standard be applied to this pro-se brief in support of plaintiff's objection to the Correction Defendants, and Wexford Health motion for summary judgment, that upon the correction defendants filing their motion for summary judgment petitioner can amend, avers the following:

Under Fed. R. Civ. P. Rule 56 (d) it is requested that the court examine the record and obtain expert witness as to plaintiff's condition, and if the resulting injury is due to lack of treatment, and if any of the action taken by the defendants violate plaintiff's civil rights Section (e). Further testimony to defend is required, as plaintiff is not a learned medical professional, but x-rays and other test a lay person will see the need to treat. Section (g) of this rule and the defendants motion is presented in bad faith, and it is asking the court to support the abuse and denial of adequate health care to inmates with serious health condition. As the department of correction and the health care providers do not wear a sheild that prohibits any action to be taken, and because a person is an inmate still does not give these parties the authority to abuse and deny health care for known health condition, or the power to deprive an inmate of needed health care, and treatment for serious illnesses. To see a health care proble and refuse to treat it is an 8 th. amendment violation, and a civil rights violation which is done under the color of law which is very simple and clear and

summary judgment should be granted to suppoort of continue this level and form of abuse
by the deefendants. As an inmate has a constitutional right to be adequately treated
and to fail to do so gooes right to the condition of his confinement. Theri is genuine
issue to material fact.  1946 Amendment note Subdivision (a) see People Rank v. Federal
Reserve Bank of San Fanciso N.D. Cal. 1944, 58 F. Supp 25. Also see Briggs v. Kerrigan
C.A. Mass 1970, 431 F2d. 967. the disput of the controling material facts, and need for
expert witness. Neff v. World Pub. Co. C.A. Neb. 1965 349 F2d. 235, see also Schwartz
v. U.S. D.C. N.D. 1965, 58 F.R.D. 164, qand their is issue of fact to be tried  Aetna
Is. Co. v. Cooper Wells & Co. C.A. Mich. 1956 234 F2d. 342 .

Inquiry on motion for summary judgment is whether evidence presented sufficient
disagreement to require submission to a jury or whether it is so one sided that one
party must pervail as a matter of law. Riedel v. Acutote Of Colorado S.D. Ohio 1991
773 F. Supp. 1055 see also Sparks v. Goodyear Atomic Corp. S.D. Ohio 1991, 773 F. Supp
1043. As the defendants in their discovery and giving plaintiff only 4 hours to review
record which consisted of some 2000 or more pages, and to espect plaintiff to review
such when them in their selves as professional can not do such. The to try and require
plaintiff take on the buurden and expense of the copies some $ 300.00 or more which he
does not have sets a staandard in which plaintiff may be deprived his right to be heard.
And obtaiin information to saupoort his claim and the material fact needed. Mreover
without the rule as to expert witness it will be hard to determine the material fact
and such can not be obtained without the testimony of an expert witness. Object of
motion for summary judgment is to discover whether one side has no real support for it
version of the facts, not to encourage procedural exercise rendered impotent by
impossible burden of prroof. Horwitz v. Sprague D.C. N.Y. 1980 440 F. Supp 1346. As
record will show that plaintiff was examined and all recommendation for treatment or
specialism care was deenied and has since no treatment been given as plaintiff is
consistennly in pain and has problems with movement in shoulder, and right leg. As this
calim is not frivolous and a useless action as the deprivation of health care threw the
correctioon defendants and Wxford health is real and a on going standard of abuse and
cruel punnishment. That an inmate frist must fall out before he will be adequately
treated or if their is a recommendation for treatment it is refused and then the medical
staff plaaces it own opinion into play and hides behind the health care provider and the
departmenn of correctioon and any leard medical professional would know that to see a
medical condition and refuse to treat it would be cruel punishment and and to deny
treatment would knowingly and intentionally done, with deliberate indifference to inmate

health care safety.  It is not judicial economy to deny health care to a point the a
life long impairment takes place, to a point a person now becomes a burden upon the
State for the failure of institutional staff in the administration of the official
duties to give adequate health care.

Like when a Dr. Adamson ordered Kim Smith diabetic medication to be increased on
med-line 3, and at no time did this Doctor instruct Nurse Burnis to cut or take Kim
Smith diabectic medication on med-line 1.  And when showing this nurse the doctor
orders and that she was wrong she claims this is the way things are done around here,
then went on to conspire with lt. Jorden, C.O. learn, Nurses Wolfgang, Ambrose, to
issue a misconduct depriving Kim Smith his diabectic medication, claiming Kim Smith was
not wanted in the medical department, but Kim Smith was to have blood drawn that day.
Also after lt. Jorden gave order for Kim Smith to leave the medical department and
comply with his order he place Kim Smith in hand cuffs, and iussed a misconduct
claiming Smith failed to comply with his order.  As Smith was reaching for his pass to
leave lt. Jorden hand cuffs Smith.

At present Kim Smith is not being treated for his back condition and since he had
a back brace at S.C.I. Smithfield he is now being denied such at S.C.I. Coal Township,
since the back condition is well documented on the street and Smith was in a taylor
brace for 4 years and these medical record can be obtained if need be for the court to
review.

Kim Smith is not asking to dispose witnesses only that the court order the doctor
whom reviewed x-rays, and tested Kim Smith for his condition to make a statement and
diagnoses of their opinion of record and x-rays reviewed and their course of treatment.
Also it is requested that Kim Smith be examined by an independent doctor to determine
injury and treatment and if any impairment was subjected to Smith for the failure to
treat.  The plaintiff has a right to obtain information for injury sustained for the
neglect of medical personel.

lisa Hollibaugh, Acting Superintendent's Assistant, at S.C.I. Smithfield makes
claim that it is not the department of correction policy to terminate power in RHU H-
2 Block and that no maintenance was done to the plug sockets, on ever grievance that
Smith filed in that institution and at S.C.I. Coal Township in was included in those
grievance for the use of the C-PaP device that their was no power in the cells at the

above listed institution for that period of time he was incarcerated their, and this being the reason he was denied such and the reason he is continuingly being denied such based on a claimed refusal by Ps. Baker, when records clearly show that their is not power in those cells and that the plug sockets were so damaged by inmate lighting smokes that they could not be used or sustain power for their use. This denial of power in the cells goes right to the condition of Smith's confinement in this H-2 Block RHU Cells when their was no power for the use of a device that was life supporting. Because Smith has been denied the use of this device he may have sustained injury to heart, brain, liver, lungs, repatory system, and may be the resulting factor in his present illness and diabetes. If their was no policy for the termination of power in the cell on the above listed block at S.C.I. Smithfeild, by whom's authority was this power terminated, and by whom's authority does this act continue to be supported and the termination of all power in all the RHU cells in all state institution. Ms. House is in error as all grievances that Smith filed pertaining to the C-Pap device it was coupled with the fact that their was no power in the cells in which to plug the device for its use. And Ms. Lisa Hollibaugh knowingly and intentionally as well as Ms. House committed perjury and falsified records and a penalty should be imposed for perjury based on their personal knowledge. And the information is relevent to the fact of the condition of confinement and the supported denial of Smith the use of the C-pap device. And this information should be admissible at the time of trial as it goes to the root of delibrate indifference, and the condition of confinement, as if it is not a policy by whom's authority is it enforced. And such and act goes to the root of the condition of confinement and any deprivation of health care created by the denial of power for any inmate who needed the power in his cell for health care reasons.

It could not be exspect plaintiff a lay person to read some 1700 pages in a 4 hour period when a learned professional could not do such, and it can not be exspect plaintiff to take out an loan with institution and have 50% of his income taken and still have to pay 20% of this income to the court for filing fee, and plaintiff has 5 other cases pending in court at this time and any monies that he has is used for these litigational efforts. To deny plaintiff the information in that file such as doctor names and addresses and diagnoses of condition would deprive plaintiff of his right to access to the court and adequate representation of his claim.

It is deliberate indifference when the health care provider at S.C.I. Coal Township states that the lumps behind plaintiff's left knee are benine, to make such

)

a claim without first taking a sample of the lump is delibrate indifferent to plaintiff's health care, and even to deny the referral by another doctor to see an orthopedic doctor is still deliberate indifference to a serious health care condition. I could see if some treatment was or has been given but every time plaintiff returns to the medical department for these condition lower back. left knee, right shoulder he is met with indifference and no treatment is given other then tylenol which does not address the pain, and if their was nothing wrong with plaintiff why would they issue medication, and this medication can not be considered adequate health care for these condition and it is more then the difference of opinion, that has since resulted in no health care at all.

Plaintiff sustained an injury to his liver when given Hap-C treatment. That at no time was he told that this condition would worsen when treated. That plaintiff was once responding to treatment then it was terminated under a non-existent policy. Then re-enstated and at that time plaintiff sustained an injury as the condition got worse. When plaintiff started the treatment his virual load was 288,000, and when treatment was terminate his virual load was 202,000, showing he was responding to treatment. And treatment was terminated before the 6 month requirement. When treatment was given back the condition worsen and virual load jumped to 550,000 showing a clear damage from the treatment plaintiff was given. Plaintiff still has sores on his body and a dry foot fungus problem and none of these condition are being adequately treated and plaintiff has suffered pain in both legs from his back where he has slipage at the L-5-S-1 and pain in both legs, pain in left knee when walking or standing on his feet to long, pain in his right shoulder when moving it and laying down, pain in his liver consistently, headaches, and the reason he has sores on his body may be a result of his live condition. Plaintiff is not a doctor but he knows and is sure that their are things that are wrong with him that is not being treated. Plaintiff can obtain medical reports from a number of doctor on the street for his back injury, left shoulder, feet, and may be the sores on his body as all these condition was once treated on the street, even his apena from a number of sleep disorder clinic's.

