IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SALVATORE CHIMENTI,            :
                               :
        Plaintiff,             :
                               :
    v.                         :  CIVIL NO. 3:CV-01-0273
                               :
ROGER KIMBER, ET AL.,          :  (Chief Judge Vanaskie)
                               :
        Defendants.            :

## MEMORANDUM

## BACKGROUND

This pro se civil rights action pursuant to 42 U.S.C. § 1983 was initiated by Salvatore Chimenti, an inmate presently incarcerated at the State Correctional Institution, Huntingdon, Pennsylvania (SCI-Huntingdon). Plaintiff's in forma pauperis application was previously construed as a motion to proceed without full prepayment of fees and costs, and granted.

Named as Defendants are Secretary Martin Horn and Chief Hearing Examiner Robert S. Bitner of the Pennsylvania Department of Corrections (DOC) and the following SCI-Huntingdon officials: Superintendent Frederick Frank and Nurses Patricia Yarger and Patricia Everhart. Also named are five employees of Wexford Health Sources, Inc., a health care service which provides medical treatment to SCI-Huntingdon inmates on a contractual basis: Peter Baddick, M.D., David Rowe, D.O., Gerald Kaufer, M.D., Site Coordinator Carol Pollock L.P.N., and

Farrohk Mohadjerin, M.D. The Plaintiff is also proceeding against Roger Kimber, M.D., who is identified as being a former SCI-Huntingdon Medical Director.

Chimenti states that he has been confined at SCI-Huntingdon since 1991. Blood tests conducted during 1991 revealed that Plaintiff had elevated liver enzymes. As a result, a non-defendant, Doctor Reiners, ordered a liver biopsy. The biopsy tested positive for Hepatitis C. Between 1991 and 1996, Chimenti was treated by various physicians who are not named as defendants in this action. During 1996, Plaintiff's Hepatitis-related symptoms "became more severe and pronounced." (Dkt. Entry # 1, ¶10.) As a result, blood testing was performed in December, 1996.

The then newly-appointed SCI-Huntingdon Medical Director, Defendant Doctor Mohadjerin, reviewed the results of the blood test with Chimenti on or about January 15, 1997. The test revealed that Chimenti had elevated liver enzyme levels.

In April of 1997, Chimenti filed Grievance No. 0057-97, complaining of the alleged lack of medical care provided by Dr. Mohadjarin and the Wexford Health Group. (See Ex. "B" to Plaintiff's Complaint.) As relief, Chimenti asked that Dr. Mohadjarin "recuse himself from treating me . . . and to also recuse himself from making any medical decisions regarding any types of tests, x-rays, operations, doctor consultations, or any other medical decisions pertaining to my health." Chimenti also requested that "Dr. Rieners or Dr. Aranenda attend to me in the future." (Id., p. 6.) Chimenti unsuccessfully pursued this grievance through the final

review stage, with DOC Commissioner Horn sustaining the denial of the grievance in a letter dated June 27, 1997. (Ex. "E" to the Complaint.) Chimenti did not pursue a civil action with respect to this matter.

During the summer of 1997, Chimenti was referred to Dr. Gaugler, who ordered a liver biopsy and testing to determine the condition of the Hepatitis-C. In October of 1997, when testing had not been undertaken, Chimenti complained in writing to Defendant Dr. Kaufer. (See Exs. "F" and "G" to the Complaint.) By letter dated November 12, 1997, Defendant Pollock responded to Chimenti's letters to Dr. Kaufer. (Ex. "H" to the Complaint.) Chimenti did not pursue an administrative grievance with respect to the matters covered in his letter to Dr. Kaufer.

In the interim, on November 5, 1997, a liver biopsy was performed and Dr. Gaugler recommended Interferon therapy. Chimenti received Interferon therapy for about 3 ½ months, beginning in December of 1997. (Complaint, ¶¶ 40-41.) Dr. Mohadjarin discontinued the Interferon therapy in March of 1998 because the Hepatitis C was "'not fully responding to treatment.'" (Id., ¶ 41.) Chimenti alleges that Dr. Gaugler recommended that the Interferon treatment be intensified, but Dr. Mohadjarin refused. (Id, ¶ 46-47.) Thereafter, Chimenti asked that Dr. Mohadjarin approve "Rebetron Therapy," but he again declined to order the treatment. (Id., ¶ 49-52.)

