IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Kim Smith

    Plaintiff

        v.

James Morgan, et al.,

    Defendants

**FILED**
**SCRANTON**

JUN 0 6 2003

PER _____

DEPUTY CLERK

: No. 1:01-0817

:

:

:(Judge William W. Caldwell)

:

:

:(Magistrate Judge Malachy E. Mannion)

:

:

## PLAINTIFF'S BRIEF IN SUPPORT OF OBJECTION

**AND NOW**, comes Kim Smith a lay person not lettered in legal matters and without the aid of counsel, prays this Honorable Court applies a less stringent standard to this pro-se objection and brief in support of, avers the following:

## STATEMENT OF THE CASE

A.    Plaintiff Kim Smith is an inmate at State Correctional Institution Coal Township. The Department of Correction Defendants are as related to Smith's non-medical claims include: (1) George Weaver, (2) Kathy Allen; (3) Patricia Yarger; (4) James Morgan; (5) Sharon Burks; (6) Robyn Johns, Ph.D.; (7) Hazel Zimmerman; (8) Frank Gillis; (9) Harry Ersek; (10) Gerald Whysong; (11) Nacy Ambrose; (12) Lynn Wolfgang; (13) Mary Bernas; (14) Timothy Jordan; (15) John Learn; (16) Wilma Sewell; (17) Angela Zimmermand; (18) Kandis Dascani; (19) Defendant Voeckler; (20) C.O. Patuzak; (21) Lt. Weltz; (22) Hearing Examiner Norris; (23) Captain Gleeny; (24) Lt. Gooler. Smith also names as Defendants Wexford Health Sources, Inc. and Dr. Ronald Long who is represented by James D. Young Esq.

B.    Relevant Procedural History

Smith initiated this action with the filing of a complaint and application for in

forma apuperis status May 10, 2001. The Court by order dated June 6, 2001, directed Smith to amend his complaint on or before July 6, 2001. On June 18, 2001 Smith filed a Motion for Discovery to compel the Department of Correction to produce his grievance history so that he could prove to the Court he exhausted administrative remedies, and show a pattern of abuse in which he was being subjected to and that this abuse was supported by the department of corrections. On November 6, 2001 the Correction Defendants waived their right to reply to Smith's amended complaint pursuant to 42 U.S.C. § 1997(e) as the department of correction has failed to resolve any of the grievances and have since supported the abuse of its employee's, as under 42 U.S.C.§ 1997 (c)(1)(2)(b)(1)(A)(i)(ii)(iii)(B)(2)(c)(d) intervention of the Attorney General of the United States is requested for the deprivation of rights and flagrant condition which deprive person residing in institutions of any rights, privileges, or immunities secured or protected by the Constitution or the laws of the United States causing them to suffer grievous harm and the Attorney General has reasonable cause to believe such deprivation is pursuant to a pattern or practice of resistance to the full enjoyment of such rights, privileges, or immunities, the Attorney General, for or in the name of the United States, may intervene in such action upon motion by the Attorney General. And under 42 U.S.C. 1997 (b) (a)(1)(A)(B)(C)(2)(A)(B)(C)(3)(b), Certification by the Attorney General is requested. This request comes on the onslot of a inmate Hawkins who had a 800 blood sugar level and institutional medical staff failed to control this sugar level resulting in this inmate having a heart attack as for a 12 hour period his blood sugar has not and was not put under control of normal limits. The fact that medical staff failed to hospitalize this inmate was part of the reason for his death, as a inmate with such a high blood sugar level should have been placed in the hospital and monitor hourly, and failure to do this own duty can be said the be the cause of this inmates death, Under 42 1997 (h) Notice is hereby given to Federal Department. Correction Defendants have failed to provide adequate discovery and then go on to place a standard for which plaintiff must apply to obtain records in this matter. At no time was Smith provided with adequate time to review the record. As a lay person how could learned professional exspect a lay person to review some 1,700 or more pages in a 4 hour period when they them selves could not and how many enlargement of time were granted for the Correction Defendants to review the record and submit their motion for summary judgment, and they claim this was in a good faith effort, the only good faith effort that appears is the effort to deprive or deny plaintiff his chance to obtain material fact to support his claim, as plaintiff still has not completed his discovery of the records, and in the interest of justice he should be permitted such a right.

C.      That this complaint was filed base on a number of violation of Smith's rights and deprivation under the color of law. That the defendants knowingly and intentionally inflicted harm and a wanton desire to punish without provacation or reason to do so, because Smith is an inmate does not give the D.O.C. the authority to abuse its power and deny Smith the necessities that are required under law and adequate health care. And it can not be left to the defendants to determine what is to be considered health care that is equal to the level of health care that Smith would have gotten if he was not incarcerated. That the defendants knowingly and intentionally with deliberate indifference deprive Smith health care and interferred with proscribed health care. Namely Hep C treatment, when terminating, it is Smith under standing that once treatment starts it to last 6 month, at no time was Smith advised after 120 days he would have been terminated if his viral load did not drop 50 %. The D.O.C. protocol states that a inmate will be treated for 6 months an at that time a blood test would be taken and if viral load did not drop 50 % other treatment would be considered. At no time was Smith advised that this treatment would worsen this condition. That Smith sustained a injury to his liver for the unconstitutional act of the D.O.C. employees in the administration of Hep. C treatment in a manner not consistent with policy or practice. When Smith started treatment his viral load was 288,000, at the time he was terminated his viral load was 202,000 showing a positive response, and a drop in viral load of 30 % if Smith would have been given this treatment for the full 6 month then he may have reached the requirements under D.O.C. protocol. But his treatment was interferred and terminated by Dr. Kort stating a non-existent policy, and this act was supported by Ms. Sewell, as both of these parties knew or should have known that the D.O.C. protocol for this type of treatment was for 6 months, not 120 days and when they terminated they were in vioation of policy and did so with the intent to deprive Smith of proscribed health care and this act was more then a difference of opinion. A grievance was filed and treatment reinstated, after 90 days Smith viral load from this new treatment went from 202,000 to 528,000 to over a 1,000,000 which shows a pattern from a once positive response. If Smith was getting the same treatment that he had first gotten why did this condition worsen. At no time was Smith advised that this treatment could make the condition worse, or enhance and worsen the condition. After Smith viral load went over 1,000,000 treatment was terminated, showing Smith sustained a injury to his liver form the act of D.O.C. staff and the unconstitutional termination of this treatment based on a non-existent D.O.C. protocol.

That after seeing a Dr. Adamson who increased Smith diabetic medication on med-

line-3 and at not time did this Dr. instruct Nurse Bernas to cut Smith diabetic medication on med-line-1, nor was this act supported by the Dr. orders. Then after showing Nurse Bernas the Dr. orders she stated that this is the way things are done around here. The Nurses Ambrose, Wolfgang, Bernas, as well as C.O. Learn, Lt. Jordon, Lt. Gooler knowingly and intentionally intered into a conspiracy to support the act of Nurse Bernas in the cutting of diabetic medication without a D-'s orders, and the interferring in Smith proscribed medication and health care. Then Lt. Jordon, and Lt. Gooler knowing and intentionally with deliberate indifference punished Smith for calling into question the act of Nurse Bernas when she knowingly and intentionally cut Smith's diabetic medication and interffered with proscribed health care without reason. That a call came into medical inmate down in chow hall and 2 nurses went with a wheel chair to care for this inmate and about 5 minutes later Nurse Bernas leaves with a wheel chair to go get the same inmate that 2 nurses had already went to get with a wheel chair. That Nurse Bernas and Lt. Jorden knowingly and intentionally conspired to deprive inmate Smith of proscribed health care, and set into act a punishment for Smith because he question nurse Bernas as to by whom authority did she cut Smith medication on med-line- 1 when no Doctor ordered such. Lt. Jordon issued a misconduct and then goes on to falsify record to claim that Smith had a bad attitude, which is not a punishable offense, and then goes on to claim a behavior problem, and known of this is supported by the tape taken on the day in question. To support a punishment their must be some form of evidence and the D.O.C. has not provided any level of material fact to support its claim of a behavior or attitude to suport their subjecting Smith to cruel punishment.

The D.O.C. and the defendants have failed to provide or dispute any of Smith claim and of the condition of confinement, and the interferring of proscribed health care, when these parties knowingly and intentionally falsified record and made false claims that Smith refused his health care and signed several refusal forms. All the are doing here is making a claim with no material evidence to support such a claim and Smith was not provided with any signed refusal forms and all the did was made a claim with no material fact to support the granting of summary judgement. They make a false claim to a material fact that Smith signed several refusal forms for his health care nemely the C-PaP devise, if he did in fact signed these refusals then the defendants should be required to produce them.

Then condition of confinement is connected here when their was no power in the RHU

and their has not been any power in the RHU in all state institution or the D.O.C. and this has been a working process, or a violation of inmates rights who have been housed in the RHU when their was no power in the cell.  This act was and still is being knowingly and intentionally done and depriving inmates of basic needs, ssuch as power in cell.  The Defendants have not submitted any material fact to this claim, and act as if this is not taking place in all of the  D.O.C.'S RHU.  Since the defendant have fail to produce any material fact to dispute this claim show they knew or should have known of this act and have failed to correct it but enforced this level of abuse and deprivation of the condition of confinement.

That Smith was denied the right to have his legal mail leave the institution, and then after a number of time and being rejected by the institutional accounting office who refused to place Smith account in the red for legal postage for $.34 to met a court file date, an inmate granted Smith the right to use his postage to mail out his legal mail and signed and addressed the letter for Smith to mail out his legal mail.  That Edward Mason and the Attorney General's office entered into a conspiracy to punsish Smith in his litigational efforts.  That the Attorney General's Office contacted Edward Mason, who in turned issued a misconduct.  The center of this issue is why would Smith use another inmate postage if he was granted his right under D.O.C. policy and under the law to place his account in the red for legal postage.  If Smith was granted this right then he would not have askked another inmate for his help getrting his legal mail out of the institution.  As their is no justification for this denial other then an attempt to hinder Smith access to the court depriving him of a federal protected right and then to force Smith to make or do such acts and then to punish him for such and inter into a conspiracy to punish and inflict cruel punishment and 8 th amendment violation.  As their is standing law and policy that an inmate can place his account in the red for x amount of funds for leagl postage.  Why was Smith denied this right, and issued a misconduct.  If Smith was not denied such then he would not have had to ask another inmate for his help to file legal papers.  It also was cruel punishment by Norris to place Smith in the hole for 30 days based on a claim that the attorney gerneral told them to do so.  The Correction defendant have not submitted a material fact to dispute this claim.

C.O. Ersek when he ordered Smith to return to medical and sign a refusal form or he would issue a misconduct for Smith refusing to obey an order.  Smith should not be forced or punished to sign a refusal or for treatment when he was not refusing

treatment. But being denied his proscribed treatment by C.O. ersek who was instructed by medical staff to turn Smith devise over to him and return him to medical, which he refused to do, and as long as he was interferring with Smith health care, it was cruel punishment for him to order Smith to sign a refusal form. Smith refused and was given a misconduct, and it was also cruel punishment by Morris to impose a scantion upon Smith and refuse him his witnesses namely a Nurse Baler  who instructed C.O. Ersek to give Smith his devise and return him to medical. This act has been since supported by the D.O.C. the werden at S.C.I.S., Sharon Burks, and C. Weaver. And the Correction defendants have failed to submitt a material fact to dispute this claim, and Smith is not obligated to be forced to sign a refusal form or obey an order by C.O. Ersek when in fact he was not refusing any health care, and it is cruel punishment to subject Smith to this level of abuse.

That while on the tolet with a curtesy curtain up Lt. Waltz knowingly and intentionally with deliberate indifference sexual harrassed Smith while he was on the tolet. That Smith told them if they could not wait until he was done on the tolet to open the door and take down the curtain. They did and after they did they stood their with Smith door wide open yelling at him for 10 to 15 minutes while he was sitting on the tolet. And it became sexual when one of the C.O. stated let me get a better look and move around the Lt. to get a better look at Smith on the tolet, and to justify this act they issued a misconduct. The bottom line and from what it appears Smith was punished for using the tolet, and to justify this level of abuse and cruel punishment and sexual harrassment Smith was issued a misconduct. And the defendant have failed to produce any level of material fact to dispute this claim. In fact they have failed to file any level of material fact that would dispute Smith claim, but reaches for a legal terminalogy that in its self and as a matter of law would not support the defendants summary judgment. What the defendant have done is made alot of claims, and if true the claims with in the exhausted grievance were true, the link created by the D.O.C. connecting all parties to the act in question is that they knew of these abuses threw the grievances and failed to correct any of these conditions or abuses, and have since supported this level of abuse, which show they knew and were a part of the deprivation and cruel punishment, and the nexus is their and present in all of the defendants exhibits that violation have taken place and they have failed to correct them, and that they knew and refused to correct them and they took an affirmative act to support this abuse. And this issue should be set to go before the jury for trial as their are undisputed fact to Smith claim that the defendants have not dispute.

Inquiry on Motion for Summary Judgment is whether evidence presented  sufficient disagreement to require submission to a jury or whether it is so one sided that one party must pervail as a matter of law.  Riedel v. Acutoteh of Colorado S.D. Ohio 1991 773 F. Supp. 1055, see Also Sparks v. Goodyear Atomic Corp. S.D. Ohio 773, F. Supp. 1043.  As the defendants state regarding Hep C protocol by the D.O.C. even if Smith viral load dropped 30 % this treatment is to last one year, and at no time was Smith instructed that in less then 120 days if his viral load had no dropped 50 % he would be terminated. All the evidence submitted by the defendants falls short of the requirement for the granting of the summary judgment.  Even though they state a protocol they never state the require standards for treatment, and if the D.O.C. had a protocol it is a material fact that it is not in writing that a inmate  who's viral load did  not drop 50 % in less then 120 days would be terminated from treatment.  This is the same with power in the cell and the condition of this confinement and the evidence submitted to dispute Smith's claims falls short once again.   Object of motion for summary judgment is to discover whether one side has no real support for it verson of the facts, not to encourage procedural exercise rendered impotent by impossible  burden of proof, Horwitz v. Sprague D.C. N.Y. 1980 440 F. Supp. 1346.  As it is Smith was denied his discovery because he did not have the funds requested by the D.O.C. obtain discovery, nor was he granted enough time to review the records, knowing this the Defendants now claim an issue of material fact to support the granting of summary judgment, and have failed as well as Wexford Health as they have not adequately disputed any of Smith's claims with sound supportive evidence but beat around the fact with learned professionals, and have not presented enough evidence to dispute the facts.  As for Hep. C treatment what does the D.O.C. protocol state, and the issue about power, as Smith lived in these cell in RHU at S.C.I.S. for 7 month in which their was no power in the plug sockets, and their is a link require to hold all parties accountable for the deprivation of civil rights and the condition of confinement, as they knew their was no power in these cell and failed to correct it. If need be I can get over 100 affidavits from inmates who have served time n the RHU to support his claim.  But since the defendants have fallen short in this dispute and supportive evidence their is no need at this stage.  This goes for the same for Smith's shoulder, back, left knee  cyst, sores on body and his sleep apena, and the claim that he signed several refusal forms.  Since the defendants have failed to produce these signed refusal forms is a showing of their failure to present evidence, and that they have made a false claim once again to the fact that they have evidence to dispute Smith's claim but have failed to produce such, more over if they do produce such, it is requested to have the hand writing examined against Smith's.  Since all paper work submitted by the

defendants have not produced these signed refusal forms in which the claim to be the reason for the denial of this health care, they can not now come and submit such. And all documents presented to Smith by the D.O.C. did not have any one of these claimed signed refusals. If they had such they should have submitted such as material fact to dispute Smith's claim, because they have not is a clear showing that they never had such claimed signed refusals. And this act goes on the sufficiency of the material fact that they claim to have to support the granting of summary judgment. And any evidence that they have submitted based on the claim of the signed refusals, should be seen throw the same eyes as sufficiency of evidence, which is none to adequately dispute Smith's claim. As the defendants have made alot of claims and have failed to prove or dispute Smith's claim with any sound evidence. On the other have Smith claims are supported by the number of grievances he filed and the denial of these request of the correction of the condition, or deprivation of staff, or the abuse, denial of health care, and 8 th. amendment violation, were all supported by the D.O.C. and they knew of such and failed to correct any of these condition or abuses. These act were well stated in Smith's grievances, and the defendants have failed to submit any adequate material fact to dispute any of Smith's claims or any of the grievances, and all they did was support this level and form of abuse, by making false claims. The link here is all parties such as Dr. Long, Sharon Burks, Weaver, Ms. H. Baker, Mr. Carpll, have a link required for this action as they all made false claims as to Smith signing several refusal to justify the denial of health care and the D.O.C. supported this false claim. If Smith signed these refusals then its the defendants duty to produce the original signature which they should have to dispute this claim and if they can not produce such, then these parties knowingly and intentionally  entered into a conspiracy with deliberate intent to deprive Smith of prescribed health care, and made false claims to support this abuse, and the defendants expect this court to grant summary judgment in this case based on the fact that Smith is an inmate and has no right to equal protection of law, and to be given health care to a quality and standard of that which he would get if in the community. If Smith was given such health care he would not have had to endure pain in his right shoulder for years when moving it and laying down.

In the earlier case interpreting the 8 th. amendment, the Supreme Court found on prohibiting torture and other barbarous methods of punishment See William v. Utah 96 U.S. 130 (1879). The Supreme Court has interpreted the words cruel and unusual as prohibiting punishment which although not physically barbarous, involved the unnecessary and wanton infliction of pain, such as shoulder, left knee, lower back, sores on body

that wont heal, sleep apena, the denial of health care because their was no power to use or plug the devise into, the denial of health care based on false claim that Smith sign several refusal forms. The being ordered to sign a refusal form that if Smith did not he would be punished for disobeying C.O. Ersek order, The Hep.

C treatment and the termination based on a non-existent D.O.C. protocol that the termination of treatment in less then 120 days was instrument in Smith sustaining a injury to his liver. As it is Smith started treatment Sept. 2000 and was told this treatment would last for a year, that in 6 months a blood test would be taken and at that time if their was not a 50 % drop in Smith viral load then other treatment would be considered or he would be terminated. At no time was Smith instructed that in less then 120 days if his viral load did not drop 50 % he would be terminated. Then to have D.O.C. medical staff to claim that a 30 % drop in viral load in less then 120 days was not a positive response, then to go on to state that Smith was not responsive that is why he was terminated goes against this protocol that is being claimed. If Smith was not responsive, and if the Staff at S.C.I.C. did not violate D.O.C. protocol why did the D.O.C. direct these parties to give Smith this treatment back. When treatment was given back what ever they were injecting Smith with made the condition worsen. At no time was Smith told that from this treatment, that was to stop the condition from worsening, would cause the condition to worsen. As it is in Sept. 2000 Smith viral load was 288,000, and when terminated less then 120 days later viral load was 202,000, when given treatment back Smith viral load went from 202,000 to 528,000, to over a 1,000,000 when his last blood test was taken October

2002, show Smith sustained injury to his liver, and the link to all parties is that they claimed a non-existent D.O.C. protocol for the reason to deny this health care. That the premature termination is and was the reason Smith sustained injury to his liver which more then likely cut his life spand. For over 9 years Smith has not put s substance in his body that would damage his liver in this manner other then the treatment that he was given. Smith has since been deny the right to review medical records and blood test by Ms. Dascaini for Smith material fact of injury sustained as well as all requested documents he has since been denied. See Gregg v. George 428

U.S. 153, 173, (1976) and these act are incompetible with the evolving standards of decency that mark the progress if a maturing society, Trop v. Dullas 356 U.S. 86, 101

(1958) made applicable to the states in Robinson v. Calif. 370 U.S. 600 (1964) the 8 th. amendment's ban against cruel punishment serves as the primary source of constitutional protection for prisoners subject to inhumane condition under which he is confine and subject to scrunity under the 8th amendment.

