DC-804
Part 1

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA 17001-0598

FOR OFFICIAL USE ONLY
0476-01
GRIEVANCE NUMBER

OFFICIAL INMATE GRIEVANCE

| TO: FACILITY GRIEVANCE COORDINATOR<br>K. Dascani | FACILITY:<br>SCI-Coal Twp | DATE:<br>6-2-01 |
| --- | --- | --- |
| FROM: (INMATE NAME & NUMBER)<br>Kim Smith CT-2162 | SIGNATURE OF INMATE:<br>Kim Smith | |
| WORK ASSIGNMENT:<br>U/A | HOUSING ASSIGNMENT:<br>RHU-A-107 | |

INSTRUCTIONS:
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance and the relief requested in a brief and understandable manner.
3. List in Part B any specific actions you have taken to resolve this matter informally. Be sure to include the ...

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages.

On this date I was to be released from RHU after serving 45 days for a misconduct for disobeying an order, with malice, and malicious intent deliberate indifference, wanton infliction of harm and emotional distress, interference with access to law library, staff knowingly and intentionally subjected me to cruel punishment without reason or cause by failing to release me from RHU after the maximum sanctions had expired, since I was not given any reason for this continued confinement I feel this punishment is intentionally being ...

Your grievance ...

K.K. Dascani
Signature of Facility Grievance Coordinator

6/7/01
Date

WHITE - Facility Grievance Coordinator Copy CANARY - File Copy PINK - Action Return Copy GOLDENROD - Inmate Copy

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA 17001-0598**

| FOR OFFICIAL USE ONLY |
| --- |
| 0476-01 |
| GRIEVANCE NUMBER |

**OFFICAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR<br>[illegible] | FACILITY:<br>[illegible] | DATE:<br>6-5-01 |
| --- | --- | --- |
| FROM: (INMATE NAME & NUMBER)<br>[illegible] | SIGNATURE of INMATE:<br>[illegible] | |
| WORK ASSIGNMENT:<br>N/A | HOUSING ASSIGNMENT:<br>[illegible] | |

INSTRUCTIONS:
1 Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B the specific actions you have taken to resolve this matter informally. Be sure to include the identity of staff members you have contacted.

**A.** Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages.

[illegible] to be released from KHU after serving 45 days for a misconduct for [illegible] deliberate indifference, wanton infliction of harm and [illegible] interference with access to law [illegible] knowing [illegible] subjected me to [illegible] without [illegible] release me from KHU [illegible] continuous [illegible] punishment [illegible] to release them [illegible] on D-1

**B.** List actions taken and staff you have contacted, before submitting this grievance. Attach the copy of the **DC-135A** with the staff member's response of your informal resolution attempt.

KHU [illegible] A in the A.M. Mod officer Sgt claimed to called D-1 for a bed and they said their was none, that this continuous confinement and abuse and punishment was due to Counselor Millers intervention

Your grievance has been received and will be processed in accordance with DC-ADM 804.

K.K. Dascani
Signature of Facility Grievance Coordinator

6/7/01
Date

**WHITE** - Facility Grievance Coordinator Copy **CANARY** - File Copy **PINK** - Action Return Copy **GOLDENROD** - Inmate Copy

Revised
July 2000

Case 1:01-cv-00817-WWC Document 147-3 Filed 06/16/2003 Page 3 of 48

DC-804
Part II

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA 17011

OFFICIAL INMATE GRIEVANCE
INITIAL REVIEW RESPONSE

GRIEVANCE NO.

SMI 063-00

| TO: (Name and DC#) | INSTITUTION | QUARTERS | GRIEVANCE |
|---|---|---|---|
| CT-2162 Kim Smith | SCI-S | F BLOCK | DATE: 02/09/00 |

The following is a summary of findings regarding your grievance:

Your grievance pertains to the approval of an outside purchase request for art supplies. You claim the rationale for denial of said items was "unjust".

According to the SCI-Smithfield Policy pertaining to outside purchases of art supplies, any inmate that wishes to purchase art materials from an outside vendor must have a positive housing unit, work and adjustment report for the 90 days prior to purchasing any art supplies. Once Mr. Rudy receives an outside purchase request, he calls the work supervisor, block officers and counselor in order to determine the status of the requested inmate. Mr. Rudy followed these procedures. On 1/26/00 Mr. Rudy called your housing unit. The block officer checked your block card and relayed that you had negative block reports. Mr. Rudy also talked to Mr. Crider, your unit counselor. He also indicated non-positive behavior on your Annual Review and that you have not had active participation in programming over the past year.

Although the kitchen employed you, you were temporarily re-assigned to the activities detail during this time frame, thus the N/A comment on your disapproval sheet. The denial was based upon your block report, not your employment report. If your block report had been favorable, Mr. Rudy would have contacted the kitchen for an assessment.

It should also be noted that you appealed this decision to Unit Manager Hanna and she concurred with Mr. Rudy's assessment of the situation.

In conclusion, outside purchasing of art material is a privilege not a requirement. This privilege is based upon your positive adjustment within the facility. In the future you must consider the consequences of your behavior prior to acting out.

No further action will be taken by this department in regards to this matter.

ATTACHED: Supporting Documentation

CC: Superintendent Morgan, Major Norris, Captain Glenny, Sam Rudy, F. R. Royer, DC-15, File

| Refer to DC-ADM 804, Section VIII, for instructions on grievance system appeal procedures | SIGNATURE OF GRIEVANCE COORDINATOR Sharon M. Burks | DATE 2/17/00 |
|---|---|---|

DC-804
PART 1

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA. 17001-0598

RCVD FEB 10 '00

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO. SMI-063-00

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| Ms. Burks | SCIS | 2-9-00 |
| FROM: (Commitment Name & Number) Kim Smith CT2162 | INMATE'S SIGNATURE Kim Smith | |
| WORK ASSIGNMENT Kitchen | QUARTERS ASSIGNMENT F-B-29 | |

**INSTRUCTIONS:**

1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

On or about 1-26-00 I filed outside purchase for art supplies and was denied such, based on Negative housing reports and Counselor reports. After sending request slip to Mrs Dhannah I did not have active participation in a art program once a year and negative block reports in which C.O. Wyong [illegible] a document and showed me that there was 5 entries on block card. And I only know of 2 [illegible] Rudy's decision to deny art supplies was unjust and I'm not aware of information utilized. Since work report from kitchen should have been used, not Rec #3. If I had such a negative report why did Level drop and why was not the Dec 1999 evaluation for night shift used. On kitchen record where I worked

B. Actions taken and staff you have contacted before submitting this grievance:

Carder, Dhannah, Bernardo

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Sharon M. Burks
Signature of Grievance Coordinator

2/14/00
Date

WHITE—Grievance Coordinator Copy CANARY—File Copy PINK—Action Return Copy GOLDENROD—Inmate Copy

**COMMONWEALTH OF PENNSYLVANIA**
**State Correctional Institution at Smithfield**
**Office of the Superintendent 's Assistant**
September 28, 1999

**SUBJECT:** **REQUEST FOR CABLE CANCELLATION**

**TO:** Kim Smith CT2162

**FROM:** Sharon M. Burks
Grievance Coordinator

In your 9/23/99 grievance, you claimed that you filed a grievance on **9/13/99** in which you complained that Inmate Accounts staff failed to cancel your cable subscription upon your **6/17/99** request. That grievance was returned to you due to incorrect processing on your part. However, it should have been returned because the allowable time period for filing a grievance on this issue has long since expired. You further claim that since you were out of the institution on writ/ ATA from 6/18/99 to 8/13/99, you were charged in error for July 1999 cable service.