As for the reviewing of the record being a security issue in the institution, their is a office present from 9 to 4 in visitor serach, as their are a number of offices in that section, and plaintiff can easily be observed by this officer in the visiting room for inmates in PHU. which is a little booth and it would not creat security issue for institutional staff. And plaintiff is not using opportunities like

this to manipulate prison resources, it is not taking advantage of DOC's generosity and good faith to want to complete the review of the DOC discovery material. If the DOC was putting forth good faith efforts they would know that a lay person could not review over 1700 or more pages of material in a 4 hour period, no matter what order they were in. And if DOC staff could not do such in a 4 hour period how could they exspect plaintiff to do such and then claim such is a good faith effort. And to try and pressure plaintiff into taking out an institutional loan when he does not have the funds or at any time he may find himself unemployed, as employment in these institution are not guaranteed. As plaintiff is now unemployed and it maybe 6 or more months before he will be given a job. At the DOC rate for copies of records and the amount of money that is requested plaintiff could not see depriving himself and his other 4 litigational efforts to obtain this discovery. Moreover plaintiff counselor copied for the defendants plaintiff's discovery and how could they not be held to the same standard that they are now applying. And it would have been reasonable to charge plaintiff in litigation $ 51.00 for the copies considering his status and him being poor and in a state institution. To make a claim that a lay person can do something that they themselves can not do is a clear showing of deliberate indifference, with little regard to any facts that may be contained in the discovery material to support the level of abuse and denial of health care by institutional staff. And for Ms. Dascani to make such a claim shows she has little regard to inmate health care and safety and is a clear showing of deliberate indifference, as if she was so concerned she would not have supported the abuses and use her office to cover up such abuses of medical care and abuses of staff, and would have protected the rights of the inmate and secured his health care be adequate. Not make a claim to deny access to records and that a lay person can do something her herself can not do. I do not know of a learned professional who could read over 1700 pages in 4 hours. And plaintiff is not a speed reader. On a whole how many inmates must die because of the lack of health care in the state institution before something will be done to stop this level of abuse, and standard of health care that is being provided is not to the standard that is required by law for an incarcerated person, nor is it to a level that would be exspected if inmate was on the street. It is hard to believe that on the street I would have a doctor diagnose and determine that cyst behind knee are benine, or that arthritis and bone spurs in right shoulder should not be treated, or that slipage at L-5, S-1 and the other condition that are wrong with plaintiff's back should not be treated or warrant a back brace even after other doctor in the DOC has given such. To exspect plaintiff to use a C-PaP devise when their was no power in which to plug it in, and to terminate liver treatment base on an unsupported

claim of an non-exsistent DOC policy.  Then to give treatment back and the condition consistently worsen with ever treatment, sores on skin that will no health and being denied the right to see a skin doctor, foot fungus and dry feet condition that both has been consistent for over 8 year while incarcerated, and not adequate treatment given. This is not a standard of treatment that would be exspected if plaintiff was on the street, since most of these condition he has had treated on the street and those doctor did not subject him to what the DOC medical staff has.

An inmate is a poor person and to put such a standard as Ms. Dascani and the DOC counsels have regarding discovery would deprive plaintiff adequate access to his other litigational efforts, and his day in court on the issues of this claim of health care, and this level of abuse that is knowingly and intentionally being applied with a level of deliberate indifference to inmate health care and safety and constitutional rights to be free from this level of abuse.  Because a man is incarcerated does not give the keepers the right or authority to deprive adequate health care or subject him to a standard that is not consistent with the level that is to be provided.  To see and know of an injury or a health care condition and refuse to treat and make a false claim that the condition is benine or non-exsistent is a showing of deliberate indifference and may subject a person to 8 th. amendment violation as it would be considered cruel punishment to know of a health problem and refuse to treat it to the point the problem worsen and causes a life long impairment, because the condition was never really treated and the delay in treatment cause the condition to worsen, and this is what plaintiff feels he is now being subjected to.

At no time is it stated that an inmate will be permitted 4 hours to review records and it is not institutional or DOC policy and Mr. Taklber, and Mr. Young, as well as Ms. Dacani are acting as policy makers for the DOC. to determine a period of time in which a litigant can have to review discovery material, and since their is no standard setup for inmates who are under the informa ppauperis status.  Logistically Plaintiff's request would require that he be issued a request to visiting search, and subjected to a pat down, then placed in a cubical used for inmate in RHU and from 8 a.m. to 4 p.m. or until the visiting room is closed their is an officer or 2 placed in that section and could very easily observe plaintiff while reviewing these record and this act would not hinder safety or security issue since their are 2 officers in this section at all time when the visiting room is open and this act would not require any special attention other then the defendants do not wish me to complete my discovery of the defendants

medical record. And plaintiff should be granted adequate time in which to do such, and not be subjected to the personal opinion and one interpretation of policy and inmate right to discovery material and to deprive inmate of such would as if he is being deprived his access to court. How can plaintiff call witnesses if he does not have the information of those who reviewed records and made diagnoses of plaintiff's condition. And to deprive plaintiff of his discovery is not in a good faith effort or in the name of justice, it is away and form in which supports this continued level of abuse, as to deny him this information is like denying him adequate health care and to review these records is not a manipulative practice by plaintiff nor is his request to additional time and the balancing factor here is will plaintiff be harmed by the action that is being applied for the discovery material. And a safe and secure corrections institution will not be hindered and with the limited financial and human resources if appears it is wish for the corrections defendant to file a number of replies and motion to deny plaintiff his right to adequate discovery and to review the record. Being here in this institution I do not see a security issue to let plaintiff complete his discovery nor would it be costly on institutional staff, and human resources, as their is institutional staff presence at all time in the area in which plaintiff would be able to review these records. To deny plaintiff this discovery is to deny him the material facts need to support his claim.

## QUESTION PRESENTED

Should Smith be granted additional time to complete his discovery and review records.

Suggested Answer: YES

Would the denial of discovery material hinder plaintiff's access to court and his ability to try this matter.

Suggested Answer: YES

Does and inmate in state corrections institution have a constitutional right to adequate health care.

Suggested Answer: YES

To step out side of normal standard for a professional health care provider and

refuse and deny to treat a condition and make a claim that a cyst is binine without first taking a tissue sample, be a showing of deliberate indifference.

Suggested Answer: YES

To exspect plaintiff to use a devise when he had no power in which to use such is this not deliberate indifference, and would this not be directed at the conditions of his confinement, and would it not be cruel punishment for an inmate not to have power in which to plug the devise.

Suggested Answer: YES

Is it deliberate indifference for nurse Burnas to change a doctors orders and impose her own opinion into what a doctor order stated, and then claim that this is a practice in which this is the way things are done ion this institution, then to conspire with Lt. Jorden, Nurses Ambrose, Wolfgang, and C.O. Learn, to issue a misconduct to justify the acts of this staff in the denial of plaintiff diabetic medication.

Suggested Answer: Yes

Was it cruel punishment for a C.O. June 2000 to push plaintiff face first into a wall causing him to lose his left front tooth.

Suggested Answer: YES

Was it cruel punishment for Pa. Baker to falsify records and claim that plaintiff refused to use his C-PaP devise when she knew or should have known that their was no power in the plug sockets in the RHU.

Suggested Answer: YES

Plaintiff has alleged sufficient facts that should set this issue at trial by jury and his motion for TRO should be granted to stop the abuse of institutional staff and the continued denial of health care for his present health care problems, since plaintiff has had or brought these condition to the attention of medical staff he has not been treated and all the did was order test and after a diagnoses was made the

they refused to go along with Doctors orders or petitioner to see orthopedic specialist or conform with skin doctors orders and diagnoses.

C.O. Petczak and Lt. Weltz sexially harrassed petitioner on July 4, 2001. Petitioner was on tolet and pct up a certesy certain or privacy while on the tolet. An officer told petitioner to take such down, petitioner advised him he was on the tolet and would take the certain down as soon as he was done. Within seconds C.O. Petczak, and Lt. Weltz was at petitioner door harassing him, and demanding petitioner take down the certain. They could not wait until petitioner was done and open petitioners door and took down the paper and stood their yelling at petitioner with his door wide open claiming petitioner has to learn how to talk to staff, and then C.O. Petczak states let me get a better look, and moves around the Lt. to see petitioner on the tolet. For the period and amount of time they stood in petitioners door while he was on the tolet yelling at him it is viewed that these person was sexially harassing petitioner, as they never exhibited this behavior to any other inmate who put up a certain while on the tolet, and open their door and stand their looking at the inmate while he is on the tolet with his pants down around his ankles or that period o time, and to justify their abuse and sexial harassment they issued a misconduct and Mr. Breon gave petitioner cell restrictiion, becaase he was on tolet and would not jump up upon a command by staff who were disrespecting him while in a private moment. Since this behavior by staff was no projacted towards any other inmate for the same behavior petitioner feels that these officers were knowingly and intentionally harassing petitioner in a private moment while on the tolet and was intentionally doing so. An inmate while on the tolet should be afforded a moment of privacy by putting up a certain so others do not look at them in a private moment, and petitioner eels he was doing nothing wrong that would support this level of abuse. By these correctional officers while on the tolet in private moments.

Doctor Johns, and George Weaver discriminated against petitioner for placement in night cook school claiming becaase of his sleep disorder he was not entitled to this type of school program in the nights, and that the department o correction is not obligated to treat inmates with this type o health problems. The Mr. Weaver goes on to state that petitioner had to obtain regular sleeping hours before being considered for this program, this act deprived and denied petitioner his right to educational programs based on a health care condition that these parties claim they are not obligated to treat. This act was kmowingly and intentionally done to deprive. Petitioner appealed grievance to Camp Hill in which they supported this level of abuse and denial, Petitioner should not have to endure this level of abuse when applying for education.