On February 10, 1999, Chimenti initiated another administrative proceeding concerning

3

his medical care. This grievance, assigned No. 0037-99, was "lodged against SCI-[Huntington] Medical Dept., Dr. Mohadjarin, Wexford Health Sources, Inc., and the D.O.C." (Complaint, Ex. "I," p. 1.) Chimenti sought to compel implementation of the Rebetron therapy. By letter dated May 10, 1999, the denial of Chimenti's grievance was sustained on final review. (Complaint, Ex. "O".) No additional administrative grievances were pursued by Chimenti.

Chimenti did not bring this lawsuit until February 13, 2001. Chimenti alleges that he did not receive any treatment for hepatitis from March of 1998 until June 26, 2000. (Complaint, ¶ 65.) He further alleges that, as a result, his condition deteriorated substantially. (Id., ¶ 66.)

He acknowledges, however, that on June 26, 2000, he started receiving Rebetron therapy. (Id., ¶ 68.) On December 13, 2000, Defendant Dr. Kimber ordered that this treatment be discontinued because Chimenti's condition continued to deteriorate. (Id., ¶ 72.) Chimenti alleges that Defendants Drs. Kimber and Baddick then refused to provide him any additional treatment. His complaint contends that he has been diagnosed with cirrhosis of the liver. He further avers that he "now languishes in a prison cell, suffering from an extremely advanced life threatening illness...." (Complaint, ¶ 79.) As relief for the alleged deliberate indifference of the Defendants, Chimenti requests compensatory and punitive damages plus an injunctive decree directing his transfer to the State Correctional Institution at Pittsburgh, Pennsylvania (SCI-Pittsburgh) for the purpose of being evaluated as a liver transplant candidate.

On May 29, 2001, the Wexford employees who have been sued in this case,

4

Defendants Baddick, Rowe, Kaufer, Pollock, and Mohadjerin (hereinafter the Wexford Defendants) submitted a motion to dismiss. See Dkt. Entry # 29. Shortly thereafter, Dr. Kimber filed a motion to dismiss the complaint for failure to state a claim upon which relief may be granted. (See Dkt. Entry # 30.) The remaining Defendants, Horn, Bitner, Frank, Yarger, and Everhart (hereinafter the Commonwealth Defendants) also filed a motion to dismiss. (See Dkt. Entry # 32.) Briefing has been completed on the respective motions, and they are ripe for consideration.

## DISCUSSION

"The test in reviewing a motion to dismiss for failure to state a claim is whether, under any reasonable reading of the pleadings, plaintiff may be entitled to relief." Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993) (citation omitted). Additionally, a court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them." Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990); Independent Enters., Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1168 (3d Cir. 1997). In Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), our Court of Appeals for the Third Circuit added that when considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." Finally, it is additionally well-settled that pro se complaints should be liberally construed. Haines v. Kerner, 404 U.S. 519, 520

(1972).

The separate motions to dismiss raise some common grounds. Specifically, Dr. Kimber and the Wexford Defendants assert that dismissal is appropriate on the ground that Chimenti did not adequately exhaust administrative remedies. Both the Wexford and Commonwealth Defendants argue that the complaint fails to set forth a valid claim of deliberate indifference.

### A. Failure to Exhaust Administrative Remedies

Dr. Kimber maintains that the claim asserted against him was not included in Chimenti's administrative grievances.[1] The Wexford Defendants' argument that Chimenti failed to exhaust his administrative remedies is twofold. First, they point out that the two administrative complaints that Chimenti pursued did not name nor seek relief on account of actions or inaction of Baddick, Rowe, Kaufer and Pollock. And second, the Wexford Defendants contend that Chimenti is not entitled to pursue his claims in this Court because the relief requested -- monetary damages and a transfer to SCI-Pittsburgh for evaluation for a liver transplant -- was not sought in the administrative complaint process.

---

[1] The Complaint alleges that Dr. Kimber became the prison's Medical Director during "October/November 2000." (Dkt Entry # 1, ¶ 69.) On December 13, 2000, Kimber allegedly discontinued Chimenti's Rebetron therapy because his illness "failed to respond to said treatment." (Id. at ¶ 72.) Thereafter, on January 18, 2001, Kimber informed the Plaintiff that a second referral made by Doctor Reiners for Chimenti to be examined by a gastroenterologist had been rejected by Doctor Baddick, Wexford's Regional Director. The complaint concludes that Kimber refused to provide Plaintiff with needed treatment.