Under Fed. Rule Civ. Rule 56(d) it is requested that the Court examine the record and obtain or photo the cell in RHU, at S.C.I.S. and take statement of any number of inmate that were housed in this unit from June, 2000 until January 2001. Section (e) any action or failure to act when requesting health care, even though Smith is a lay person from experiences in past health care condition when he got adequate health care for his condition such as back, knee, skin, left shoulder, Smith as a lay person can see the seriousness of the condition and the need for treatment, also coupled with the pain he must endure. Because Smith is a inmate it does not give the Department of Correction or the Health Care providers the authority to step outside of the norms as for adequate health care, and it is hard to believe that standard of health care that Smith and other inmates get, is equal to health care if they were on the streets, if this is the case why did Mr. Hawkins have to die when he had blood sugar of 800 and medical staff failed in their professional conduct to adequately care for this person. To see a health care condition and refuse or fail to adequately treat such is an 8 th. amendment violation and a civil rights violation which is done under the color of law, which is very simple and clear from the amount of grievances Smith had to file and the only issue that was remedied was the Hep. C treatment that resulted in Smith sustaining injury to his liver. That because of the termination based on a non-existent D.O.C. policy this act is the resulting factor in which Smith sustained injury to his liver, and this fact is undisputed by the defendants. And Smith is being denied a copy of his blood test by the defendants, and it is respectfully requested this Court issue an order and have the defendants turn over Smith's blood test from January 2000, until October 2002, also a copy of this claimed D.O.C. protocol for Hep. C treatment and the standard to be applied. And copies of the original signed refusal form for the C-PaP devise that the defendants claimed Smith signed for reason of denying Smith this health care. If they claimed it present it as material fact, failure to do so shows that the defendants have made alot of claims of a material fact and have not presented such. I would believe as material fact these signed refusal forms would be important. And the defendants can not claim to have such and not present it to the court. In doing this act which it is clear they are doing they exspect the court to support the abuse of these staff and deny inmates to proscribed health care under law and not question the condition of confinement. If this court supports this level of abuse and false claim by the defendants it would deny a inmate his last level of law for abuses and injury sustained while and during incarceration, and cause this level and form of abuse to continue. A fair measure is to be given and what is given inmates fall short of any standard required by law, and threw the grievance process the D.O.C. supports this level of abuse and will go on to

make false statements of a material fact and not submit any evidence to support their claim.  See Wilson 111 Sct. at 2326 wantonness dose not have a fixed meaning but must be determined with due regard for differences in the kind of conduct against which an 8 th. amendment objection is lodge.  As in the defendants motion the differences has no fixed meaning here they claimed to have signed refusal forms, and have failed to produce such, and this act goes to the fruits doctrine, as they poisoned the tree by making a false claim.  Smith was issued a misconduct by C.O. Ersek because he would not sign a refusal form, now the defendants claim to have signed refusal forms, and have failed to produce them.  Their should be laws against such act, more over this shows that standard and level in which the defendants are willing to go to support their levels of abuse.

In regards to overall prison condition, however prisoners need only prove that the action of prison officials constitute deliberate indifference.  Thus the proper analysis of 8 th amendment challenges to prison condition involve both an objective and subjective componant the condition must be objectively serious, and the officials responsible for the condition must be subjectively culpable, that the culpability comes when the defendants tried to cover up the that the terminated the power in the RHU cells plug sockets. see Attached affidavits by inmates who have been house in the RHU in this institution, and at S.C.I.S.


Justice Marshall reasoned that since incarceration denies prisoners the opportunity to provide for them selves  the goverment has an obligation to provide medical care for them id. at 103.  And plaintiff has alleged acts of omission sufficiently harmful to evidence deliberate indifference to serious medical needs, and if the condition causes pain it can be said to be serious. id at 106, See Etelle v. Gamble 429 U.S. 97 (1976).

In Estelle it is  required deliberate indifference on part of prison officials the subjective component and it requires the prisoners medical need to be serious the objective component, West v. Keve 571 F2d. 158, 161(3d Cir.1978); See Inmates of Allegheny County Jail v. Pierce 612 F2d 754, 763 (3d. Cir. 1979; serious medical need in general defining a serious medical need as one that has been diagnosed by a physician as requiring treatment on one that is so obvious that a lay person would easily recognize the necessity for the doctors attention.


The inquiry then turns to the subjective component which requires prisoners to show a sufficiently culpable state of mind on the part of responsible prison officials, Wilson v. Seiter 111 Sct. 2321, 2323, (1991) like Pa. Baker and the false claim that Smith signed a refusal for health care of his C-PaP devise, when the true fact is that their

is no signed refusal forms.  Smith was even given a misconduct by C.O. Ersek cause he would not sign a refusal form.  The degree of culpability however varies depending on the type of condition challenged.  And since this act has continued to be part and the reason for the denial of health care by the defendants.  See Wilson 111 Sct. 2326 wantonness does not have a fixed meaning but must be determined with due regard for differences in the kind of conduct against which an 8 th. amendment objection is lodged. In C.O. Ersek order for Smith to sign a refusal form, then the issue of a misconduct, and the punishment for not obeying order to sign a refusal form.  When in fact Smith was not refusing treatment but being denied such by this officer.  Like when Edward Mason refused to let Smith legal mail leave the institution, even for legal mail under D.O.C. policy Smith was still denied such.  When Smith asked Mr. Carr to use one of his envelopes Mr. Carr signed his name and permitted Smith to use this postage to get his legal mail out of the institution.  In this legal mail he informed the attorney general why this legal mail was coming to them in that manner, that Smith was being denied by Mr. Mason to let his legal mail leave the institution.  The attorney general called the institution and them and Mr. Mason conspired to punish Smith and issued a misconduct. Even after Mr. Carr informed the hearing examiner that he permitted Smith to use this postage and signed his name to the envelope Smith was still punished for seeking access to his litigational efforts by any means he could.  In as much Smith lost this case. In regards to overall prison condition, however prisoners need only prove that the action of prison officials constitution deliberate indifference.  Thus the proper analysis of 8 th  amendment challenges to prison condition involved both objective and subjective component,  the condition must be objectively serious, and officials responsible for the condition must be subjectively culpable.  The objective issue is that they knew and did not care and cut the power off in the RHU to stop inmates from using plug sockets to light smokes, with very little regard for inmate safety and condition to confinement, or if their would be a need for power if needed.  The subjective culpable act is when they failed to take act to correct this condition, with very little regard to inmate safety and with the intent to stop inmates from using plug sockets to light smokes, this act is objectively serious case it deprived health care, and its act was subjective to deprive inmates of their ability, and the use of the power for proscribed health care.

Smith is not at S.C.I.S. the acts that took place their are still part of and the continued reasoning for which he is being denied his health care.  Since the defendants have not produced any signed refusal forms to support the continued denial of this

health care is a clear showing of deliberate indifference, and it is knowingly and
intentionally being done based on a false claim of evidence to support this denial.
See Helling v. McKinney 113 Sct. 2475, 2480 (1993) ( the treatment a prisoner receives
in prison and the condition under which he is confined are subject to scrutiny under
the 8 th. amendment); Greff v. Georgia 428 U.S. 153, 173 (1976); Trop v. Dulles 356
U.S. 86, 101 (1958);  Robinson v. Clait. 370 U.S. 660 (1962).   Like the unwanton
infliction of pain in case of 2000 when a C.O. in PHU forced Smith face first into a
wall causing him to lose his upper left front tooth.


Repeated examples of abuse discloses a pattern of conduct by prison staff may add
up to deliberate indifference. Like the repeated claim that Smith signed refusal forms
for the reason to support their denial of health care.  Like C.O. Fruck ordering Smith
to sign a refusal form, when he was willfully acting in the deprivation of Smith health
care even after he was instructed by the medical department to turn the device over to
Smith.  Acting in abuse of his authority he refused such and ordered Smith to sign a
refusal form because Smith refused to do such he was punished.  Smith should not have
to comply with orders that he does not intend to refuse any treatment.  The face in the
wall and lose of front tooth, denial of medication like when a nurse disobeys a doctors
orders and cuts medication.  When being punished based on a false claim, as their was
no evidence on tape to support the placement of Smith in a hard cell, and subjecting
him to cruel punishment.  Their is a pattern of abuse when a inmate is on the toley and
can not cover window for privacy, but have a Lt. Metic and C.O. Patrick open his door
and take down the paper and then stand there and look at Smith while he is on the toley
for the period of time they stood in the door looking at Smith on the toley, and then
stating let me get a better look, developed into a level of sexual harrassment.  See
Magidla v. Peng 920 F.2d. 315, 322 ( 9th. Cir. 1990 ); Todaro v. Ward 565 F. 2d. 48,
52, (2nd. Cir. 1977); the abuse that appear if repeated may constitute deliberate
indifference if repeated.  Williams v. O'Leary 805 F. Supp. 634, 639 (N.D. Ill. 1992)
deliberate indifference could inferred from abuse and acts over a long period of time.
A pattern of similar instances presumptively indicates that prison administrators have
through their programs and procedures created an enviroment in which abuse is
unacceptably likely to follow their acts.  See Kelly v. McGinnis 899 F. 2d. 612, 616,
(7th. Cir. 1990), sometime it is demonstrated by acts or statements by prison personnel
directly showing indifferent or hostile attitudes toward prisoner care.  See Langley
v. Coughlin 715 F. Supp 522, 541.

The defendants can not deny a indigent person any phase of the procedure due to their proverty See Greffin v. Ill. 351 U.S. 12, 76 Sct. 585, 100 Led 2d. 891 (1956) as the defendants denied Smith his discovery under the standards of the law, and on their motion for summary judgment the come a claim a genuine issue of material fact, in which if record were reviewed would appear unfounded. And the defendants should be ordered to produce these signed refusal forms, and signeture should be compared.

Under this rule dealing with summary judgment , no margin exists for disposition of factual issue, on summary judgment procedure dose not serve as substitute for trial of a case; Frey v. Frankel C.A. Ka. 1966, 361 F2d.437. And summary judgment was not intended to and cannot deprive a litigant of right to a jury trial; Whitaker v. Coleman C.C.A Ala, 1940, 115 F2d. 305; Davis v. U.S. D. MD. 1993, 84 F. Supp 696. Whether evidence is viewed in light most favorable to nomoving party would allow a jury to return with a verdict for that party, while whether facts are material is determined by substantive law. Galling v. Washington Metro Area Transit Authority D.C 1994 866 F. Supp. 28; Bellamo v. United Arab Shippinh Co. E,D. N.Y. 1994, 863 F. Supp. 107; Boginis v. Marriott Ownership Resort Inc. E.D. Va. 1994, 855, F. Supp. 862 see 57 F3d. 1065.

Court reviews evidence on summary judgment under the substantive law and based on evidentary burdens that party will face at trial, on particular claim John Hancock Mt. Life Ins. Co. v. Weisman C.A. 10 (N.M.) 1994, 27 F3d. 500:  Marguin v. Flower Daniel Service Corp. E.D. La. 1996, 935 F. Supp. 847; Ray v. Continental Western Inc. Co. D. Nev. 1996 920 F. Supp. 1094.

Summary Judgement is harsh remedy that should be granted only when moving party has established his right to judgment with such clarity as not to give rise to controversey; International Ins. Co. v. Metro St. Louis Sewer Dist. E.D. Mo. 1996, 938 F. Supp. 568.

Even if standard of summary judgment rule are met court has discretion to deny motion for summary judgment if it believes that better cause would be to proceed to full trial. American Stone Diamond Inc. v. Loyds of London S.D. Tex. 1996, 934, F. Supp. 839. Courts responsibility on motion for summary judgment is not to resolved disputed issue of fact, but to determine whether their exist any genuine factual issue to be tried. Parasco v. Pacific Indem. Co. E.D. Pa. 1996, 920 F. Supp. 647, and their within

complaint to face a trial as all are entitled to when defendants have not submitted material fact of disputed issues to support the granting of summary judgment, and the defendants have fallen short.

Hence the plaintiff should as a matter of law have received if the state officials offer no other evidence, misuse of power processed by virtue of state law and made possible only because the wrong doer is clothed with authority of the state. U.S. v. Classic 313 U.S. 299, 326 (1941) act under the color of state law a defendant need not be an officer of the state, it is sufficient that he or she is a willful participant in joint activity with the state or its agentAlickes v. Hess & Co. 398 U.S. 144, 152 (1970); West v. Atkins 487 U.S. 42, 54-55 (1988), see Conner v. Donnelly 42 F2d. 220, 225 (4th. Cir. 1994); Humphries v. Various Fed. U.S. Is. Employee's 164 F3d. 936, 945 (5th. Cir. 1999), plaintiff claim for involuntary servitude and mistreatment while in detention that is being applied to inmates threw the employee's of the D.O.C. or contracted personel that is under the authority of the D.O.C. which prohibits certain treatment and condition for health care.

Therefore prison condition alone or in combination may deprive inmate of his minimal civilized measures of lifes necessities and thus violated the 8 th. amendment ban on cruel and unusual punishment. Like the claim of a non-existent behavior to support the abuse of placing Smith in a hard cell. And the order by C.O. Ersek to sign a refusal form, and then punishing Smith because he would no obey this order and sign a refusal form for health care that he was not refusing but being denied such by this officer. When a nurse takes it upon herself to cut medication and impose her own opinion to doctors orders, and then inlisting the help of staff to justify this level of abuse, and then for the D.O.C. to support this level and form of abuse. That these parties knew or should have known that prison condition and the acts of staff were unconstitutional, and unconstitutional condition coupled with the fact that all parties were aware they the grievances and failed to correct any of these issues. Farmer v. Brennan 114 Sct. 1970 (1994) see also 846 F2d. at 175. Owens 907 F2d. 418 (3rd. Cir. 1990) prison officials are subjectively culpable in the sense they exhibit deliberate indifference that this knowledge of harmful condition to plaintiff health care and his ability to use his health care devise and failed in their administrative, personal, and official capacity to correct this condition, and act on that knowledge to remedy the situation. As in the power plaiintiff made it known threw his grievances that their was no power in the cell to use the devise, to justify this they made false claim that

refused this health care and go on to claim that Smith signed several refusal forms, but the defendants has failed to produce these form, and consideration should be given to all of their claim of material fact as it fall short of any dispute to support the granting of summary judgment. As this relevant fact of evidence does not support a finding of summary judgment, as Smith is requesting a timely notice for an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed.

Co-pay Smith should not be ordered or have funds taken from his account for the same medical condition, when he has to repeatedly return to medical for the same condition. Nor should Smith be subjected to the co-pay for condition that has lasted him over 5 years and has since been given on going treatment for those condition. Even though the defendants claim Smith has seen a skin doctor, telmed. he has not as of this date been given treatment of any kind for the sores on his body. More over when a inmate goes to medical for one or one hundred problems he should be seen for them, at one time not be forced to limit his complaints, to one or two, and a refusal to see an inmate for all his problems or complaints would constitute deliberate indifference, and the nexus needed for liability is the correction defendants knew of these acts and failed to correct them. When determining a chronic condition, it is a condition that has lasted for more then 6 months, and no medical book would dispute such, but under the D.O.C. authority doctors form their own opinion on what is to be chronic and the D.O.C. supports this abuse and the denial of health care, that throw this health care supported by the D.O.C. Smith sustained injury to his liver and most days live in pain from his back, shoulder, knee in which he has been since denied health care, and told their was nothing wrong. Why would a person repeatedly subject himself to this form of abuse and have his money taken only to be told their is nothing wrong or that their is no treatment forth coming and this act is supported by the D.O.C. Like at present he has blood coming out of his ears and drainage, and he sure if he goes to medical he would be told their is nothing wrong, this pattern of abuse is an on going thing and the result on many deaths due to the lack of adequate health care and the administration of D.O.C. policy for treatment.

As in the attached claimed D.O.C. protocol and claimed issue as it is clear that defendants failed to include the criteria for Hep C treatment and the time period it is to take for treatment to be evaluated. At no time does this protocol state that in less then 120 days if viral load is not lower by 50 % inmate would be terminated. It is may understanding that this treatment is to last for 6 months, before termination would be considered, and the leaving out of this important issue of material fact is no more then

considered, and the leaving out of this important issue or material fact is no more then a cover up of the fact and the idealism that it is to expensive to treat inmates. This is the root of the claim, that what is the period of time treatment is to be given before inmate would be terminated. If their was a 30 % drop in less then 120 days if treatment would have been continued for the 6 months Smith may have had a chance at full recovery. If Smith was not responding to treatment why did the D.O.C. give treatment back. As the material fact is the protocol that states how long this treatment is to be given.

## STATEMENT OF QUESTION

I.      The Correction Defendants are not entitled to summary judgment as a matter of law on Smith's claim of retaliation and denial to access to court. Given their are genuine issues of dispute and it being why Did Edward Mason refuse to let Smith legal mail leave the institution. Why was Smith deprived the D.O.C. policy for legal mail ? If Smith was grant his access to the court why would he have had to request the help of another inmate to get his legal mail out of the institution ? Then the Attorney General and Edward Mason conspired to punish Smith for getting his legal mail out of the institution, by the attorney general calling the institution, as she had no standing to do such other then the wanton desire to punish and hinder Smith litigational efforts.

II.     The correction defendants are not entitled to summary judgment as a matter of law to Smith's 8th. amendment claims, and condition to confinement, as their has not been any material facts to genuine issue of dispute. As they have not submitted signed affidavit or a copy of the tape to support the issue that Smith behavior warranted the placement in a hard cell. Nor have they submitted affidavit of fact that their was power in the RHU cell, or to dispute Smith's claim that their was not power. Nor have they produced any of the claimed signed several refusal forms to support the denial of this health care. They also has not submitted any material fact to support the cruel punishment and the abuse of C.O. Ersek when he ordered Smith under a threat to sign a refusal form or he would issue a misconduct. As long as this officer was with holding Smith health care devise he had no standing to order Smith to sign a refusal form, and then punish him because he exercised his right and refused to do something it was not his intent to do.

III. Smith property claim the defendants should no be granted such on Smith's 14 th. claim, as his lose of property when C.O. officer broke his T.V. and made a false claim, when Smith was not in his cell. Also for Smith radio that during a shake down a C.O.

pulled the antena out of radio.  That in June 2000 when Smith was sent to RHU over $ 40.00 worth of his property was missing, and the day before he went to the store and  spent $ 40.00 and none of the things he brought was in his property.

IV.    And none of the correction defendants are entilted to summary judgment as they knew or should have known of their acts and official failed to correct this issues but supported the abuse, due to the number of grievances that Smith filed these parties knew and by the correction defendants on admittence of material fact and exhibits and all of these were supported by the D.O.C. and none of these claims were every remedied.  As Smith has a right to be free from these levels of abuse, and these parties knew or they should have known, and the failure to train in the policy and procedure, and custody and control of inmate can be said to be the cause of any injury sustained.