Our records show that your 6/15/99 request was returned to you unprocessed because you failed to have a staff member countersign your request.

There is posted on all inmate bulletin boards, a July 13, 1998, memo issued by Mr. E. B. Mason, Business Manager, entitled Requests to Cancel Cable Service which states "that the inmate accounting office will no longer accept inmate request slips to cancel cable television service **unless they are countersigned by a staff member.** Any request not containing a staff member's signature for verification will be returned to the inmate without action." This memo is also attached to all cable contracts. (copy attached)

This issue was appropriately handled according to established procedure.

Attachment

cc: E. B. Mason
S. Shope
Ms. Jadlocki
File

Ex A

16. Huntingdon TV Cable Co. is not responsible for any damage or injury caused by the use or operation of the cable television service or equipment.

17. Huntingdon TV Cable Co. is the owner of the cable television service equipment. I understand that this contract does not sell or rent to me any equipment owned by Huntingdon TV Cable Co. I am purchasing cable television only.

18. Huntingdon TV Cable Co. shall have the right to terminate this contract upon ten (10) days notice at any time. In the event that the date of termination is other than at the beginning of a monthly period, then rental shall be prorated for the portion of the month for which the service was provided.

I have read all the above statements or they have been read to me. I agree to abide by every statement made in this contract and understand that I am legally bound by this contract.

Dated: 7-16-99 [signature]
Inmate signature

[signature: Reed Cott]
Employe witness

Paid period for cable service on 5th of the month when due it been on the 26th, I sent notice to you for cancelation on 6-12-99 in compliance with 18 of cable Contract, Why was fee taken [illegible] when you were given a timely notice and all [illegible] procedure. [illegible] me if [illegible] wrong the taking of this fee is an abuse of power and if [illegible] inmates can be charged with a theft under 18 Pa C.S. 3926 so can you. Requested refund for July

[illegible] 8/23/99

I answered your request & forwarded it to you. You didn't have it signed by Staff as required & you wanted it cancelled if you weren't back. Either you cancel it or you don't. It is not up to me [illegible]

DC-135A

A3

**INMATE'S REQUEST TO STAFF MEMBER**

RECEIVED AUG 17 1999

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

1. TO: (NAME AND TITLE OF OFFICER) Edward Mason Inmate accounts
2. DATE 8-14-99
3. BY: (INSTITUTIONAL NAME AND NUMBER) Jim Smith CT2162
4. COUNSELOR'S NAME Yarosh
5. WORK ASSIGNMENT Kitchen
6. QUARTERS ASSIGNMENT J-A-03
7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE. GIVE DETAILS.

Sir: on 6-18-99 I requested cable to be cut off and 10 days before pay periods for cable was to be.
why was I charge $9.00 for cable, in July 99

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

As per previous request slips & Phone calls, your cable was cancelled Aug 1.

☐ TO DC-14 CAR ONLY ☐ TO DC-14 CAR AND DC-15 IRS

STAFF MEMBER [signature]

DATE 8/19/99

Ex D

**INMATE SUBSCRIBER CONTRACT FOR DC# ____________ NAME ____________**

1. I understand that this "Inmate Subscriber Contract" is a contract between myself and the Huntingdon TV Cable Co.

2. I understand that this "Inmate Subscriber Contract" is NOT a contract between myself and the Department of Corrections.

3. I understand that when I sign this "Inmate Subscriber Contract", I am agreeing to do everything this contract states I will do.

4. Hutningdon TV Cable Co. will sell Basic Cable Television service to me for a monthly fee.

5. Huntingdon TV Cable Co. Will see Premium Cable Television service for an additional monthly fee.

6. Huntingdon TV Cable Co. is not required to give me cable television service unless I have paid for the service in advance.

7. I will pay $9.90 per month to have my television or radio connected to one live single outlet for Basic Cable Television service. I understand that Huntingdon TV Cable Co. may change this monthly fee at any time, but will give thirty (30) days notice of the change.

(CHECK THE FOLLOWING BOX ONLY IF YOU ARE BUYING PREMIUM CABLE TELEVISION WITH THE BASIC TELEVISION SERVICE)

**Check only if ordering premium service**

☐ I will pay the additional fee for Premium Cable Television service. The additional fee for Premium Cable Television service is $11.61 (including tax) per month but does not include the fee for Basic Cable Television service. I understand that Huntingdon TV Cable Co. may change this monthly fee at any time, but will give thirty (30) days notice of the change.

8. I will authorize the Department of Corrections to automatically deduct the cable television service fee from my account every month in advance of the month for which I am purchasing cable television service, and to send the fee to Huntingdon TV Cable Co.

9. Hutningdon TV Cable Co. may cancel television service at the end of the paid month if I notify the Department of Corrections to stop deducting the monthly fee for cable television services.

10. Huntingdon TV Cable Co. may cancel my cable television service at the end of the paid month if there is not enough money in my cash account to pay the next month's fee when it is due.

11. I unconditionally accept total responsibility for the condition of the cable television equipment located in my cell or connected to my television or radio. Huntingdon TV Cable Co. may terminate cable television services immediately if the cable television equipment located in my cell or connected to my television or radio is damaged or tampered. I will pay the cost of repairing or replacing damaged cable television equipment located in my cell or connected to my television or radio. I will authorize the Department of Corrections to deduct this cost from my inmate cash account for payment to Huntingdon TV Cable Co.

12. I will connect only one television or one radio to each outlet that I pay for. I understand that all other connections to receive cable television service are unauthorized, including connection of another radio or television to my television or radio. I will pay the cost of one (1 additional month's fee if any television or radio receives cable television service form an unauthorized connection to the outlet I pay for under this contract. I understand that permitting another person to connect his television or radio to the cable service I receive is a crime 18 PA. C.S. 3926 (Theft of services), and that paying for the stolen service does not excuse me from criminal prosecution. Huntingdon TV Cable Co. may terminate cable television service immediately in the event of unauthorized connection. I will authorize the Department of Corrections to deduct the additional fee for receipt of unauthorized cable television services for payment to Huntingdon TV Cable Co.

13. I understand that I will not receive a refund of the monthly service fee for any reason except when Huntingdon TV Cable Co. cannot send television signals to the outlet for more than 72 consecutive hours in the same month. If cable service cannot be sent to the outlet for more than 72 consecutive hours in the same month, Huntingdon TV Cable Co. will refund three percent (3%) of the monthly service fee for each 24 hours of interrupted service.

14. I understand that conduct by any governmental agency, court or person (other than Huntingdon TV Cable Co.) which interferes with the cable television service is not the fault of Huntingdon TV Cable Co. I will not bring any suit or action in any court against Huntingdon TV Cable Co. if a governmental agency, court or person (other than Huntingdon TV Cable Co.) prevents me from receiving this cable television service.

15. Huntingdon TV Cable Co. is not responsible for the operation, maintenance or repair of my television set or radio.

16. Huntingdon TV Cable Co. is not responsible for any damage or injury caused by the use or operation of the cable television service or equipment.