# A G R U M E N T

In its earlier cases interpreting the eight amendment, the Supreme Court focused on prohibiting torture and other barbarous methods of punishment. See Wilkerson v. Utah 99 U.S. 130 (1879). The Supreme Court has interpreted the words " cruel and unusual as prohibiting punishment which, although not physically barbarous, involved the unnecessary and wanton infliction of pain" See Gregg v. Georgia 428 U.S. 153, 173 (1976) and are incompatible with the evolving standards of decency that mark the progress of a maturing society. Trop v. Dulles 356 U.S. 86 101 (1958) made applicable to the states in Robinson v. Claif. 370 U.S. 660 (1962) the eighth amendment's ban against cruel and unusual punishment serves as the primary source of constitutional protection for prisoners subject to inhumane conditions under which he is confined and subject to scrutiny under the eighth amendment. As in this case the condition of confinement in which plaintiff was deprived the use of the C-PaP devise when on H-2 block in the RHU. at S.C.I. Smithfield all power in plug sockets were turned off, which prohibited plaintiff from using this devise. That P.A. Baker knew or she should have known that the power was cut off due to damage plug sockets, and knew or should have known that plaintiff may sustain an injury when she states that plaintiff refused to use the devise. Since they are unable to show a signed refusal form, which is a practice at all institution when inmate refuse treatment it is question what took place and if this was a knowingly and intentionally wanton infliction of pain. Since all of plaintiff grievance on this issue of the C-PaP devise also included the fact that their was no power, all administrative remedies were exhausted on this issue. And since plaintiff is still being deprive the use of this devise, based on P.A. Bakers statement this issue should not be moot, even though I'm not at S.C.I. Smithfield the acts that took place their are still part of and the continued cause of a continue denial of health care and the C-PaP devise. See Helling v. McKinney 113 S.Ct. 2475, 2480 (1993) ( the treatment a prisoner receives in prison and the condition under which he is confined are subject to scrutiny under the eighth amendment) Like C.O. Ersek knowingly and intentionally hindering and denying plaintiff his health care, even after he was instructed by medical staff to turn over the C-PaP devise, he refused to do so knowingly and intentionally with the wanton desire to inflict pain. Then to enforce this he threatens plaintiff that if he did not sign a refusal form that he would issue a misconduct. At no time did plaintiff refuse health care, and plaintiff refused to sign a refusal form and was issued a misconduct by this officer, who had no authority to order plaintiff to sign a refusal form. Like to place plaintiff in the whole for 7

month based on a name calling this after C.O. Whysong called plaintiff a nigger and that he felt plaintiff had no right to go to his call out at law library. Then for Angela Zimmerman to continue this punishment because plaintiff would not co-operate with her and tell her his intention to this staff, plaintiff did and told her he intended to file and action in court and because he made such a statement he was continued in this oppressive confinement in the whole for 7 months, 120 day after his D.C. time was up. That in June 2000 while in the RHU and officer knowingly and intentionally and wantonly inflicted pain and injury upon plaintiff's person when he knowingly and intentionally forced plaintiff face first into a wall knocking out his left front tooth, that has since caused plaintiff to get a bridge to cover up the damage, or the lost tooth and his appearance. Like when Doctor Adamson order an increase in plaintiff diabetic medication and nurse Burnas took it upon her self without doctors order and cut plaintiff medication the go on to claim and conspire with C.O Leran, Lt. Jorden, Nurse Ambrose, and Wolfgang to issue a misconduct. That a call came into medical that an inmate was down and two nurses went to see and bring inmate to medical after they had left nurse Burnas takes another wheel chair to but when she returns she has Lt. Jorden with her claiming see I told you and when plaintiff asked to speak to this Lt. he rejected such then ordered plaintiff to leave medical and before plaintiff could get his pass this Lt. handcuffed plaintiff claiming he disobeyed his order, and plaintiff was place in RHU for 45 days based on these claims. For a doctor to order test and get a diagnoses from another doctor that plaintiff is to see an orthopedic doctor then claim that the two cyst behind his knee were benine and that plaintiff had no right to see an orthopedic doctor that the Medical Director Dr. Breen had determined that these cyst were benine, and claimed from his experience that is what they are since this doctor is not a trained orthopedic how could he make such a statment other then threw act of deliberate indifference and the knowingly and wantonly infliction of pain, with very little regard to what would happen to plaintiff if this condition is not adequately treated and to this date plaintiff has not had his knee treated, other the a sleeve brace for his knee, these cyst have never been addressed, and every time plaintiff goes to medical complaining about such he is met with indifference and they referr to what Dr. Breen states and that their is no treatment forth coming. And At S.C.I.Smithfield plaintiff was issued a brace for his back condition and the slipage at L-5, S-1 in his lower back and lambar pain and this Doctor refused to issue a brace, even though this condition is well documented in prison and on the street from a work related injury. Plaintiff feet and sores on body that wont heal has since went unaddressed and no treatment given, even after test were taken plaintiff was never advised what the cause of the sore were

or permitted to see a skin doctor.

The Supreme Court has established a two-prong inquiry for determining whether prison condition, violate the eighth amendment. See Farmer v. Brennan 114 S.ct. 1970, 1977 (1994) (" Our case have held that prison official violate the eighth amendment only when two requirements are met.") The first prong consists of a judicial examination into the objective component of the eighth amendment. The inquiry will focus on whether conditions of confinement are serious enough to justify eighth amendment scrutiny. Like the power in the RHU in all state institutions and at S.C.I. Smithfield when it is claimed that their is no policy terminating the power as stated in Supplement Supporting Documents to the Corrections defendants Brief in opposition to plaintiff's motion to compel Exhibit 3 Ms. Lisa Hollibaugh unsworn declaration, accordingly, based on Ms. House investigation and the information provided her, their is no such policy that supports the termination of power in RHU. And by whoms authority was the power in the plug socket terminated. Plaintiff advised staff a number of time and medical staff regarding the power and plug sockets, moreover every grievance filed the issue of power was a part of the grievances, and RHU officer on a number of time advised plaintiff more then likely he will not get power turned on or use this devise. When considering this matter, bear in mind that simply because prison conditions are harsh is insufficient because the Constitution " does not mandate comfortable prisons" Rhodes v. Champman 452 U.S. 337, 349 (1981) like the issue of the power at S.C.I. Smithfield. And plaintiff was deprived his minimal civilized measure of life's necessities," the use of the C-PaP devise, such as adequate food, clothing, shelter, protection, and medical care. Assuming that confinement conditions are sufficiently serious enough to trigger eighth amendment scrutiny, the inquiry then turns to the subjective component which requires prisoners to show a sufficiently culpable state of mind on the part of responsible prison officials, Wilson v. Seiter 111 S.Ct. 2321, 2323 (1991) like P.A. Baker claim that plaintiff refused to use the C-PaP devise when she knew that their was not power in cell plug sockets. The degree of culpability, however, varies depending on the type of condition challenged. And has since this act has continued to be part and the reason for denial of this health care by institutional staff. See Wilson 111 S.ct. at 2326 (" wantonness dose not have a fixed meaning but must be determined with due regard for differences in the kind of conduct against which an eighth amendment objection is lodge"). In regards to overall prison condition, however, prisoners need only prove that actions of prison officials constitute deliberate indifference. Thus the proper analysis of eighth amendment challenges to prison conditions involved both an objective

)                                    )

and subjective component:  the condition mmust be objectively serious, and the officials
responsible for the condition must be subjectively culpable.

# H E A L T H   C A R E

In Estelle v. Gamble 429 U.S. 97 (1976) the Supreme Court first confronted a
prisoner's claim that the inadequacy of medical care constitute cruel and unusual
punishment under the eighth amendment. Gamble a Texas prisoner, brought suit alleging
that he received inadequate medical carre following a back injury sustained while
working. id at 98. Deliberate indifference to serious medical needs of prisoners
constitute the unnecessary and wanton immfliction of pain proscribed by the eighth
amendment id. at 104. Justice Marshalll reasoned that since imcarceration denies
prisoners the opportunity to care for themmselves, the government has an obligation to
provide medical care for them. id at 103. And plaintiff has alleged acts or omission
sufficiently harmful to evidence deliberate indifference to serious medical needs. id.
at 106. In Estelle it is required deliberrate indifference on part of prison officials(
the subject component) and it requires the prisoners medical needs to be serious (the
objective component). West v. Keve 571 F2d. 158, 161 (3rd. Cir. 1978) See Inmates of
Allegheny County Jail v. Pierce 612 F2d 754, 763 (3rd. Cir. 1979). Serious medical need
in general defining a serious medical need as one that has been diagnosed by a physician
as requiring treatment on one that is  so obvious that a lay person would easily
recognize the necessity for a doctors attention. See Monmouth County Correctional
Institution Inmates v. lanzaro 834 F2d.  326, 347 (3rd. Cir. 1987) as plaintiff back
condition, right shoulder, apena C-PaP, left knee, has all been diagnosed by a doctor
that required treatment or additional testing by a specialist. Illness involving
substantial pain and suffering are indeed serious medical needs within the meaning of
Estelle. See Durmer v. O'Carroll 984 F2d.  185 (6th Cir. 1993) Aswegan v. Bruhl 965 F2d.
676 8th Cir. 1992).

In Hooring v. Kozakiewicz 833 F2d 468 (3rd. Cir. 1987) the third Circuit resolved
this matter by holding that expert testimony was necessary to show that a prisoner's
illness was serious, within the meaning of Estelle id. at 473. Without expert witness
medical opinion the jury would not be im a postition to decide whether any of the
conditions described by plaintiff could be classified as serious. id. at 473.