6

Section 1997e(a) of Title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The Supreme Court has made clear that prisoners must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through a grievance process. See Porter v. Nussle, 122 S.Ct. 983, 992 (2002)("we hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"); Booth v. Churner, 121 S.Ct. 1819, 1825 n.6 (2001)("we hold . . . that Congress has provided in § 1997e(a) that an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues"). Thus, prisoners are required to exhaust available administrative remedies prior to seeking relief pursuant to § 1983 or any other federal law.

The Pennsylvania Department of Corrections has a Consolidated Inmate Grievance Review System. DC-ADM 804 (effective January 1, 2001). With certain exceptions not applicable here, DC-ADM 804, Section VI ("Procedures") provides that, after attempted informal resolution of the problem, a written grievance may be submitted to the Grievance Coordinator; an appeal from the Coordinator's decision may be made in writing to the Facility Manager or

Community Corrections Regional Director; and a final written appeal may be presented to the Secretary's Office of Inmate Grievances and Appeals. A prisoner, in seeking review through the grievance system, may include requests for "compensation or other legal relief normally available from a court." (DC-ADM 804-4, issued April 29, 1998.) Furthermore, although "[g]rievances must be submitted for initial review to the Facility/Regional grievance Coordinator within fifteen (15) days after the events upon which the claims are based," allowances of extensions of time for good cause "will normally be granted if the events complained of would state a claim of a violation of a federal right." ( Id.)

With respect to Dr. Kimber's failure to exhaust argument, Plaintiff contends the he was subjected to a continuous denial of medical treatment and all available administrative remedies were exhausted as evidenced by Exhibits "L" and "O" to the original complaint. ( See Dkt. Entry # 37, ¶ 8.) The two exhibits cited by Chimenti relate to Grievance 0037-99, which was filed and ruled upon long before Dr. Kimber assumed his duties as Medical Director at SCI-Huntingdon. Specifically, as established by Exhibit "O", final administrative review of said grievance concluded on May 10, 1999, over a year before Medical Director Kimber began his tenure. Plaintiff's earlier grievance, No. 0057-97 was likewise initiated and reached final disposition long before Dr. Kimber's involvement.

Moreover, Plaintiff's attempt to avoid compliance with the exhaustion requirement on the basis that he was subjected to a continuing pattern of deliberate indifference is not compelling.

8

Clearly, Dr. Kimber cannot be held accountable for the actions of his predecessors. The filing of an administrative grievance regarding prior actions allegedly taken by other correctional officials simply does not permit this Court to entertain unexhausted claims against Kimber. To do so would undermine the purpose of § 1997e(a).[2] Consequently, since Plaintiff did not initially seek administrative relief through the DOC grievance procedure prior to asserting claims against Dr. Kimber in federal court, his claims against him are unexhausted and must be dismissed, without prejudice, pursuant to § 1997e(a).[3]

An identical conclusion is compelled with respect to Doctors Baddick, Rowe and Kaufer, as well as Nurse Pollock. Plaintiff's initial grievance, # 0057-97, was filed against "Dr. Mohadjerin and the Wexford Health Group." (Complaint, Ex. "B", p. 1.) As previously noted, Plaintiff requested that Dr. Mohadjerin be removed as his treating physician and be replaced by Doctor Reiners or Aranenda. The Complaint did not mention any of the remaining Wexford Defendants by name, and did not seek any other relief.

---

[2] It is additionally noted that in May, 2001, Plaintiff, by his own admission, initiated a grievance against Kimber regarding the rejection of his request to be transferred to the University of Pittsburgh in order to be evaluated by a liver specialist. (See Dkt. Entry # 45, Exhibit "C".) Chimenti's action undermines his apparent argument that he felt that it was unnecessary to seek administrative relief against Kimber.

[3] A discussion regarding Kimber's alternative argument that Chimenti failed to allege any facts which could support a deliberate indifference claim is thus unnecessary.