V.    As none of the Correction Defendants should be entitled to summary judgment, nor should any of the defendants be dismissed from this case as they all were productive members in the deprivation of Smith's rights and the denial of health care and the filing of false information, and abuses.    As what the correction defendants have submitted as material fact falls short and is evidence of the abuse Smith has endured and is continued to endure at the hands of the D.O.C. based on done existent policy.  As Smith is still in pain and has been in pain for a number of years, and the denial to treat his shoulder condition claiming their is nothing wrong, and the same with his back condition that is well documented on the streets, and his left knee, and the continued denial of Smith's C-PaP devise based on a false claim that he signed several refusal forms.  If this was the case and it is material fact the defendants should be ordered to produce these documents, not just claim them and exspect the court to grant summary judgment on this issue because they just claimed such, and have not presented the material fact need to grant the summary judgment.    All persons were involved in one way or another and the continue denial of health care based on false behavior, and false signed documents, they were all part of the same act and deprivation of rights under the color of law, by virtue or their employment. That they knew and have since continued in this deprivation without any adequate evidence to support their claim of dispute, or any material fact to support summary judgment as a matter of law.  See Smith's attached exhibits of fact and addition grievance filed to show a pattern of abuse that has since continued.  Both the correction defendants and Wexford Health were provided with such at discovery when Smith material fact was turned over to Unit Manager Smith of D block, as they have copies of such and only one copy was attached to the brief sent to the court numbering about 60 pages.  Also attached are affidavits of

disputed issues that the defendants have not submitted any material fact to dispute on of Smith's claim within his complaint.

Respectfully Submitted

Date: _____    _____

## CONCLUSION

The rule 56 Motion: Summary Judgment if it determines from its examination of the allegation is the pleadings any other evidential source available that no genuine issue as to a material fact remains for trial, and the moving party is entitled to judgment as a matter of law. Correction defendants fall short as their attempts to decieve the court and claim a material fact, when they are with holding the facts in dispute and protocol and claimed signed refusal forms. If in this case the Hep. C protocol states this treatment is for 6 moth then a years by who's authority was Smith's treatment terminated. If Smith signed refusal forms why did the defendants not submit such as material fact, these said acts goes to the good faith effort and the standard which is being applied to this motion and the proceeding, and goes to dispute all evidence submitted by the defendants, if they have to resort to such levels to justify the abuses they subjected Smith and other incarcerated persons to. If their is nothing on the tape of April 18, 2000 that would support the placing Smith in a hard cell, then by whoms authority was Smith subjected to this abuse, and since all parties support such act they knew and acted as part of this abuse. The defendants have made false claims of evidence to support the summary judgment, and have fallen short of the standard required as it leaves dispute of what exactly dose the D.O.C. protocol state for Hep. C treatment. And where are these claimed signed refusal forms, did C.O. Ersek have the authority to order Smith to sign a medical refusal form, and if he did not he would be punished, is their any evidence on the tape of April 18, 2000 that would support the placing Smith in a hard cell, and because Smith is no longer in this hard cell dose not support the denial of this claim, as he was subjected to cruel punishment without reason or evidence to support such punishment. As their are still disputed evidence of material fact in Smith's claim, E.G. Tomeleuishi v. State Farm Life Ins. Co. 494, F2d. 882 (3d. Cir. 1974); Mintz v. Mathers Fund INc. 463 F2d. 495, 498, (7th. Cir. 1972) the defendants have failed to adequately dispute Smith's claim, and have went on to make additional false claim, when it is very simple, if Smith signed refusal forms produce them, if their is evidence on tape to support the placement of Smith in a hard cell produce it, if their is no pover in RHU plug sockets at S.C.I. Smithfeild produce it or have all inmates housed in this unit make statement of fact, as long as they do not directly answer Smith's claims they have failed to present material fact to support the finding of summary judgment.

The non-moving parties allegation must be taken as true and, when assertians conflict with those of the movant the former must receive the benifit of the doubt. E.G. United

States v. Deebold Inc. 369, U.S. 654, 82 Sct. 993, 8 Led. 2d. 176 (1963)(pre curiam): Smith v. Pittsbrugh Gage & Supply Co. 464 F2d. 870 (3d. Cir. 1972).

White v. Washington Elec. Co. 862 F2d. 56, 59 (3d. Cir. 1988) Summary Judgment will not lie if the dispute about material fact is genuine. And a jury could return a verdict in Smith favor; Williams v. Borough of West Chester 891 F2d. 458, 460, (3d. Cir. 1989) (quoting) Anderson v. Liberty Lobly Inc. 477 U.S. 242, 250, 106 Sct. 2505, 2511, 91 Led 2d. 202 (1986): Rational finding that an essential element of material fact is missing; Celater Corp. v. Catrett. Inconsistances in evidence can defeat summary judgment as it is present in the correction defendants filing, and claim of material fact that is not supported by the record submitted by the correction defendants, as a clear and convincing copy of the D.O.C. protocol should have been submitted for determination by the court, as well as the signed refusal forms, and tape of April 18, 2000; Chepallina 814 F2d. at 900. Soclia 821 F2d. at 203;.

Prima facia case, all plaintiff must show is that (1) he belongs to a protected class, and this class is incarcerated person and is a protected class. Dester Continental Group Inc. 859 F2d. 1108, 1115, (2d. Cir 1988).

See Jackson v. Virginia 443 U.S. 307, 318-319, 99 Sct. 2781, 2788-2789, 61 Led 2d. 560 (1979) similarly where the First amendment mandates a clear and convincing standard, the judge in disposing of a directed verdict motion should consider whether a reasonable factfinder could conclude for example that the plaintiff had shown actual malice with convincing clarety Munson supra. 14 Wall at 448, see Smiths attached exhibits.

Clear and convincing evidence requirement must be considered by a court under rule 56, of the Fed. Rules of Civil Procedure 241 U.S. App. D.C. 246, 746 F2d. 1563 (1984); 471 U.S. 1134, 105 Sct. 2672, 86 Led 2d. 691.

Smith affirmative evidence is in the number of grievances he filed and ultimately the defendants supported the abuses, and their failure to submit evidence of material fact on issues, even though they claim to have such as this being the reason they justify their level of abuse and denial. Base Corp. v. Consumers Union of United States Ic. 466 U.S. 485 512, 104 Sct. 1949, 1966, 80 Led 2d. 502 (1984); First National Bank of Arizona v. Cities Service Co. 391 U.S. 253, 288-289, 88 Sct. 1575, 1592, 20 Led. 2d. 569 (1968) and defendants have failed to submit sufficent evidence of material fact to support the claimed factual dispute.

COMMONWEALTH OF PENNSYLVANIA

COUNTY NORTH THUMBERLAND

# A F F I D A V I T   O F   K I M   S M I T H

This affidavit contains a number of paragraph, Kim Smith being first duly sworn, deposes as follows.............................................................................

1.      That at no time while at S.C.I. Smithfeild did he sign a refusal of health care namely a refusal to use the C-PAP devise for his sleep apena, while in RHU from June 2000 until January 2001.

2.      That Kim Smith had no obligation to obey C.O. Erseks order to sign a refusal of health care form, when Smith was not refusing any health care, but being deprived by this officer, who would not turn over Smith health care devise. This officer can not force under threat an inmate to sign a refusal for and it is a inmates right to refuse treatment or to sign any document. That this officer knowingly and intentionally inflicted cruel punishment when he issued a misconduct because Smith would not obey his order to sign a refusal form. And Smith should not have been subjected to this abuse or punished for not signing a refusal form, as the Staff at this institution cleverly inflicted pain and injury and deprivation under the color of law by covering up this abuse by stating Smith disobeyed an order.

3.      That on April 18, 2001 when being taken to the hole their was no evidence on the tape to support the placement of Smith in a hard cell nor was it apparent from his behavior to support such a level of cruel punishment.

4.      That on April 17,, 2001 Smith saw a Doctor Adamson who ordered a increase in his diabetic medication on med-line -3, and at no time did this doctor instruct Nurse Bernas to cut Smith medication on med-line-1, and when showing this Nurse her error she refused to correct it, as the doctor orders never stated a cut in medication, only a increase. When showing this nurse her error she refused to correct it then went on to conspiry Lt. Jorden and other parties to deny Smith his proscribed health care, and issue a misconduct. That a call came into medical that a inmate was down in chow hall, 2 nurses left medical and a few minutes later Nurse Bernas left medical with a second wheel

chair, it hard to believe that one inmate would need two wheel chairs.  When Nurse Bernas returned to medical she had Lt. Jorden with her claiming see I told you and then Lt. Jorden instructed Smith to leave medical and before Smith could get his pass to leave Lt. Jorden hand cuffed Smith.

5.    That from June 2000 until January 2001 when Smith was transfered from S.C.I. Smithfeild, their was no power in the RHU cell for him to use his devise.

6.    Sept. 2000 Dr. Long told Smith he had Hep C at which time he stated that D.O.C. has a protocol for treatment that once treatment starts it would last 6 month at which time Smith would be evaluated to see if his viral load dropped 50 %.  At no time was Smith instructed that he would be terminated in 120 days if his viral load did not drop 50 %.  At no time was Smith instructed that if terminated from treatment that when given treatment back this condition would worsen.  That on Sept. 2000 when starting treatment Smith viral load was 288,000, and after 120 days of treatment it drop to 202,000, and treatment was terminated at this time by Dr. Kort, claiming Smith was not responding to treatment.  A 30 % drop in viral load in 120 days and if Smith would have been permitted to continue his treatment for the full 6 month he may have reached the protocol of 50 % drop in viral load.  Smith filed a grievance and treatment was given back.  At which time Smith viral load increased and the condition worsen, and his viral load went from 202,000 to 528,000 to over 1,000,000 showing he sustained damage to his live from the manner in which this condition was treated.  That at no time was Smith ever instructed that this treatment could worsen the condition.

7.    That on July 4, 2001 while on the tolet Smith was sexually harrassed Lt. Weltz and C.O. Patuzak while on the tolet Smith had a curtesy curtain up while on the tolet, these officers he was on the tolet and would take the curtain down as soon as he was done, if they could not wait take it down their selves.  They open the door took down the paper then started yelling at Smith stating he needs to learn how to talk to staff, then one of the officers stated let me get a better look.  For the period of time they stood in Smith door looking at him while he was on the tolet began to look as if these parties were sexually harrasing him, as after they took the paper down their was no need to stand in his door looking at him.

8.    That at S.C.I. Smithfeild, Angela Zimmerman inflicted cruel punishment when Smith advised her of his intent towards C.O. Whysong was to file suit, she stated Smith would

no cooperate with her as this being the reason for placement on control unit, and continued confinement in RHU on A C Status, as this act was a retaltory act for Smith claim that he intended to bring civil action against this party.

9.     That at no time did Smth threaten C.O. Whysong or tell Seg. Henning that Smith intended to harm this Officer, that Sgt. Henning filed a false misconduct with the intent to impose and deprive Smith of his rights.

Sworn to before me this _____ day of _____, 2003   that the for going is true and correct to the best of my knowledge and understanding.

_____                   _____
Notary                                    Witness/Petitioner Kim Smith

5/16/03

_James O. Lindberg_

NOTARIAL SEAL
JAMES O. LINDBERG, Notary Public
Coal Township, Northumberland County
My Commission Expires June 23, 2003

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Kim Smith                          :
      Plaintiff              : No. 1:V-817
                             : (Judge William W. Caldwell)
                             : (Magistrate Judge Malachy E. Mannion)
      v.                     :
                             :
James Morgan, et al.,              :
      Defendants             :

## PROOF OF SERVICE

The undersigned hereby certifies that Kim Smith turned over envelopes containing plaintiff Object to the Correction Defendants Motion for Summary Judgment, and Brief In Support, Exhibits to be forwarded to the United States Postal Service to be mailed to the below listed parties in a manner of first class mail on or about _Muy_, _16_, _2003_ by turning envelopes over to B-2 Block Office.

Office of the Clerk United States District Court Middle District of Pennsylvania

James Young Esq.

John J. Talaber Esq.

_Kim Smith_
Kim Smith/Petitioner    Date: 5-16-03

## MOTION FOR PHLA

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>INSTRUCTIONS<br>Complete items number 1-8.  If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|
| 1.  To: (Name and Title of Officer)<br>*Mr. John Sidler* | 2.  Date: 5-14-03 |
| 3.  By: (Print Inmate Name and Number)<br>*Kim Smith CT-4562*<br><br>*Kim Smith*<br>Inmate Signature | 4.  Counselor's Name<br>*Mr Masse* |
|  | 5.  Unit Manager's Name<br>*D U/M* |
| 6.  Work Assignment<br>*U/A* | 7.  Housing Assignment<br>*D-2-55* |

8.  Subject:  State your request completely but briefly.  Give details.

*On 5-13-03 I saw you for evaluation for parole and I would like to see and read such. If you are able to would you please direct me to D.O.C. policy that prohibits me from seeing such. I would also like to see the evaluation for the March 2002 parole evaluation.*

*Kim Smith*

9.  Response: (This Section for Staff Response Only)

*Mr. Smith —*
*Might I suggest that you contact Ms.*
*Dascani, Superintendent's Assistant, for Assistance*
*in this Manner.*

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name   *John P. Sidler* , *John P. Sidler*   Date 5/14/03
Print                       Sign

Revised July 2000

**55**

SCI... TOWNSHIP

| | |
|---|---|
| Form DC-135A | Commonwealth of Pennsylvania |
| **INMATE'S REQUEST TO STAFF MEMBER** | Department of Corrections |

**INSTRUCTIONS**

Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

| | |
|---|---|
| 1. To: (Name and Title of Officer) *Ms. K. Dascani* | 2. Date: *5-2-03* |
| 3. By: (Print Inmate Name and Number) *Kim Smith CB9162* _____ *Kim Smith* _____ Inmate Signature | 4. Counselor's Name *Ms. Droser* |
| | 5. Unit Manager's Name |
| 6. Work Assignment *N/A* | 7. Housing Assignment *D-2-55* |

8. Subject: State your request completely but briefly. Give details.

*Ms. Wolfgang told me to contact you regarding D.O.C. Protocol for Hepetitis C. treatment. Could you please provide me with a copy of this policy.*

*Native documents for )        Thank You*
*Summary Judgement what was submitted falls short of standard for Hep C treatment*

9. Response: (This Section for Staff Response Only)

*Mr. Smith, I am advised by Mr. Talaber that you are already in receipt of the Hep C Protocol in the documents you received during summary judgement. If you have any concerns in reference to this response you should contact Mr. Talaber*
*cc: Mr. Talaber*
*Ms. Wolfgang*

| | |
|---|---|
| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |

Staff Member Name *K.K. Dascani* , *K.K. Dascani*  Date *5/6/03*
　　　　　　　　　Print　　　　　　　　　　Sign

Revised July 2000

| Form DC-135A | Commonwealth of Pennsylvania |
|---|---|
| **INMATE'S REQUEST TO STAFF MEMBER** | Department of Corrections |

SCI-COAL TOWNSHIP

MAY -6 AM 10: 17

SUPER...
O...

**INSTRUCTIONS**

Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

| 1. To: (Name and Title of Officer) | 2. Date: 5-3-03 |
|---|---|
| Mr K. Dascani | |
| 3. By: (Print Inmate Name and Number) | 4. Counselor's Name |
| Kim Smith CT2162 | Mr Moser |
| Kim Smith | 5. Unit Manager's Name |
| Inmate Signature | |
| 6. Work Assignment   W/A | 7. Housing Assignment   D-3-55 |

8. Subject: State your request completely but briefly. Give details.

Mr Moser advised me to contact you so I can see a copy of policy that I must pay $30.00 to to County upon release, so I can have it pre-paid before my release by family.

Kim Smith

9. Response. (This Section for Staff Response Only)

Mr Smith, please reference your inmate handbook page 1 #4, page 2, B #1 and page 20, M. If you want copies of the policies this information is contained in you can request those in the library.

To DC-14 CAR only ☐          To DC-14 CAR and DC-15 IRS ☐

Staff Member Name  K.K. Dascani , K.K. Dascani   Date 5/13/03
                        Print              Sign

Revised July 2000

SCHOOL TOWNSHIP

| Form DC-135A | Commonwealth of Pennsylvania |
|---|---|
| **INMATE'S REQUEST TO STAFF MEMBER** | **Department of Corrections** |

2003 MAY -6  AM 10: 17

SUPT

**INSTRUCTIONS**
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

| 1. To: (Name and Title of Officer) Mr. K. Dascani | 2. Date: 5-2-03 |
|---|---|
| 3. By: (Print Inmate Name and Number) Kim Smith CT2462 _Kim Smith_ **Inmate Signature** | 4. Counselor's Name Mr. Moser |
| | 5. Unit Manager's Name |
| 6. Work Assignment  U/A | 7. Housing Assignment  D-2-55 |

8. Subject: State your request completely but briefly. Give details.

Mr Moser advised me to contact you regarding the D.O.C. Policy that states I must pay bus fare upon my release, so I can send it to family and have forward me such.

Thank you

Or can I pay for such now and have it placed in computer that this fee has been paid

9. Response: (This Section for Staff Response Only)

Mr Smith please reference you inmate handbook DOC, page 2, #10 It states approximately 30-45 days prior to your scheduled release the money needed to pay for any release costs will be set aside in your account.

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name _K K Dascani_ Print , _K K Dascani_ Sign Date 5/13/03

Revised July 2000

**Form DC-135A**

## INMATE'S REQUEST TO STAFF MEMBER

Commonwealth of Pennsylvania
Department of Corrections

**INSTRUCTIONS**
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)
   Mr. Wolfgang

2. Date: 4-27-03

3. By: (Print Inmate Name and Number)
   Kim Smith CT9162
   _Kim Smith_
   Inmate Signature

4. Counselor's Name
   Mr. Moore

5. Unit Manager's Name

6. Work Assignment   U/A

7. Housing Assignment
   D-2-55

8. Subject: State your request completely but briefly. Give details.

   Could you please provide me with a copy of D.O.C protocol for Hep C treatment, or could you please let me review such

   Thank you.

9. Response: (This Section for Staff Response Only)

   Mr. Smith,
   I am going to refer you to Ms. Dascani. Please submit your request to Ms. Dascani per DC-ADM 003. She is the release of information co-ordinator

To DC-14 CAR only ☐

To DC-14 CAR and DC-15 IRS ☐

Staff Member Name   L. Wolfgang   L.L. Wolfgang   Date 4-29-03
                    Print              Sign

Revised July 2000

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**1451 N. MARKET STREET**
**ELIZABETHTOWN, PA 17022**

OFFICE OF THE
CHIEF HEARING EXAMINER

March 24, 2000

Kim Smith, CT-2162
SCI Smithfield

Re:    DC-ADM 801 - Final Review
         Misconduct No. 973478

Dear Mr. Smith:

This is in response to your appeal to final review of the above numbered misconduct.

In accordance with DC-ADM 801, VI, I., 3, as amended effective November 1, 1997, I have reviewed the entire record of this misconduct; including the misconduct report, the hearing report and related documents, your appeal to the Program Review Committee and their response, your appeal to the Superintendent and his response. I have also thoroughly reviewed the issues you raise to final review.