17. Huntingdon TV Cable Co. is the owner of the cable television service equipment. I understand that this contract does not sell or rent to me any equipment owned by Huntingdon TV Cable Co. I am purchasing cable television only.

18. Huntingdon TV Cable Co. shall have the right to terminate this contract upon ten (10) days notice at any time. In the event that the date of termination is other than at the beginning of a monthly period, then rental shall be prorated for the portion of the month for which the service was provided.

I have read all the above statements or they have been read to me. I agree to abide by every statement made in this contract and understand that I am legally bound by this contract.

Dated:______________________________ ______________________________
**Inmate signature**

______________________________
**Employe witness**

# CASH ACCOUNT DEDUCTION AUTHORIZATION

DC #__________

Name____________________

1. I have received the Notice of SCI-Smithfield Cable Television Policy.

2. I authorize the Department of Corrections to deduct from my account the monthly service fee charged by Huntingdon TV Cable Co. for Basic Cable Television Service and to send that payment to Huntingdon TV Cable Co.

[CHECK THE FOLLOWING BOX ONLY IF YOU ARE BUYING PREMIUM CABLE TELEVISION SERVICE WITH THE BASIC CABLE TELEVISION SERVICE]

**Check only if ordering premium service.**

[__] I authorize the Department of Corrections to deduct from my account the additional monthly service fee charged by Huntingdon TV Cable Co. for Premium Cable Television Service and to send that payment to Huntingdon TV Cable Co.

This authorization shall remain in effect until the business office recieves my written request slip giving notice that I am canceling only the premium or the entire cable television service.

3. I authorize the Department of Corrections to deduct repair or replacement costs assessed against me by Huntingdon TV Cable Co. for reason of damaged or tampered cable television equipment. This authorization is irrevocable.

4. I authorize the Department of Corrections to deduct the additional monthly service charge assessed against me by Huntingdon TV Cable Co. for reason of unauthorized connection. This authorization is irrevocable.

I have read the foregoing statements or they have been read to me. I understand that this authorization is legally binding.

Dated: ____________________ ____________________

Inmate signature

____________________

Employee witness

# NOTICE OF SCI-SMITHFIELD CABLE TELEVISION POLICY

## I. Policy

The Department of Corrections may permit inmates at the State Correctional Institution at Smithfield to purchase cable television services from the Huntingdon TV Cable Co.

## II. Procedure

Any inmate wishing to receive cable television service must sign the "Inmate Subscriber Contract" and "Cash Account Deduction Authorization" forms. Service will begin on the first day of the next month only if both forms are received by the institution business office TEN days before the first day of the next month. Forms submitted late will be processed for the second following month. Huntingdon TV Cable Co. is not required to provide you cable television service if it chooses not to do business with you.

The cable television service fee will be automatically deducted from your account every month unless you notify (by a written request slip) the business office TEN days before the next month that you are canceling the service. If you do not have enough money in your account to pay in advance for cable television service, the service will be cancelled. The institution is not responsible for cancellation of television caused by late posting of money to your account.

When filling out the cable contracts, make sure both pages are signed and witnessed by a Corrections Officer. The top two pages with SCI-Smithfield Policy are to be kept by the inmate, the remaining four pages are to be forwarded to Inmate Accounts.

You only have to fill out one contract. The only time you need to fill out a new contract is when you are changing from basic to premium, or premium back to basic. Do not fill out more than one contract for the same transaction, if you submit a contract it will be processed.

Inmates who lose their cable service for any reason, except those outside their control will be required to serve a ninety (90) day waiting period starting the day their service is cancelled before service can be restored, (not having enough money in your account, being locked up in the RHU, etc., are not reasons outside your control). Inmates that cancel Premium Cable Service will be required to serve a ninety (90) day waiting period before being able to again obtain the Premium Cable Service. After the ninety (90) day waiting period the inmate may again request cable television service in accordance with the provisions and time constraints of regular sign-up procedures. Any contracts received during the 90 day waiting period will be held until inmate is eligible for cable service.

Inmates who do not have all the same equipment that was issued to them, to turn in when their service is cancelled, will be required to reimburse the cable company for the cost of replacements.

## III. Rights Under this Policy

This policy establishes procedures for obtaining cable television service. This policy creates no rights in any person. Receiving cable television service is a limited privilege which may be restricted or withdrawn at the discretion of the Institution. Your rights under the contract with Huntingdon TV Cable Co. do not limit the authority of the Department of Corrections. You may lose access to cable television service as a result of sanctions imposed under Administrative Directive 801; placement in administrative custody under Administrative Directive 802; transfer to another state correctional institution; admission to the institution infirmary; authorized temporary absence from the institution; or other reasons. If you lose access to cable television service because of any action taken by the Department of Corrections, you are not entitled to any refund or compensation from the Department of Corrections.

SS/el

Attachments

cc: File

Ex A

Dear Sir:

On 6-17-99 I sent Ms Judlacki a request asking that my cable be cut off since I would be going ATA. This request was received by your office 6-18-99. On 6-18-99 C block Sgt Blaster refused to take the [illegible] mail, and it was later turned into Intake officer. On 6-26-99, Post marked envelope I received Ms Judlacki reply to my request dated 6-18-99 sent to me at Westmoreland Co. Prison, Greensburg Pa 15601.

[illegible] signed by staff consultation as verification if I [illegible] corrected [illegible]. [illegible] stated that I would not be in the institution, nor did it know when I would return.

Cable was paid for until July 1999, [illegible] I stated that to be cut off date. I gave a 2 week notice, which I think is enough time for cancellation, and the [illegible] 6-26-99 Ms Judlacki contacted me here, she was she knew me not to be in the institution.

When did your office start taking cable money on the 21st of each month.

My counselor [illegible] contacted your office [illegible] [illegible] I didn't want [illegible] before Aug if I didn't want [illegible] cable. [illegible] doing so [illegible] I do not want [illegible] in Aug. 1999, and I will apply for [illegible] when ever that will be.

It is still not clear why I was charged for July 1999 cable, when I requested that to be my cut off date and my cable was paid until that date. Why must I go through [illegible] and pay for a service when I requested it to be cut off, and I'm not in your institution.

Please look into this matter.