Deliberate indifference in when plaintiff was cut off his Hep-C treatment base on

an non-existent DOC policy, then when given it back the treatment only made the condition worser. And at no time was plaintiff ever told that the condition would worsen if given treatment. As it is when plaintiff started treatment Sept. 2000 after a five year delay in treatment claiming the DOC did not permit correctional medical staff to treat Hep-C. When treatment was given plaintiff virual load was 283,000, when treatment was terminated based on a non-existent policy and 120 after treatment was given plaintiff virual load dropped to 202,000 which showed plaintiff was responding to treatment and medical staff at S.C.I. Coal Township determined that plaintiff was not responding and such act was done in violation of the policy for this treatment set down by the DOC. That if an inmate was not responding to treatment within six (6) month he would be terminated, plaintiff was terminated within 120 days, and his virual load showed he was responding to this treatment. When plaintiff was given this treatment back his virual load went from 202,000 to 500,000 which is a clear showing of a damage to his liver. At no time was plaintiff told that when given treatment back that this condition could worsen. It was plaintiff understanding that when he was getting this treatment it would stop the condition not make the condition worsen.

Since prisoners cannot obtain their own medical service, the Constitution requires prison authorities to provide them with " **reasonably adequate**" medical care. And what has been provided to plaintiff is not reasonable medical care. See Newman v. Alabama 559 F. 2d, 283, 291 (5th Cir); Bell v. Wolfish 441 U.S. 520 (1979); see also Langley v. Coughlin 888 F. 2d 252, 254 (2d Cir 1989) officials must provide reasonable necessary medical care.... which would be available to (the prisoner) if not incarcerated. Plaintiff if not incarcerated would have a back brace, would have had the bone spurs and arthritis in right shoulder addressed, and the cyst behind his knee addressed and would have been able to see and orthopedic doctor, also he would have his C-PaP and not be denied power in which to use this devise. Plaintiff would also not be subjected to the abuses of Pa. Baker and Hoffman, subjected to the standard in which nurse Purus imposed on plaintiff when doctor Adamson increased plaintiff's diabetic medication on med-line 3. What plaintiff has presented is a standard that is not adequate or reasonably commensurated with modern medical science, and of quality acceptable within prudent professional standards, see Frenandez v. United States, 941 F.2d 1488, 1493 (11th Cir 1991); United States v. DeColorro 821 F.2d 39, 43 (1st Cir 1987); Tillery v. Owens, 719 F. Supp. 1256, 1305 (W.D. Pa. 1989); 907 F.2d 418 (2d. Cir. 1990).

Prisoners who are denied adequate medical care may use 42 U.S.C. § 1983 to sue

prison medical care providers, including personel and corporations who work as private contractors.  See Cases cited in Chapter VIII § B.1.c.  Injuries that result from policies of the corporation.  Such as no power in cell to use the C-PaP devise, and the institution claiming their is no DOC policy that permits the termination of power in the plug sockets in RHU, and enforcing such under the color of law and the continued deprivation of this health care based on a claim that plaintiff refused to use the devise.  Since the claiming parties can not provide a signed refusal form that claim is false.  As it is a standing DOC, Policy that when a inmate refuses health care he must sign a refusal form.  See Howell v. Evans 922 F2d 712, 723-25 (11th Cir.) vacated as settled, 931 F. 2d. 711 (11th Cir 1991)  See Hicks v. Frey 992 F.2d. 1450, 1456-58 (6th Cir. 1993) upholding judgment against employee and dismissal of claim against corporation.

The Supreme Court has stated that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain... proscribed by the Eighth Amendment Estelle v. Gamble 429 U.S.  97, 104, 97 S. CT. 258 (1976) as plaintiff might shoulder with bone spurs and arthritis that hurt every time he moves it, to the point the pain runs down into him arm.  Lower back pain, even though at S.C.I. Smithfield plaintiff was given a back brace he is being deny such at S.C.I. Coal Township.  Even when record show a condition that need be treated.  And with his back condition he was forced to work in kitchen, and work supervisor Neff state plaintiff is unable to work a 40 hour week.  As it is in the work day plaintiff was often limping from back pain and the 2 cyst in his left knee that are not being treated, and refusal or failure to treat these condition show a deliberate indifference to inmate health care safety.  Repeated examples of negligent acts which disclose a pattern of conduct by prison medical staff may add up to deliberate indifference,  See DeGidio v. Pung 920 F.2d. 525,  533 (8th. Cir 1990) cocsistent pattern of reckless or negligent conduct establishes deliberate indifference.  Todaro v. Ward 565 F.2d. 48, 52 (2d Cir. 1977) acts that  appear negligent in isolation may constitute deliberate indifference if repeated.  And plaintiff has repeatedly returned to medical with the same complaints and have not been given treatment and in as much was told that their was nothing that they can do for these conditions.  Williams v. O'Leary 805 F. Supp. 634, 638 (N.D.Ill. 1992) deliberate indifference could be inferred from negligent treatment of long duration. A pattern of similar instances presumptively idicates that prison administrators have, through their programs and procedures, created an environment in which negligent is unacceptablit likely see Kelley v. McGinnis 899 F.2d.

612, 616, (7th Cir. 1990) sometime it is demonstrated by acts or statements by prison personel directly showing an indifferent or hostile attitude toward prisoners medical needs.  See Langley v. Coughlin 715 F. Supp. 522, 541 (S.D.N.Y. 1988) deliberate indifference claim supported by display of hostility by prison psychiatrists to their female patients.... which sometime led to outright refusal to treat.  Professional judgment was not followed after it was exercised, and in such cases good intention may not be a defense.  Like when a doctor who reviewed x-rays, and ulter sound and determined and diagnosed that plaintiff should see an orthopedic doctor for this problem and Doctor Breen claims that the cyst behind knee was benine and that plaintiff would not see orthopedic doctor, and not to exspect his cyst to be treated.  For a doctor to claim that cyst were benine and not take a tissue sample to support his claim is a showing of deliberate indifference, and he knew or he should have known that to state such would subject plaintiff to pain and suffering and that plaintiff could sustain an injury.  That with deliberate indifference and a wanton desire to inflict pain he knowingly and intentionally denied health care for the 2 cyst behind plaintiff right knee.


Deliberate indifference can be proven by showing a prison officials mental state.  But deliberate indifference is also a standard for measuring the adequacy of prison officials responses to the known medical needs of inmates and their system for allowing inmates to make their needs known.  See Weeks v. Chaboudy, 984 P2d 185, 187 (6th Cir 1993) a determination of deliberate indifference does not require proof of intent to harm or a detailed inquiry into the defendants state of mind, ( the facts establish that he was deliberate indifferent) as in the treatment of all of plaintiff health care condition, back, knee, shoulder, hep-c, appena, sores on body, foot fungus, diabetes.  Delay or denial of access to medical attention, see Estelle v. Gamble 429 U.S. at 104, intentionally denying or delaying access to medical care, Ancata v. Prison Health SErvice Inc. 769 F2d. 700. 704-05 (11th Cir 1985) as in this case Dr. Breen determination and denial to plaintiff to see an orthopedic doctor, then making his own claim and diagnoses of plaintiff condition, then claiming that the cyst were benine, and did not take a tissue sample.  Medical staff refusing or disregarding a doctor recommendation could constitute deliberate indifference see Hamilton v. Endell 981 F2d 1063, 1066-67 (9th Cir. 1992); Delker v. Maass 843 F. Supp 1390, 1398, 1401 (DOr. 1994) facilities and procedures that do not allow for proper diagnosis and treatment Matzker v. Herr 748 F2d 1142, 1147 (7th Cir 1984); Green v. Carlson 581 P2d 669 671 675 (7th .Cir. 1978)

Like Lt. Jorden and Lt. Cooler punished plaintiff for having a bad attitude and placed him in a hard cell after the event of plaintiff diabetic medication created by Nurse Parnes, was this cruel punishment. In such a place a person will have an attitude and should not be punished because of such and their is no evidence to support this level of type of abuse.

Boring v. Kozakiewicz 333 F2d. 468 (3d. Cir 1987) as a convicted prisoner the eighth amendment prohibition against cruel and unusual punishment governed the condition of his medical care the due process clause requires the governemtn to provide appropriate medical care. See City of Revere v. Masschusette General Hospital 463 U.S. 239. 244. 103 S.Ct. 2979, 2983, 77 Ied 2d. 605 (183). As in Estelle v. Gamble acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs constitutes cruel and unusual punishment under the constitution. Estelle v. Gamble requires that the prisoner must have suffered a serious illness or injury. As plaintiff is suffering daily from the pain in his right shoulder, lower back, left knee, sores on body, liver pain, headaches created by hsi apena sleep disorder which could lead to more serious illnesses. As the Matzker court said we emphasize serious because we do not hold that minor injury must recieve hospital care to satisfy the due process clause. We limit our holding to injures which are serious or which the jail authorities have reason to suspect may be serious in some situation in which the seriousness of injury or illness would be apparent to a lay person. As in plaintiff right shoulder. x-rays show bone spurs with arthritis that plaintiff could see. And not time is a normal shoulder bone to have a 1/4 inch hook at the end, as x-rays showed and as a lay person plaintiff could see the needed to be treated. Expert testimony would not be required, e.g. institutional medical records, testing and x-rays. See City of Revere v. Mass. General Hospital463 U.S. 239, 103 S.CT. 2979, 77 Ied 2d 605 (1983).