Plaintiff's second grievance, No. 0037-99, filed February 10, 1999, was "lodged against SCI-H, Medical Dept., Dr. Mohadjerin, Wexford Health Sources, Inc. and the DOC."(Complaint, Ex. "I", p. 1.) Chimenti asserted that he had not been provided with Rebetron therapy in a timely fashion and requested that he be provided with said treatment. Once again, with the exception of Dr. Mohadjerin, the grievance did not mention any of the remaining Wexford Defendants by name, nor were there any discernible claims asserted against those individuals.

Since Baddick, Rowe, Kaufer, and Pollock were not named or mentioned in either of the administrative grievances initiated by Chimenti, the instant claims asserted against them have not been exhausted. The mere inclusion of the Wexford Group in both grievances is not enough to show that Chimenti was complaining of discrete instances of medical treatment relative to any of these defendants. Moreover, his complaint shows that none of these defendants had more than a passing or tangential connection with Chimenti's medical care. For example, Nurse Pollock's connection to Chimenti appears to have been restricted to answering letters he wrote to Dr. Kaufer in the Fall of 1997.[4] Under these circumstances, dismissal of Chimenti's claims against these defendants for failure to exhaust administrative

---

[4] A review of the complaint reveals that Plaintiff states that he sent Dr. Kaufer two letters during October, 1997. (See id. at ¶ 32-3), and Exhibits "F"& "G.") His complaint maintains that Pollock denied him treatment in a November 1997 response to the aforementioned October letters. (See id. at ¶ 35, and Exhibit "H.") Finally, Plaintiff claims that Kaufer and Rowe acted improperly in responding to two referrals made by Doctor Mohadjerin in June or July of 1997. (See id. at ¶ 28.)

10

remedies is warranted.

The fact that Chimenti pursued two separate grievances against Dr. Mohadjerin does not necessarily satisfy the exhaustion requirement. The Third Circuit, in an unreported decision, has suggested that an inmate may not pursue a claim for monetary relief when such a claim was not pursued administratively. See Geisler v. Hoffman, Civil No. 99-1971, slip op. at 4 (3d Cir. Sept. 12, 2000). A learned member of this Court, relying upon Geisler, has held that an inmate plaintiff's failure to seek monetary damages in prison grievance proceedings precluded the inmate from seeking such relief in a civil rights action. See Laird v. Pennsylvania Department of Corrections, Civil No. 3:CV-00-1039, slip op. at 3 (M.D. Pa. Sept. 26, 2001 (Nealon, J.).)

Chimenti did not include a request for monetary damages in his administrative complaints. Moreover, he did not seek a transfer to another institution in those complaints. Thus, Chimenti's claims against Dr. Mohadjerin for monetary and equitable relief would appear to be foreclosed as a consequence of his failure to seek such relief through the DOC grievance process.[5] Even if the exhaustion requirement had been satisfied as to Dr. Mohadjerin, however, Chimenti has not presented a viable claim against him.

---

[5] It appears that Dr. Mohadjerin is no longer employed as the Medical Director for SCI-Huntington by the Wexford Group. Under these circumstances, the equitable relief sought by Chimenti in this case could not be awarded, at least insofar as Dr. Mohadjerin is concerned.

11

### B. The Claims Against Dr. Mohadjerin

Dr. Mohadjerin asserts that since Plaintiff acknowledges that he was provided with extensive treatment, his complaint "merely establishes a disagreement between an inmate and medical professionals with respect to the appropriate course of treatment," (Dkt. Entry # 34, page 14.) The remaining Wexford Defendant concludes that such disagreement does not rise to the level of a viable Eighth Amendment claim.

As recognized in Estelle v. Gamble, 429 U.S. 97 (1976), the government has an "obligation to provide medical care for those whom it is punishing by incarceration." Id. at 103. A constitutional violation, however, does not arise unless there is "deliberate indifference to serious medical needs of prisoners" which constitutes "unnecessary and wanton infliction of pain." Id. at 104 (citation omitted). The proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. Where a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). It is true, however, that if inadequate

12

treatment results simply from an error in medical judgment, there is no constitutional violation. See id.