The issues you raise to final review have already been addressed by the Program Review Committee and the Superintendent. On review of the record, this office concurs with their responses. I find no persuasive basis from which to conclude that the Examiner erred in conducting the hearing. The Examiner specifically documented findings of fact based on evidence presented at the hearing to support the decision. The procedures followed were in complete accordance with DC-ADM 801, §VI. The sanction imposed is within the presumptive range of misconduct sanctions, is not viewed to be disproportionate to the offense, and therefore will not be amended at this level.

For the above-stated reasons, the responses provided by the Program Review Committee and the Superintendent are upheld in full. Your appeal must, therefore, be denied.

Sincerely,

Robert S. Bitner
Chief Hearing Examiner

RSB:ph
pc:    Superintendent Morgan

**COMMONWEALTH OF PENNSYLVANIA**
**STATE CORRECTIONAL INSTITUTION**
**AT SMITHFIELD**
Superintendent's Office
(814) 643-6520
February 22, 2000

**SUBJECT:**   APPEAL OF MISCONDUCT # 973478

**TO:**      Kim Smith  CT2162
            F Block

**FROM:**    James M. Morgan, Superintendent

This is in response to your appeal of the subject misconduct.

My decisions on misconduct appeals are based on the criteria outlined in the appeal
section of DC-ADM 801, Subject:  "Inmate Disciplinary and Restricted Housing
Procedures," which are:

1.    The procedures employed were contrary to law, the ICU
      Consent Decree and the DC-ADM 801 itself.

2.    The punishment was disproportionate to the offense.

3.    The evidence was insufficient to support the decision.

In your appeal, you contend that the procedures employed were contrary to law, the ICU
Consent Decree and the DC-ADM 801 itself.  In this case, the hearing examiner found you
guilty of refusing to obey an order.

The PRC reviewed this issue and found sufficient facts to support the hearing examiner's
determination of your guilt.

I reviewed your appeal and found no errors or reason to second-guess the decision of the
hearing examiner or PRC.  Your appeal is denied.

JMM/SMB/jag

cc:   F. Royer, A/C PM
      R. Norris, Hearing Examiner
      Officer H. Ersek
      B. Lightner, Employment Office
      J. Crider, Counselor
      DC-15
      File

CL2 JMD

FORM **DC-141**   **PART I**   **COMMONWEALTH OF PENNSYLVANIA**
Rev. 6-84

☑ **MISCONDUCT REPORT** ☐ **OTHER**   **DEPARTMENT OF CORRECTIONS**

973478

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| CT 2162 | Smith, Kim | SCIS | 0706 | 2-3-00 | 2-3-00 |

| Quarters | Place of Incident |
|---|---|
| FB 29 | Wing B of F-Blk |

### OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| OFCR. | Drenning | | X | | | | |
| | | | | | | | |
| | | | | | | | |

**MISCONDUCT CHARGE OR OTHER ACTION** Class I Category B #7 Refusing to obey an order Class I Category D #27 Presence in an unauthorized area.

**STAFF MEMBER'S VERSION** Sir, on the above date and time I ofcr. Erse gave Inmate Smith CT 2162 a direct order to go to medical and sign a refusal slip for A.M. Nurse line, because Inmate stated "I'm not going to medical" I gave Inmate Smith several more orders to go to medical to sign a refusal which he did not comply with. At this time I gave Smith several orders to go to his cell and lock-up which he did comply. 10 min. later I called breakfast line Inmate came to the bubble screaming at this ofcr. I gave Smith several more orders to lock-up before he complied. Note Inmate Smith already ate early chow.

**IMMEDIATE ACTION TAKEN AND REASON** Investigate, No further issuing indicated Makeup refused to remand prsf. Stay. Pending the decision of the Hearing Examiner

**PRE-HEARING CONFINEMENT**

| | IF YES | |
|---|---|---|
| | TIME | DATE |
| ☐ YES | | |
| ☑ NO | | |

☑ **REQUEST FOR WITNESSES AND REPRESENTATION**   ☑ **INMATE'S VERSION**
**FORMS GIVEN TO INMATE**

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY   SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY |
|---|---|---|
| H. Erst CoI | Coff | DATE: 2-3-2000   TIME 24 HOUR BASE: 0842 |

**YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER**

| DATE | TIME |
|---|---|
| 2-3-00 | 0800 |

**Misconduct Category**  ☑ CLASS 1  ☐ CLASS 2

**Signature of Person Serving Notice**
Rodney L. May

### NOTICE TO INMATE

You are scheduled for a hearing on this allegation on the date and the time indicated or as soon thereafter as possible. You may remain silent, if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class I misconduct, any pre-release status you have will be revoked.

**WHITE** —DC-15        **YELLOW** —Inmate Cited        **PINK** —Staff Member Reporting Misconduct        **GOLDENROD** —Deputy Superintendents

Case 1:01-cv-00817-WWC   Document 137   Filed 06/10/2005   Page 35 of 100

| DC-141 | PART II B | COMMONWEALTH OF PENNSYLVANIA |
|---|---|---|
| Rev. 6-84 DISCIPLINARY HEARING REPORT | | DEPARTMENT OF CORRECTIONS |

| DC Number | Name | Institution | Hearing Date | Hearing Time | No. from Part I |
|---|---|---|---|---|---|
| CT2162 | Smith | SCIS | 2/8/00 | 1050 | 973478 |

| INMATE PLEA | ☐ Guilty   ☒ Not Guilty | ☐ No Plea   ☐ Other | Verdict | ☒ Guilty ☐ Not Guilty |
|---|---|---|---|---|

**HEARING ACTION**

CHARGES

7

27

**FINDINGS OF FACT, VERDICT, AND SANCTIONS IMPOSED**

An argument with block staff. Examiner does believe C.O. Essek ordered Smith to return to medical & Smith did not comply.

Guilty 7  Dismiss 27.
30 days cell rest
☒ 2/8/00
c.r. policy issued

| ☒ YES | ☐ NO | The inmate has heard the decision and has been told the reason for it and what will happen. |
|---|---|---|
| ☒ YES | ☐ NO | The circumstances of the charge have been read and fully explained to the inmate. |
| ☒ YES | ☐ NO | The opportunity to have the inmate's version reported as part of the record was given. |
| ☒ YES | ☐ NO | The inmate has been advised that within 15 days a request for a formal review may be submitted and that this request must contain specific reasons for the review. |

SEE APPENDICES ☐

NAME(S) OF HEARING EXAMINER/COMMITTEE (TYPED OR PRINTED)

Hearing Report and all appended information must be signed. Signature indicates finished report with appendices.

SIGNATURE OF HEARING EXAMINER/COORDINATOR

WHITE—DC-15      YELLOW—Inmate Cited      PINK—Staff Member Reporting Misconduct      GOLDENROD—Deputy Superintendent

WHITE—DC-15     YELLOW—Inmate Cited     PINK—Staff Member Reporting Misconduct     GOLDENROD—Deputy Superintendent

**DC-141**    **PART II B**      **COMMONWEALTH OF PENNSYLVANIA**
Rev. 6-84

**DISCIPLINARY HEARING REPORT**      **DEPARTMENT OF CORRECTIONS**

| DC Number | Name | Institution | Hearing Date | Hearing Time | No. from Part I |
|---|---|---|---|---|---|
| CT2162 | SMITH, Kim | SCIS | 2/8/00 | 10:50 | 973478 |

| INMATE PLEA | | HEARING ACTION | | VERDICT | |
|---|---|---|---|---|---|
| ☐ Guilty | ☐ Not Guilty | ☒ No Plea | ☐ Other | ☐ Guilty | ☐ Not Guilty |

**CHARGES**    #7 Refusing to obey an order
               #27 Presence in an unauthorized area

**FINDINGS OF FACT, VERDICT, AND SANCTIONS IMPOSED**

Smith pleads No plea to either charge.

**FINDING OF FACT:** Smith states he had been to medical that morning + was told by the Nurse to go to his cell; See his c-dep advice. When he returned to the Block; he asked from the Block officer. When he returned to the Block; he asked for the c-dep advice. C.O. Esser then placed him the advice; however he need Smith back to medical. Smith states he was refused to back to medical because the C.O. was supposed to give him the advice to take with him.

C.O. Hess testifies he was working the block on 2/5/00. He's not in the area to take with him. Smith states that he is not able to locate the conversation between Esser; Smith. He did observe a Black object in the hallway. This area received this was a pair of medical device for Smith. This has no other

Knowledge.

This issue for Examiner to resolve is whether inmate Smith refused to return to medical per C.O. Esser. Smith himself states he was directed to return to medical by C.O. Esser; he did not return to medical. It seems both a miscalculation to Examiner + Smith/Medical issue wanted to return to medical. However, inmate, per his reason, was not receiving proper care from the Block officer regarding a medical issue. However, it is not a wise course of action to not obey a direct order.

| | YES | NO | |
|---|---|---|---|
| ☑ | ☐ | The inmate has heard the decision and has been told the reason for it and what will happen. |
| ☑ | ☐ | The circumstances of the charge have been read and fully explained to the inmate. |
| ☑ | ☐ | The opportunity to have the inmate's version reported as part of the record was given. |
| ☑ | ☐ | The inmate has been advised that within 15 days a request for a formal review may be submitted and that this request must contain specific reasons for the review. |

☐ **SEE APPENDICES**

Rx 1/11 A.C.

**NAMES(S) OF HEARING EXAMINER/COMMITTEE**
(TYPED OR PRINTED)

Hearing Report and all appended information must be signed. Signature indicates finished report with appendices.

**SIGNATURE OF HEARING EXAMINER/COORDINATOR**

Richard Norris

FORM **DC-141** Rev. 6-84

**PART I**　　COMMONWEALTH OF PENNSYLVANIA

☒ MISCONDUCT REPORT ☐ OTHER　　DEPARTMENT OF CORRECTIONS

**A 240425**

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| CT 2162 | SMITH, KIM | SCI C.T. | 0830 | 7/4/01 | 7/4/01 |

| Quarters | Place of Incident |
|---|---|
| DB1019 | INMATES CELL DB 1019 |

### OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| | CO' PASTUZAK | | X | | | | |
| | | | | | | | |
| | | | | | | | |

### MISCONDUCT CHARGE OR OTHER ACTION

CLASS 1, 33. USING ABUSIVE, OBSCENE, OR INAPROPRIATE LANGUAGE TO AN EMPLOEE

CLASS 1, 35. REFUSING TO OBEY AN ORDER

### STAFF MEMBER'S VERSION

ON THE ABOVE DATE AND DURING A SECURITY ROUND I ORDERED INMATE SMITH (CT 2162) TO REMOVE PAPER FROM HIS CELL DOOR WINDOWS. HE REFUSED TO REMOVE THE PAPER FROM THE WINDOWS STATING HE WAS USING THE TOILET. I AGAIN TOLD HIM TO REMOVE THE PAPER. AT THE COMPLETION OF MY ROUND I ORDERED INMATE SMITH (CT 2162) FOR THE 3RD TIME TO REMOVE THE PAPER FROM HIS CELL DOOR WINDOWS. HE REFUSED AND REPLIED IN A DISRESPECTFUL MANNER STATING, "I'M USING THE FUCKING TOILET."

### IMMEDIATE ACTION TAKEN AND REASON

| PRE-HEARING CONFINEMENT | | |
|---|---|---|
| | IF YES | |
| | TIME | DATE |
| ☐ YES ☒ NO | N/A | N/A |

☒ REQUEST FOR WITNESSES AND REPRESENTATION　　FORMS GIVEN TO INMATE　　☒ INMATE'S VERSION

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY | |
|---|---|---|---|
| | | DATE | TIME 24 HOUR BASE |
| CO'T R. CORY CO'T R. Cory | R. Witz Cot | 7-4-01 | 1450 |

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER | | Misconduct Category | Signature of Person Serving Notice |
|---|---|---|---|
| DATE | TIME | ☒ CLASS I ☐ CLASS 2 | Sipe Co/Sipe |
| 5 July 01 | 0800 | | |

### NOTICE TO INMATE

You are scheduled for a hearing on this allegation on the date and the time indicated or as soon thereafter as possible. You may remain silent, if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class I misconduct, any pre-release status you have will be revoked.

WHITE —DC-15　　YELLOW—Inmate Cited　　PINK—Staff Member Reporting Misconduct　　GOLDENROD—Deputy Superintendents

Case 1:01-cv-00817-WWC   Document 147

| DC-141 Rev. 6-84 | PART II B | COMMONWEALTH OF PENNSYLVANIA | | | | |
|---|---|---|---|---|---|---|
| DISCIPLINARY HEARING REPORT | | DEPARTMENT OF CORRECTIONS | | | | |
| DC Number CT2152 | Name SMITH, Kim | Institution SCICT | Hearing Date 7-10-01 | Hearing Time 1030 | | No. from Part I A240425 |

| INMATE PLEA | ☐ Guilty ☐ Not Guilty | ☐ No Plea ☐ Other | Verdict | ☐ Guilty ☐ Not Guilty |
|---|---|---|---|---|

**HEARING ACTION**

CHARGES     #33; #35

**FINDINGS OF FACT, VERDICT, AND SANCTIONS IMPOSED**

INMATE PLEADS: #33 N/Guilty     #35 Guilty

HX accepts Pleas as Recorded

Jonathan:
15 Days Cell
Restriction
7/10/01

| ☑ YES | ☐ NO | The inmate has heard the decision and has been told the reason for it and what will happen. |
|---|---|---|
| ☑ YES | ☐ NO | The circumstances of the charge have been read and fully explained to the inmate. |
| ☑ YES | ☐ NO | The opportunity to have the inmate's version reported as part of the record was given. |
| ☑ YES | ☐ NO | The inmate has been advised that within 15 days a request for a formal review may be submitted and that this request must contain specific reasons for the review. |

Witness
Form
SEE APPENDICES
☒

| NAME(S) OF HEARING EXAMINER/COMMITTEE (TYPED OR PRINTED) | Hearing Report and all appended information must be signed. Signature indicates finished report with appendices. |
|---|---|
| K.L. Breon | SIGNATURE OF HEARING EXAMINER/COORDINATOR |

WHITE—DC-15     YELLOW—Inmate Cited     PINK—Staff Member Reporting Misconduct     GOLDENROD—Deputy Superintendent

Case 1:01-cv-00811-WWC Document 17 Filed 08/06/2001

# COMMONWEALTH OF PENNSYLVANIA
# DEPARTMENT OF CORRECTIONS

SCICT Sanction
Supplemental Form
Disciplinary Action

## State Correctional Institution
### at
### Coal Township

| D.C. # | Name | Date | |
|---|---|---|---|
| eT 2162 | Smith, Ken | 7/10/01 | A240425 |

The following is an explanation of the Hearing Examiner's sanction regarding your misconduct. Failure to observe these restrictions may result in another misconduct for breaking restriction or quarantine and additional restriction.

I.    Loss of Privileges:

(L.O.P.) for _____ days, effective _____ thru _____ inclusive.
During the above sanction period, you are not permitted to participate in the specific privilege(s) marked below:

____ Phone Calls   ____ Morning Exercise          ____ Religious Activities
____ Visits        ____ Afternoon Exercise              (is permitted - 1
____ TV            ____ Night Exercise                  religious service
____ Radio         ____ Library Is permitted -          per week.)
____ Job                law library 2 x per week)   ____ All Activities
____ Other _____             Department programs,
           _____             (LOP includes
           _____             intramural/varsity
           _____             sports, concerts,
           _____             programs, special
           _____             events, etc.)

***********************************************************************************************
***********************************************************************************************

II.   Cell Restriction:

For __15__ days, effective __7/10/01__ thru __7/24/01__ inclusive.
Cell restriction is total confinement to general population cell, dorm area, or cubicle, except for meals, showers, one (1) formal religious service per week, commissary (Commissary purchases restricted to times listed on the A.C. Cell Restriction, SCICT Disciplinary Custody Commissary List), law library and one (1) specified daily exercise period. Participation in programs, school and work are suspended. Specified exercise period is __1ST__.

STAFF MEMBER COMPLETING FORM (SIGNATURE) _____ rcl

**WHITE COPY** - DC-15          **YELLOW COPY** - Inmate          **PINK COPY** - Housing Unit

**DC-141     PART II C**
Rev. 6-84
INMATE VERSION AND WITNESS STATEMENTS

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

| DC Number | Name | Institution | No. from PART I |
|---|---|---|---|
| CT 2162 | Smith, Kim | SCICT | A 240425 |

INMATE'S VERSION

On 7-4-01 during yard line movement at 8:15 A.M. or soon their after, I put up a curtain, curtain up on cell door window so I could take a shit. C.O Pastuzak came to door stating to take down paper. I advised him I would as soon as I'm done. (Surely with all respect I can not be expect to force such or jump off the tolet, in the process of taking a shit) then this C.O calls over the speaker, and I was not done, then Cpt Wetzy an C.O Cory comes to my door while still on the tolet, open the door in a disrespectful manner, then took paper down, then stood their yelling claim respect and that I should learn to talk to a person, all this took place while I was on tolet and they just stood their looking. C.O Cory then moves to get a better look. All this disrespect took less then 5 min and I should be able to take a dump in peace and not expect to comply with a order, put myself at risk for health problems, by forcing such, Nor should I be disrespected, sexually harrosed, when taking a dump, some curtain should be give to inmates on a private state by staff. After being repeatably disrespected, and angered by this level of abuse, I dealt with the issue to get C.O.s out of my face to let me take a dump in peace. Staff can not expect me to just jump off a tolet at the drop of a pin, Would they? Nor should I be expected to do something staff is not willing to do in such a private moment, nor should I have to be subjected to this level of sexual abuse when taking a dump. You must give respect to get respect and I was given no consideration or respect when taking a dump.

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**1451 N. MARKET STREET**
**ELIZABETHTOWN, PA  17022**

OFFICE OF THE
CHIEF HEARING EXAMINER

May 22, 2001

Kim Smith, CT-2162
SCI Coal Township

Re:    DC-ADM 801 - Final Review
       Misconduct No. 875160

Dear Mr. Smith:  *Warden has failed to reply to any appeals filed on this misconduct or reply to any grievances filed*

Your appeal of the above-referenced misconduct has been referred to this office for review. However, our inquiry into this matter reveals that you have not yet appealed to the Superintendent of your institution as required by DC-ADM 801.  Until this appeal is completed, final review cannot be granted.  Upon receiving the response from your appeal to the Superintendent, you may once again submit a timely written appeal for final review.

This response does not grant you a right to an appeal if it would otherwise be untimely to pursue that appeal.  However, in evaluating the timeliness of any appeal you submit, the time consumed by erroneously directing your appeal to this office may be disregarded at the discretion of the recipient of your next appeal.

Sincerely,

Robert S. Bitner
Chief Hearing Examiner

RSB:bjk

pc:    Superintendent Gillis

*This act interfered hindered in the bringing of a claim for abuse is enclosed at the hands of SCIC staff*

"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims."