Thank [illegible]

[illegible] 1560-99

Cancelled
Your cable
will be
cancelled
8/1/99. D. Judlacki 7-13-99

JUL 12

Staff [illegible] called to talk to [illegible]

DC-804
PART 1

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA. 17001-0598

OFFICIAL INMATE GRIEVANCE

| TO: GRIEVANCE COORDINATOR | INSTITUTION SCI | DATE 12-22-00 |
|---|---|---|
| FROM (INMATE NAME & NUMBER) Kim Smith CT2160 | INMATE'S SIGNATURE Kim Smith | |
| WORK ASSIGNMENT N/A | QUARTERS ASSIGNMENT H-B-18 | |

INSTRUCTIONS:
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

On 12-19-00 I gave to C.O.I. [illegible] legal papers to be mailed to federal Court with a request for a 5.00 check as well as a SASE for 22 cent additional postage. On 12-22-00 this legal mail was returned to me with no markings from mail room or inmate accounts also no money and SASE was lost. Why is my legal mail being stopped. Whom ever is acting in this matter knew or should have known to hinder legal mail from leaving institution would deny me access to the Court.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Grievance Coordinator

Date

WHITE—Grievance Coordinator Copy CANARY—File Copy PINK—Action Return Copy GOLDENROD—Inmate Copy

19

DC-804
Part 2

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA 17001

OFFICIAL INMATE GRIEVANCE
INITIAL REVIEW RESPONSE

GRIEVANCE NO. 3895

| TO: (Inmate Name & DC No.) | FACILITY | HOUSING LOCATION | GRIEVANCE DATE |
|---|---|---|---|
| Kim Smith, CT-2162 | SCI COA | D-2-19 | 9/14/01 |

The following is a summary of my findings regarding your grievance:

I have contacted appropriate staff in reference to your grievance. Inmates are not permitted to run their account in the red for copies, except as stated in DC-ADM 804, VI D, 1.g., an indigent inmate is only permitted to make copies when appealing to the Secretary's Office of Inmate Grievances. No one is deliberately denying you access to the courts. You are responsible to handle your inmate account to be able to afford expenses incurred with litigation.

The business office deducts 20% of all incoming monies from your account for legal fees. In reviewing your account it appears that most of your money is spent on court costs, copies and postage.

cc: Mr. Voeckler
DC-15

| Print Name and Title of Grievance Officer | Signature of Grievance Officer | DATE |
|---|---|---|
| Kandis K. Dascani<br>Corrections Superintendent's Assistant | Kandis K Dascani | 9/25/01 |

DC-804
PART 1

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA. 17001-0598

SCI Coal Township
SEP 17 PM 12:50
Superintendent's Assistant Office

OFFICIAL INMATE GRIEVANCE

GRIEVANCE NO. 3895

| TO: GRIEVANCE COORDINATOR K.DASCANI | INSTITUTION SCIC | DATE 9-14-01 |
|---|---|---|
| FROM: (Commitment Name & Number) KIM SMITH | INMATE'S SIGNATURE Kim Smith | |
| WORK ASSIGNMENT F/s/ | QUARTERS ASSIGNMENT D-2-19 | |

**INSTRUCTIONS:**

1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

When requesting legal copies to reply to a federal court petition that is and was pending in federal court the business office denied me the right to get legal copies on my account when I had not funds for such. This act has and is depriving me access to the court and denies me my ability to comply with court order, and present my case to the court. I have a federal habeas petition pending and I must copy court records and file a reply to this answer that I got some 90 days ago and without copies I can not reply, why am I being denied this right to reply to and answer a pending petition in court. Would this act not deprive me access to the court to deny me legal copies or copies to grievances to comply with D.O.C. policy for appeal to final review. Foir the acts of the business office and dening me legal copies I feel I'm being denied access to the courtds and such is being deliberately done to deprive me my day in court, injury has been

B. Actions taken and staff you have contacted before submitting this grievance:

sustained and damages will be sought

S.C.I.C. BUSINESS OFFICE, MR MOSER, MR SMITH

Your grievance has been received and will be processed in accordance with DC-ADM 804.

K K Dascani
Signature of Grievance Coordinator

9/19/01
Date

**WHITE**—Grievance Coordinator Copy **CANARY**—File Copy **PINK**—Action Return Copy **GOLDENROD**—Inmate Copy

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**SCI-Smithfield**
Superintendent's Office
814-643-6520
January 12, 1999

B-48

Ex A-6

SUBJECT: APPEAL TO GRIEVANCE #504-98

TO: Kim Smith, CT 2162
I-B-42

FROM: James M. Morgan, Superintendent

This is in response to your appeal of the above subject grievance wherein you contend that you were inappropriately charged a $2 co-payment for a visit in November 1998.

Medical staff advise me that the condition for which you sought treatment does not meet the condition of a chronic case; therefore, the $2 charge was imposed.

I agree with their interpretation, and your grievance is denied.

JMM/lgh

cc: Ms. Burks
Major
Captain Glenny
DC-15
File

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
1451 N. MARKET STREET
ELIZABETHTOWN, PA 17022

OFFICE OF THE
CHIEF HEARING EXAMINER

February 2, 1999

Ex-A-7

Kim Smith, CT-2162
SCI Smithfield

Re: DC-ADM 804 - Final Review
Grievance No. SMI-0504-98

Dear Mr. Smith:

This is to acknowledge receipt of your appeal to final review of the above numbered grievance.

In accordance with the provisions of DC-ADM 804, VI D, as amended effective November 1, 1997, I have reviewed the entire record of this grievance; including your initial grievance, the Grievance Officer's response, your appeal from initial review and the Superintendent's response. I have also carefully reviewed the issues you raise to final review.

Upon completion this review, it is the decision of this office to uphold the responses provided by staff at the institutional level. I find the issues raised for final review have been addressed by the Grievance Coordinator and the Superintendent, and their responses are reasonable and appropriate.

I concur with the responses already provided at the institution level. Accordingly, your appeal to final review must be denied.

Sincerely,

Robert S. Bitner
Chief Hearing Examiner

RSB:ph
pc: Superintendent Morgan

DC-804
PART 1

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA 17001-0598

OFFICIAL INMATE GRIEVANCE

GRIEVANCE NO. [illegible]083

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| [illegible] | SCI-[illegible] | 2-27-99 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| [illegible] CT3162 | [illegible] CT3162 | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| Kitchen | I-B-42 | |

**INSTRUCTIONS:**

1. Refer to the inmate handbook Page [illegible] and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

[illegible] (Appendicitis [illegible]) [illegible] stomach. Medication ([illegible]) [illegible] 500 mg ([illegible]) [illegible]

[illegible]

Your grievance has been received and will be processed in accordance with DC-ADM 804.

[illegible signature] — Signature of Grievance Coordinator

3/1/99 — Date

WHITE—Grievance Coordinator Copy   CANARY—Tracking Copy   PINK—Action Return Copy   GOLDENROD—Inmate Copy

-804
ART 1

Ex A - 2

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA. 17001-0598

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO. Smi-326-98

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| Ms Burks | SCIS | 7-29-98 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| Kim Smith CT2162 | Kim Smith | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| Kitchen | I-A-39 | |

**INSTRUCTIONS:**

1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

After getting a apnea, sleep study and pulmonary test Dr order a c-pap or oxygen mask during sleep to help breath during sleep since I was tested and I stop breathing during sleep a number of times for a number a seconds. This prolonged period of not breathing has a damage effect on heart, lungs and brain, so with deliberate indifference to my health care need, and the life threatening aspect, Wexford Health, and Dept of Correction refused to treat this problem, after taking me threw a number of test to find the problem only to refuse treatment which is causing mental anguish, pain and suffering and unnecessary delay and denial of medical treatment

B. Actions taken and staff you have contacted before submitting this grievance:

Dr. Long, Pat Yager, Health Care at Camp Hill Central Office Bureau Health Care Dr Long advised me to take these steps to obtain treatment.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Sharon M. Burks
Signature of Grievance Coordinator

7/31/98
Date

WHITE—Grievance Coordinator Copy CANARY—File Copy PINK—Action Return Copy GOLDENROD—Inmate Copy

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**SCI-Smithfield**
**Superintendent's Office**
814-643-6520
October 29, 1998

Ex A - 6

**SUBJECT:** **GRIEVANCE SMI-418-98**

**TO:** Kim Smith, CT2162
I Block

**FROM:** James M. Morgan
Superintendent

Additional time is needed to investigate your appeal of the above subject grievance. You will receive an answer to your appeal in the very near future.