Rather the sole question is whether this case makes out a prima facie case under the lowest standard found in Daniels v. Williams that of intentional action. Like the issue with C.O. Frsek, at S.C.I. Smithfield and the denial of C-Pap and the hinderence of plaintiff medical care, that after medical staff advised him to tunr over the devise to plaintiff this officer rufused to do so and then went on to threaten plaintiff that if he did not sign a refusal form he would issue a misconduct. Without authority this person had no authority to threaten plaintiff with a misconduct as long as he was withholding plaintiff health care devise, nor did he have any legal

)                                    )

standing as plaintiff was not refusing health care but deliberately being deprived
his health care by this officer, this cause plaintiff to suffer unnecessary pain and
mental anguish while he was denied the necessary treatment for his apena.  And has
since suffered pain for his lower back condition that is well documented on the street
and is still suffering such because he is being deprived his back brace.  And at
S.C.I. Smithfield he had a back brace and at S.C.I. Coal Township he is being deprived
such even when record support the issueing of a back brace.  His left knee with 2 cyst
that are not being treated and referral to see orthopedic specilaist goes unaddressed,
and it was stated by medical staff that the cyst are benie, and any learned
professional in the medical field would not that they could not make such a claim
without first getting a tissue sample to determine the cause and reason for these
cyst, it is deliberate indifference to health care to make such a statement and when
plaintiff returned to medical for knee pain he is met with deliberate indifference
and told their is no treatment forht coming.  Like when plaintiff liver treatment for
Hep-C was terminated prematurely under a non-existent DOC policy claiming plaintiff
was not responding to treatment.  That at no time was plaintiff ever told that this
condition would worsen if treatment was given.  Plaintiff was told that he would get
treatment for 6 month and at that time he would be evaluated and a determination would
be made if he was responding to treatment.  Sept. 25, 2UUU, plaintiff started
treatment, with a virual load of 288,UUU, when treatment was terminated based on a
non-existent policy virual load was 2U2,UUU, some 6U days later plaintiff treatment
was started again and at that point the condiction cocsistently worsen and virual load
went from 2U2,UUU to 58U,UUU in a 4 month period and at this point plaintiff sustained
an injure to his liver since the treatment made the condition worsen after it was
terminated prematurely.  And at no time was plaintiff advised that the treatment would
worsen the condition.  In the first instance plaintiff was reponding to treatment and
virual load showed such, and after terminated and given treatment back the condition
worsen showing an injury to plaintiff liver and his Hep-C condition worsen and has
since been a problem with plaintiff and all inquiries into such goes unaddressed by
the medical staff.  Sore on body that wont heal and at time fester and skin comes off,
fungus dry feet prolong delay in treatment could result in serios illnesses and the
present condition could very well worsen under the failure to adequately treat and
to know about a health care condition and not treat it could be said to be deliberate
indifference to serious medical need, and it is cruel punishment to know of a health
care condition and refuse to adequately treat it.  It is clear that plaintiff has made
out a prima facie case that the jailers intentionally denied him prescribed treatment

or the above listed condition without sufficient reason. It is clear moreover that his court should not wrongfully apply the 8 th. amendment deliberate indifference to serious medical needs test to relieve the defendants of the burden of justification for such intentional deprivation which our Norris v. Frame holding imposed. The jailers have not in any way demonstrated, that plaintiff does not have a constitutional right to adequate health care. What the attempt to show is that plaintiff was given care, it the number of time he had to repeatedly return to medical shows that plaintiff was not being adequately cared for, for his conditions. As they must that their deprivation only related to state interest relevant to state incarcerated person. It does in fact relate to a state interest, that a health condition or person is denied treatment to a point it becomes an impairment that place this person as a burden on the state because of the employee's of Wexford and Wexford Health denial of adequate health care. Over the years I've seen inmates complain about illnesses or conditions, had they been treated at the time would not have resulted in that inmate losing a leg or other functions and now become a burden upon the state for the rest of their life and costing tax payers. This essence of health care according to the Wexford Health is adequate treatment. As one of the resulting factors with the cyst behind petitioner leg, is that he is at risk of losing his leg if not soon adequately treated, and not considering the pain he must endure from the denial to treat. As because of Pa. Hoffmans inabilities these cyst have went undetected for years, as this same two lumps were present at the time he examines plaintiff's left knee and have since still remained without knowledge or cause as to why they are their. In its motion for summary judgment prisoner who could revieve a proscribed course of treatment except for his incarceration, should receive it unless that state satisfies its burden of justification and in this case it has not. And it seems that the consistent delay in this case by the defendants is unjustifiable on all levels when requesting treatment for present conditions. They have not proven or showed that any of plaintiff condition were adequately treated or that treatment would unduly interfere with those state interest which they have not proven such denial of plaintiff's health care would. They make false claim that plaintiff refused health care but they have not producted a signed refusal form. What they claim is that plaintiff refused to sign, and it is clear if plaintiff refused to sign that at no time has he ever refused health care, nor have they given consideration to the fact that plaintiff could not use the health care devise in a cell in which their was no power. Then for them to come and state that their was power in two cell on that block shows that they knew that their was no power in cell, and is a nexus for liability under the superior theory as they knew their was no power

in cell and goes right to the condition of confinement and the deprivation of health care as in this act they deprived plaintiff from the use of his health care devise. As the correction defendants can not justify the reason their was not power in the RHU cell, and their was and is no policy that supports the termination of the power in the RHU cells. Even from Wxford exhibits it can be seen the number of time plaintiff had to return to medical for the same condition, which is a clear showing of deliberate indifference.

Like Pa. Hoffman denying and disobeying Dr. Hardesty orders for plaintiff to have sit baths to aid in the healing process of the open wound on his anius for drainage reason. Pa. Hoffman took these sit baths then stated plaintiff could stand in a shower an extended period of time which this act did not address the purpose of the sit baths, and this act maybe the resulting fact to the present lump on plaintiff's anus. As to place a person in a fungus filled place with an open wound put them at risk for infection, and he knew or should have known that the proper way to address an open wound that was draining a fluid was in the nature of sit baths and to take such would put a person at risk. Also the fact that plaintiff dressed this wound for two weeks the K. Allen takes dressing and then claim it to be a security risk, if that was the case then plaintiff wound have never been issued such in the first place. Then Sharon Burks goes on to state that none of the doctors who treated plaintiff for this condition ordered a dressing for this open wound and for it to be dressed, supporting K. Allen abuse and denial of adequate dressing for an open wound.

Then the fact that x-rays of plaintiff's left wrist showed bones in the wrist over lapping as one on top of the other and Pa. Hoffman claims that their is nothing wrong and when moving plaintiff hand he feels pain most of the time. Seeing bones over lapping on an x-ray and refusing to treat this condition can be said to be deliberate indifference, when evidence support some form of treatment. Plaintiff as a lay person not lettered in medical issues could see the need for treatment and was refused such by Pa. Hoffman by a claim that the x-rays showed their was nothing wrong.

Administrative exhaustion requirement of the Prison Litigation Reform Act. which requires exhaustion of remedies with respect to any prisoners claim regarding prison conditions had to be interpreted broadly to apply to inmates complaint about individual acts of excessive force by correctional officer inmates complaint was regarding prison conditions, and thus subject to exhaustion requirement. Larkin v. Galloway C.A. 7 (Ill) 2001 256 F3d. 718; Davie v. Wingard S.D. OHio 1997. 958 F Supp. 1244, 166 A.L.R. Fed. 709. White v. Fauver D.N.J. 1998 F. Supp. 2d. 305.

Prison Litigation Reform Act. does not impose exhaustion of administrative remedies as prerequisite to subject matter jurisdiction. Johnson v. True W.D. Va. 2000, 125 F .Supp. 2d. 186.. See Gibbs v. Bureau of Prison D. Md. 1997 986 F. Supp 941.

Prison Litigation Reform Act. requires administrative exhaustion prior to inmates filing of civil rights law suit even where grievance process does not permit award of money damages and inmate seeks only money damages as long as grievance tribunal has authority to take some action in response to inmates complaint. Booth v. Churner U.S. Pa. 2001, 121, Sct. 1819. Massey v. Helman C.A. 7 (Ill) 2001 259 F3d. 641 See Davis v. Streekstra C.A. 7 (Wis) 2000 227 F3d. 759 inmate challenge condition of confinement on basis that inmate sought financial relief which was unavailable under prisons internal grievance system, and thus that exhaustion requirement was inapplicable. Burnham v. Hill C.A. 9 (Cal) 1999 182 F3d. 1064. Exhaustion not required to 1983 claim for deliberate indifference claim of violation of his eighth amendment rights based on deliberate indifference to serious medical needs since policy does not specifically provide for monetary damages and thus could not provide remedies that an inmate might have sought, in this Dept. Of Correction for denial of health care for serious health care needs. See Rosalies v. Coughlin W.D.N.Y. 1999 50 F. Supp 2d. 185; Russo v. Palmer N.D. Ill. 1998, 990 F. Supp 1047.

Petitioner has had did in fact exhaust administrative remedies on all claims filed in the 1983 claim and did in fact make it to the administrative appeals level in which all levels of correctiveness was denied and they supported the act of the health care provider in the deprivation of health care for serious illness and even base its decision on unfounded claim by medical staff, that petitioner refused to use C-Pap as if there was power in the RHU cell to use the device. Now the come and claim that their was power in 2 cells in RHU, at S,.C.I.S, which their was not. How could all the power in the plug sockets be cut off and only to plug sockets in cell work. Moreover

RHU guards took petitioners radio around to the cell claimed to have power in them and advised petitioner that their was not power in those cells for the use of the C-PaP devise, and that it looked like petitioner would not be afforded the right to use this health care devise for his illness.