After being diagnosed with Hepatitis C in 1991, numerous physicians, including specialists, provided Chimenti with varied treatment. Shortly after assuming his duties at SCI-Huntingdon, Doctor Mohadjerin met with Chimenti in January, 1997 and thereafter became involved in his treatment. In May, 1998, Doctors Gaugler (a non-defendant Gastroenterologist) and Mohadjerin disagreed as to whether Plaintiff should both remain on, and be provided with increased Interferon therapy. (See Dkt. Entry # 1, ¶ 46.) During that same month, Plaintiff alleges that Doctor Mohadjerin told him that a new treatment, Rebetron therapy,[6] was not yet available because it was awaiting approval by the Food and Drug Administration (FDA). Moreover, said approval was required before "the plaintiff would be treated in any fashion."( Id. at ¶ 49.) The following month the FDA issued its approval. (See id. ) That same month, Medical Director Mohadjerin allegedly told Chimenti that before "plaintiff could receive the new therapy" a protocol for treatment between Wexford and the DOC had to be established. (Id. at ¶ 52.) Plaintiff notes that a protocol for Rebetron therapy was established by the Center for Disease Control in October, 1998. (See id. at ¶ 64.) In addition, Mohadjerin referred Chimenti to Dr. Gaugler in November of 1998. An agreement regarding the Rebetron protocol was

---

[6] Plaintiff describes Rebetron therapy as being a combination of Interferon and Ribavirin. (See Dkt. Entry # 1, ¶ 49.)

13

allegedly reached by January 1, 1999.

However, in February, 1999, Plaintiff claims that Dr. Mohadjerin informed him that he still could not receive Rebetron therapy because the "DOC had backed out of protocol negotiations with Wexford." (Dkt. Entry #1, ¶ 55.) Finally, some twenty-seven (27) months after the FDA issued its approval, Plaintiff began his Rebetron therapy on June 26, 2000. This therapy continued until Dr. Kimber replaced Mohadjerin as the prison's Medical Director. (Id. at ¶ 69-70.)

There are no allegations that the remaining Wexford Defendant, Dr. Mohadjerin, had personal involvement in any delays during the FDA's approval process or the protocol negotiations between the DOC and Wexford. All of the Plaintiff's other allegations concerning Mohadjerin are based on decisions made by that Defendant with respect to the course of Chimenti's treatment. At best, those claims represent disagreement between Plaintiff and Dr. Mohadjerin with respect to Chimenti's treatment. Since the record demonstrates that Chimenti has been provided with ongoing treatment during his confinement at SCI-Huntingdon, under the standards announced in Estelle and Farmer, the allegations asserted against Mohadjerin are insufficient for purposes of setting forth a viable claim of deliberate indifference.[7]

---

[7] Dr. Mohadjerin also asserts that the claims raised against him are limited by the applicable statute of limitations to those matters that occurred within two (2) years of the filing of the complaint in February of 2001. Plaintiff counters that the alleged deliberate indifference by
(continued...)

14

## C. The Claims Against the Commonwealth Defendants

The Commonwealth Defendants consist of three non-medical officials: Secretary Horn, Chief Hearing Examiner Bitner and Superintendent Frank, and two members of the SCI-Huntingdon medical staff, Nurses Yarger and Everhart. Collectively, they seek dismissal on the basis that there are no allegations that they were personally involved in any constitutional misconduct and Plaintiff's disagreements over the treatment he received are not actionable under § 1983.

Each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.

---

[7](...continued)
Mohadjerin was part of a continuing pattern of constitutional misconduct enabling him to recover for matters that occurred more than 2 years before this action was brought. In addition, included in Plaintiff's second grievance, No. 0037-99, are allegations which pre-date February 1, 1999. It is unclear whether the limitations period as to such matters should be tolled while administrative processes are being pursued. Dr. Mohadjerin's counsel has not addressed either the continuing wrong theory or the tolling question. Consequently, a proper determination as to the merits of his statute of limitations argument cannot be made at this time.

Rode, 845 F.2d at 1207.

On April 27, 1997, Nurse Everhart responded to a letter sent by the Plaintiff to Dr. Mohadjerin. (Complaint, Ex. "A".)  In her response, Everhart noted that there was no cure for hepatitis and that Dr. Mohadjerin had concluded that "the side effects of providing interferon outweigh the treatment itself." ( Id. ) During that same month, Chimenti filed his initial inmate grievance.  The grievance, which requested that either Doctor Rieners or Dr. Aranenda replace Dr. Mohadjerin, was initially denied by Nurse Yarger on May 1, 1997.  Subsequent unsuccessful appeals to Superintendent Frank and Commissioner Horn followed. (See Complaint Exs. "D" and "E".)