**.41    PART I    COMMONWEALTH OF PENNSYLVANIA**

☑ MISCONDUCT REPORT ☐ OTHER    DEPARTMENT OF CORRECTIONS

**875160**

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| CT2162 | Smith Kim | SCICT | 0700 | 4-18-01 | 4-18-01 |

| Quarters | Place of Incident |
|---|---|
| D/H | Medical Treatment Area |

**OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)**

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| | RN. Ambrose | ✓ | | | | | |
| | RN Bernas | ✓ | | | | | |
| | LT. Jordan | ✓ | | | | | |

**MISCONDUCT CHARGE OR OTHER ACTION** Class I. Par #35 Refusing To Obey An Order

**STAFF MEMBER'S VERSION** Inmate Smith was seen by RN. Ambrose during the #1 Treatment Line. After Recieving Treatment Inmate Smith Had To be ordered To Leave The Treatment Area. Inmate Smith Then Returned To The medical Lobby Area after being Refused Medication at the Pill window, at This Time RN Bernas Tried To explain To Inmate Smith what Medications He would Recieve and when He would Recieve Them. Inmate Smith became Loud and Arguementive Towards RN. Bernas. LT Jordan Came Through the medical Lobby at This Time; He Also ordered Inmate Smith To Leave Medical and Return To His Housing Unit – Inmate Smith Refused To Comply with LT Jordan's Order and Continued To Argue with Staff Members in a Threatening Manner.

**IMMEDIATE ACTION TAKEN AND REASON** Transferred To L-5 Housing AC Temp Status Pending Disposition of Misconduct. Hold For Hearing Examiner.

**PRE-HEARING CONFINEMENT**

| IF YES | | |
|---|---|---|
| ☑ YES ☐ NO | TIME 0710 | DATE 04-18-01 |

☑ REQUEST FOR WITNESSES AND REPRESENTATION    FORMS GIVEN TO INMATE    ☑ INMATE'S VERSION

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY    SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY |
|---|---|---|
| Jrl Pan R I (Learn) | Kuslinski COI | DATE 4-18-01    TIME 24 HOUR BASE 1130 |

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER | | Misconduct Category | Signature of Person Serving Notice |
|---|---|---|---|
| DATE 04-20-01 | TIME 0800 | ☑ CLASS I ☐ CLASS 2 | Co' Fattenll |

**NOTICE TO INMATE**

You are scheduled for a hearing on this allegation on the date and the time indicated or as soon thereafter as possible. You may remain silent, if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class I misconduct, any pre-release status you have will be revoked.

**WHITE** —DC-15    **YELLOW**—Inmate Cited    **PINK**—Staff Member Reporting Misconduct    **GOLDENROD**—Deputy Superinten

**DC-141   PART II B**
Rev. 6-84
**DISCIPLINARY HEARING REPORT**

## COMMONWEALTH OF PENNSYLVANIA
### DEPARTMENT OF CORRECTIONS

| DC Number | Name | Institution | Hearing Date | Hearing Time | No. from Part I |
|-----------|------|-------------|--------------|--------------|-----------------|
| CT2162 | SMITH, KIm | SCICT | 4-19-01 | 1332 | 875160 |

| INMATE PLEA | ☐ Guilty   ☑ No Plea<br>☐ Not Guilty   ☐ Other | Verdict | ☒ Guilty<br>☐ Not Guilty |
|---|---|---|---|

**HEARING ACTION**

CHARGES    #35

---

**FINDINGS OF FACT, VERDICT, AND SANCTIONS IMPOSED**

INMATE PLEADS: #35  No Plea

HO Believes Staff Report over Inmate Plea and I versien when he readily admits that orders to leave were issued and he questioned the order without complying with the order - HO notes it the report would also indicate inmate the report received repeated orders to leave the area

Guilty
Review for Detail
45 days DC
KB  4/19/01

| | | |
|---|---|---|
| ☑ YES | ☐ NO | The inmate has heard the decision and has been told the reason for it and what will happen. |
| ☑ YES | ☐ NO | The circumstances of the charge have been read and fully explained to the inmate. |
| ☑ YES | ☐ NO | The opportunity to have the inmate's version reported as part of the record was given. |
| ☑ YES | ☐ NO | The inmate has been advised that within 15 days a request for a formal review may be submitted and that this request must contain specific reasons for the review. |

**WITNESS & VERSION**

SEE APPENDICES

**NAME(S) OF HEARING EXAMINER/COMMITTEE**
(TYPED OR PRINTED)

K. L. Breon

Hearing Report and all appended information must be signed. Signature indicates finished report with appendices.

SIGNATURE OF HEARING EXAMINER/COORDINATOR

---

WHITE—DC-15      YELLOW—Inmate Cited      PINK—Staff Member Reporting Misconduct      GOLDENROD—Deputy Superintendent

| DC Number | Name | | Institution | No. from PART I |
|---|---|---|---|---|
| CT 2162 | SMITH, Kim | | SCRT | 815160 |

**INMATE'S VERSION**

I went to pill line, at which time I found out my 10 mg Glyburide was to be. Went to Medical hallway and C.O. my pass for 6:30 A.M. Lab line - Went to #1 treatment for Accu Check and requested nurse look at De order for 4-17-01, she advised me to wait. RN Bermoe came to the lobby with record upon review their was no order directing the cutting of my Glyburide (diabetes medication) for med line one. The order was for med line 3 PM. And when directing RN Bermoe attention to this she states that they way thing see. If I wish to have this review reviewed I must sign up for sick call, I ask back when I should, I when it close on I ask that this medication should not be cut so I waited in lobby to be called to lab line, after RN Bermoe told me their was nothing I could do and I told her I would file a grievance on matter, that De advised me I should get 10 mg Glyburide in A.M and P.M, I ask RN Bermoe her name whom she came threw the lobby, as she said she use to busy, that I would get it on the write up, at which time Lt Jordan ordered me to leave the area, I advised him that I was waiting to go to lab line he call RN Bermoe and Ambrose and they said they were done with me, I ask lobby C.O. for my pass to leave and Lt Jordan put his hands on me I jerk there door ordered one of his underlings work me and took me to RHU, at next time RN Ambrose ordered me to leave, in fact because I was waiting for lab I never left, and I got my medication first thing this Accu Check, then lab. It was clear on record or order the med line # 1 diabetes medication should not have been cut when I voiced my opinion, and showed her she was wrong she become disrespectful and argumentive to hide her acts if its not ordered by a Dr RN Bermoe does not have the authority to supersede a Dr's Order. The only one who ordered me to leave and before I got my lab pass so I was reaching for Lt to leave Lt Jordan put his hands on me pulling me threw a door a no time was I gave enough time to comply with his orders before he put his hands on me, I never argued with staff in a threatening manner only voiced my opinion



**DC-141      PART II E**     **COMMONWEALTH OF PENNSYLVANIA**
MISCONDUCT HEARING APPEAL          **DEPARTMENT OF CORRECTIONS**

| DC Number | Name | | Institution | No. from PART I |
|---|---|---|---|---|
| JT2162 | Smith    Kim | | SCI-S | B75168 |

I was found guilty of misconduct # _____ 35 _____ on ___ 4-19-01 ___ (date) by the
Hearing Committee/Examiner, and I wish to appeal that decision on the following grounds:

**Check Area(s) Involved**

a. The procedures employed were contrary to law,
   Administrative Directive 801, or to the ICU
   Consent Decree;                                           [X]

b. The punishment is disproportionate to the offense;       [X]

c. The evidence was insufficient to support the decision.    [X]

Below is a brief statement of the facts relevant to my claim(s). It includes the identity of all
persons who may have information which may be helpful in resolving this matter.

_I was denied all witnesses, Brown based his decision on insuffi-_
_cient evidence, 45 day loss attempts an adequate health_
_for diabetes is disproportionate to the offense._
_on 4-17-01 I saw Dr. at which time she ordered 2500 cal diet which_
_C.O. Brown is depriving me my rights, Per Dr. Brown Chart twice a day_
_that went to in why red blood cells level is high, and is not in_
_accorde to medication on med line 3, at no time were their insti-_
_on to out diabetes medication on line, RN Brown took it on_
_her self to cut medication claiming Dr. did such but Dr. was_
_this was nothing to suspect this stems from RN Brown in-_
_competed rate and abuse ability power to keep past Dr. order_
_was impress her personal belief of health cons because I was_
_not all that I was paper on to receive Dr. orders of diet as_
_prescribe and with delegate with Brown RN Dr. was_
_on unsophisticate nutrition diet is per claim when angin_
_watches, ask always this I only write the correct at_
_matter that incomplete at_

**201**

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

Commonwealth of Pennsylvania
Department of Corrections

**INSTRUCTIONS**
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)
Mr. Miller

2. Date: 5-23-01

3. By: (Print Inmate Name and Number)
Kim Smith CT2168
_Kim Smith_
Inmate Signature

4. Counselor's Name
Mrs. Dunn

C/A

5. Unit Manager's Name
Mr. Smith

5-27-01

6. Work Assignment
N/A

7. Housing Assignment
RHU-A-107

8. Subject: State your request completely but briefly. Give details.

Sir: Could you please tell me why I'm placed in hard cell since 4-18-01 to this date, since my behavior and misconduct wouldn't warrant this special treatment. Could you please tell me why and who is enforcing this treatment and why. Please do not tell me wait till the next time I see PRC I fear this will never be a next time, to address this issue

9. Response: (This Section for Staff Response Only)

You are not in that cell due to your behavior. You will be going to population on 6/2/01

To DC-14 CAR only ☐                    To DC-14 CAR and DC-15 IRS ☐

Staff Member Name _____   _____   Date _____
                        Print              Sign
                              5/27/01

Revised July 2000

| Form DC-135A | Commonwealth of Pennsylvania |
|---|---|
| Received SCI Coal Township | Department of Corrections |
| **INMATE'S REQUEST TO STAFF MEMBER** | |
| 01 JUN -6 AM 9: 14 | **INSTRUCTIONS** |
| Superintendent's Assistant Office | Complete items number 1-8.  If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |

| 1. To: (Name and Title of Officer) | 2. Date: 6-4-01 |
|---|---|
| K Dascani | |

| 3. By: (Print Inmate Name and Number) | 4. Counselor's Name |
|---|---|
| Kim Smith CT2162 | Mr Dunn |
| Kim Smith | 5. Unit Manager's Name |
| Inmate Signature | Mr Smith |

| 6. Work Assignment | 7. Housing Assignment |
|---|---|
| N/A | D-2-54 |

8. Subject:  State your request completely but briefly.  Give details.

Mrs could you pelsses tell me why I was placed in a hard cell from 4-18-01 till 6-4-01 without provocation for this punishment in RHU-A-106-107. Im dessatisfyed with what Lt Dubn stated.

Thank You

9. Response: (This Section for Staff Response Only)

Mr Smith

I suggest you direct your request to Deputy Johnson or Major McMakon.

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name  K K Dascani  /  K K Dascani  Date  6/6/01
Print                Sign

Revised July 2000

**54**

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

2001 JUL -5  PM 3:43

SECURITY SUBJECT

Commonwealth of Pennsylvania
Department of Corrections

**INSTRUCTIONS**
Complete items number 1-8.  If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1.  To: (Name and Title of Officer)
*Deputy Johnson*

2.  Date: *6-4-01*

3.  By: (Print Inmate Name and Number)
*Kim Smith CT2162*
*Kim Smith*
Inmate Signature

4.  Counselor's Name
*Mr. Lunn*

5.  Unit Manager's Name
*Mr. Smith*

6.  Work Assignment
*W/A*

7.  Housing Assignment
*D-2-54*

8.  Subject:  State your request completely but briefly.  Give details.

*Sir Could you please tell me why I was subjected to cruel punishment from 4-18-01 to 6-4-01 by being placed in hard cell without provocation or ____ reason.  I'm dis-satisfied with what Lt. Gula states.*

*Thank You*

9.  Response: (This Section for Staff Response Only)

*Mr Smith  Your placement in 7 Cell while you were in the RHU was because of your attitude and address when being processed.  At no time were you subject to cruel and unusual punishment.*

To DC-14 CAR only ☐              To DC-14 CAR and DC-15 IRS ☐

Staff Member Name  *Johnson*
Print
*Johnson*
Sign
Date *6/7/01*

Revised July 2000

Received
SCI Coal Township
01 JUN -8 AM 8: 59
Superintendent's Assistant
Office

**Form DC-135A**

**INMATE'S REQUEST TO STAFF MEMBER**

Commonwealth of Pennsylvania
Department of Corrections

**INSTRUCTIONS**

Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

| 1. To: (Name and Title of Officer) | 2. Date: |
|---|---|
| K Dascani | 6-6-01 |

| 3. By: (Print Inmate Name and Number) | 4. Counselor's Name |
|---|---|
| Kim Smith CT 2162 | Mr Dewese |
| Kim Smith (Inmate Signature) | 5. Unit Manager's Name |
| | Mr Smith |

| 6. Work Assignment | 7. Housing Assignment |
|---|---|
| U/A | D-2-54 |

**8. Subject: State your request completely but briefly. Give details.**

Mr. could you please provide me with the following as it is I was never provided with notice or any reply, or copies.

(1). Grievance No. Coa 0282-01 Initial Grievance, Initial Review, Appeal so I was never provided with such in this, neither even go a number.

(2) Misconduct 375160, as I was never provided with a copy of PRC action, 4/25/01. and the 4 appeals sent to Warden that never got their, and one did on 5/30/01 could you please tell me what happen to the rest.

Thank You

**9. Response: (This Section for Staff Response Only)**

Mr Smith
As per DC-ADM 804 it is your responsibility to provide the copies with your appeal to the DC. If you want copies of the above information you will have to forward a cash slip to cover the cost of copying. You previously received copies as evident of your appeal of these documents.

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name  K K Dascani  ,  K K Dascani  Date  6/8/01
Print                Sign

Revised July 2000

| Form DC-135A | Commonwealth of Pennsylvania |
|---|---|
| **INMATE'S REQUEST TO STAFF MEMBER** | Department of Corrections |

RECEIVED
TOWNSHI[...]
07 JUN 11  PM 1: 14
SU[...]
OF[...]

**INSTRUCTIONS**

Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

| 1. To: (Name and Title of Officer) Warden Gillie | 2. Date: 6-10-01 |
|---|---|
| 3. By: (Print Inmate Name and Number) Kim Smith CT2162 *Kim Smith* — Inmate Signature | 4. Counselor's Name Mr Moser |
| | 5. Unit Manager's Name Ms Smith |
| 6. Work Assignment   U/A | 7. Housing Assignment   D-2-54 |

8. Subject: State your request completely but briefly. Give details.

Sir, from 4-18-01 to this date, I filed a number of appeals, & was never a reply from grievance 282 nor PRC decision of my appeal, since you claim that you never got but one appeal I must question the acts of your staff that stopped, prohibited and hindered me from having these issues and ressed, and I'm very concern if this abuse will extend to my pending cases in court. The last time I heard having an attitude was not punishable and what gives your staff the right to inflict cruel punishment, sorry I refused to except the fact that a nurse cut me off my diabetic medication, without order or authority to do such (putting me at risk for serious illness) or death, and I'm just to sit and say nothing will staff place games with my life and you support this abuse.

9. Response: (This Section for Staff Response Only)

Mr Smith.

The deal is what it is with respect to grievance appeals received. You ask much to conclude that staff do someway [...] you [...] tampering with or [...] the flow of your mail there is no reason for them who do so. your medical treatment is appropriate & all your legitimate needs are [...]

To DC-14 CAR only ☐ [...] To DC-141 and DC-135A ☐.

Staff Member Name _____ /  *Frank D. Gilles*  6-11-01
Sign

cc: Copt Mac.

Revised July 2000

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

Commonwealth of Pennsylvania
Department of Corrections

INSTRUCTIONS
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)
Deputy Johnson

2. Date: 6-10-01

3. By: (Print Inmate Name and Number)
Kim Smith CT-2162
_Kim Smith_
Inmate Signature

4. Counselor's Name
Mr Mxxes

5. Unit Manager's Name
Mr Smith

6. Work Assignment
U/A

7. Housing Assignment
D-2-54

8. Subject: State your request completely but briefly. Give details.

Sir: You have to be kidding me, because I had a little attitude does not give your staff the right to subject me to cruel punishment. Because of this I'm at and considering the nature that has placed my life coupled with a nurse without orders or authority cut my diabetic medication putting me at risk for serious health problems or death; how could I not have a small attitude but I had an attitude, was not punishable by cruel punishment. Moreover I can say what I want to as long as its not abusive or disrespectful and not be punished for exercising my 1st amendment rights. Justly if a person without authority took your medication or cut it, would you not have an attitude, so how can you expect me to react any other than human or moral manner, this is what you may, because I acted as a human being with emotions and feelings, your staff saw it fit to punish me for being human I believe such acts are listed under 8th amendment violation. CC. 5/10/01

9. Response: (This Section for Staff Response Only)

Mr Smith — Pursuant to our discussion of 6/14/01 I believe the issues have been addressed. Mr Smith, I'm contacted Inmate employment in your presence and advised you as to when you would be placed in the kitchen.

Matter appropriately addressed

To DC-14 CAR only ☐        To DC-14 CAR and DC-15 IRS ☐

Staff Member Name _Johnson_ / _Johnson_ Date 6/14/07
              Print              Sign

Revised July 2000

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**State Correctional Institution Coal Township**
(570) 644-7890
May 30, 2001

**SUBJECT:**   Appeal to the Second Level
Misconduct  875160

**TO:**   Kim Smith CT-2162
RHU

**FROM:**   *Frank D. Gillis*
Frank D. Gillis
Superintendent

I have received your Request for Appeal to the Second Level of the above-noted misconduct and I have reviewed the entire record related to this matter.

As a result of this review, it is my determination that the appeal be denied as untimely submitted.  The PRC action is dated 4/25/01, yet, your appeal to this office dated 5/29/01 was not received until 5/30/01.  Too late for consideration per DC-ADM 801.

FDG/jh

cc:   DC-15
File

# Misconduct Appeal

Kim Smith CT2162
Hearing Examiner Brern

Counselor Mr. Diant
W/ Mr. Smith

Misconduct Date 4-13-01    No 875160    SCIC
#35. disobeying Order · 45 day DC time

On 4-19-01 an appeal was filed in which I got no reply, I filed to Camp Hill, who advised me I did not appeal to your office which I did on 4-19-01 and got no reply. I was advised to resubmit to your office.

* On 4-17-01 Dr. Adamson order a 2,500 cal. diet, blood test, Accucheck 2 times a day and a increase of my glyceride on medline #3 from 5 mg to 10 mg. Attending nurse was Bernas, who transferred Dr's Orders to my med pass. On this day my blood sugar was 424 and I was not think correct and it shows the need for this medication. On 4-18-01 a.m. ~~~~~~~ medline number 1 my 4, M diabetic medication was cut, I went to do accucheck and blood sugar was high 254, I explained and pleaded with Nurse Ambrose the situation, she advised me I'd have to wait ~~~~~~ I was to take a blood test. R N Bernas hung out my chart and I show her, her error in which she refused to correct. At no time did this order instruct RN Bernas to cut my A, M medication she took it on her own without authority and authorization, cut my medication, with insuling, it felt

misconduct, malicious intent, fraud, wanton desire to inflict harm. She went on to explain a large process I must go to get my medication back. I asked why, it should have never been cut in first place, she explained, that that's is the way things are, and that there was nothing I could do about it. A call come in inmate with chest pains in chow hall. RN Ambrose/Wolfgang left with a wheel chair, then a time latter RN Bernas leaves, Nurse Wolfgang and Ambrose return with inmate. RN Bernas returns with Lt Jordan, and when they get in med-lobby she explains see I told you, I asked to speak to Lt Jordan, he refused claiming he was busy, but never left med-lobby. Then he orders me to leave, I say him to go to lab-line, RN's Bernas, Ambrose, Wolfgang stated they were done with me, but none of these nurses cut lab log, I requested C.O. heater give me my pass, as I was reaching for and to leave Lt Jordan put his hands on me stopping me from compling with his orders, Lt Jordan, RN's Bernas Wolfgang, Ambrose conspired to deprive me health care namely lab line, and to cover up gross neglence, and incompetence, and deprive me my diabetic medication. Since 2 nurses left with wheel chair to mess hall nurse Bernas had no need to go, and when she returned with Lt Jordan, it was pre-arranged. As Lt Gerla state that if I exercise my 1st amendment rights a mis conduct would be issued for she disobeying orders, And I was doing such by address Bernas incompetence. Coupled with the threat of misconduct if I seeked health care I must address this mis-conduct an into court as I stated to Lt Jordan, after he stated no matter what Bernas does she's right, even deprive inmates their medication. Attempted murder                        Kim Smith

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**1451 N. MARKET STREET**
**ELIZABETHTOWN, PA 17022**

OFFICE OF THE
CHIEF HEARING EXAMINER

March 14, 2000

Kim Smith, CT-2162
SCI Smithfield

        Re:    DC-ADM 804 - Final Review
              Grievance No. SMI-0005-00, SMI-0029-00 **and** SMI-0030-00

Dear Mr. Smith:

    This is to acknowledge receipt of your appeal to final review of the above numbered grievances.