Please be patient.

JMM/lgh

cc: Ms. Burks
File

DC-804
PART 1

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA. 17001-0598

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO. SMI-419-98

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| Burks | SCI S | 10-9-98 |
| FROM: (Commitment Name & Number) Kim Smith CT2162 | INMATE'S SIGNATURE Kim Smith | |
| WORK ASSIGNMENT [illegible] | QUARTERS ASSIGNMENT I-B-42 | |

**INSTRUCTIONS:**

1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

In Sept. I saw Dr. Long regarding treatment for apnea, it's been a long time I was told during an hour of sleep I stop breathing 16 times at between 16-35 seconds each. After evaluation [illegible] and attached [illegible] the [illegible] treatment [illegible] with deliberate indifference to my health care [illegible] and they [illegible] treatment because [illegible] [illegible] this [illegible] attention.

B. Actions taken and staff you have contacted before submitting this grievance:

Wrote Med. Dept. [illegible] [illegible] [illegible] and [illegible]

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Sharon M. Burks
Signature of Grievance Coordinator

10/13/98
Date

WHITE—Grievance Coordinator Copy CANARY—File Copy PINK—Action Return Copy GOLDENROD—Inma

DC-804
PART 1

GRIEVANCE NO. Smi-418-98

| INSTITUTION | DATE |
| --- | --- |
| [illegible] | 10-9-98 |
| [illegible] | |
| HOUSING ASSIGNMENT | |
| [illegible]-42 | |

... 804 for information on the inmate grievance system.

3. ... you have taken to resolve this matter. Be sure to ... you have contacted.

[illegible handwritten grievance statement]

... procedures in accordance with DC-ADM 804.

[illegible signature] 10/13/98

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
1451 N. MARKET STREET
ELIZABETHTOWN, PA 17022

OFFICE OF THE
CHIEF HEARING EXAMINER

December 15, 1998

Ex A-7

Kim Smith, CT-2162
SCI Smithfield

Re: DC-ADM 804 - Final Review
Grievance No. SMI-0404-98

Dear Mr. Smith:

This is to acknowledge receipt of your appeal to final review of the above numbered grievance.

In accordance with the provisions of DC-ADM 804, VI D, as amended effective November 1, 1997, I have reviewed the entire record of this grievance; including your initial grievance, the Grievance Officer's response, your appeal from initial review and the Superintendent's response. I have also carefully reviewed the issues you raise to final review.

Upon completion this review, it is the decision of this office to uphold the responses provided by staff at the institutional level. I find the issues raised for final review have been addressed by the Grievance Coordinator and the Superintendent, and their responses are reasonable and appropriate.

I concur with the responses already provided at the institution level. Accordingly, your appeal to final review must be denied.

Sincerely,

Robert S. Bitner
Chief Hearing Examiner

RSB:ph
pc: Superintendent Morgan

Ex A - 7

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**SCI-Smithfield**
**Superintendent's Office**
November 18, 1998

**SUBJECT:** Attempted Appeal of Inmate Grievance #SMI-404-98

**TO:** Kim Smith, CT-2162
I-Block

**FROM:** James M. Morgan /ACB
Superintendent

The following is in response to your attempted appeal dated October 28, 1998, received on November 3rd, of the grievance officer's response to you with reference to the above noted inmate grievance. After review of your original grievance and your attempted appeal, and the response provided by Mrs. Weaver, please be advised that your "appeal" is denied and rejected as noted below.

As per DC-ADM 804, VI. Procedures, C. Appeal from Initial Review, 2., you have five days from the date of receipt of the Initial Review decision to appeal. With an October 19, 1998 distribution of the Initial Review response, your appeal dated October 28th is beyond the time limit, and with receipt on November 3rd, it is certainly untimely and calls into question the accuracy of the date of your "appeal." Appeals are to be brief (VI. C. 3. and A. 4.) and four pages is hardly brief. Only inmates who are personally affected by an institution action (VI. A. 3.) are permitted to seek review of a grievance or appeal, and with a 2002 minimum you have not been denied parole due to a lack of programming which you are apparently attempting to erroneously project into the future.

JMM:ACB:sdw

cc: Deputies (2)
Mrs. Burks
DC-15
File

Appeal of Inmate Grievance

#SMI-404-98 Cat: Programs

Kim Smith CT2162 I-B-42

Sup. J.D. Morgan:

Sir; Per your Oct. 28, 1998 notice DC-15 file I was under the impression that you denied grievance #SMI-404-98 as being untimely. Nonetheless an appeal was sent to your office, if you got it or not I do not know.

Then an appeal was sent to Central Office, addressed to CORC and what right do you have to intercept this appeal or hinder my access to administrative remedies. The Nov. 3, 1998 appeal was not addressed to you. It was sent to CORC threw inter office and you had no right. I guess you consider yourself an educated person, and you know the interception of an appeal directed to Central Office goes against

all ethics, policy set down by the D.O.C. You in your offical capacity have no jurisdiction to deny or reject an appeal when it was not directed to your office. When have you became director of the CORC.

At this time Im not concerned with either Ms Weavers or Burks reply but your action is the question here and your abuse of power, in the intercaption and ruling of an appeal directed to the CORC when it was addressed to such not your office.

Sir knowing that you read and denied an appeal to CORC calls into your question your professionalism. Since their is no D.O.C policy that supports the standing I must question the procedural value of programing. I should not have to wait until institutional staff places me, nor should my maximum be an effectuating date for placement when lifers are in these programs and do not have a maximum

Sir I would advise you to forword the Nov. 3, 1998 correspondence on to CORC

and explain the delay. This appeal was placed in Mail Nov 1, 1998 and filed to CORC in a timely manner. Your signed reply of Oct. 28, 1998 I receive as your denial of appeal of grievance # SMU 404-98 So what right do you have to hinder my appeal to CORC when you had already ruled on this issue.

Please inform me of any action you may take.

Sir this is also a request for extention of appeal right in light of these acts.

Respectfully

Kim Smith

12/14/98

Mr. Smith -

I handled the correspondence in question for the Superintendent in his absence. I understood it to be an "appeal" to the Superintendent.

Also, staff here are not go betweens for your mail to Central Office. If you want mail sent to them, please do so on your own!

[signature]

CC: Supt. Morgan ①

107

# CABLE TELEVISION SERVICE CHANGE FORM

110

NAME: Kim Smith DOC NUMBER: CT2162

HOUSING LOCATION: RHU-A-107-1 (CELL and BUNK)
D-A-05-02 top

NATURE OF REQUEST:

- [x] I wish to cancel my basic cable service.
- [ ] I wish to cancel my premium cable service. (HBO)
- [ ] I wish to cancel both cable services. (Basic and HBO)
- [ ] I have changed cells/bunk from ________ to ________. (Make sure to include your bunk assignment [T for top, B for bottom]).
- [ ] I wish to add the premium cable service. (HBO) ($7.00 connection fee to add the premium service.)
- [ ] I wish to add converter box. ($2.00 per month.)
- [ ] I wish to cancel my converter box.