Under 42 U.S.C. § 1997 the Department of Correction are not required to pay monetary damages to employees contracted to the Department of Correction threw a public or private Health Care provider. Where as the exhaustion requirement that the Wexford defendants are claiming is not consistent with this statue. Since the Department of Correction does not have a policy set up to pay for injury sustained by employees of a contracted company. Therefore the request for monetary damages can not be a defense for the defendants for reason of summary judgment as what is being claimed and the defendants should not be granted summary judgment base on this claim of exhaustion. As it is all claims within the complaint has went threw the grievance process of the Department of Correction, to final review is which the Department of Correction supported the abuse and denial of health care by Wexford employees. Even the issue for the two cyst behind petitioner knee went to final review and the action was supported by the Department of Correction, the denial of treatment. As petitioner attempted to amend and include this act in his complaint as this level of abuse has since been on going. Moreover P.A. Hoffman was deliberately indifferent in his treatment and diagnoses of this condition as these lump have been behind petitioners knew for several years and no adequate treatment was given to these cyst or attempts to find out reason or cause of these cyst. This act put petitioner at risk for a more serious condition if not adequately treated. And the amount of pain has since never been addressed.

When Looking at the record the defendants submitted how many times would a person have to repeatedly return to the medical department for the same condition before it is adequately treated, due to the great number of times petitioner had to return to the medical department at S.C.I.S. for the same condition shows a level of deliberate indifference to serious health care needs, and any delay in treatment would result in pain and suffering if not adequately addressed in the first case. As these parties knew or they should have known that failure to adequately treat petitioner condition would put him at risk for serious complication or the condition to worse. Like sore on skin that has never cleared up and are still present on skin. And the department of correction claims it was not a necessity for petitioner to see a skin doctor, even

though these sore are painful and often hurt and levels scars on skin in the nature of black
spots, since they will not heal petitioner feel he is put at risk for a more serious illness
from the failure to treat this condition. This is the same with medical staff at S.C.I.C.
which have taken test but refused petitioner the right to see a skin doctor, or inform him
of the nature and reason for these sores that will not heal and level black spots on skin.
The same with petitioner right shoulder, xray reports state that petitioner has a bone spur
and arthritis in the shoulder, and since petitioner has an reaction to anti-inflamtory's this
form of treatment in inadequate to a person who has a reaction to this medication and it is
listed in the record, and for P.A. Hoffman to order such medication knowing petitioner has
a reaction form this kind of medication is deliberately done, and knowingly and intentionally
done, with a wanton desire to inflict pain. This act gives this person a reason to justify
his action and the level of treatment which they are doing now. If you knew a medication
made you sick would you take it. No, so how could it be expspected that petitioner should
take such a medication when record reflects it makes him ill. And most anti-inflamatories
have asprin in them and because of the amount of such it is the reason for petitioner
reaction to this medication, and petitioner denial to take medication that made his sick
does not justify the reasoning for denial to treat and the pain petitioner has since been
subjected to from the bone spurs in his right shoulder and knee condition, coupled with his
lower back condition. Even at S.C.I.S. petitioner was given a back support he is presently
being denied such by medical staff at S.C.I.C. with no reason for denying such, and
petitioner has to endure back pain most of the time, and knowing these condition these
parties' medically cleared petitioner to work in the kitchen, aggravating all of his condition
and causing pain to a point kitchen staff stated petitioner could not hold a 40 hour a week
job. As it appears this staff has repeatedly seen petitioner limping from pain in left knee
and lower back at the end of the work day.

It must be question that if petitioner was getting adequate treatment for some or any
of his condition why did the not clear up or go away. And to repeatedly have to return to
the medical department for the same condition week after week is a clear showing of
deliberate indifference, neglect, neglience and other issue that maybe subjected to the
eighth amendment claims for cruel punishment, and these act were knowingly and intentionally
done. To see a health condition that is painful and to refuse to adequately treat such and
make a person come back to the medical for the same condition repeatedly is a showing of a
pattern of abuse consistent to make and eighth amendment claim of abuse and cruel punishment
and any pain cause by this act that a person must endure.

If defendants state their is no grievance issue regarding material fact, because plaintiff was not afforded the right to defendants discovery of the material facts in their case. The defendants can not deny indigent person any phase of the procedure due to his poverty; See Greffin v. Illinois 351 U.S. 12, 76 Sct. 585, 100 Led 2d. 891 (1956) as they denied plaintiff material facts then comes on their motion for summary judgment and claim a genuine issue, which if records were reviewed would appear unfounded, as what person would have to repeatedly return to medical for the same condition and never be adequately treated for that condition and then have to repeatedly be charge a co-pay for the same condition and illness. Plaintiff medical issues are more then a simple cold, as his left wrist with bone over lapping, and no treatment was given and Hoffman is a learned medical professional and it is clear from the x-rays that plaintiff left wrist needed treatment for the bones that were over lapping. Then the left knee issue after testing at S.C.I. Coal Township it was determined that petitioner had two (2) cyst behind his left knee, and since no testing was done, and plaintiff repeated complaints of knee pain and problems while walking, issuing a knee sleeve or was not adequate treatment for this condition. And petitioner reviewed x-rays of his right shoulder which show a clear 1/4 inch bone spur at the tip of his cawler bone and then they claim that their was nothing wrong with plaintiff's shoulder that required treatment and plaintiff has since been in major pain in his shoulder that has not been addressed or medicated adequately.

Under this rule dealing with summary judgment, no margin exists for disposition of factual issue, on summary judgment procedure does not serve as substitute for trial of a case Frey v. Frankel C.A. Kan. 1966, 361 F2d 437.

The summary judgment procedure is valuable for striking through sham claims and defenses which stand in the way of a direct approach to the truth. As Wexford Health, Ms. Dascani, and the Correctional Defendants denied plaintiff adequate time of discovery of their material fact and then to come and make claim on the record and place what they feel is material fact to dispute plaintiff's claim, knowing plaintiff does not have the records or evidence to show the lies and the denial of health care for serious painful condition, they can now come and state every or anything to support their claim of summary judgment, and in the interest of justice it is require and requested that this court have an expert review all x-rays and medical evidence presented in the Correction and Wexford Health discovery. If such is not done it leaves room for a reasonable doubt that the claimed issues in plaintiff complaint may exist, material fact to the defendants

abuse is in their discovery and such need to be reviewed by an expert witness other then the correctional or Wexford defendants an independent determination is required, to get to the truth of all claims. And summary judgment was not intended to and cannot deprive a litigant of right to a jury trial; Whitaker v. Coleman. C.C.A. Ala. 1940, 115 F2d. 305; Davis v. U.S.. In MD. 1993, 84 F Supp 696. Because of the matter at issue regarding discovery material: See Griffin v. Ill. it is hard to show genuine dispute and specific facts essential to this case Schenck Edwards E.D. Wash. 1996 921 F. Supp. 679. Inquiry to be made on motion for summary judgment is whether evidence presented a sufficient disagreement to require submission to a jury,; Burns v. Northwestern Co. N.D. Ill. 1994 869, F. Supp. 583 to explore available evidence to determine whether their is genuine issue of material fact requiring trial. In Wexford own statement it claims the great number of times plaintiff had to return to medical about the same condition, and was subjected to violation of the co-pay policy by the repeatedly being charge for the same condition, and medication when getting it renewed. Just giving plaintiff a pill for his pain which does not address the pain, can not be considered adequate health care, and this is what The Wexford defendants is trying to make claim to. This is not a standard that plaintiff would receive if he was not incarcerated, and this act can not be considered adequate health care for serious illnesses: Telfair v. Gilberg S.D. Ga. 1994, 868 F. Supp. 1396.

Defendants are now filing a factually insufficient claim stating their is no genuine material fact. exspecting court to support their side and abuse. U.S. ex rel. Milam v. egents Of University of Calif . D.Md. 1995, 912 F. Supp 868 and the manner in which defendants discovery was handled violates the standard set by Griffin v. Ill. When plaintiff was not provided with material fact, defendants can claim anything as plaintiff has no proof to support his claim of abuse. Oquendo v. Boettcher Ind. Ic. D.N.J. 1996, 939 F. Supp. 357 Wilkerson v. F.I.A. Topeka In. D. Kan. 1995 (00 F. Supp. 1418; evidence viewed in light most favorable to nonmoving party would allow jury to return verdict for that party. while whether facts is material is determined by substantive law. Galling v. Washington Metro Area Transit Authority D. D.C. 1994 866 F. Supp 28: Bellamo v. United Arms Shipping Co. (S.A.G.) E.D. N.Y. 1994, 863 F. Supp. 107: Boginis v. Marriott Ownership Resort Ic. E.D. Va. 1994, 855, F. Supp. 862, See. 57 F3d. 1065.

The testimony of Doctors Miguel Soloman, Doctor Hardesty, Doctor Zlapto, Doctor George, M, Zlupto, M.D. 801 Howard Ave. Altoona Pa. 16601, Amit Kullar DMD Dentist S.C.I. Smithfeild, Sergrey, skin lesion Hyper pigmented nochler on forearm, thighs, face, have

been present 1-2 years no test done to determine spots, Dr. Breen claims what they appear to be, no treatment given. X-ray report Indicental absence of development of the frontal sinus. Left knee, Doctor Henry K. Smith D.O. Ramos Dorigdaitis, Iain Fan D.O. Doctor Peter G. Gregory M.D. Left Knee cyst, and Doctor Breens determination not to treat, and surely giving a knee brace can not be said to be adequate treatment for this condition and pain. Never treated for protien in urine, never treated for kidney stones see medical note 5/12/95, also 5/16/95, test results Colleen Newfield.

Court reviews evidence on summary judgment under the substantive law and based on evidentary burden that party will face at trial, on particular claim John Hancock Mt. Life, Ins. Co. v. Weisman C.A. 10 (N.M.) 1994 27 F3d. 500; Maquin v. Flower Daniel Service Corp. E.D. La. 1996 935 F. Supp. 847; Ray v. Continental Western Ic. Co. D. Nev. 1996 920 F. Supp. 1094.