As a result of the alleged breakdown in protocol negotiations between Wexford and the DOC,  Plaintiff initiating a second grievance, No. 0037-99, asserting that he was being treated unjustly because inmates at other correctional facilities were being provided with Rebetron treatment. See id. at Exhibit I. Nurse Yarger provided an initial response to the grievance on February 6, 1999, informing Chimenti that there was no DOC policy instructing DOC medical vendors not to provide treatment for hepatis disorders and that the vendors had been directed to provide appropriate and adequate care when necessary. (See id. at Exhibit "J".)  Plaintiff unsuccessfully appealed Nurse Yarger's decision to both Superintendent Frank and Chief Hearing Examiner Bitner.  Plaintiff's complaint concludes that the Commonwealth Defendants,

by failing to act on his internal complaints and administrative grievances, were directly involved in actions which purportedly allowed his hepatitis to go untreated for a period of twenty-seven (27) months beginning in June, 2000.

The Court of Appeals for the Third Circuit in <u>Durmer</u> established that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff. None of the remaining Commonwealth Defendants is a physician. Furthermore, the record of this action clearly demonstrates that during all relevant periods Plaintiff was under the care of a physician. In February 1999, Doctor Mohadjerin told Chimenti that the protocol negotiations between the DOC and Wexford had broken down. There are no allegations which could support an inference that any of the remaining Commonwealth Defendants were involved in those protocol negotiations regarding the Rebetron therapy or that they deliberately delayed the implementation of the Rebetron treatment for non-medical reasons. The mere fact that the Commonwealth Defendants responded to Chimenti's grievances does not support an inference that they were deliberately indifferent to his medical needs. They were entitled to rely upon the advice of the health care professionals. There is no allegation that any of the Commonwealth Defendants improperly interfered with the health care professionals or adversely influenced the care and treatment Chimenti received. Consequently, under the standards announced in <u>Durmer</u>, there is no basis for an Eighth Amendment claim against any of the Commonwealth

17

Defendants.[8]

**CONCLUSION**

Since Chimenti failed to pursue an administrative grievance against Drs. Kimber, Kaufer, Baddick and Rowe, as well as Nurse Pollock, the claims against those Defendants must be dismissed without prejudice pursuant to § 1997e(a).  Plaintiff's claims against Dr. Mohadjerin and the Commonwealth Defendants fail to assert a viable claim of deliberate indifference.  An appropriate Order will follow.

                                                                        */s/ Thomas I. Vanaskie*
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

DATED: MARCH 15, 2002

---

[8] Moreover, there is no constitutional right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 443 U.S. 119, 137-38 (1977)(Burger, C.J., concurring)("I do not suggest that the [grievance] procedures are constitutionally mandated."). Accordingly, to the extent Plaintiff contends that the Commonwealth Defendants violated his constitutional rights by not taking corrective action on his medical complaints, said allegations fail to state a claim upon which relief may be granted. See Johnson v. Harding, Civil No. 3:CV-99-977, slip op. at p. 8 (Feb. 29, 2000)(Vanaskie, C.J.).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SALVATORE CHIMENTI, :
:
    Plaintiff, :
:
v. : CIVIL NO. 3:CV-01-0273
:
ROGER KIMBER, ET AL., : (Chief Judge Vanaskie)
:
    Defendants. :

FILED
SCRANTON
MAR 1 5 2002
PER_____
DEPUTY CLERK

## ORDER

NOW, THIS 15th DAY OF MARCH, 2002, for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT**:

1. The Wexford Defendants' motion to dismiss (Dkt. Entry # 29) is **GRANTED.** The claims against Baddick, Rowe, Kaufer and Pollock are dismissed without prejudice for failure to exhaust administrative remedies. The claim asserted against Dr. Mohadjerin is dismissed for failure to state a claim upon which relief may be granted.

2. Defendant Roger Kimber M.D.'s motion to dismiss (Dkt Entry # 30) is **GRANTED**. The claims against Kimber are dismissed without prejudice for failure to exhaust administrative remedies

3. The Commonwealth Defendants' motion to dismiss (Dkt. Entry # 32) is **GRANTED**. The claims against the Commonwealth Defendants are dismissed for failure to state a claim upon which relief may be granted.

4. The Clerk of Court is directed to **CLOSE** the case.

_____
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

O:\PRO_SE\VAN_WIE\OPINIONS\CHIMENTI.MTDS1