    In accordance with the provisions of DC-ADM 804, VI D, as amended effective November 1, 1997, I have reviewed the entire record of these grievances; including your initial grievance, the Grievance Officer's response, your appeal from initial review and the Superintendent's response. I have also carefully reviewed the issues you raise to final review.

    Upon completion this review, it is the decision of this office to uphold the responses provided by staff at the institutional level. I find the issues raised for final review have been addressed by the Grievance Coordinator and the Superintendent, and their responses are reasonable and appropriate.

    I concur with the responses already provided at the institution level. Accordingly, your appeals to final review must be denied.

        Sincerely,

        Robert S. Bitner
        Chief Hearing Examiner

RSB:ph
pc:    Superintendent Morgan

**COMMONWEALTH OF PENNSLVANIA**
**Department of Corrections**
**SCI-Smithfield**
Superintendent's Office
814-643-6520
February 10, 2000

SUBJECT:    APPEAL TO GRIEVANCE # SMI-005-00

TO:        Kim Smith, CT 2162
           F Block

FROM:      James M. Morgan, Superintendent

This is in response to the above-mentioned grievance wherein you contend that you were unfairly denied employment on the nightshift in the bakeshop because the Medical Department would not clear you.

In the initial response, the health care administrator, Mr. Weaver, indicated that he felt that medically it was not appropriate for you to have such a job, and therefore, he would not support you for it and denied your grievance.

I support Mr. Weaver in this matter. Determinations to medically clear inmates for employment are solely within the purview of the Medical Department, and I will not overrule them on this matter. Your grievance is denied.

JMM/lgh

cc:    Mr. Weaver
       Ms. Burks
       DC-15
       File

**DC-804**
**PART II**

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P. O. BOX 598
CAMP HILL, PA  17001-0598

**OFFICIAL INMATE GRIEVANCE**
**INITIAL REVIEW RESPONSE**                          GRIEVANCE NO.  SMI-005-00

| To: (Name and DOC No. | Institution: | Quarters: | Grievance Date: |
|---|---|---|---|
| Kim Smith    CT-2162 | Smithfield | F/B 29 | 1/12/00 |

**The following is a summary of my findings regarding your grievance:**

You are indicating your displeasure about being denied employment on the night shift at the bake shop.  You are questioning the length of time related to the C-Pap machine and it s issuing.

**Disposition:**

On 2/1/00, I called you to my office for an interview and discussed the rationale of my decision on the vote sheet related to night time employment.  At this time, you discussed your goals of obtaining the 3,000 hour certificate for food service and obtaining your air conditioning certification before you leave the Department of Corrections.  I indicated that I would support your educational efforts and discuss the health concerns with the supervisors involved, but will not change my decision.

At the time of this interview, I discussed the security concerns of the C-Pap and went over the special instructions that have been agreed upon between Major Norris and myself.  You indicated no major concerns with the special instructions; therefore, the C-Pap machine should be issued to you later this week.

_____
Grievance Officer        2/2/00

Category:  Medical

Cc:  Superintendent Morgan
      Deputy Biviano
      Major Norris
      Captain Glenny
      DC-15
      File

| Refer to DC-ADM 804, Section VIII for instructions on grievance system appeal procedures. | SIGNATURE OF GRIEVANCE OFFICER | Date: |
|---|---|---|
| | Sharon M. Burks | 2/2/00 |

**DC-804**
**PART 1**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO. _Smi-005-00_

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| Mr. Burks | SCIS | 1-12-00 |

| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE |
|---|---|
| Kim Smith CT3162 | Kim Smith |

| WORK ASSIGNMENT | QUARTERS ASSIGNMENT |
|---|---|
| Litcher | F-B-29 |

**INSTRUCTIONS:**

1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

**A. Brief, clear statement of grievance:**

I've been repeatedly told by B. Weaver that I would be given a c-Pap device in cell and it has been almost two months in which I've been given different reasons now that all has been met Mr. Weaver has since still projected a level of B. C. Burks indifference to the seriousness and threat to my health/safety. I feel it is intentual, and that they only wish I pass during sleep, why else would this be a 2½ year delay in treating this problem, then to state a service about this problem, subject it come to employment when no treatment was given.

**B. Actions taken and staff you have contacted before submitting this grievance:**

Dr. Long, B. Weaver, Mr. Cridee, Mrs. Hannah, Major Kimmis

---

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_Sharon M. Burke_
Signature of Grievance Coordinator

1/12/00
Date

**DC-804**
**PART 1**

### COMMONWEALTH OF PENNSYLVANIA
### DEPARTMENT OF CORRECTIONS
### P.O. BOX 598
### CAMP HILL, PA. 17001-0598

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO. `Sm1-005-00`

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| Ms Burks | SCI S | 1-12-00 |

| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE |
|---|---|
| Kim Smith CT3160 | Kim Smith |

| WORK ASSIGNMENT | QUARTERS ASSIGNMENT |
|---|---|
| Kitchen | F-B-29 |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

**A. Brief, clear statement of grievance:**

On or about 1-10-00 I was denied employment in night shift Bake shop. Medical would not clear me stating a sleep disorder, monitoring sleep cycle, and the level of anxiety and stress this job would be.
1 I'm not being treated for this sleep disorder
2 I have no knowledge of my sleep being monitored.
3 How could a anxiety and stress level of night shift come pass to such a P.M. Kitchen shift. Night shift is peaceful not a lot of people around anxiety and stress levels will be low. I feel this determination based on these reasons is in illfaith small. More so when they created such level of deliberate indifference to treat this sleep disorder

**B. Actions taken and staff you have contacted before submitting this grievance:**

Mr Crider, Ms Hannah, F/S C. Dunaway, Dr Long

---

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Sharon B. Burks
Signature of Grievance Coordinator

1/12/00
Date

**DC-804**
**PART 1**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO. | Smi-029-00

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| | SGIS | 1-24-00 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| Kim Smith CT2162 | Kim Smith | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| Kitchen | F-R-29 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance

C.H.C.A. G. Weaver failed in his professional responsibility to correct to over charge for co-pay policy for follow up treatment, or renew medication for the same illness. As it is a number of times I was charged a co-pay to renew medication, or follow up by placing in a sick call slip for a illness I'd already be treated for. G. Weaver advise reasponer was stated to review this issue, since no policy was given to inmates, it can not be determined how far back the checking of the violation of co-pay policy should go. Since I have been subjects to this abuse for a 2 year

B. Actions taken and staff you have contacted before submitting this grievance: period, and money just taken off my account, I'm entitled to have complete records reviewed for these violation or granted a review hearing

C.H.C.A. G. Weaver.

Dr. Long

who have failed to interceed request on this matter

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Sharon M. Burks
Signature of Grievance Coordinator

1/25/2000
Date

DC-804
PART II

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P. O. BOX 598**
**CAMP HILL, PA  17001-0598**

**OFFICIAL INMATE GRIEVANCE**

INITIAL REVIEW RESPONSE                         **GRIEVANCE NO.  SMI-029-00**

| To: (Name and DOC No. | Institution: | Quarters: | Grievance Date: |
|---|---|---|---|
| Kim Smith    CT-2162 | Smithfield | F/B 29 | 1/24/00 |

**The following is a summary of my findings regarding your grievance:**

You are indicating that I have failed to act responsibly in order to correct co-pay charges.

**Disposition:**

On 2/1/00, I called you to my office for an interview.  We discussed the co-pay issue.  I explained to you that the policy does have some gray areas.  This is understandable due to the vast amount of information in the medical field.  When the policy was enacted, questions surfaced and Dr. Lewis, the Medical Director at Central Office, issued a decree that the final determination of chronic versus non-chronic conditions rests solely with the medical providers on site.  There was a time that some refunds were permitted to the inmate population through my desk.  As time went on, I found it wise to include a committee to make such decisions.  I explained to you that the committee meets on a regular basis to discuss co-pay issues and look at each case separately.  We are now several years into the co-pay policy, and it is true that I made a decision not to review cases that were more than 60 days old.  In the past, you have received some refunds.  Administratively, I am not going to review the entire medical scenario since the start of co-pay. If it was not an issue earlier, it is not an issue now.

I discussed with you my reasoning for this and you appeared to understand.  I offer to you the grievance process and to work it up above my level if you desire.

Grievance Officer        2/2/00

Category:  Medical

Cc:  Superintendent Morgan
     Deputy Biviano
     Major Norris
     Captain Glenny
     DC-15
     File

| Refer to DC-ADM 804, Section VIII for instructions on grievance system appeal procedures. | SIGNATURE OF GRIEVANCE OFFICER | Date: |
|---|---|---|
|  | Sharon M. Burke | 2/2/00 |

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**SCI-Smithfield**
Superintendent's Office
814-643-6520
February 10, 2000

SUBJECT:    APPEAL TO GRIEVANCE # SMI-029-00

TO:         Kim Smith, CT 2162
            F Block

FROM:       James M. Morgan, Superintendent

This is in response to the above-mentioned grievance wherein you contend the institution has inappropriately interpreted DC ADM 820 in your case. In the initial response, Mr. Weaver explained to you how we implement the policy and refuses to go back over your entire medical record to review every instance you were charged a co-payment.

Contrary to your assertions, I find that the medical staff is much better qualified than you and I to determine what constitutes chronic conditions. I also support Mr. Weaver's decision not to go back to the effective date of the policy, May 18, 1998, and review each and every instance. That was your responsibility to bring it to our attention earlier. Additionally, all inmates received a copy of the policy back in 1998, and it is included in your inmate handbook. I find staff has acted appropriately, and your grievance is denied.

JMM/lgh

cc:    Mr. Weaver
       Ms. Burks
       DC-15
       File



COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
CAMP HILL, PA.

OFFICIAL INMATE GRIEVANCE

GRIEVANCE NO. _Smi - 030 - 00_

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| Mrs. Burks | SCIS | 1-22-00 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| Ken Smith CT2162 | Ken Smith | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| Kitchen | F-B-29 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. ... you are ... under Block B the specific action you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

I have yet been seen by a specialist to determine my
diabetics and diagnosed, by certified Dr. for the pro-
blem. I've not been seen about kidney pain or abdominal
pain which I feel is connected to diabetes, and told by Dr.
Jung that I must pay to be here seen, even though I was
already treated for kidney and abdominal pain by Dr. Soloman.
As of this date I've not gotten C-top desire and I
feel it's a 8th amendment violation to know of a condition
and with hold and not treat it. The lack of treatment
may be an excruciating cause and reason for my death.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_Sharon M. Burks_
Signature of Grievance Coordinator

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**1451 N. MARKET STREET**
**ELIZABETHTOWN, PA 17022**

OFFICE OF THE
CHIEF HEARING EXAMINER

April 24, 2000

Kim Smith, CT-2162
SCI Smithfield

Re:     DC-ADM 804 - Final Review
        Grievance No. SMI-0063-00

Dear Mr. Smith:

This is to acknowledge receipt of your appeal to final review of the above numbered grievance.

In accordance with the provisions of DC-ADM 804, VI D, as amended effective November 1, 1997, I have reviewed the entire record of this grievance; including your initial grievance, the Grievance Officer's response, your appeal from initial review and the Superintendent's response. I have also carefully reviewed the issues you raise to final review.

Upon completion this review, it is the decision of this office to uphold the responses provided by staff at the institutional level. I find the issues raised for final review have been addressed by the Grievance Coordinator and the Superintendent, and their responses are reasonable and appropriate.

I concur with the responses already provided at the institution level. Accordingly, your appeal to final review must be denied.

Sincerely,

Robert S. Bitner
Chief Hearing Examiner

RSB:ph
pc:     Superintendent Morgan

DC-804
PART 1

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA. 17001-0598

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE # Smi-063-00

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| Mr. Burke | SCS | 2-9-00 |

FROM: (Commitment Name & Number)
Kim Smith, CT-2162

INMATE'S SIGNATURE
Kim Smith

WORK ASSIGNMENT
Kitchen

QUARTERS ASSIGNMENT
F-B-29

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.

Include the date(s) of staff members you have contacted.

**A. Brief, clear statement of grievance:**

On or about 1-26-00 I filed a refund for art supplies and was denied such, based on Reporters having reports and Counselors reports. After sending request slips to Ms. Hannah I did not have active participation in a art program over a year and negative block reports in which C.O. Allgood, says a document it referenced on that there was services on Blockland. But I only know of 3 I feel judge decision to deny art supplies was sound, and I want one of information a typed. Since work reports from state should have been read, not Rec

#3. If I had such a negative report why did he and I draw out only now with Mr. Dec m. evaluation for a right to art needs. On Kitchen errand where I worked.

**B. Actions taken and staff you have contacted before submitting this grievance:**

Culver, Hannah, Susano

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Donna M. Burke
Signature of Grievance Coordinator
2/14/00

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**2520 LISBURN ROAD, P.O. BOX 598**
**CAMP HILL, PA  17001-0598**

THE SECRETARY'S OFFICE OF
INMATE GRIEVANCES AND APPEALS

April 3, 2003

Kim Smith, CT-2162
SCI Coal Township

Re:    DC-ADM 804 – Final Review
Grievance No. 45525

Dear Mr. Smith:

This is to acknowledge receipt of your appeal to final review of the above numbered grievance.

In accordance with the provisions of DC-ADM 804, effective May 1, 2002, I have reviewed the entire record of this grievance; including your initial grievance, the grievance officer's response, your appeal from initial review and the superintendent's response.  I have also carefully reviewed the issues you raise to final review.

Upon completion of this review, it is the decision of this office to uphold the responses provided by staff at the institutional level.  You were charged appropriately for the prescriptions and visit in accordance with the 820 policy.  These complaints are not considered chronic according to the policy; therefore, you are obligated to pay.

The responses provided at the institutional level are appropriate and in accordance with Department of Corrections policies and procedures.  Accordingly, your appeal to final review must be denied.

Sincerely,

Thomas L. James
Chief Grievance Coordinator

TLJ:kk

cc:    Superintendent Gillis
Grievance Office
Central File



DC-804
Part 1

[illegible]

| FOR OFFICIAL USE ONLY |
| --- |
| 45585 |
| GRIEVANCE NUMBER |

OFFICIAL INMATE GRIEVANCE [illegible] 3 [illegible]

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
| --- | --- | --- |
| Ms K. [illegible] | [illegible] | 2-26-03 |
| FROM: (INMATE NAME & NUMBER) Kim Smith CT[illegible] | SIGNATURE OF INMATE: [signature] Smith | |
| WORK ASSIGNMENT: N/A | HOUSING ASSIGNMENT: D-[illegible] | |

INSTRUCTIONS:

1. [illegible]
2. State your [illegible]
3. List in Block [illegible] taken to resolve this matter. Be sure to include the identity of staff members [illegible]

[illegible]

a great number of times I've returned to medical [illegible] with complaints of pain in right shoulder [illegible] into the arm and [illegible] awake at night and pain in left [illegible]. Each time I have been seen the [illegible] state no treatment [illegible] coming and that these serious conditions [illegible] pain will not be treated. This act is deliberate indifference and is knowingly and intentionally being done with the [illegible] desire to inflict [illegible] to a serious condition. I [illegible] should be [illegible] only to [illegible] I will not be [illegible]. [illegible] have failed in their [illegible] to adequately log in medical [illegible]. How many times must I return to sick call for a condition before I can adequately be treated. And how many times [illegible] for the same condition that I've already been charged [illegible]

[illegible]

Your grievance [illegible]

K K [signature]
Signature of Facility Grievance Coordinator

3/3/03
Date

WHITE - Facility Grievance Coordinator Copy CANARY - File Copy PINK - Action Return Copy GOLDENROD - Inmate Copy

Revised [illegible]

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**2520 LISBURN ROAD, P.O. BOX 598**
**CAMP HILL, PA 17001-0598**

THE SECRETARY'S OFFICE OF
INMATE GRIEVANCES AND APPEALS

September 26, 2001

Kim Smith, CT 2162
SCI Coal Township

Re:     DC-ADM 804 – Final Review
        Grievance No. 1087

Dear Mr. Smith:

This is to acknowledge receipt of your appeal to final review of the above numbered grievance.

In accordance with the provisions of DC-ADM 804, effective January 1, 2001, I have reviewed the entire record of this grievance; including your initial grievance, the grievance officer's response, your appeal from initial review and the superintendent's response. I have also carefully reviewed the issues you raise to final review.

Upon completion of this review, it is the decision of this office to uphold the responses provided by staff at the institutional level. There is documented evidence that you refused the C-Cap on several occasions and were non-compliant. This does not support your claim of discrimination, deprivation of health and attempted murder. Your medical records were discussed with you related to another grievance and you were provided an opportunity to review your records again. I suggest you take advantage of the opportunity to meet with the medical staff before you pursue these unfounded allegations.

The responses provided at the institutional level are appropriate and in accordance with Department of Corrections policies and procedures. Accordingly, your appeal to final review must be denied.

Sincerely,

Thomas L. James
Chief Grievance Coordinator

TLJ/rh

cc:     Superintendent Gillis

FOR OFFICIAL USE ONLY

DATE

...ne to include the identity of staff

8/9/01

DC-804
Part 2

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA 17001**

**OFFICIAL INMATE GRIEVANCE**

**INITIAL REVIEW RESPONSE**

**NO.**

**GRIEVANCE** | 1087

| TO:<br>Kim Smith, CT-2162 | FACILITY<br>SCI-Coal Township | HOUSING<br>LOCATION<br>D-2-19 | GRIEVANCE<br>DATE<br>8-4-01 |
|---|---|---|---|

The following is a summary of my findings regarding your grievance:

Mr. Smith,

Please allow me to reiterate some of the same message I shared with you on 8-6-01 in Grievance #0626-01 regarding a C-Pap.

On 8-2-01, you were seen by Dr. McGlaughlin and at that time, the C-Pap Machine was discussed. An extensive review of your medical records was done and it notes, (inmate signed refusal to use C-pap and was non-compliant).

On 7-25-01, Dr. McGlaughlin responded to a request written by you to him on 7-24-01. His response to you at that time was, Review of your chart and it is noted that you had not used the C-Pap for nearly one year, while incarcerated at Smithfield. Several signed refusals by you were found in your records regarding the C-Pap on 2-4-00 and 6-16-00. Dr. Long clearly documented on 1-5-01 to discontinue C-Pap, patient has been non-compliant and obviously does _not_ need this machine. There is no clinical or symptomatic evidence of your need for C-Pap.