Kim Smith
Inmate's Signature

SCI COAL TOWNSHIP
MAY 6 2001
RHU

5-5-01
Date

Col Shepperson
Block Officer Signature

5-7-01
Date

[All forms are to be forwarded to Service Electric Cablevision, Inc. via the inmate request slip box.]

(chaform)

CLOSED
DGK 6/01

RHU –

# CABLE TELEVISION SERVICE CHANGE FORM

NAME: Kim Smith DOC NUMBER: CT2162

HOUSING LOCATION: D-A-02-Top (CELL and BUNK) 02 Top

NATURE OF REQUEST: Complied with all standards and still being denied to have cable cut off and they keep taking my money

[X] I wish to cancel my basic cable service. Since 4-18-01 was sent

[ ] I wish to cancel my premium cable service. (HBO)

[ ] I wish to cancel both cable services. (Basic and HBO)

[ ] I have changed cells/bunk from __________ to __________. (Make sure to include your bunk assignment [T for top, B for bottom]).

[ ] I wish to add the premium cable service. (HBO) ($7.00 connection fee to add the premium service.)

[ ] I wish to add converter box. ($2.00 per month.)

[ ] I wish to cancel my converter box.

Kim Smith
Inmate's Signature

Block Stamp Required

5-12-01
4-28-01
Date

Block Officer Signature

5-12-01
Date

[All forms are to be forwarded to Service Electric Cablevision, Inc. via the inmate request slip box.]

(chaform)

5/14/01

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

Commonwealth of Pennsylvania
Department of Corrections

INSTRUCTIONS
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer) Mr Kerstetter

2. Date: 5-19-01

3. By: (Print Inmate Name and Number) Kim Smith CT2162

Kim Smith
Inmate Signature

4. Counselor's Name Dunn

5. Unit Manager's Name Mr Smith

6. Work Assignment U/A

7. Housing Assignment RHU-A-107

8. Subject: State your request completely but briefly. Give details.

This makes the 3rd form and the 7th request to have my cable cut off since 4-26-01

Could you please advise me if and when it will be cut off since I've not heard from you.

9. Response: (This Section for Staff Response Only)

To DC-14 CAR only ☐ To DC-14 CAR and DC-15 IRS ☐

Staff Member Name ________________ / ________________ Date ________________
Print Sign

Revised July 2000

DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

AUG 2 3 1999

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

1. TO: (NAME AND TITLE OF OFFICER) Edward Mason
2. DATE 8-19-99
3. BY: (INSTITUTIONAL NAME AND NUMBER) [illegible] Smith GT 2163
4. COUNSELOR'S NAME Ogershok
5. WORK ASSIGNMENT kitchen
6. QUARTERS ASSIGNMENT J-1-03
7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE. GIVE DETAILS.

1 mail to be sent out on [illegible] 1999 was refused by you held for about 8 weeks returned to me 8-16 or 17 99 never was sent out. Advised you refused to send out legal mail and it was returned to me
2 On 6-19-99 request cable cancelation within 10 days as cable contract states. [illegible] not [illegible] verification by staff to have cable cut off. And the 9.90 taken off my account was done in violation of cable contract. Do you really want to go thru this about 9.90. request refund for July.

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

answered

☐ TO DC-14 CAR ONLY ☐ TO DC-14 CAR AND DC-15 IRS

STAFF MEMBER Business Office DATE 8/26/99

Ex B

ATA

PAGE 1
I

INMATE ACCOUNTS SYSTEM
MONTHLY ACCOUNT STATEMENT

08-02-1999
1027S

| INMATE NUMBER | NAME LAST | FIRST | MI | OLD BALANCE |
|---|---|---|---|---|
| CT2162 | SMITH | KIM | | .78 |

| BATCH # | DATE MO DY YEAR | | TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | BALANCE AFTER TRANSACTION |
|---|---|---|---|---|---|
| 9907 | 07-08-1999 | 34 | RADIO/TV BASIC CABLE | -9.90 | -9.12 |
| 7550 | 07-09-1999 | 10 | MAINTENANCE PAYROLL PAY PERIOD ENDING 7/3/99 | 21.60 | 12.48 |

NEW BALANCE AS OF THIS STATEMENT ------------------> 12.48



DC-ADM 804, Inmate Grievance System

Attachment B

DC-804
Part 2

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA 17001

OFFICIAL INMATE GRIEVANCE

INITIAL REVIEW RESPONSE

GRIEVANCE NO. 0342-01

| TO: Kim Smith, CT-2162 | FACILITY SCI-Coal Township | HOUSING LOCATION H-106 | GRIEVANCE DATE 4-25-01 |
|---|---|---|---|

The following is a summary of my findings regarding your grievance:

Mr. Smith,

After careful review of your medical chart and after speaking with Dr. McGlaughlin and the nurses you have named here this morning, (4-30-01), please allow me to share the following:

On 4-17-01, Dr. Adamson spoke with you at length regarding your diabetes and you were satisfied with this discussion.

Today, 4-30-01, Dr. McGlaughlin saw you in RHU. He has started you on another medication. You will have fasting Accu check in one week.

Mr. Smith, I can only tell you that the Medical Department Staff here at SCI-Coal Township, have no intention of mistreating anyone. You are being treated appropriately and we will continue to take care of your medical needs.

WJS/mp

CC: Kandis Dascani, Superintendent's Assistant
Inmate Records, DC-15
Unit Manager
File

| Print Name and Title of Grievance Officer | SIGNATURE OF GRIEVANCE OFFICER | DATE |
|---|---|---|
| Wilma J. Sewell<br>Health Care Administrator | Wilma J. Sewell CHCA | 4.30.01 |

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**2520 LISBURN ROAD, P.O. BOX 598**
**CAMP HILL, PA 17001-0598**

THE SECRETARY'S OFFICE OF
INMATE GRIEVANCES AND APPEALS

March 31, 2003

Kim Smith, CT-2162
SCI Coal Township

Re: DC-ADM 804 – Final Review
Grievance No. 45975

Dear Mr. Smith:

This is to acknowledge receipt of your appeal to final review of the above numbered grievance.

In accordance with the provisions of DC-ADM 804, effective May 1, 2002, I have reviewed the entire record of this grievance; including your initial grievance, the grievance officer's response, your appeal from initial review and the superintendent's response. I have also carefully reviewed the issues you raise to final review.

Upon completion of this review, it is the decision of this office to uphold the responses provided by staff at the institutional level. After review of your complaints and all enclosed documentation, I agree with the grievance officer and Superintendent Gillis's findings. Mr. Voeckler's response was self-explanatory. The mail you wanted sent exceeded the $10.00 limit. It was your request to the counselor that was used to determine which pieces of mail were sent.

The responses provided at the institutional level are appropriate and in accordance with Department of Corrections policies and procedures. Accordingly, your appeal to final review must be denied.

Sincerely,

Thomas L. James
Chief Grievance Coordinator

TLJ:kk

cc: Superintendent Gillis
Grievance Office
Central File

*"Our mission is to protect the public by confining persons committed to our custody in safe secure facilities, and to provide opportunities to inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims."*

DC-135A

39

INMATE'S REQUEST TO STAFF MEMBER

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS

INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

1. TO: (NAME AND TITLE OF OFFICER) Capt. Blenny
2. DATE 11-4-97
3. BY: (INSTITUTIONAL NAME AND NUMBER) Kim Smith CT2162
4. COUNSELOR'S NAME McCrealy
5. WORK ASSIGNMENT unassigned
6. QUARTERS ASSIGNMENT I-1-39
7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE. GIVE DETAILS.