Summary judgment is harsh remedy that should be granted only when moving party has established his right to judgment with such clarity as not to give rise to controversey; International Ins. Co. v. Metro St. Louis Sewer Dist. E.D. Mo. 1996, 938 F. Supp. 568 as Correction Defendants and Wexford Health has failed in their professional responsibility to provide Kim Smith with adequate health care and their claims of supported treatment or been seen by Pa.'s does not support the claim that plaintiff was receiving inadequate health care for his illnesses, by their own admittance plaintiff had to repeatedly return to the medical department for the same condition that had not been adequately treated in the first place. More over to support their abuse they denied plaintiff adequate discovery claiming a security issue to prohibit plaintiff from adequately presenting his claim then to make such a claim that plaintiff was adequately treated when almost for the last 9 years he has been subjected to repeated pains in his knee, shoulder, back, that has affected his abilities to work and walk, and has since created pains in neck, upper back, and plaintiff right knee, and legs, as these condition have not adequately been treated since his incarceration. And what treatment that has been given amounts to no treatment at all. I the Wexford Health reply, it is never stated what treatment was given for these condition, only that plaintiff repeatedly returned to the medical department and was adequately treated, and records do not reflect adequate treatment for these illnesses or condition. And what they claim as treatment can not be exspected as a standard that plaintiff would receive if he was not incarcerated and at the mercy of the Wexford Health defendants for adequate health care. As controversy within Kim Smith claim is whether he has a constitutional right to

to adequate health care during his incarceration and the level in which this treatment is to be evaluated to meet standards and codes as that required by learned medical professionals.

For a corrections officer to step out side of his authority, and act as a medical professional and order plaintiff to sign a refusal form, if he did not he would punish him by issuing a misconduct. As long as C.O. Ersek was with holding plaintiff health care devise, and after medical staff instructed him to turn the devise over to plaintiff he still refused to do so, and them went on to deprive plaintiff of his health care by the with holding of plaintiff's health care devise. He knew or should have known that when medical staff instructed him to turn the devise over to plaintiff that he could be depriving plaintiff his health care. And as long as he was with holding the health care devise he had no legal standing to order or direct plaintiff to sign a refusal of health care. When at no time was plaintiff refusing health care instead he was being deprive his perscribed health care by C.O. Ersek.

Then plaintiff was place in the RHU for a name calling thing with C.O. Whysong. then Sgt. Henning claimed plaintiff threaten this officer and plaintiff was given another 60 days in the whole. After his D.C time was up he was place in the control unit, as it was stated they needed to see how plaintiff would react if released into population, after some 45 days plaintiff was placed back in RHU, base on Angela immermans statement that plaintiff would not co-operate with her and tell her my intention towards C.O. Whysong. Plaintiff told her he intended to file a civil action, this being the level of his intent. Then he was placed on A/C status pending a transfer, and kept in the whole another 100 days before transfered. The duration of this confinement is under question and all the deprivation connected with this confinement and the condition in which plaintiff was confined in which he was denied is health care due to no power in cells.

Even if standard of summary judgment rule are met court has discretion to deny action for summary judgment if it relieves that better cause would be to proceed to full trial. American Stone Diamond Inc. v. Loyds of London S.D. Tex. 1996, 934, F. Supp. 839. Courts responsibility on motion for summary judgment is not to resolve disputed issue of fact, but to determine whether there exist any genuine factual issue to be tried. Parass v. Pacific Indem. Co. E.D. Pa. 1996, 920 F. Supp. 647, and their thin complaint to face a full trial as all inmates under law are entitled to the same

kind of health care they would get if not incarcerated, and the treatment plaintiff
had been given can not be said to met that standard.  If plaintiff was on the street
he would be able to be examined by medical professionals to determine the nature and
cause and reason for plaintiff's pain and present condition and treat them.  If this
court will not honor in the name of justice and under the statue that plaintiff be
examined and have x-rays taken to determine if he is adequately being treated for his
condition, to deny this is like denying plaintiff his right to adequate treatment.
And this treatment is as if plaintiff would be on the street.  This court can not leave
it to Wexford Defendants to determine the standard of treatment an inmate would obtain
if he was on the street or not confined.  And from what appears in the Wexfords exhibit
it is hard to say this is the kind of treatment that an inmate would get if he was not
incarcerated.  As Wexford Health is setting a standard that goes against all medical
standards, and even if on public assistance an inmate if on the street would get better
treatment for his condition and would not have to repeatedly have to return to the
health care provider for the same condition over and over and not be adequately treated
for said condition.  And now it can be said that a plaintiff has a constitutional right
to be examined by medical professional's if their is a question at law to the manner
and treatment that an inmate is given to prove and show it is meeting the requirement
set by law, and that a public company such as Wexford can not set a standard, as what
it is appearing to do in this claim.  Set a standard of deprivation of health care as
no professional health care personel would require a person to return to them for the
same condition for years and not adequately treat it, or tell them their is nothing
wrong until the condition worsens to a level that their is a perminate impairment, that
will last a person the rest of their life making that person a burden on the government.
If the condition would have been adequately treated while incarcerated, and met a
standard as if that person was on the street then the injury sustained threw the
deliberate indifference of Health care providers like Wexford who set a medical standard
so low that third world countries get better health care can not be considered a
standard as if the person is not incarcerated.  Because I'm an inmate does not give
Wexford Health the authority to apply a standard of health care that is substandard.
And since plaintiff has not had his shoulder condition addressed the pain is now running
down his arm into his hand and this is due to something being wrong in his right
shoulder, and any delay in treatment as well as his left knee will result in continued
pain and suffering, and what Wexford  defendants have stated as health care is a
standard far below what an inmate would obtain as health care if he was not
incarcerated.  The continued denial of health care is the question and what standard

at is being applied to inmates threw the employee's of Wexford Health does not meet the
andard of normal health care providers, or to a level that an inmate may obtain if he
s not incarcerated.

Tamarkin v. Ward 534 F Supp. 1224 (1982) deliberate indifference to a prisoners
dical needs fall into categories.  In the first category, unconstitutional, the denial
reasonable delay of access to medical personel to a prisoner with a serious illness
injury.  Like plaintiff knee, shoulder and back condition and the repeatedly denial
any adequate treatment.  That ever time plaintiff returns to medical about the same
ndition he is indirectly denied treatment and advised by the Pa. that their is not
eatment forth coming and plaintiff is often charge for the same condition a co-pay.
 has become useless to go to medical and complaint about pain and plaintiff inability
move his arm on days or pain in his back and legs, or pain in his knee, as medical staff
ets these request with a level of indifference, at S.C.I. Coal Township.  See, e.g.
elder v. Lucas 537 F2d.

7 (6th. Cir. 1976); Corly v. Conlay 457 F2d. 251, ( 2nd. Cir. 1972).  In the second
tegory are cases in which personel denied a prisoner the treatment prescribed by a
ysician.  Like C.O. Ersek denial to turn over plaintiff C-PaP devise, even after he was
structed to do so by the health care staff at S.C.I. Smithfield, then going on to order
aintiff to sign a refusal form, when in fact plaintiff was not refusing treatment but
ing denied his prescribed treatment by C.O. Ersek, and because plaintiff would not sign
 refusal form this person punished plaintiff by issuing a misconduct.  Also when K. Allen
essing for an open wound, claiming it was a security issue and that inmate are not
rmitted to have such in their cells,  then Ms. Burks goes on to support this action and
aim that none of the doctors that plaintiff was treated by ordered that this open wound
 be dressed.  Which is very hard to believe.  Then Pa. Hoffman takes plaintiff set baths,
en altered doctors orders to a standard that would not address plaintiff open wound,
en place plaintiff in a treatment status that put him at risk for infection.  Moreover
aintiff was forced to dress this open wound with tolet paper because he was denied
essing.  Pa. Baker denial of plaintiff's C-PaP devise, claiming plaintiff refused it
e, which is very hard to do when their was no power in cell in which to use the devise,
ctor Johns and George Weaver act of discrimination and the claim that the Department
 Correction is not obligated to treat sleep disorders, and denying plaintiff placement
 school based on this sleep condition which these parties refused to treat.  And after
-rays were taken and ualter sound done the doctor that reviewed this information subjested
at plaintiff see an orthopedic doctor for his condition in which Dr. Breen,  and the

pain and for no valid medical purpose id. at 111 as Doctor Breen, and both the Pa's at S.C.I. Coal Township, as well as Pa's Hoffman and other medical staff at S.C.I. Smithfield to treat the sores on body that wont heal, knee condition with the 2 cyst behind knee, right shoulder condition and over lapping bones in left wrist, these parties knew or should have known to deny to treat these condition would subject plaintiff to pain and discomfort that would be long lasting and affect his abilities while incarcerated, and that the prolonged delay in treating these condition may subject plaintiff to impairments that will last him the rest of his life, and it is believe the denial is a form of retaileation solely to inflict pain.

From this one reasonablely may infer that these acts by doctors or health care providers is either intentionally inflicting pain on the prisoner or is deliberately indifferent to their medical needs.  See Bishop v. Sloneman 508 F2d. 1224, 1226, (2d. Cir.1974) this is sufficient to state a violation of the 8 th. amendment and a concemitant  right to relief under 42 U.S.C. § 1983.