The Medical Department here at SCI-Coal Township, does not issue C-Pap.

Mr. Smith, if you would like to review your medical chart, please send a request to Ms. Phillips, Medical Records Department. She will make the necessary arrangements.

You were also directed to seek medical treatment when needed.

**WJS/mp**

**CC: Kandis Dascani, Superintendent Assistant**
**Inmate Records, DC-15**
**Unit Manager**
**File**

| Print Name and Title of Grievance Officer<br>Wilma J. Sewell<br><br>Health Care Administrator | SIGNATURE OF GRIEVANCE OFFICER<br><br>*Wilma J. Sewell* HCA | DATE<br><br>8-16-01 |
|---|---|---|



**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**State Correctional Institution Coal Township**
**(570) 644-7890**
**August 24, 2001**

SUBJECT:    Appeal from Initial Review Grievance 1087-01

TO:        Kim Smith, CT-2162
           D-2

FROM:      Frank D. Gillis
           Superintendent

I have received your Request for Appeal from Initial Review of the above-noted grievance and I have reviewed the entire record related to this matter.

I find the response provided you by Ms. Sewell, in her capacity as Grievance Officer, to be proper and it shall, therefore, be sustained. Your Request for Appeal from Initial Review of Grievance 1087-01 is denied.

FDG/kp

cc:    Ms. Sewell
       DC-15
       File

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

Commonwealth of Pennsylvania
Department of Corrections

_1 of 2_

SUPERINTENDENT'S
OFFICE

**INSTRUCTIONS**
Complete items number 1-8.  If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. **To: (Name and Title of Officer)**
   Supt Gillis

2. **Date:** 8-23-01

3. **By: (Print Inmate Name and Number)**
   Kim Smith CT2162

   Kim Smith
   _____
   **Inmate Signature**

4. **Counselor's Name**
   Ms Moses

5. **Unit Manager's Name**
   Mr Smith

6. **Work Assignment**
   F/S

7. **Housing Assignment**
   D-2-19

8. **Subject:  State your request completely but briefly.  Give details.**

Appeal to grievance #1087 dated 8-4-01 reply dat 8-6-01

① I will never signed a refusal for here at SCIS moreover it was issued a misconduct because I would not

② I have complained about breathing problem here and at SCIG regarding my sleep apena, and staff refused to address

③ There is clinical and symphomatic evidence, as it was taken to Osterde hospital 8 times for sleep study as well as to see a pulmonolgist

④ the fact that I was issued the C-Pap, shows and prooves the conbihose was there. And because it was refused it use in RHU from 6-18-00 because no power was in the RHU, cell at SCIG and requested the use of such many times and was denied such

⑤ What Policy of the D.O.C. or this institution, that prohibits the issuing of a C-Pap device when medical staff is aware

9. **Response: (This Section for Staff Response Only)**

To DC-14 CAR only ☐

To DC-14 CAR and DC-15 IRS ☐

Staff Member Name _____ / _____ Date _____
            Print                         Sign

Revised July 2000

| Form DC-135A | Commonwealth of Pennsylvania |
|---|---|
| **INMATE'S REQUEST TO STAFF MEMBER** | Department of Corrections |

**INSTRUCTIONS**
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

*2 of 2*

| 1. To: (Name and Title of Officer) | 2. Date: |
|---|---|
| *Supt Gillis.* | *8-23-01* |

| 3. By: (Print Inmate Name and Number) | 4. Counselor's Name |
|---|---|
| *Kim Smith CT2162* | *Ms. Marse* |
| *Kim Smith* | 5. Unit Manager's Name |
| Inmate Signature | *Ms. Smith* |

| 6. Work Assignment | 7. Housing Assignment |
|---|---|
| *F/S* | *D-2-14* |

**8. Subject: State your request completely but briefly. Give details.**

*health rist and error (death).*
*what can be gained by reviewing my medical chart with*
*Mr. Phillips and your medical staff. So set on reviewing and*
*this health care and knowing the risk for death. And*
*making false claims that there is no clinical evidence, when*
*record should show 2 near nigth stops.*
*Also any request about health Sg and stop pin-*
*lism a medical staff refused to address.*

*Respectfully*

**9. Response: (This Section for Staff Response Only)**

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name _____ / _____ Date _____
              Print                    Sign

Revised July 2000

APPEAL TO FINAL REVIEW.        ISSUE HEALTH CARE.   C-PAP BREATHING DEVICE
GRIEVANCE NUMBER 1087-01       DATE 8-4-01          S.C.I.C.

     This is an appeal from a decision provided me regarding a c-pap device which I had
at S.C.I.S. until I was placed in RHU, for 7 months at which time this device could not
safely be used and their was no power in these RHU. cells at the time and the plug sockets
were so damaged that the device would not work.  At that time a Pa. M. Baker denied me this
use then went on to claim that I refused this device and went on to falsify records and
claim I refused this device, and also claim that I refused this device several times and
signed a refusal.  I'm being told the same at S.C.I.C. regarding this device and its use
that this institution does not permit inmates with this illness to use such a device.  That
I signed a refusal several times which I did not, at S.C.I.S. I was given a misconduct
because I would not obey the order given me by C.O. Ersek to sign a refusal, even though
all complaints about breathing and waking in nights gasping for air have went unaddressed
at this institution and at S.C.I.S. I have not been provided this health care, since I once
had it, even if I did refuse the device at the time which I did not I should be provided
this health care upon request.  To have me taken out tested and have over night staffs at
hospital then to have Dr. McGlaughlin, and Mrs Sewell claim that their is no, clinical or
symptomatic evidence when record clearly show such, is done with deliberate indifference
and with malious with the intent to bring me harm and or even death when the oxygen level
in blood stream goes dangerous low during sleep.  To know and have this information and
refuse to treat based on the claim of refusal by an inmate, is unjust, then to claim that
their is no evidence when their is a clear showing as inmate had over night stays in
hospital and testing done, show an obvious need for this device, since inmate once did in
fact have this device, and threw means out of his control he was denied such then the false
claim that he refused and never did, moreover that he signed a refusal which he did not.
And all request for this device and it use have wen unaddressed for over 14 months.  Even
Ms Hannah unit manager at S.C.I.S. tried to get me the divice back and was denied and meet
a level of indifference from the medical staff their.  Even though I have requested such
and put in sick call to be seen the staff he at S.C.I.C. have denied such and stated either
a non-existent D.O.C. policy or institutional policy to deprive me this health care and
is doing so to bring me harm or death, to know of a health condiction that may cause death
and refuse to treat it is done with the intent to bring harm, neglect, negilience ,
malpractice, to a serious illness.

     For these reason I'm bring this appeal as every night without this device put me at
risk for death and the medical staff refusal to address this health care problem is done

)                                              )

with deliberate indifference to bring inmates harm and even death if not treated correctly.


RESPECTFULLY SUBMITTED


PROOF OF SERVICE

I certify a true and correct copy of this appeal was sent to the below listed parties by the United States Postal Service on or about Sept. 5, 2001.  To the below listed parties.

GRIEVANCE APPEALS OFFICE
KIM SMITH

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
2520 LISBURN ROAD, P.O. BOX 598
CAMP HILL, PA 17001-0598

THE SECRETARY'S OFFICE OF
INMATE GRIEVANCES AND APPEALS

March 20, 2003

Kim Smith, CT-2162
SCI Coal Township

Re:    DC-ADM 804 – Final Review
Grievance No. 43833

Dear Mr. Smith:

This is to acknowledge receipt of your appeal to final review of the above numbered grievance.

In accordance with the provisions of DC-ADM 804, effective May 1, 2002, I have reviewed the entire record of this grievance; including your initial grievance, the grievance officer's response, your appeal from initial review and the superintendent's response. I have also carefully reviewed the issues you raise to final review.

Upon completion of this review, it is the decision of this office to uphold the responses provided by staff at the institutional level. After review of your complaints and all enclosed documentation I am responding to your appeal even though your grievance was not filed in a timely manner. I agree with the grievance officer and Superintendent Gillis's findings. Just because a medication is reordered does not mean that the underlying condition is chronic. It is the decision of the medical professionals to determine if a condition is chronic or acute. It was determined that the problems in question were not chronic and the medical charges were appropriate.

The responses provided at the institutional level are appropriate and in accordance with Department of Corrections policies and procedures. Accordingly, your appeal to final review must be denied.

Sincerely,

Thomas L. James
Chief Grievance Coordinator

TLJ:kk

cc:    Superintendent Gillis
Grievance Office
Central File





## COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF CORRECTIONS
*Secretary's Office of Inmate Grievances & Appeals*
2520 Lisburn Road/P.O. Box 598
Camp Hill, PA 17001

*D.B-2055*

Inmate Name: _____Kim Smith_____         Inmate #: ____CT-2162____

Institution: _____SCI Coal Twp._____              ____43833____
                                                    *(Grievance Number, if relevant)*

From:  *M. Snyder (for)*                     Date: _____3/5/03_____
Kristen P. Reisinger
Assistant Chief Grievance Coordinator

This is to acknowledge receipt of your letter to Central Office. Upon review of the issue(s) you raise, I am filing your letter without action for the following reason(s):

1. _____   You need to include the official identification number of the grievance.

2. _____   You need to identify the specific publication(s) you are appealing.

3. _____   Your claim to have appealed to the Superintendent without response does not entitle you to direct appeal to final review. Contact the Superintendent's Office to ensure they received your appeal.

4. _____   Your claim of no response from the Grievance Officer does not permit you to directly appeal to final review. Contact the Superintendent's Office regarding the status of your grievance.

5. _____   Staff responses, including the Superintendent, to inmate request slips are not appealable to this office.

6. _____   This office has no prior record of receipt of an appeal from you on this issue.

7. _____   You have already received final review on this issue.

ADDITIONAL COMMENTS:
Mr. Smith – Your inquiry of how to obtain copies of your initial grievance and your initial response are acknowledged. Please contact Ms. Dascani, the Grievance Coordinator at SCI Coal Township via an Inmate Request Slip to request the copies you desire with a cash slip attached.

Case 1:01-cv-00817-WWC  Document 147  Filed 06/16/2003  Page 78 of 100

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA 17001-0598

FOR OFFICIAL USE ONLY

43833

GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| S.C.I.C. Ms Dascani | S C I C | 2-7-03 |

| FROM: (INMATE NAME & NUMBER) | SIGNATURE of INMATE: |
|---|---|
| Kim Smith CT0162 | Kim Smith |

| WORK ASSIGNMENT: U/A | HOUSING ASSIGNMENT: D-2-55 |
|---|---|

**INSTRUCTIONS:**
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any actions you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

**A.** Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages.

On or about 1-17-03 I was charge $2.00 to renew medication for chronic disease or illness in violation of DC-ADM-820 # A-1 and 2(G)(J)(P) since I've been treated and medicated for sore on body, pain medication, and foot fungus over the years to continue to charge me a co-pay goes against the status quo of this policy and to continue to violate this written policy is so deliberately and intentionally when it is clear that this policy clear states when and when not to charge and PA com not act as policy makers to reflect their personel idealisms DC-ADM 820 section (2)(G)(J) sequent to the initial medication. This violation has taken place a number of times and appears to be a deliberate act and intentionally done, and this charge is not appropriate so one should be allowed this behaved to be a violatory act. Remedies, monetary compensary resources will be sorg by

**B.** List actions taken and staff you have contacted, before submitting this grievance.

Ms. Hewell

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____         _____
Signature of Facility Grievance Coordinator              Date

**WHITE** - Facility Grievance Coordinator Copy   **CANARY** - File Copy   **PINK** - Action Return Copy   **GOLDENROD** - Inmate Copy
Revised
December 2000

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**2520 LISBURN ROAD, P.O. BOX 598**
**CAMP HILL, PA 17001-0598**

THE SECRETARY'S OFFICE OF
INMATE GRIEVANCES AND APPEALS

April 17, 2003

Kim Smith, CT-2162
SCI- Coal Township

Re:   DC-ADM 804 – Final Review
      Grievance No. 46959

Dear Mr. Smith:

This is to acknowledge receipt of your appeal to final review of the above numbered grievance.

In accordance with the provisions of DC-ADM 804, effective May 1, 2002, I have reviewed the entire record of this grievance; including your initial grievance, the grievance officer's response, your appeal from initial review and the superintendent's response. I have also carefully reviewed the issues you raise to final review.

Upon completion of this review, it is the decision of this office to uphold the responses provided by staff at the institutional level. After review of your complaints and all enclosed documentation, I agree with the grievance officer and Superintendent Gillis's findings. I find no grievous action involved in the question placed for you. It is not unusual for staff to talk to inmates regarding the status of cases as Superintendent Gillis indicated in his response. This grievance is frivolous, and your claims that this simple question by Lt. Gooler caused you to fear for your safety is without merit.

The responses provided at the institutional level are appropriate and in accordance with Department of Corrections policies and procedures. Accordingly, your appeal to final review must be denied.

Sincerely,

Thomas L. James
Chief Grievance Coordinator

TLJ:jk
cc:   Superintendent Gillis
      Grievance Office
      Central File

*"Our mission is to protect the public by confining persons committed to our custody in safe secure facilities, and to provide opportunities to inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims."*




**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**2520 LISBURN ROAD, P.O. BOX 598**
**CAMP HILL, PA 17001-0598**

THE SECRETARY'S OFFICE OF
INMATE GRIEVANCES AND APPEALS

October 23, 2001

Kim Smith, CT-2162
SCI-Coal Township

Re:   DC-ADM 804 – Final Review
      Grievance No. 1121

Dear Mr. Smith:

This is to acknowledge receipt of your appeal to final review of the above numbered grievance.

In accordance with the provisions of DC-ADM 804, effective January 1, 2001, I have reviewed the entire record of this grievance; including your initial grievance, the grievance officer's response, your appeal from initial review and the superintendent's response. I have also carefully reviewed the issues you raise to final review.

Upon completion of this review, it is the decision of this office to uphold the responses provided by staff at the institutional level. I have reviewed your medical records and found an entry that you refused to be seen on 8/7/01. I also note at least one other occasion that you refused to show up for medical sick line. There is simply no indication that your health was jeopardized by this incident.

The responses provided at the institutional level are appropriate and in accordance with Department of Corrections policies and procedures. Accordingly, your appeal to final review must be denied.

Sincerely,

Thomas L. James
Chief Grievance Coordinator

TLJ:rh

cc:   Superintendent Gillis
      Grievance Office
      Central File

---

"Our mission is to protect the public by confining persons committed to our custody in safe secure facilities, and to provide opportunities to inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims."

COMMONWEALTH OF PENNSYLVANIA
Department of Corrections
State Correctional Institution Coal Township
(570) 644-7890
August 24, 2001

SUBJECT:   Appeal from Initial Review
           Grievance 1121-01 Interim Response

TO:        Kim Smith, CT-2162
           D-2-19

FROM:      Frank D. Gillis
           Superintendent

I have received your Request for Appeal from Initial Review of the above-noted grievance. I have reviewed the record related to this matter, including the response provided you at the Initial Review by Ms. Sewell.

At this time, I do not have enough information before me, in terms of the overall investigation, to evaluate your request for appeal to this level. Therefore, I am remanding this grievance back to the initial review for further investigation so that the issues raised by you at your initial grievance may be properly addressed. At such time as I receive the information I need, I will provide you with a decision regarding your appeal of this matter. Be assured that this process will be expedited and you will receive a decision as soon as possible.

FDG/kp

cc:   Ms. Sewell
      File

DC-804
PART 1

OFFICIAL INMATE GRIEVANCE

GRIEVANCE NO. | 1121

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| R. Freeman | SCI | |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| Kim South CT-8120 | | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| N/A | D-3-14 | |

INSTRUCTIONS:
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

On Tuesday at about 10:45 A.M. I was on a tour _____ _____ _____ _____ refused to open door even though it was standing at door and looked therein upon. Then this C.O. knowingly and intentionally claimed that I refused to be seen interfering with my health care, for a month under my room that may be worse. This not was done deliberately, with intent to cause harm and pain and suffering as it might be. 30 days or more before this vindictive will be addressed and I must endure the pain, in the mean time, now should I have to repeatedly have to sign up for sick call for that _____ _____

B. Actions taken and staff you have contacted before submitting this grievance:

Mr. Hoopere,

Your grievance has been received and will be processed in accordance with DC-ADM 804.

K.K. Lascari
Signature of Grievance Coordinator

2/8/01
Date

WHITE—Grievance Coordinator Copy    CANARY—File Copy    PINK—Action Return Copy    GOLDENROD—Inmate Copy

Appeal to final review from denial from initial review and Warden Gillis decision to deny this review.

GRIEVANCE # 1121                    DATE 8-7-01

This is an appeal from an action by C.O. in medical lobby  who controls the door for inmate to go to their appointments.  On this day this officer knowingly and intentionally enterfered with my health carem namely to see Dr. about having a inflamed skin tag that was leaking clear fluid, and sore at the time.  Upon calling Kim Smith to see this Dr. to have this problem addressed and removed this officer knowingly and intentionally refused to open the door to let me enter the office to see Dr.  When I looked this C.O. in the eyes she still refused to open the door then went on to claim, make false claims that I refused to be seen which was unfounded she did so to deprive me health care.  Then this officer went on to call all staff and make false claim about my behavior and or attitude to justify her enterference in my health care, and she done so with malicious intent to bring me harm and to prolong any and all treatment.  Their is not justification for this C.O. to deny me access to health care or enterferr with this health care then to go on and make false claims about Kim Smith that was not true and because of her act it delayed treatment for some 60 plus days.  This C.O. acts were not an security issue, more over a deprivation of health care for a serious health problem, which was knowingly and intentionally done to deprive and interfear with health care and threw this act reflected a delibrate healht care issue.  This matter has not properly been handled and I have suffered and endured pain because of the intentional acts of this C.O. to deprive me health care, and the continued lies to support her level and form of abuse and justice as she acted as a health care professional to determine who needed to been seen by the Dr. and this is not her job title to do such, and make false accquation, to support her abuse I have suffered becase of this C.O. acts on the day inquestion.

For this reraason I'm bring this appeal for the acts of this C.O. in the administration of her duty or acting as a policy maker for the D.O.C. when she took it upon herself to act as a health care professional when she denied me access to health care profession.

Therefore Kim Smith prays that this appeal will be addressed and the acts of this C.O. officer be addressed so she does not hinder or deny another of requested health care and, any up coming health care.  This is coupled with the nureses cutting medication when the feel like it and creating false claims to support her abuse, damages will be sought for any injury sustained because of this officers act on Aug. 7, 2001.

RESPECTFULLY

On 9-20 I was refused copies to comply
will D.O.C Policy for appeals to grievance

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**2520 LISBURN ROAD, P.O. BOX 598**
**CAMP HILL, PA 17001-0598**

THE SECRETARY'S OFFICE OF
INMATE GRIEVANCES AND APPEALS

April 23, 2002

Kim Smith, CT-2162
SCI-Coal Township

Re:    DC-ADM 804 – Final Review
Grievance No. COA-0626-01

Dear Mr. Smith:

This is to acknowledge receipt of your appeal to final review of the above numbered grievance.