Sir: The function of request dated 10-29-97 serves as a formal or informal notice to you that you were named as a defendant in Preliminary Injunction T.R.O. filed in U.S Supreme court, from paper work that have your signiture

That was the function of the request was it that hard to understand. Why else would I send you such.

Thank You

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

Smith
Smacks of Attempted Harrassment to me, Unless you are legally bound to do so.

cc File

☐ TO DC-14 CAR ONLY ☐ TO DC-14 CAR AND DC-15 IRS

STAFF MEMBER [signature] DATE 11/5/97

DC-135A

**COMMONWEALTH OF PENNSYLVANIA**

**DEPARTMENT OF CORRECTIONS**

**INMATE'S REQUEST TO STAFF MEMBER**

INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

1. TO: (NAME AND TITLE OF OFFICER) Capt Glenny

2. DATE 10-22-99

3. BY: (INSTITUTIONAL NAME AND NUMBER) Kim Smith CT 2162

4. COUNSELOR'S NAME Crider

5. WORK ASSIGNMENT Kitchen

6. QUARTERS ASSIGNMENT F-B-29

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE. GIVE DETAILS.

Sir: On 10-12-99 I got a $20.00 Money Order went to store on 10-14-99 from 10-1-99 to this date I did not make a purchase for postage. On 10-19-99 I got a $15.00 money order went to store on 10-21-99. Counselor Crider advised me $4.62 was taken from me for postage which I'm sure I did not send out from 10-12-99 to 10-21-99 also this is postage charge for $4.62 in Sept which was paid. Could you please look into this issue and check my signature along with the C.O. for the month of Sept and Oct, I'm left handed and see whom is signing my name to cash slip for postage etc.

Thank You

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

Request forwarded to inmate Accounts for any appropriate action

~~[illegible]~~ CC Inmate Accts

Questions regarding [illegible] your accounts need to be forwarded to the Inmate accounts office

☐ TO DC-14 CAR ONLY ☐ TO DC-14 CAR AND DC-15 IRS

STAFF MEMBER [signature] Hannah

DATE 10/26/99

DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

**COMMONWEALTH OF PENNSYLVANIA**

**DEPARTMENT OF CORRECTIONS**

INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

1. TO: (NAME AND TITLE OF OFFICER) Capt. Blarney [illegible]

2. DATE 10-25-99

3. BY: (INSTITUTIONAL NAME AND NUMBER) [illegible] Smith CT-2162

4. COUNSELOR'S NAME [illegible]

5. WORK ASSIGNMENT Kitchen

6. QUARTERS ASSIGNMENT F-B-29

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE. GIVE DETAILS.

Sir: Couldn't I see the cash slip that I was to put in [illegible] Oct. 14, 1999 and Oct. 21, 1999. This thing is not the first time this has happened to me, even in July 1995 [illegible] a number of [illegible] that I contend that I didn't [illegible] make them though I complained no action was taken. Would you please inform me of any action you may take regarding this matter. I still contend that I did not request postage at all this month.

Thank you

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

Request forwarded to your unit staff for any appropriate action.

CC: Unit Mgr Hannah
File

☐ TO DC-14 CAR ONLY

☐ TO DC-14 CAR AND DC-15 IRS

STAFF MEMBER [signature]

DATE 10/26/99

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

Commonwealth of Pennsylvania
Department of Corrections

19

INSTRUCTIONS
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer) Mr McClaskey

2. Date: 7-27-01

3. By: (Print Inmate Name and Number) [redacted]

Inmate Signature

4. Counselor's Name Mr Moses

5. Unit Manager's Name Mr Smith

6. Work Assignment U/A

7. Housing Assignment [redacted]

8. Subject: State your request completely but briefly. Give details.

Sir: I was advised to contact you on the issue of allowence. June 8, 2001, 45 days from April 18, 2001 per policy I should have been given allowence start-ing July 2, 2001 not July 17, 2001 as being stated Mr Woerlner Employment told me to contact you. Would you please check your records

Thank You

My records indicate that you were released from [redacted] on 6/12/01 and were eligible for allowance on 7/12/01 if this is not Correct, have your Counselor Contact me with the Correct date

To DC-14 CAR only ☐ To DC-14 CAR and DC-15 IRS ☐

Staff Member Name ____________ / ____________ Date 8/2/01
Print Sign

Revised July 2000

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

19

Commonwealth of Pennsylvania
Department of Corrections

INSTRUCTIONS

Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer) Business Office

2. Date: 6-10-01

3. By: (Print Inmate Name and Number) Kim Smith CT4162

Kim Smith
Inmate Signature

4. Counselor's Name Mr Moser

5. Unit Manager's Name Mr Smith

6. Work Assignment U/A

7. Housing Assignment

8. Subject: State your request completely but briefly. Give details.

Could you please provide me with a copy of policy that prohibits inmates released from RHU is not entitled to idol 60 days, as this is what I'm being told

9. Response: (This Section for Staff Response Only)

You will have to write to Mr. McCloskey in the Inmate Employment Office.

To DC-14 CAR only ☐ To DC-14 CAR and DC-15 IRS ☐

Staff Member Name William Voeckler, Bus.Mgr. (Print) William Voeckler (Sign) Date 6/11/01

Revised July 2000

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

Commonwealth of Pennsylvania
Department of Corrections

INSTRUCTIONS
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

| | |
|---|---|
| 1. To: (Name and Title of Officer) Mr. Moser | 2. Date: 6-10-01 |
| 3. By: (Print Inmate Name and Number) Kim Smith CT2162<br>Kim Smith<br>Inmate Signature | 4. Counselor's Name Mr Dunn<br>5. Unit Manager's Name Mr Smith |
| 6. Work Assignment W/A | 7. Housing Assignment D-2-54 |

8. Subject: State your request completely but briefly. Give details.

Could you please provide me with a copy of D.O.C. Policy that states I'm not entitled to idol pay for 60 days after being released from RHU. As this is what I'm being told.

Thank you

9. Response: (This Section for Staff Response Only)

Mr. Smith
I would encourage you to write Inmate Employment to Address your Concerns Since that Dept. handles Idle Pay.

Moser

To DC-14 CAR only ☐ To DC-14 CAR and DC-15 IRS ☐

Staff Member Name ________ / ________ Date ________
Print Sign

Revised July 2000

107

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

SECURITY SERVICES

Commonwealth of Pennsylvania
Department of Corrections

INSTRUCTIONS
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer) Mr Johnson

2. Date: 5-6-01 Ex B

3. By: (Print Inmate Name and Number) Kim Smith CT2162

Kim Smith
Inmate Signature

4. Counselor's Name Mr Dunn

5. Unit Manager's Name Ms. Smith

6. Work Assignment U/A

7. Housing Assignment RHU-A-107

8. Subject: State your request completely but briefly. Give details.

Sir: I have addressed this to them U/M or Counselor and they have failed to reply or address this since 3-1-01 even after filing a grievance # 205 they still have failed to reply to request or rectify this issue. I have contacted both Smith and and Dunn and I'm dissatisfied with their attention.