Martenez v. Mancusi 443 F2d. 921 (2d. Cir. 1970) it is true whether they ignore the express orders of a physician as in Burnas cutting diabetic medication, or Doctor Breen denial to let plaintiff see an orthopedic doctor, or Pa. Hoffmans acts and claimed treatment of plaintiff wrist, knee, and shoulder.  This is true whether the indifference is manefested by prison doctors in their response to the prisoners needs, or by prison guards in intentionally denying or delaying access to medical care, or intentionally interfereing with the treatment once prescribed, as C.O. Ersek, Pa. Hoffman, K.Allen, Ms. Burks, Pa. Baker, Nurse Burnas, Lt. Jordon, See White v. Napaleon 897 F2d. 103 (3d. Cir.1990).

Hence the plaintiff should, as a matter of law have received if the state officials  offer no other evidence misuse of power possessed b virtue of state law and made possible only because the wrong doer is clothed with the authority of the state law.U.S. v. Classic 313 U.S. 299, 326 (1941) act under the color of state law, a defendant need not be an officer of the state it is sufficient that he or she is a willful participant in joint activity with the state or its agents Aolickes v. Hess & Co. 398 U.S. 144, 152 (1970);
West v. Atkins 487 U.S. 42, 54-55 (1988), see Conner v. Donnelly 42 F2d. 220, 225 (4th. Cir. 1994); Humphries v. Various Fed. U.S. Is. Employee's 164 F3d. 936, 945 (5th. Cir. 1999) plaintiff claim for involuntary servitude and mistreatment while in detention

that is being applied to inmates threw the employee's of Wexford Health does not meet the standard of normal health care providers, or to a level that an inmate may obtain if he was not incarcerated.

Tamarkin v. Ward 534 F Supp. 1224 (1982) deliberate indifference to a prisoners medical needs fall into categories. In the first category, unconstitutional, the denial of reasonable delay of access to medical personel to a prisoner with a serious illness or injury. Like plaintiff knee, shoulder and back condition and the repeatedly denial of any adequate treatment. That ever time plaintiff returns to medical about the same condition he is indirectly denied treatment and advised by the Pa. that their is not treatment forth coming and plaintiff is often charge for the same condition a co-pay. It has become useless to go to medical and complaint about pain and plaintiff inability to move his arm on days or pain in his back and legs, or pain in his knee, as medical staff meets these request with a level of indifference, at S.C.I. Coal Township. See, e.g. Fielder v. Lucas 537 F2d.

B57 (6th. Cir. 1976); Corly v. Conlay 457 F2d. 251, ( 2nd. Cir. 1972). In the second category are cases in which personel denied a prisoner the treatment prescribed by a physician. Like C.O. Ersek denial to turn over plaintiff C-PaP devise, even after he was instructed to do so by the health care staff at S.C.I. Smithfield, then going on to order plaintiff to sign a refusal form, when in fact plaintiff was not refusing treatment but being denied his prescribed treatment by C.O. Ersek, and because plaintiff would not sign a refusal form this person punished plaintiff by issuing a misconduct. Also when K. Allen dressing for an open wound, claiming it was a security issue and that inmate are not permitted to have such in their cells, then Ms. Burks goes on to support this action and claim that none of the doctors that plaintiff was treated by ordered that this open wound to be dressed. Which is very hard to believe. Then Pa. Hoffman takes plaintiff set baths, then altered doctors orders to a standard that would not address plaintiff open wound, then place plaintiff in a treatment status that put him at risk for infection. Moreover plaintiff was forced to dress this open wound with tolet paper because he was denied dressing. Pa. Baker denial of plaintiff's C-PaP devise, claiming plaintiff refused it use, which is very hard to do when their was no power in cell in which to use the devise, Doctor Johns and George Weaver act of discrimination and the claim that the Department of Correction is not obligated to treat sleep disorders, and denying plaintiff placement in school based on this sleep condition which these parties refused to treat. And after x-rays were taken and ualter sound done the doctor that reviewed this information subjested that plaintiff see an orthopedic doctor for his condition in which Dr. Breen, and the

were cognizable under 1983 because they challenged condition and not fact of confinement.

Only unnecessary and wanton infliction of pain, or deliberate indifference to serious medical needs of prisoners are sufficiently egregious to rise to the level of constitutional violation Estelle 429 U.S. at 103, 97 Sct. at 290 (quoting Gregg v. Georgia 428 U.S. 153, 173, 96 Sct. 2909, 2925, 49 Led 2d. 859 (1976) doctor intended to inflict pain on prisoner without any medical justification, and the sheer number of specific times plaintiff was denied treatment for his illnesses even though it would be painful, and entailed substantial risk of serious harm to the prisoner, plaintiff was denied prescribed medical care a great number of times by the named defendants, which these condition are very painful and affect a person ability and movement.

Also petitioner never was told that the treatment for Hepitis C would result in this condition worsening or that from this treatment he would contact Hepitis A, B, and G, as this being told he now has, by Nurse Wolfgang at S.C.T. Coal Township, also a thriod gland condition. Since not of this was shown at S.C.I. Smithfield plaintiff believe that after treatment was terminated threw Dr. Kort, then reinstated at that time plaintiff sustained an injury to his liver as the condition worsen. At the start of treatment Dr. Long advised petitioner that he had Hepitis C and he could start treatment, at no time was plaintiff told by Dr. Long that he had A,B,G, Hepitis nor was he told that he would get thriod gland condition, or that if treatment was terminated prematurely that if given treatment back the condition may worsen. Based on DR. Korts determination and an non-existent D.C.O. plaintiff was terminated from this treatment based on a false claim that plaintiff was not responding to treatment. Since plaintiff viral lode when starting this treatment was 289,000, and at the time it was terminated some 95 days later it was 202,000. When given the treatment plaintiff was advised that in six months he would be reevaluated to see if he was responding. At no time was plaintiff advised that he would be terminated in 95 days based on a false claim. Upon the reenstatement of treatment plaintiff condition continued to worsen and when terminated the viral lode was 528,000 showing that threw this treatment plaintiff sustain an injury to his liver, based on Dr. Korts determination and non-existent policy as he acted as a policy maker for the D.O C. when he knowingly and intentionally terminated treatment with the wanton desire to inflict pain and injury to plaintiff. Their is no justification for the termination of this treatment other then he wish to injury of inflect pain. A grievance was filed

and the D.O.C. saw the error and ordered D. Kort or the attending doctor to start treatment again. Not being versed in this kind of treatment plaintiff is not sure but suspects he was not given the correct amount of this medication. As the only way for this condition to worsen is that plaintiff may have been given the wrong amount of medication that resulted in the condition worsening and plaintiff visual lode going from 202,000 to 528,000 in about a 60 day period, that this act was knowingly and intentionally done with the wanton desire to inflict pain and injure plaintiff. At present plaintiff is seeking information from the Liver Association for more information on this treatment and what would cause this condition to worsen and if plaintiff sustained an injury form this treatment that was knowingly and intentionally applied in error.

Nor was plaintiff informed that threw this treatment he would contract Hepatitis A, B, G, and this in fact will show that plaintiff sustained an injury to his liver based on the manner and application of this treatment by the Wexford Health employee's. Since Nurse Wolfgang advised plaintiff that he has these condition, when they were not present before coming to S.C.I. Coal Township, and getting the treatment that was given him.

Wherefore however that prison condition alone or in combination may deprive inmate of his minimal civilized measures of life necessities and thus violated the 8 th. amendment ban on cruel and unusual punishment. Like no power in cells in RHU at S.C.I. Smithfeild, and the reason for the denial of the use of the C-Pap devise, claiming plaintiff refused to use the devise, how could he when their was no power in cells. By the defendants own exhibits and statements it claims their was power in 2 cells, if that was the case why was their not power in all the cells. If their was power at all, and this statement shows they knew of the condition and did nothing to correct it. See 452 U.S. at 354 and such resulted in a serious deprivation of basic human needs, Rutto v. Tinney. Gamable and Rutto alone or in combination may deprive inmates of the minimal civilized measures of life necessities, 111 Sct. at 2328, and prison officials at S.C.I. Smithfeild being sued had knowledge of the unconstitutional condition yet failed to take any reasonable action to abets those condition. The statement that their was power in 2 cells in RHU to use the C-Pap devise shows they had the knowledge require to state a claim, that they knew of the unconstitutional condition coupled with the fact that prison official were also aware. Framer v. Brennan 114 Sct. 1970 (1994), see also 846 F2d. at 175.

Owens 907 F2d 418 (3rd. Cir. 1990) prison officials are subjectively culpable in the sense they exhibit deliberate indifference that this knowledge of harmful condition to plaintiff health care and his ability to use his health care devise, and failed in their administrative, personal, and official capacity to correct this condition, and act on the knowledge to remedy the situation Armontraut. 975 F2d. 543 ( 8 th. Cir. 1992)

Wherefore for these reason the defendants motion for summary judgment should be denied and this matter set at issue before a jury.

Respectfully Submitted

Date: 2-19-23

IN THE UNITED STATES DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Kim Smith                        :Civil Action No. 1:01-0817

    Plaintiff                 :

                    :(Judge William W. Caldwell)

    v.                         :

                    :(Magistrate Judge Malachy E. Mannion)

James Morgan et, al.,            :

        Defendants          :

                    :

                    :

                    :

                    ::

## CERTIFICATE OF SERVICE

I Kim Smith plaintiff do hereby certify that on the 19 th. day of February 2003 I turned over to D block officers an envelope containing plaintiff's objection and supportive brief to forward to Mr. Voeckler to mail first class mail and to place plaintiff account in the red for legal postage, for prepaid postage to the below listed parties by way of first class mail.

Office of the Clerk
United States District Court
Middle District of Pennsylvania

John Talaber Esq.
Correct Defendants Counsel

James D. Young Esq.
Wexford Health Counsel

_Kim Smith_                   Date: 2-19-03

Kim Smith CT-2162/ Plaintiff

1 Kelley Dr. Coal Township Pa. 17866-1021