In accordance with the provisions of DC-ADM 804, effective January 1, 2001, I have reviewed the entire record of this grievance; including your initial grievance, the grievance officer's response, your appeal from initial review and the superintendent's response. I have also carefully reviewed the issues you raise to final review.

Upon completion of this review, it is the decision of this office to uphold the responses provided by staff at the institutional level. Review of your record reveals the institution has recommended that you use the C-Pap machine for your sleep apnea. It is noted that you have been non-compliant with the medical staff and have refused to use the machine.

The responses provided at the institutional level are appropriate and in accordance with Department of Corrections policies and procedures. Accordingly, your appeal to final review must be denied.

Sincerely,

Thomas L. James
Chief Grievance Coordinator

TLJ:rh

cc:    Superintendent Gillis
       Grievance Office
       Central File

"Our mission is to protect the public by confining persons committed to our custody in safe secure facilities, and to provide opportunities to inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims."



[illegible]
Part I [illegible]

FOR OFFICIAL USE ONLY
06896-01
GRIEVANCE NUMBER

DATE: 7-27-01

[illegible]

INSTRUCTIONS:
1. Refer to the [illegible] procedures on the [illegible]
2. [illegible]
3. [illegible] to include the identity of staff [illegible]

4. Provide a brief [illegible] of your grievance. Additional paper may be used, maximum two pages.

[illegible] the condition addressed. [illegible] puts me at risk for [illegible] problems, when oxygen level in blood [illegible] dangerously low [illegible] request [illegible] are not addressed [illegible] who can [illegible] for this condition or monitored [illegible]

[illegible]

Signature of Facility Grievance Coordinator

Date: 8/1/01

WHITE - Facility Grievance Coordinator Copy [illegible] File Copy [illegible] Copy GOLDENROD - Inmate Copy

[illegible]
December 2000

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
2520 LISBURN ROAD, P.O. BOX 598
CAMP HILL, PA  17001-0598

THE SECRETARY'S OFFICE OF
INMATE GRIEVANCES AND APPEALS

March 6, 2002

Kim Smith, CT-2162
SCI Coal Township

Re:    DC-ADM 804 – Final Review
       Grievance No. 5779

Dear Mr. Smith:

This is to acknowledge receipt of your appeal to final review of the above numbered grievance.

In accordance with the provisions of DC-ADM 804, effective January 1, 2001, I have reviewed the entire record of this grievance; including your initial grievance, the grievance officer's response, your appeal from initial review and the superintendent's response.  I have also carefully reviewed the issues you raise to final review.

Upon completion of this review, it is the decision of this office to uphold the responses provided by staff at the institutional level.  You presented no evidence that the highlighters were purchased at SCI Smithfield or that they were not state issued.  The burden of proof is on you to show just cause for this office to alter the decision reached at the facility.  You certainly have not done so.

The responses provided at the institutional level are appropriate and in accordance with Department of Corrections policies and procedures.  Accordingly, your appeal to final review must be denied.

Sincerely,

Thomas L. James
Chief Grievance Coordinator

TLJ:mr

cc:    Superintendent Gillis
       Grievance Office
       Central File

"Our mission is to protect the public by confining persons committed to our custody in safe secure facilities, and to provide opportunities to inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims."

DC-804
Part 1

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA 17001-0598

FOR OFFICIAL USE ONLY

5779

GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| K. DASCANI | S.C.I.C | 10-12-01 |

| FROM: (INMATE NAME & NUMBER) | SIGNATURE of INMATE: |
|---|---|
| KIM SMITH    CT-2162 | |

| WORK ASSIGNMENT:    F/S | HOUSING ASSIGNMENT:    D-B-19 |
|---|---|

INSTRUCTIONS:
1  Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any actions you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages.

On this date C.O. Henny and C.O. Brobaker during a shake down of my cell took 2 high light markers, 4 red markers, one green marker, 2 blue ink & 2 black and 2 brown makers making a claim to a non-existent SCIC policy that prohibits inmates from having such markers, stating that the are not sold in the institution. Since I have came to this institution I had such in my property and threw several shake downs and being in the hole with the security checks of property none of the staff ever stated that I could not have such. And their is not a policy that states markers must be in clear package or casing, only ink pens are held to that standard. C.O. Henny knew or should have known that to take such would have deprived me, and that their was no such policy to support his action by the taking of these markers and destroying them stopping me from doing art work, and my legal work by marking certain cases. Total cost for markers $ 11.00 respectfully request them to be replaced as they should have never been taken.

B. List actions taken and staff you have contacted, before submitting this grievance.
U/M Smith. Deputy Johnson, D block office

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_K. K. Dascani_
Signature of Facility Grievance Coordinator

10/17/01
Date

WHITE - Facility Grievance Coordinator Copy   CANARY - File Copy   PINK - Action Return Copy   GOLDENROD - Inmate Copy
Revised
December 2000

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**2520 LISBURN ROAD, P.O. BOX 598**
**CAMP HILL, PA 17001-0598**

THE SECRETARY'S OFFICE OF
INMATE GRIEVANCES AND APPEALS

March 6, 2002

Kim Smith, CT-2162
SCI Coal Township

Re:     DC-ADM 804 – Final Review
        Grievance No. 3895

Dear Mr. Smith:

This is to acknowledge receipt of your appeal to final review of the above numbered grievance.

In accordance with the provisions of DC-ADM 804, effective January 1, 2001, I have reviewed the entire record of this grievance; including your initial grievance, the grievance officer's response, your appeal from initial review and the superintendent's response. I have also carefully reviewed the issues you raise to final review.

Upon completion of this review, it is the decision of this office to uphold the responses provided by staff at the institutional level. You have not provided this office with any information that supports your allegations of denied photocopies or access to the courts.

The responses provided at the institutional level are appropriate and in accordance with Department of Corrections policies and procedures. Accordingly, your appeal to final review must be denied.

Sincerely,

Thomas L. James
Chief Grievance Coordinator

TLJ:mr

cc:     Superintendent Gillis
        Grievance Office
        Central File

---

"Our mission is to protect the public by confining persons committed to our custody in safe secure facilities, and to provide opportunities to inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims."

Case 1:01-cv-00... Filed 06/16/2003 Page 91 of 100

**DC-804**
**PART 1**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO. **3895**

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| **K. DASCANIA** | **SCIC** | **9-14-01** |

| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE |
|---|---|
| **KIM SMITH** | |

| WORK ASSIGNMENT | QUARTERS ASSIGNMENT |
|---|---|
| **F/S** | **D-Z-19** |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

Under 28 U.S.C. 1915 the informa pauperis status when 20 % of a inmates income is to be deducted, not and it was never stated in this law that this amount is to be deducted from personal gifts. A personal gift is not income and no where in this statue is such stated, nor is it stated that the institution where an inmate is house can put an inmate in the red for the filing fee if he does not have it. as I did not have an income and according to record in libary I'm some $11.00 in the red and my records do not show such in fact I made no perchases of postage or copies in over 3 weeks since such has been rejected by libary staff. If I'm prohibited from getting copies why do I keep getting billed for expenses for things I did not sign for and why is this repeatedly happening. depriving me of legal copies that are needed and personal items that are needed. Why do returned cash slips not add up to the amount that is being claimed, by the business office

B. Actions taken and staff you have contacted before submitting this grievance:

INMATE ACCOUNTS, DIFFERENT C.O. LIBARIAN, MR MOSER, MR. SMITH

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____
Signature of Grievance Coordinator

**9/19/01**
Date

**WHITE**—Grievance Coordinator Copy   **CANARY**—File Copy   **PINK**—Action Return Copy   **GOLDENROD**—Inmate Copy

Tracking No. 3895

9-14-01

This [illegible] in [illegible] to a federal court petition that is and was [illegible] and given access to this [illegible] to an illegal matter [illegible] courts and I am being denied my ability to [illegible] court order, and now [illegible] on it. I have a federal habeas petition pending and I must stay every [illegible] and file a reply to this matter that I got some 60 days ago and without a copy I can not reply, why am I being denied this right to an illegal and unless [illegible] petition in court, I [illegible] this act not deprive me [illegible] with D.O.C. attorney [illegible] into the acts of the business [illegible]

K.K. Duncan                                    9/19/01

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**2520 LISBURN ROAD, P.O. BOX 598**
**CAMP HILL, PA 17001-0598**

THE SECRETARY'S OFFICE OF
INMATE GRIEVANCES AND APPEALS

December 27, 2002

Kim Smith, CT-2162
SCI- Coal Township

RE:   DC-ADM 804 – Final Review
      Grievance No. 37516

Dear Ms. Smith:

This letter serves to acknowledge receipt of your letter/documents to this office regarding your appeal to the above referenced grievance number(s).   Upon review of this letter/documents, I have decided to file this letter without action.

This action is being taken due to your repeated failure to comply with the provisions of the DC ADM 804, Inmate Grievance System, section VI. D., 1f., effective January 1, 2001. This policy specifically identifies the documents required for a proper appeal to final review. Additionally, the revised policy, effective May 1, 2002 under section VI. D., 1h., provides the same instructions.

Our records indicate you are more than familiar with the grievance process based upon the number of grievances you have filed; therefore, you should not have to be told each time you file an appeal of the documents required.  **You are hereby advised that any subsequent appeals to this office that does not include the necessary documentation in accordance with the above-cited provisions will be immediately dismissed.**

I trust you will heed this warning and comply with the policy as required.

Sincerely,

Thomas L. James
Chief Grievance Coordinator

TLJ/jk

cc:   Superintendent Gillis
      Grievance Office
      Central File

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**2520 LISBURN ROAD, P.O. BOX 598**
**CAMP HILL, PA 17001-0598**

THE SECRETARY'S OFFICE OF
INMATE GRIEVANCES AND APPEALS

January 9, 2003

Kim Smith, CT-2162
SCI- Coal Township

Re:   DC-ADM 804 – Final Review
       Grievance No. 37516

Dear Mr. Smith:

Your request for appeal to final review of the above noted grievance(s) is hereby acknowledged.

In accordance with the provisions of DC-ADM 804, VI., D., 1h., I have reviewed the supporting documentation that you have sent. I have found you have not provided this office with the required documentation that relates to your appeal(s).

Upon your first appeal attempt, this office sent you a letter under the date of December 27, 2002. This correspondence indicated that you had failed to send the required documentation that related to your appeal(s). In addition, you were informed that any further correspondence, which did not contain the required documentation, would result in a dismissal of your grievance(s).

On January 7, 2003, we received your appeal packet for the above grievance(s); however, you failed to include your initial response.

Therefore, for the above stated reasons, your appeal(s) to this office is dismissed.

Sincerely,

Thomas L. James
Chief Grievance Coordinator

TLJ/jk

cc:   Superintendent Gillis
       Grievance Office
       Central File

---

*"Our mission is to protect the public by confining persons committed to our custody in safe secure facilities, and to provide opportunities to inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims."*

**DC-ADM 804, Inmate Grievance System**                                    **Attachment B**

DC-804
Part 2

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA  17001**

OFFICIAL INMATE GRIEVANCE
INITIAL REVIEW RESPONSE

GRIEVANCE NO. | 37516
---|---

| TO: (Inmate Name & DC No.) | FACILITY | HOUSING LOCATION | GRIEVANCE DATE |
|---|---|---|---|
| Kim Smith, CT-2162 | Coal Twp. | D-2-19 | 11-26-02 |

The following is a summary of my findings regarding your grievance:

Mr. Smith,

You were removed from the cook's position because you refused to follow directions from those in charge of you.  With the demotion in job status came the demotion in pay.  I suggest that you concentrate your efforts on your current job, and perhaps you can work your way back into a more lucrative position.

It's all up to you Mr. Smith.

JDG/jb

Attachment

cc:    Mrs. Dascani
        DC-15
        D Unit Manager
        File (37516)

| Print Name and Title of Grievance Officer | SIGNATURE OF GRIEVANCE OFFICER | DATE |
|---|---|---|
| James D. Gaydon<br><br>Food Service Manager II | | 12-9-02 |

Case 1:01-cv-00817-WWC   Document 147   Filed 06/16/2003   Page 96 of 100

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA 17001-0598

FOR OFFICIAL USE ONLY

**37516**

GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**    02 DEC -2  AM 11:49

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| Kandas Dascani | S.C.I.C. | 11-26-02 |

| FROM: (INMATE NAME & NUMBER) | SIGNATURE of INMATE: |
|---|---|
| Kim Smith CT-2162 | *Kim Smith* |

| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: |
|---|---|
| Food Service | D-2-19 |

**INSTRUCTIONS:**
1  Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any actions you may have taken to resolve this matter.  Be sure to include the identity of staff members you have contacted.

**A.** Provide a brief, clear statement of your grievance.  Additional paper may be used, maximum two pages.

On November 23 2002 I was told by Mr Neff Food Service that I was to be staffed out of the kitchen based on poor work performance; See Inmate Handbook XIII Work Assignments (DC-ADM. 816) A General #8 and B pay system D Pay rate E Pay change 1 all advancements and performances must have been satisfactory for me to get raises to $.35 per-hour, and in order to get raises my on the job performance must have been satisfactory and I believe raises were based on positive evaluation.  And any and all advancement were based on work performance and to move that high on the pay scale I must have been doing something right, over a 15 month period I was in the kitchen and if my work performance was in question I would have never gotten raises or stayed in the kitchen for 15 months.   I was advised that I was placed on C Group and since I was not taken out of the kitchen I should have the same pay rate.
I'm also requesting a copy of all raised evaluation in which I was given a raise, as it is I feel this is an act of discrimination and punishment unfounded when the same thing other inmate do and are not punished for them.

**B.** List actions taken and staff you have contacted, before submitting this grievance.

*mr Smith U/M, Mr Mosey, Employment Deputy Johnson.*

Your grievance has been received and will be processed in accordance with DC-ADM 804.

*K K Dascani*

Signature of Facility Grievance Coordinator

*12/3/02*

Date

**WHITE** - Facility Grievance Coordinator Copy   **CANARY** - File Copy   **PINK** - Action Return Copy   **GOLDENROD** - Inmate Copy
Revised

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA 17001-0598**
02 DEC -2 AM 11

FOR OFFICIAL USE ONLY

37516

GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| Kanbis  DasCani | S.C.I.C. | 11-30--02 |
| FROM: (INMATE NAME & NUMBER) | SIGNATURE of INMATE: | |
| Kim Smith | *Kim Smith* | |
| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: | |
| F/S | D-2-19 | |

**INSTRUCTIONS:**
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any actions you may have taken to resolve this matter.  Be sure to include the identity of staff members you have contacted.

**A.** Provide a brief, clear statement of your grievance.  Additional paper may be used, maximum two pages.

On 11-29-02 I requested from Mr. Neff a copy of all promotion in which
I was given a raise, and the evaluation forms, and quarters card for
work.  His reply was to write or file a grievance and have Ms. Dascani
Call him.  Since these papers in question are report and or evaluation
I should be entitled to get a copy.  I was also told by person that if
I file  a grievance I could count on Mr. Neff filing a misconduct
against me this is according to one of his kids who has repeatedly messed
up food and nothing comes of it.  At present I feel my safety is at
risk, and I my be subjected to other abuses by him in connection with
this grievance.  I'm not happy as to why I was removed from my cooks job
and I do not feel safe their and feel that this person my hinder my re-
lease or file anything in his reports.  In the 15 month that I was in
the kitichen and 8 months of that as a cook I had no problem their and
got raises based on my work performance and a positive evaluation.  A
copy of this documents is requested to show and abuse of power that is
knowingly and intentionally done to inflict harm.  It is also respect-
fully requested to be moved to another work place as I feel this per-
son my say or do anything, and believe his action to beunfounded and
without merit and a abuse of power and discrimination.  I no longer desire
to work in the kitichen, and I feel my claim will be supported by the
records in this matter.

**B.** List actions taken and staff you have contacted, before submitting this grievance.

Mr. Neff, Deputy Johnson,  and a few other kitichen staff.

Employment Office

Your grievance has been received and will be processed in accordance with DC-ADM 804.

*K K Dascani*                                    12/3/02

Signature of Facility Grievance Coordinator                    Date

**WHITE** - Facility Grievance Coordinator Copy    **CANARY** - File Copy    **PINK** - Action Return Copy    **GOLDENROD** - Inmate Copy
Revised

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**2520 LISBURN ROAD, P.O. BOX 598**
**CAMP HILL, PA 17001-0598**

THE SECRETARY'S OFFICE OF
INMATE GRIEVANCES AND APPEALS

February 27, 2003

Kim Smith, CT-2162
SCI Coal Township

Re: Grievance # 41842

Dear Mr. Smith:

This letter serves to acknowledge receipt of your appeal to final review regarding the dispensing of your diabetic medication.

In accordance with the provisions of the DC ADM 804, Inmate Grievance System policy, this office has reviewed your appeal and the documents submitted, including your initial grievance, the Grievance Officer's response, your appeal to Superintendent Gillis and his response to that appeal.

Upon completion of this review, it is the recommendation of this office that the grievance be remanded back to the facility for further review. Once that review is completed, this office will be notified and make final disposition of your appeal.

Sincerely,

Thomas L. James
Chief Grievance Coordinator

TC/kk

cc:    Secretary Beard
       Deputy Secretary Love
       Superintendent Kelchner
       Superintendent Gillis
       Grievance Office File

*"Our mission is to protect the public by confining persons committed to our custody in safe secure facilities, and to provide opportunities to inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims."*

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**2520 LISBURN ROAD, P.O. BOX 598**
**CAMP HILL, PA 17001-0598**

THE SECRETARY'S OFFICE OF
INMATE GRIEVANCES AND APPEALS

March 20, 2003

Kim Smith, CT-2162
SCI Coal Township

Re:    DC-ADM 804 – Final Review
       Grievance No. 41842

Dear Mr. Smith:

This is to acknowledge receipt of your appeal to final review of the above numbered grievance.

In accordance with the provisions of DC-ADM 804, effective May 1, 2002, I have reviewed the entire record of this grievance; including your initial grievance, the grievance officer's response, your appeal from initial review and the superintendent's response. I have also carefully reviewed the issues you raise to final review.

Upon completion of this review, it is the decision of this office to uphold the responses provided by staff at the institutional level. After review of your complaints and all enclosed documentation, and the grievance officer's response after remanded review, I agree with the grievance officer and Superintendent Gillis's findings. You were correct in your complaint that you did not receive your medication, but you were wrong on the dates. As reported to you by the grievance officer you did not receive your medication on January 16th, 17th, 18th, 19th, and 20th for a total of five days. The grievance officer reports that your glucose level was monitored during this time period and according to medical documentation the levels were within normal range. This indicates your health and well-being were never in jeopardy. Your accusations that these acts were done to willfully inflict pain and suffering or as a means of retaliation are baseless and without merit.

The responses provided at the institutional level are appropriate and in accordance with Department of Corrections policies and procedures. Accordingly, your appeal to final review must be denied.

Sincerely,

Thomas L. James
Chief Grievance Coordinator

TLJ:kk

cc:    Superintendent Gillis
       Grievance Office
       Central File

*"Our mission is to protect the public by confining persons committed to our custody in safe secure facilities, and to provide opportunities to inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims."*

DC-804
Part 1

| | | | DATE: 1-15-09 |
|---|---|---|---|
| | | | |
| U/A | | | |

[The main body of the document consists of handwritten text that is too faded and illegible to transcribe reliably.]

1/21/03
Date