Enclosed you will find Cable Contract see [illegible] section request slip to [illegible] to have cable cut off and the request form. Sir I would like to have my May 2001 cable cut off. According to cable contract a form was not required. Please inform Mrs Kerstetter

Thank You

Could you please tell me who to report misconduct to at Camp Hill
Could you please tell me who Mr Smith and Mr Dunn has as [illegible].

9. Response: (This Section for Staff Response Only)

In conversation with your Unit Counselor he informs me that he gave you direction on what you had to do to cancel your cable. Ms Kerstetter has also responded on Three Separate occassions. The unit Team is not responsible for doing this for you.
Your inmate Handbook should have policy DC Adm 801 which lists where appeals Are to be forwarded.
My name is MAJOR VARANO and I supervise All Unit Managers, I have responded in Deputies Absence

To DC-14 CAR only ☐ cc: Mr. Smith RHU Lt.

To DC-14 CAR and DC-15 IRS ☐ Ms. Kerstetter DSFM File

Staff Member Name D.A. VARANO (Print) / D.A. Varano, MAJOR (Sign) Date 5-10-01

Revised July 2000

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

107

Commonwealth of Pennsylvania
Department of Corrections

**INSTRUCTIONS**
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer) Business Office

2. Date: 4-23-01

3. By: (Print Inmate Name and Number) Kim Smith CT2160

Kim Smith
Inmate Signature

4. Counselor's Name Mr. Brown

5. Unit Manager's Name Mr. Smith

6. Work Assignment u/A

7. Housing Assignment RHU-H-106

8. Subject: State your request completely but briefly. Give details.

On 4-23-01 I informed Mr Smith I wished to have cable for 5-1-01 cut off I do not wish to have or pay for cable in may 2001

Thank you

9. Response: (This Section for Staff Response Only)

Mr. Smith,

you need to put through a form cancelling your cable.

To DC-14 CAR only ☐ To DC-14 CAR and DC-15 IRS ☐

Staff Member Name ________ Print / [signature] Sign Date 4-30-01

Revised July 2000

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>INSTRUCTIONS<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|
| 1. To: (Name and Title of Officer)<br>Business Office | 2. Date: 5-01-01 |
| 3. By: (Print Inmate Name and Number)<br>Kim Smith CT2162<br>Kim Smith<br>Inmate Signature | 4. Counselor's Name<br>Mr Dunn<br>5. Unit Manager's Name<br>Mr Smith |
| 6. Work Assignment<br>U/A | 7. Housing Assignment<br>RHU-A-106 |

107

8. Subject: State your request completely but briefly. Give details.

Why? On cash account deduction authorization in the second section

This authorization shall remain in effect until the business office receives my written request slip giving notice that I am cancelling only the premium or the entire cable service. At no time has cable contract required I fill out a form to have cable cut off.

I did send request to have cable cut off on D-A-02 on 4-18-23,-27 to your office and Mr Smith.

Please advise if I must still fill out form and when cable will be cut off.

Thank You.

9. Response: (This Section for Staff Response Only)

Mr. Smith,

I do not have a cable form requesting that your cable be disconnected.

To DC-14 CAR only ☐ To DC-14 CAR and DC-15 IRS ☐

Staff Member Name ______ Print / Mrs. Kerstetter Sign Date 5-4-01

Revised July 2000

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>INSTRUCTIONS<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|
| 1. To: (Name and Title of Officer)<br>Mr Johnson | 2. Date:<br>5-2-01 |
| 3. By: (Print Inmate Name and Number)<br>Kim Smith CT2162<br>Kim Smith<br>Inmate Signature | 4. Counselor's Name<br>Mr Dunn<br>5. Unit Manager's Name<br>Mr Smith |
| 6. Work Assignment<br>u/A | 7. Housing Assignment<br>RHU-A-107 |

8. Subject: State your request completely but briefly. Give details.

Sir on 4-18-20-22-24-27 I wrote Business office, Mr Dunn, Mr Smith per cable contract inmate must send request slip requesting cable be cut off. I did for may 2001 and on 4-26-01 I was still charged $9.00 for cable for May 2001 then told I must fill out a Form. At no time did cable contract state I must send a form, only that I send request which I did and I was still charged. Would you please see why I'm being charged for may cable when I request it to be cut off to the business office

Thank You

9. Response. (This Section for Staff Response Only)

Mr. Smith,

I do not have a form from you requesting your cable be disconnected! Please submit a cancel form.

To DC-14 CAR only ☐ To DC-14 CAR and DC-15 IRS ☐

Staff Member Name ________ / Mrs. Kerstetter Date 5-3-01
Print Sign

Revised July 2000

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

107

Commonwealth of Pennsylvania
Department of Corrections

INSTRUCTIONS
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer) Dr McGlaughlin
2. Date: 5-18-01
3. By: (Print Inmate Name and Number) Kim Smith CT2162
Kim Smith
Inmate Signature
4. Counselor's Name Mr Dunn
5. Unit Manager's Name Mrs. Smith
6. Work Assignment u/A
7. Housing Assignment LAU-A-107

8. Subject: State your request completely but briefly. Give details.

Sir: I'm requesting to be re-evaluated regarding my back problem and job placement in kitchen as Cook Veg prep etc. Sir with this condistion I worked in kitchen at SCI G for 5 years. Request to surveu this up coming 90 day check. Please advise employment

9. Response: (This Section for Staff Response Only)

Mr. Smith,
Please sign for sick call.

Still has not been addressed
signed up for sick call.

Need a Drug test as I feel I'm being given the wrong medications at times); Male RN Walfgang

To DC-14 CAR only ☐ To DC-14 CAR and DC-15 IRS ☐

Staff Member Name Judy Rodichok (Print) Judy Rodichok (Sign) Date 5-18-01

Revised July 2000

DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

1. TO: (NAME AND TITLE OF OFFICER) ~~Mr Batty Ed Dept~~

2. DATE 5-26-00

3. BY: (INSTITUTIONAL NAME AND NUMBER) Ken Smith CT2162

4. COUNSELOR'S NAME Crider

5. WORK ASSIGNMENT Kitchen

6. QUARTERS ASSIGNMENT F-B-29

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE. GIVE DETAILS.

Sir: Would you please advise Ms Lucas, Kozak and any of the other educational staff that they are in error in their determination of my educational programing under CT2162. I did take programs that they claim under AJ2649 some 10 years ago, but not on this bit, and I will not be given consideration by parole board for what I did in the past. I would like to get into key board, computer Business Math, Accounting and the Advanced AC/RF repair which these classes I have not had under the CT2162 if you dont want me in educational programing just say it instead of passing the buck and making determination based on old institutional numbers. Also why do my request not get replied to. Thank you

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

CC. 5-26-00

6-5-00

Dear Mr. Smith,
We educate the person, not the number. Have a good day.

Paul Kozak

To expect us to accomodate you for solely parole considerations based on a number change is ludicrous, Mr. Smith. M Lucas

☐ TO DC-14 CAR ONLY ☐ TO DC-14 CAR AND DC-15 IRS

| STAFF MEMBER | DATE |
|---|---|
| | |