### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KIM SMITH,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 1:01-0817** |
| **v.** | : | **(CALDWELL, D.J.)** |
| | | **(MANNION, M.J.)** |
| **JAMES MORGAN, et al.,** | : | |
| **Defendants** | : | |

## N O T I C E

**TO:  Kim Smith, Reg. No. CT-2162**
 **SCI-Coal Township**
 **1 Kelley Drive**
 **Coal Township, PA    17866-1020**

 **John J. Talaber, Esquire**
 **Laura J. Neal, Esquire**
 **Office of Chief Counsel**
 **Pennsylvania Department of Corrections**
 **55 Utley Drive**
 **Camp Hill, PA   17011**

 **James D. Young, Esquire**
 **Lavery, Faherty, Young & Patterson**
 **225 Market Street- Suite 304**
 **P.O. Box 1245**
 **Harrisburg, PA 17108-1245**

 **NOTICE IS HEREBY GIVEN** that the undersigned has entered the following:

 **Report and Recommendation of Magistrate Judge Mannion dated 08/07/03.**

Any party may obtain a review of the magistrate judge's above proposed determination pursuant to Rule **72.3**, M.D.PA, which provides:

## 72.3 REVIEW OF REPORTS AND RECOMMENDATIONS OF MAGISTRATE JUDGES ADDRESSING CASE DISPOSITIVE MOTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.   Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.   The briefing requirements set forth in Local  Rule 72.2 shall apply.   A judge shall made a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.   The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.   The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

<u>s/ Malachy E. Mannion</u>

**MALACHY E. MANNION
United States Magistrate Judge**

**Dated:  August 7, 2003**

2

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

KIM SMITH,                              :

    **Plaintiff**                          :     **CIVIL ACTION NO. 1:01-0817**

    **v.**                                :         **(CALDWELL, D.J.)**
                                       **(MANNION, M.J.)**

**JAMES MORGAN, et al.,**                :

    **Defendants**                        :

## REPORT AND RECOMMENDATION

Presently pending before the court are the plaintiff's motion for a temporary restraining order, (Doc. No. 93); the Corrections Defendants'[1] motion for summary judgment, (Doc. No. 99); and the Wexford Defendants'[2] motion for summary judgment, (Doc. No. 100).

---

[1]The Corrections Defendants consist of the following individuals named in the plaintiff's amended complaint: Kathy Allen, Nancy Ambrose, Mary Bernas, Sharon Burks, Kandis Dascani, John Dunn, Harry Ersek, Frank Gillis, Robert Glenny, Dr. Robyn Johns, Tim Jordan, John Learn, Edward Mason, James Morgan, Wilma Sewell, Raymond Smith, Voeckler, George Weaver, Lynn Wolfgang, Gerald Whysong, Pat Yarger, Angela Zimmerman, and Hazel Zimmerman.  (See Doc. No. 20).

[2]The Wexford Defendants consist of the following parties named in the plaintiff's amended complaint:  Wexford Health Services, Inc.; Ronald Long, M.D.; Craig Hoffman, P.A.; Wendy Wright and Melinda Baker.  (See Doc. No. 20).

## I. PROCEDURAL HISTORY

By way of relevant background, the plaintiff filed the instant civil rights action pursuant to 42 U.S.C. § 1983 on May 10, 2001. (Doc. No. 1). By order dated June 6, 2001, the court directed the plaintiff to file an amended complaint. (Doc. No. 8).

On June 18, 2001, the plaintiff filed a motion for limited discovery to compel the Department of Corrections, ("DOC"), to produce his grievance history so that he could establish that he had exhausted his administrative remedies. (Doc. No. 12). By order dated June 20, 2001, the court directed the DOC to file with the court and serve upon the plaintiff any and all information relating to the plaintiff's exhaustion of administrative remedies. (Doc. No. 13). On July 19, 2001, the DOC complied with the court's June 20, 2001, order. (Doc. No. 22).

In the meantime, the court issued an order on July 3, 2001, directing the plaintiff to file his amended complaint on or before July 20, 2001. (Doc. No. 14). The plaintiff filed his amended complaint on July 11, 2001. (Doc. No. 20). Upon review, the court found that the plaintiff's amended complaint substantially complied with its previous orders and directed the Clerk of Court to serve process upon the defendants named in the amended complaint[3].

───────────────

[3]It should be noted that in preparing the instant report the court discovered that five individuals named in the plaintiff's amended complaint (continued...)

2

(Doc. No. 24).

On November 6, 2001, the Corrections Defendants waived their right to reply to the plaintiff's amended complaint.  (Doc. No. 33).

On November 5, 2002, the plaintiff filed a motion for a temporary restraining order, along with a brief in support thereof.  (Doc. Nos. 93 & 94). A brief in opposition to the plaintiff's motion was filed by the Corrections Defendants on December 20, 2002.  (Doc. No. 106).

In the meantime, on December 13, 2002[4], the Corrections Defendants

---

[3](...continued)
were inadvertently omitted from the docket in this action and, therefore, were not served with the plaintiff's amended complaint.  These individuals are: Edward Mason, Captain Glenny, Dr. Kort, Unit Manager Smith, and Counselor Dunn. With the exception of Dr. Kort, counsel for the Corrections Defendants has acknowledged that these individuals have been named as defendants in this action and has previously included them among the listed Corrections Defendants. As such, it will be recommended that the Clerk of Court amend the caption of the instant action to include these individuals. Moreover, it will be recommended that process be issued with respect to Dr. Kort, in order that he may properly respond to the allegations set forth against him in the amended complaint.

In addition, several defendants who were named in the plaintiff's original complaint, but were omitted from his amended complaint, remain on the docket.  These individuals include: K. Grove, Morgan, Morder, Bivanio, Henry, Catherine C. McVey, Kerstetter, and Wetz.  As such, the court will recommend that the Clerk of Court terminate these individuals from the docket in this action.

[4]The Corrections Defendants' materials indicate that the parties had been engaging in discovery from the time of the filing of their waiver of reply
(continued...)

filed a motion for summary judgment.  (Doc. No. 99).  Also on December 13, 2002, the Wexford Defendants filed a motion for summary judgment. (Doc. No. 100).

On January 21, 2003, the Wexford Defendants filed a brief in support of their motion for summary judgment, as well as a statement of material facts and documentation in support thereof.  (Doc. Nos. 118-120).

On February 24, 2003, the plaintiff filed what is construed by the court as his brief in opposition to the Wexford Defendants' motion for summary judgment.  (Doc. Nos. 130-31).

On March 11, 2003, the Corrections Defendants filed documentation in support of their motion for summary judgment.  (Doc. Nos. 136-37).  After having been granted several extensions of time by the court, (Doc. Nos. 102, 105, 110, 113, 121, 128, 132, 135, & 139), on April 21, 2003, the Corrections Defendants filed two separate briefs in support of their motion for summary judgment[5], along with a statement of material facts.  (Doc. Nos. 141-43).  The

---

[4](...continued)
until the filing of their motion for summary judgment.  (Doc. No. 142, p. 3).

[5]Given the number of defendants named in this action, as well as the numerous claims raised by the plaintiff, by order dated February 11, 2003, the court granted the Corrections Defendants' motion to file independent briefs based on the claims and parties involved.  Specifically, one brief was to address the plaintiff's access to court, due process, cruel and unusual punishment and excess force claims, while the second brief was to address
(continued...)

plaintiff filed what the court construes as his brief in opposition to the Corrections Defendants' motion for summary judgment on June 6, 2003. (Doc. Nos. 146-47).

## II.  PLAINTIFF'S AMENDED COMPLAINT

The plaintiff asserts numerous claims against the defendants in his amended complaint.  Specifically, with respect to the Corrections Defendants, the plaintiff alleges that defendant Weaver, the Corrections Health Care Administrator at SCI-Smithfield[6], improperly delayed his treatment for sleep apnea and diabetes; improperly denied him the use of a C-PAP[7] device and then later took the device away from him; discriminated against him in his job placement because of his sleep apnea condition, but refused to treat the condition; falsified medical records surrounding the plaintiff's refusal to be treated with the C-PAP device; and improperly followed the DOC's policy for medical co-payments.  (Doc. No. 20, pp. 2-3, 5).

Defendant Allen, who was employed as a Registered Nurse Supervisor

---

[5](...continued)
the plaintiff's inadequate medical treatment claim.  (Doc. No. 128).

[6]See Doc. No. 137, Ex. C.

[7]C-PAP stands for continuous positive air pressure.  Taber's Cyclopedic Medical Dictionary at 478 (19th ed.  2001).

5

for the evening shift at SCI-Smithfield in January and February 1999[8], is alleged to have acted with deliberate indifference when she "knowingly and intentionally denied [the plaintiff] gauze wrap for a leaky fissure that was removed from [his] anus." In addition, defendant Allen is accused of subjecting the plaintiff to sexual harassment by forcing him to have his wound dressed in front of other nurses, rather than letting him dress his own wound in his cell. Finally, defendant Allen is accused of improperly following the DOC's policy for medical co-payments. (Doc. No. 20, pp. 3, 4, 8).

The plaintiff alleges that defendant Yarger, the Corrections Health Care Administrator at SCI-Huntingdon during the time relevant to the plaintiff's amended complaint, improperly followed the DOC's policy for medical co-payments. (Doc. No. 20, p. 3).

With respect to defendant Morgan, the Superintendent of SCI-Smithfield while the plaintiff was incarcerated therein[9], the plaintiff alleges that he failed to train subordinate staff members in relation to the DOC's policy for medical co-payments; improperly supported the abuse of the plaintiff by affirming all appeals challenging the denial of the C-PAP machine; and supported an institution policy which prohibited the plaintiff from obtaining an accu-check on his blood sugar for his diabetes condition. (Doc. No. 20, pp. 1, 3, 5-6).

---

[8]Id.

[9]Id.

6

The plaintiff alleges that defendant Burks, the Superintendent's Assistant and Grievance Coordinator at SCI-Smithfield while the plaintiff was incarcerated therein[10], improperly followed the DOC's policy for medical co-payments. (Doc. No. 20, p. 3).

Defendant Johns, Ph.D., the Chief Psychologist at SCI-Smithfield, is alleged to have supported the abuse of the plaintiff by discriminating against him on his job placement and in acquiescing in the taking of his C-PAP machine. (Doc. No. 20, pp. 2, 4).

The plaintiff alleges that defendant Hazel Zimmerman, a Registered Nurse Supervisor at SCI-Smithfield, improperly took his money for medical co-payments in violation of DOC policy and improperly took away his C-PAP device. (Doc. No. 20, pp. 3, 5).

Defendant Gillis, the Superintendent at SCI-Coal Township where the plaintiff is currently confined[11], is alleged to have "support[ed] the abuse of his administration" through his involvement in the grievance process. (Doc. No. 20, p. 1).

Defendant Ersek, a Corrections Officer at SCI-Smithfield[12], is alleged to have refused to give the plaintiff his C-PAP device and to have improperly

---

[10]Id.

[11]Id.

[12]Id.

7

issued an institution misconduct to the plaintiff because he failed to obey an order. (Doc. No. 20, p. 5).

The plaintiff alleges that defendant Whysong, a Corrections Officer at SCI-Smithfield[13], "conspired and forged a note, stuck it on the C-PAP device claiming that George Weaver put a note on the device telling them not to issue it . . ." (Doc. No. 20, p. 5). In addition, defendant Whysong is alleged to have denied the plaintiff access to the law library and to have given the plaintiff an institutional misconduct that resulted in him being placed in the Restricted Housing Unit, ("RHU"), for thirty days. (Id.).

With respect to defendant Ambrose, a Registered Nurse at SCI-Coal Township, the plaintiff alleges that she had a policy that prohibited him from obtaining accu-check on his blood sugar for his diabetes condition, and that she conspired to deprive him of his right to health care. (Doc. No. 20, pp. 6-7).

The plaintiff alleges that defendants Wolfgang and Bernas, Registered Nurses at SCI-Coal Township, had a policy that prohibited him from obtaining accu-check on his blood sugar for his diabetes. These defendants are also accused of conspiring to deprive the plaintiff of his right to health care. (Doc. No. 20, pp. 6-7). In addition, defendant Wolfgang is alleged to have issued the plaintiff a misconduct for being in an unauthorized area in March 2001. (Doc. No. 20, p. 6). Defendant Bernas is also alleged to have cut the plaintiff's

---

[13]Id.

medication for diabetes despite doctor's orders to the contrary.  (Id.).

According to the amended complaint, defendant Jordan, a Lieutenant at SCI-Coal Township, ordered the plaintiff out of the infirmary when he was attempting to solve his medication issues.  Subsequently, the plaintiff alleges that defendant Jordan issued him a misconduct for disobeying an order and had him placed in a "hard cell." The plaintiff alleges that these actions were in retaliation for his exercising his First Amendment rights, not for any other legitimate reason.  (Doc. No. 20, p. 7).

Defendant Learn, a Corrections Officer at SCI-Coal Township, is alleged to have conspired to deprive the plaintiff of his right to health care.  (Doc. No. 20, pp. 6-7).

With respect to defendant Sewell, the Corrections Health Care Administrator at SCI-Coal Township, the plaintiff alleges that she had a policy that prohibited him from obtaining accu-check on his blood sugar for his diabetes condition.  (Doc. No. 20, p. 6).

Defendant Angela Zimmerman, a Corrections Officer at SCI-Coal Township, is alleged to have placed the plaintiff in a control unit for forty-five days after his disciplinary time had expired and then placed him in the RHU on administrative custody status for a period of seven months pending transfer. (Doc. No. 20, p. 6).

Defendant Dascani, the Assistant to the Superintendent and Grievance

Coordinator at SCI-Coal Township, is alleged to have improperly determined that the plaintiff was not entitled to idle pay. (Doc. No. 20, p. 7).

The plaintiff alleges that defendant Voeckler, the Business Manager at SCI-Coal Township, denied the plaintiff access to the courts by improperly finding that he was not entitled to idle pay. (Doc. No. 20, p. 7).

With respect to defendant Mason, the plaintiff alleges that he was "in breach of [the] cable contract" because he failed to have the plaintiff's cable disconnected when he was transferred out of the institution for a period of time. The plaintiff further alleges that defendant Mason denied him access to the courts by not allowing him to send out legal mail when his account was "in the red." (Doc. No. 20, p. 2).

Defendant Glenny is alleged to have delayed treatment of the plaintiff's sleep apnea and diabetes. (Doc. No. 20, p. 4).

The plaintiff alleges that defendant Smith conspired with defendant Jordan to have him placed in a "hard cell" without provocation. In addition, defendant Smith is alleged to have improperly determined that the plaintiff was not entitled to idle pay. (Doc. No. 20, p. 7).

Finally, with respect to the Corrections Defendants, defendant Dunn is also alleged to have improperly determined that the plaintiff was not entitled to idle pay. (Id.).

Concerning the Wexford Defendants, the plaintiff alleges that these

10

defendants denied him adequate treatment for various medical conditions in violation of the Eighth Amendment.  Specifically, defendant Long is alleged to have denied the plaintiff the right to see a specialist for various medical conditions, including sores on his body, diabetes, osteo-arthritis, foot fungus, low back pain, sleep apnea and Hepatitis C.  (Doc. No. 20, p. 1).  Defendant Long is also alleged to have improperly followed the DOC's policy for medical co-payments, and to have discriminated against the plaintiff in his job placement based upon his sleep apnea.  (Doc. No. 20, pp. 3-4).

The plaintiff alleges that defendant Wright improperly followed the DOC's policy for medical co-payments.  (Doc. No. 20, p. 3).

With respect to defendant Hoffman, the plaintiff alleges that he tried to force the plaintiff to take medication that had adverse effects on him.  (Doc. No. 20, p. 3).

Finally, with respect to defendant Baker, the plaintiff alleges that she provided improper treatment for an ear infection and that she falsified medical records claiming that the plaintiff had refused to use the C-PAP device.  (Doc. No. 20, p. 4).

## III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

11

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  Id.  The moving party can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party."  Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988)(citations omitted).  Material facts are those which will effect the outcome of the trial under governing law.  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The court may not weigh the evidence or make credibility determinations.  Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998).  In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party.  Id. at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor.  Id.

## IV. CORRECTIONS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In support of their motion for summary judgment, the Corrections Defendants have submitted a statement of material facts accompanied by supporting documentation which establish that the plaintiff is currently serving an eight to twenty year sentence on a third degree murder conviction imposed in Allegheny County.  (Doc. No. 137, Ex. C, p. 13).  His litigation experience includes the filing of a habeas corpus action in the Allegheny County Court of Common Pleas, a habeas corpus action in the United States District Court for the Middle District of Pennsylvania, and two mandamus actions in the Commonwealth Court of Pennsylvania.  (Doc. No. 137, Ex. C, p. 19; Ex. D, p. 5).  Although the plaintiff has a high school education with some college education, possessing certificates for accounting, air conditioning, refrigeration,

13

tutoring and counseling, (Doc. No. 137, Ex. C, pp. 9-10; Ex. D, p. 4), he does not possess medical training as a nurse, physician's assistant, or physician, (Doc. No. 137, Ex. D, p. 4). In addition, the plaintiff has obtained no medical expert to testify in this matter regarding the medical claims raised in his complaint. (Doc. No. 137, Ex. D, pp. 14-15).

Concerning the DOC Health Care Services, the Corrections Defendants' materials provide that the DOC contracts medical services for its twenty-five institutions, which reduces the Department's fiscal liability because costs are set at a constant daily rate per inmate regardless of the level of care needed. In addition, the materials provide that a private contractor has greater ease and flexibility to recruit competent clinical staff, and is able to negotiate large discounts with hospitals and vendors, resulting in reduced costs to the contractor. (Doc. No. 137, Ex. B, p. 5). The DOC closely monitors the privately contracted vendors to ensure that the care provided to inmates is consistent with community standards. (Id.).

Inmates are routinely provided access to physicians and are given preventative health care, with physical examinations given to inmates when they are first incarcerated, and comprehensive medical examinations given annually for inmates of fifty years and bi-annually for inmates under fifty years of age. (Doc. No. 137, Ex. B, p. 6). In the area of disease management, inmates are tested for HIV/AIDs, given annual tuberculosis tests, and are

screened for the Hepatitis C virus.  (Id.).

With respect to the DOC grievance system, the Corrections Defendants' materials provide that the DOC has a Consolidated Inmate Grievance Review System, through which inmates can seek resolution of various problems.  (Doc. No. 136, Ex. A, pp. 1-2).  If informal resolution fails, the grievance procedure provides a three-step process for resolution of inmate grievances: the initial grievance, the appeal to the Superintendent, and the final appeal to the Central Office.  (Doc. No. 136, Ex. A, p. 2).  The Department's Inmate Handbook provides inmates with notice of the grievance procedure and the requirements which they must meet in order to grieve their issues.  (Id.).  Records of inmate grievances are made at or near the time of the occurrence of the matters at issue by people with knowledge of those matters.  (Doc. No. 136, Ex. A, p. 3). In addition, grievance records are maintained in the course of regularly conducted business activities in accordance with the Department's Grievance Policy.  (Id.).

The Secretary's Office of Grievance Appeals has records of grievances filed by the plaintiff, which indicate that the only claim raised by the plaintiff in his amended complaint that has not be grieved to the final level of appeal is his claim relating to improper charges for cable television[14].  (Doc. No. 136, Ex. A,

---

[14]The court notes that several other grievances have also not been taken to final review.   (Doc. No. 136, Ex. A, Attachments 4-6, 26-27).
(continued...)

Attachment 21).

Concerning the DOC's misconduct system, the Corrections Defendants' materials establish that the Department's Administrative Directive, DC-ADM 801, establishes among other things the procedure inmates must adhere to when appealing misconduct related disciplinary proceedings. (Doc. No. 137, Ex. E, p. 1).

The Office of the Chief Hearing Examiner reviews records of inmate misconduct proceedings for the purpose of ensuring that the inmates subjected to the misconduct sanctions are afforded fair and impartial disciplinary proceedings. (Doc. No. 137, Ex. E, p. 2). The Chief Hearing Examiner is also responsible for processing and maintaining computer records and hard copies of all appeals to final review of misconduct decisions to his Office. (Id.). Records of inmate misconducts are made at or near the time of the occurrence of the matters at issue by people with knowledge of those matters. (Id.). In addition, misconduct records are maintained in the course of regularly conducted business activities in accordance with the Department's Grievance Policy. (Id.).

The Office of the Chief Hearing Examiner has records of misconducts involving the plaintiff which establish that the plaintiff appealed two

---

[14](...continued)
However, the issues raised in those grievances were raised in other grievances which were appealed to final review.

16

misconducts involving: (1) illegal use of mail; and (2) refusing to obey an order and presence in an authorized area. Both of these appeals were pursued to final review. (Doc. No. 137, Ex. E, pp. 2-3).

In an attempt to refute the Corrections Defendants' materials, the plaintiff has submitted what the court has construed as a brief in opposition to the Corrections Defendants' motion for summary judgment and supporting materials[15]. In his materials the plaintiff does nothing more than to reassert the allegations set forth in his complaint and to disagree with the materials submitted by the Corrections Defendants. Although the plaintiff has attached numerous exhibits, upon review, these appear to be nothing more than copies of grievances filed by the plaintiff and responses thereto, which the Corrections Defendants have already submitted in support of their motion for summary judgment. These materials are insufficient to refute the Corrections Defendants' motion for summary judgment. See Fed.R.Civ.P. 56(e); Celotex Corp. v. Catrett, 477 U.S. at 324 (the non-moving party must go beyond the pleadings and by his own affidavits or the discovery on file designate specific facts showing that there is a genuine issue for trial). Inasmuch as the plaintiff has failed to adequately oppose the Corrections Defendants' motion for

---

[15]The plaintiff's documentation is titled "Objection to the Correction Defendant Motion for Summary Judgment for Access to the Court, and Due Process Curel (sic) and Unusual Punishment, and Excessive Force and Eighth Amendment Deliberate Indifference Relating to Medical Treatment", (Doc. No. 146), and "Plaintiff's Brief in Support of Objection", (Doc. No. 147).

17

summary judgment, the only question which remains is whether these defendants are entitled to judgment as a matter of law.

Initially, to the extent that the plaintiff attempts to set forth an Eighth Amendment inadequate medical claim against those Corrections Defendants who are not medical personnel, (i.e., defendants Weaver, Yarger, Morgan, Burks, Johns[16], Gillis, Ersek, Whysong, Jordan, Learn, Sedwell, Angela Zimmerman, Dascani, Voeckler, Dunn, Smith, Glenny, and Mason), prison officials and/or employees who are not medical personnel cannot be held liable for failing to respond to a prisoner's medical complaints where the prisoner was receiving medical treatment from prison doctors at the complained time. Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993). In Durmer, a prisoner brought suit alleging deliberate indifference to a serious medical need. The defendants were the physician in charge of the prison, the prison warden and the state commissioner for corrections. The court granted summary judgment for the warden and the commissioner. The court reasoned that it was the prison doctor who treated the prisoner, not the warden or commissioner. The only involvement of the warden and commissioner was a failure to respond directly to medical complaints that the plaintiff had brought to their attention through correspondence. Accordingly, if there was any deliberate indifference, it was

---

[16]The court notes that defendant Johns is a psychologist, not a medical doctor.

18

the doctor's responsibility not the corrections officials' responsibility.  Id. at 69.

Consequently, in this case, the aforementioned Corrections Defendants cannot be held liable for the plaintiff's claims of deliberate indifference to his medical needs and summary judgment should be granted in their favor on this claim.  Durmer, 991 F.2d at 69; Bednar v. County of Schuylkill, 29 F.Supp.2d 250, 256 (E.D.Pa. 1998)(citing Durmer for the proposition that prison officials cannot be considered deliberately indifferent simply because they failed to directly respond to complaint while prisoner was being seen by prison medical staff); Key v. Brewington-Carr, 2000 WL 1346688 at *38 (D.Del. 2000)(citing Durmer and granting summary judgment to prison officials on deliberate indifference claim where plaintiff was being treated by medical personnel).

As to the remaining Corrections Defendants, who are medical personnel, (i.e., defendants Allen, Hazel Zimmerman, Ambrose, Wolfgang, and Bernas), as discussed more fully below in relation to the Wexford Defendants' motion for summary judgment, the plaintiff has failed to present the required expert medical opinion testimony to establish that any or all of his conditions were "serious" medical needs entitled to coverage under the Eighth Amendment. Moreover, the plaintiff has failed to establish any deliberate indifference on the part of the medical personnel at SCI-Smithfield in treating his medical conditions.  In fact, the materials submitted by the Wexford Defendants establish that the plaintiff was receiving adequate medical care for his

19

conditions.  As such, summary judgment should also be granted in favor of defendants Allen, Hazel Zimmerman, Ambrose, Wolfgang, and Bernas, on the plaintiff's Eighth Amendment medical claims.

Concerning the plaintiff's claim that Defendants Weaver and Johns discriminated against him with respect to his job placement, it is well established that prisoners have no constitutional right to employment while confined in prison.  James v. Quinlan, 866 F.2d 629 (3d Cir. 1989).  Moreover, DC-ADM 816, the DOC's Administrative Policy Statement addressing the inmate compensation system, provides that no inmate has a right to be assigned to or continue in any particular work assignment while incarcerated. As such, the Corrections Defendants are entitled to summary judgment with respect to this claim.

Furthermore, since inmates do not have a constitutional right in receiving idle pay, the Corrections Defendants are entitled to summary judgment on the plaintiff's claims that defendants Dascani, Voeckler, Smith and Dunn improperly determined that he was not entitled to idle pay.  See Fidtler v. Pa. Department of Corrections, 2002 WL 31648368 (3d Cir. (Pa.))(citing Aultman v. Dept. of Corrections, 686 A.2d 40, 42 (Pa.Cmwlth.Ct. 1996), aff'd 701 A.2d 1359 (1997)); McCoy v. Chesney, 1996 WL 119990 (E.D.Pa.).

To the extent that the plaintiff claims that Defendants Weaver, Allen, Yarger, Morgan, Burks, and Hazel Zimmerman, violated his constitutional

20

rights when they improperly followed the DOC's policy regarding medical co-payments, DC-ADM 820 is the DOC's Administrative Policy Statement which addresses co-payment for medical services.    Fee for medical services programs, such as that provided for under DC-ADM 820, have been found to be constitutional under the Eighth Amendment. See Reynolds v. Wagner, 936 F.Supp. 1216, 1224 (E.D.Pa. 1996)(finding fee for medical services programs are not per se violative of the Eighth Amendment).  See also Johnson v. Dept. of Public Safety & Corr. Services, 885 F.Supp. 817 (D.Md. 1995)(granting summary judgment holding that the co-pay program did not violate the Eighth Amendment); Martin v. DeBruyn, 880 F.Supp. 610, 615 (N.D.Ind. 1995)(same). Thus, to the extent the plaintiff brings his claim pursuant to the Eighth Amendment, the Corrections Defendants are entitled to summary judgment.

In addition, where inmates are informed about the fee policy under the fee for service program and the program contains procedures to challenge disputed fees, the fee for service programs have been found constitutional under the Fourteenth Amendment.  See Reynolds v. Wagner, 936 F.Supp. at 1228 (where inmates are informed about the fee policy under the fee program and adequate procedures exist to challenge disputed fees, due process has been satisfied)[17].  See also Johnson v. Dept. of Public Safety & Corr. Services,

---

[17]Pursuant to the Third Circuit's decision in James v. Quinlan, 866 F.2d 627, 630 (3d Cir), cert. denied 493 U.S. 870 (1989), finding that an
(continued...)

885 F.Supp. at 821 (no due process violation because inmates had been informed about the policy, the policy required detailed documentation of eligible medical treatment, and inmates were required to sign a "co-pay log" to authorize charges); Scott v. Angelone, 771 F.Supp. 1064, 1067-68 (D.Nev. 1991)(no due process violation where inmate had prior notice of the policy, authorized the charges, and was reimbursed for mistaken charges), aff'd 980 F.2d 738 (9th Cir. 1992)).

In this case, the plaintiff was provided with a copy of the DOC's Inmate Handbook which contained a copy of DC-ADM 820 informing him about the fee policy under the fee for medical services program. Moreover, the plaintiff was permitted to challenge any disputed fees, and in fact did so pursuant to DC-ADM 804, the Administrative Policy Statement relating to the Inmate Grievance System[18]. As such, to the extent that the plaintiff brings his medical co-payment claim pursuant to the Fourteenth Amendment, the Corrections Defendants are entitled to summary judgment.

---

[17](...continued)
inmate's constitutional rights may be impinged by a prison regulation if it is reasonably related to legitimate penological interests, the court went on to find that, even if the inmate was not afforded adequate due process, there would be no constitutional violation as the fee for medical services program was implemented to encourage inmate responsibility and discourage abuse of sick call, legitimate penological interests. Reynonds, 936 F.Supp. at 1229.

[18]See Doc. No. 136, Ex A, Attachments 18-20.

Insofar as the plaintiff is challenging the implementation of DC-ADM 820, as opposed to the constitutionality of the policy itself, in that he claims that the above Corrections Defendants charged him for conditions which he considers chronic and thus exempted from the medical co-pay provision, the Corrections Defendants' materials establish that under the medical co-payment system the final determination as to whether a condition is chronic or non-chronic rests solely with the medical providers on site. (Doc. No. 136, Ex. A, Attachment 20, p. 20-8). Again, the plaintiff was given the opportunity to challenge these determinations through the inmate grievance system and in fact did so. As such, the Corrections Defendants are entitled to summary judgment on this claim as well.

With respect to the plaintiff's claim that Defendant Allen sexually harassed him by forcing him to change the dressing for the wound on his buttocks in the infirmary in front of nurses, as opposed to letting him do it himself in his cell, sexual harassment of a prisoner by a prison official can rise to the level of an Eighth Amendment violation. See Jones v. Culinary Manager II, 30 F.Supp.2d 491, 497 (E.D.Pa. 1998)(citing Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998); Boddie v. Schnieder, 105 F.3d 857, 860-61 (2d Cir. 1997)). However, in order to hold an officer liable for violating the Eighth Amendment, the plaintiff must establish: (1) that the alleged action was objectively, sufficiently serious; and (2) that the prison official had a sufficiently

23

culpable state of mind.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Claims of sexual harassment can meet the objective requirement where there is "severe or repetitive sexual abuse of an inmate by a prison officer."  In order to establish a sufficiently culpable state of mind, there can be no legitimate law enforcement or penological purpose which can be inferred from the defendant's alleged conduct.  Boddie, 105 F.3d at 861 (citations omitted).

In this case, even taking the plaintiff's allegations as true, the plaintiff has failed to state an Eighth Amendment claim against defendant Allen for sexual harassment.  On an unspecified date, the plaintiff alleges that he had a boil removed on his buttocks.  Subsequently, the plaintiff alleges that defendant Allen informed him that there was a security issue with allowing the plaintiff to change the dressing on his wound in his cell.  As a result, the plaintiff was made to have the dressing changed in the infirmary.  Initially, the fact that the plaintiff was made to have the dressing on his wound changed in the infirmary does not constitute the "severe or repetitive sexual abuse" necessary to rise to the level of an Eighth Amendment violation.  Moreover, there is no indication that defendant Allen had the requisite culpable state of mind in that there were apparent security concerns in allowing the plaintiff to change the dressing on his wound in his cell.  As such, the Corrections Defendants are entitled to summary judgment with respect to this claim.

The Corrections Defendants are also entitled to summary judgment on

24

the plaintiff's claims that Defendant Morgan supported the abuse of him by affirming all denials of his grievances and that Defendant Gillis supported the abuse of him through his involvement in the grievance process, as prisoners have no constitutional right to a grievance procedure.  See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Jones v. Culinary Manager II, 30 F.Supp.2d 491, 496, 497 (E.D.Pa. 1997), aff'd, 142 F.3d 430 (3d Cir. 1998)(prisoners have no constitutional right to a grievance procedure).

To the extent that the plaintiff claims that Defendants Ersek, Whysong, Wolfgang, and Jordan issued him misconducts, prison officials cannot be held liable for bringing misconduct charges, even if false, when discipline is imposed by a hearing officer after a hearing.  Baker v. Lyles, 904 F.2d 925, 929 (4th Cir. 1990); Hanrahan v. Lane, 747 F.2d 1137, 1140, 1141 (7th Cir. 1984); Williams v. Smith, 781 F.2d 319, 324 (2nd Cir. 1986).

In this case, the plaintiff does not allege that he was denied due process in relation to the misconducts, only that he was issued the misconducts.  Thus, the Corrections Defendants' motion for summary judgment should also be granted with respect to this claim.

Furthermore, with respect to the plaintiff's claim that Defendant Jordan retaliated against him by issuing him a misconduct and having him placed in a "hard cell" for exercising his First Amendment rights, other than the plaintiff's bare assertion, there is no support in the record for this contention.  In fact, the

25

record establishes that the plaintiff was placed in a hard cell due to a misconduct he received on April 18, 2001, for failing to obey an order. The plaintiff received a misconduct hearing in relation to that misconduct, the outcome of which was upheld on appeal. (Doc. No. 136, Ex. A, Attachment 15). Thus, the Corrections Defendants are entitled to summary judgment with respect to the plaintiff's retaliation claim.

To the extent that the plaintiff alleges that defendant Mason denied him access to the courts by not allowing his legal mail to be sent because his account was "in the red," in order to sufficiently allege a claim for denial of access to the courts, the plaintiff must establish that he suffered an actual injury. Lewis v. Casey, 518 U.S. 343, 349-53 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). Inasmuch as the plaintiff has failed to do so, the Corrections Defendants should be granted summary judgment on this claim.

With respect to the plaintiff's claim that defendant Mason failed to have his cable disconnected when he was transferred out of the institution for a period of time, the Prison Litigation Reform Act of 1995, ("PLRA"), requires that all prisoners must exhaust applicable administrative remedies prior to bringing an action in federal court. 42 U.S.C. § 1997(e)(a). Although the plaintiff is seeking both injunctive and monetary relief in this case, he must still exhaust his administrative remedies, as the Act makes no distinction between claims

26

for damages, injunctive relief, or both.  See Booth v. Churner, 531 U.S. 956 (2001)(PLRA requires administrative exhaustion even where the grievance process does not permit an award of money damages and a prisoner seeks only monetary damages, as long as the grievance tribunal has authority to take some responsive action); Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000)(PLRA requires an inmate to exhaust administrative remedies prior to bringing a Bivens action even if the administrative grievance process could not provide the inmate with monetary or injunctive relief, as there exists no futility exception to the PLRA exhaustion requirement).  Here, there is no indication that the plaintiff has exhausted his administrative remedies with respect to this claim. As a result, the Corrections Defendants should be granted summary judgment with respect to this claim.

Finally, to the extent that the plaintiff claims that defendant Jordan had him placed in a "hard cell," that defendant Smith conspired with defendant Jordan to have him placed in the "hard cell," and that defendant Angela Zimmerman had him placed in a control unit for forty-five days and then placed him in administrative custody status pending transfer, it has long been held that an inmate has no right to placement in any particular correctional institution or in any particular section within an institution, See Meachum v. Fano, 427 U.S. 215 (1976); Olim v. Wakinekona, 461 U.S. 238, 245 and n.9 (1983); Garfield v. Davis, 566 F.Supp. 1069 (E.D.Pa. 1983).  Thus, the Corrections Defendants

are also entitled to summary judgment with respect to this claim.

## V.  WEXFORD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Wexford Defendants have submitted a statement of material facts supported by the declarations of Ronald Long, M.D., Steward Craig Hoffman, P.A., and Wendy Wright, as well as relevant portions of the plaintiff's prison medical records.  (Doc. Nos. 119-120).

The above documentation establishes that defendant Long is a medical doctor licensed by the Commonwealth of Pennsylvania since 1986.  He is Board certified in the field of Family Practice with added qualifications in geriatric medicine.  (Doc. No. 120, Ex. A).  Defendant Long has served as the contract Medical Director at SCI-Smithfield since September 1996, and has provided medical services to inmates at SCI-Smithfield, including the examination, diagnosis and treatment of inmates at the facility, as well as referral of inmates for consultation with outside physicians whenever medically necessary.  (Id.).

Since September 1996, Wexford Health Sources, Inc., has been the contracted medical provider at SCI-Smithfield to provide medical services to inmates at the facility, including utilization review and case management.  (Id.).

In the ordinary course of business, SCI-Smithfield maintains prison medical records on each of the inmates incarcerated at the facility, including

28

the plaintiff. (Id.). Defendant Long is familiar with the standard practices and procedures utilized in compiling and maintaining medical records at SCI-Smithfield relating to the medical treatment afforded to the plaintiff while incarcerated at that facility. (Id.). Defendant Long is personally familiar with the plaintiff's medical history, including the treatment provided to him by other treating physicians. The plaintiff was evaluated and treated by the medical department at SCI-Smithfield on nearly a weekly basis for a variety of conditions including diabetes, sleep apnea, Hepatitis C, skin rashes of the arms, legs and torso, mild post-traumatic arthritis of the left knee, chronic shoulder and back pain, boils on the buttocks, and other problems. The plaintiff also received various laboratory tests, diagnostic studies and consultations with specialists outside of SCI-Smithfield. The plaintiff was further supplied with a knee sleeve and a lumbar support. (Id.).

Defendant Long's declaration indicates that the care provided to the plaintiff was at all times in accordance with acceptable medical standards and, based upon the plaintiff's medical records, no Wexford Health Sources, Inc., personnel were deliberately indifferent to any serious medical need of the plaintiff. (Id.). In fact, in defendant Long's professional opinion, the plaintiff was provided with reasonable and appropriate medical attention on every occasion that a request was brought to the attention of medical personnel, on every occasion that medical personnel deemed intervention necessary,

29

whether or not initiated by a request from the plaintiff. (Id.). At no time during the plaintiff's incarceration was defendant Long ever deliberately indifferent to any serious medical need of the plaintiff. (Id.).

As the contract Medical Director at SCI-Smithfield, defendant Long is not responsible for, nor does he have personal involvement with, the preparation and/or drafting of the protocol for Hepatitis C identification and treatment developed by the DOC. (Id.). In the fall of 1998, the DOC established a task force to address the issue of Hepatitis C identification and treatment for the inmate population. The task force was charged with the responsibility of working as a team to identify all the issues involved in the identification, education, treatment and follow-up care of those inmates who tested positive for Hepatitis C. They were also charged with the responsibility to ensure that the care provided in treating Hepatitis C positive inmates was consistent with community standards. (Id.).

In January 2000, the Bureau of Healthcare Services, Pennsylvania Department of Corrections, implemented a protocol for Hepatitis C identification and treatment. The protocol was provided to all medical vendors to be used as an evaluation and treatment guide for Hepatitis C in all DOC institutions. Pursuant to the protocol, for those inmates who met criteria for treatment and were not excluded for medical, psychiatric or other reasons, several medications were available for use and treatment. The medications

were Interferon, either monotherapy or dual therapy. However, the medications had limited effectiveness, had significant side effects and could not be used in the instance of ongoing substance abuse. Accordingly, the protocol required that potential recipients of the medication had to undergo evaluation for treatment candidacy pursuant to the protocol for Hepatitis C identification and treatment. (Id.).

Wexford Health Sources, Inc., implemented the protocol for Hepatitis C identification and treatment at the facilities where it serves as the contracted medical provider, including SCI-Smithfield. (Id.). Prior to this implementation, the plaintiff received appropriate treatment for his condition. He was Hepatitis C positive, but did not have any symptoms from the disease. Moreover, Interferon had significant side effects such as flu-like symptoms, fatigue, irritability, depression and anxiety, loss of appetite, nausea and diarrhea, and mild hair loss. In addition, the drug therapy had a limited long-term success rate. There was, therefore, no compelling or immediate need to initiate Interferon drug therapy for the plaintiff's condition. The plaintiff was examined by medical staff and underwent testing to monitor his liver enzyme levels. (Id.).

In August 2000, testing was performed on the plaintiff which showed that his Hepatitis C viral lode was 288,000 international units, and that his liver enzymes were slightly elevated. (Id.). Subsequently, on August 20, 2000, defendant Long met with the plaintiff to discuss his abnormal lab results and

31

the risks and benefits of drug therapy for his condition.  At that time, the plaintiff indicated that he wanted to receive drug therapy and thereafter was evaluated for treatment candidacy in accordance with the Hepatitis C protocol.  (Id.).  In late September 2000, the plaintiff began receiving the dual drug therapy in accordance with the Hepatitis C protocol.  He continued to receive that treatment until January 10, 2001, when he was transferred to SCI-Coal Township.  (Id.).

While incarcerated at SCI-Smithfield, the plaintiff also received ongoing evaluation and treatment for sleep apnea, including referrals to pulmonary specialists and outside facilities for sleep apnea studies.  (Id.).  Consultation requests were submitted for therapeutic C-PAP study and to put the plaintiff on a C-PAP machine at night.  Those consultation requests were denied by Wexford's Utilization Review Department as not medically warranted at that time.  (Id.).  However, further studies were performed and a consultation request was approved to provide the plaintiff with a C-PAP machine on February 10, 2000.  (Id.).

On June 15, 2000, the plaintiff was transferred to the Restricted Housing Unit, ("RHU"), at which time he was given his C-PAP machine, but refused to use the device unless he was provided with an extension cord.  The plaintiff was counseled about his refusal to use the C-PAP machine as a treatment for his diagnosis of sleep apnea by the nursing staff.  (Id.).

32

On October 24, 2000, defendant Long spoke with defendant Baker who indicated that the plaintiff had not used his C-PAP device since June 2000 without any change in his condition.  In defendant Long's professional opinion, it was no longer medically necessary for the plaintiff to use the C-PAP device. (Id.).

On January 5, 2001, defendant Long discontinued the order for the C-PAP device because the plaintiff had been non-compliant for a number of months; there had been no significant change in his condition; and it was not medically necessary for the plaintiff to use the device at that time.  (Id.).

On or about January 10, 2001, the plaintiff was transferred from SCI-Smithfield to SCI-Coal Township.  Defendant Long had no further involvement with his medical care after that date.  (Id.).  It is defendant Long's professional opinion, within a reasonable degree of medical certainty, that the plaintiff received reasonable and appropriate medical treatment for his medical conditions while incarcerated at SCI-Smithfield.  (Id.).

Wexford Defendant Steward Craig Hoffman is a physician's assistant licensed by the Commonwealth of Pennsylvania for approximately six years. (Doc. No. 120, Ex. B).  He has been employed by Wexford Health Sources, Inc., as a physician's assistant at SCI-Smithfield for approximately four and one-half years.  (Id.).  On numerous occasions defendant Hoffman evaluated and/or treated the plaintiff for a variety of medical conditions while he was

33

incarcerated at SCI-Smithfield.  (Id.).  At no time during the plaintiff's incarceration at SCI-Smithfield was defendant Hoffman deliberately indifferent to any serious medical need of the plaintiff.  (Id.).

On January 24, 2000, defendant Hoffman evaluated the plaintiff at sick call.  At that time, the plaintiff was complaining of right shoulder pain with movement and occasional swelling.  He denied any history of trauma and any loss of function.  The plaintiff was also complaining of left wrist pain and occasional numbness, but again denied any recent trauma.  The plaintiff was status post-surgery, open reduction internal fixation of the left wrist approximately seventeen years ago and indicated that repetitive motions in his kitchen job worsened his symptoms.  The plaintiff also complained of left knee pain for six days, but denied any recent history of injury and indicated that he had a history of degenerative joint disease in his left knee.  (Id.).  Upon evaluation, defendant Hoffman's assessment was right shoulder pain with questionable AC joint degenerative joint disease; left knee instability–degenerative joint disease; and left wrist tendonitis.  Based upon his professional judgment, defendant Hoffman believed it was appropriate to prescribe non-steroidal anti-inflammatories or Tylenol for the plaintiff's complaints.  The plaintiff, however, refused to take the anti-inflammatories or Tylenol.  (Id.).  According to defendant Hoffman's declaration, it is entirely within the bounds of appropriate medical care to treat chronic joint pain and/or

34

inflammation with non-steroidal anti-inflammatories and/or Tylenol. (Id.).

Wexford Defendant Wendy Wright has been employed by Wexford Health Sources, Inc., as the Healthcare Unit Administrator at SCI-Smithfield since June 1999. (Doc. No. 120, Ex. C). Defendant Wright is trained and certified as a paralegal and serves as the liaison between the medical department and the staff at SCI-Smithfield. In addition, she is responsible for the administrative oversight and implementation of Wexford's contractual agreements with the Pennsylvania Department of Corrections to provide healthcare services at SCI-Smithfield. (Id.). Defendant Wright is not a healthcare professional and she is not involved in providing evaluation and/or treatment for inmates at SCI-Smithfield. (Id.).

In an attempt to refute the Wexford Defendants' materials, the plaintiff submitted what the court has construed as a brief in opposition to the Wexford Defendants' motion for summary judgment and supporting materials.[19] In his response, the plaintiff does nothing more than to disagree with the Wexford Defendants' materials and to argue that he should be permitted time to conduct additional discovery[20]. The plaintiff's response is insufficient to refute the

---

[19]The plaintiff's documents are titled "Objection to Defendants Wexford Health Sources Inc., R. Long M.D., S. Craig Hoffman P.A., Wendy Wright and Melinda Baker, P.A. Motion for Summary Judgment", (Doc. No. 130), and "Plaintiff Brief in Support of Objection", (Doc. No. 131).

[20]By order dated July 21, 2003, the court denied the plaintiff's
(continued...)

Wexford Defendants' motion for summary judgment and supporting materials. See Fed.R.Civ.P. 56(e); Celotex Corp. v. Catrett, 477 U.S. at 324 (the non-moving party must go beyond the pleadings and by his own affidavits or the discovery on file designate specific facts showing that there is a genuine issue for trial). Inasmuch as the plaintiff has failed to adequately oppose the Wexford Defendants' motion for summary judgment, the only question which remains is whether the Wexford Defendants are entitled to judgment as a matter of law.

In order to establish an Eighth Amendment claim based upon allegations of denial of proper medical care, an inmate must demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97 (1976). This standard requires both deliberate indifference on the part of the prison officials and a serious medical need on the part of the prisoner. See West v. Keve, 571 F.2d 158 (3d Cir. 1978).

A deliberate action is one which is intentional, requiring the actor to have knowledge of the events attributed to the injury and the ability to control the outcome. "To establish a constitutional violation, the indifference must be intentional and the action related thereto deliberate." Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3d Cir. 1976). A mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis

---

[20](...continued)
previously filed motion to compel discovery.  (Doc. No. 148).

or treatment which the inmate receives, does not support an Eighth Amendment claim.  Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988).  See McCracken v. Jones, 562 F.2d 22, 24 (l0th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (l0th Cir. 1976), cert. denied., 450 U.S. 1041 (1981).

A medical need is "serious" where it has been diagnosed by a physician as mandating treatment, or if it is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  See Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203 (1st Cir. 1990), cert. denied, 500 U.S. 956 (U.S. Mass. June 3, 1991) (No. 90-7632)(citing Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326 (3d Cir. 1987)).

The Supreme Court has held that negligence or inadvertence alone do not rise to the level of a constitutional deprivation.  Whitley v. Albers, 475 U.S. 312 (1986); Davidson v. O'Lone, 474 U.S. 344 (1986).  In Daniels v. Williams, 474 U.S. 327 (1986), the Court noted that "[l]ack of due care suggest no more than a failure to measure up to the conduct of a reasonable person."  Where a state of mind is relevant, the complaint is inadequate if it merely contains conclusory allegations describing the requisite state of mind such as "intentionally" or "recklessly" without supporting factual allegations.  Wilson v. Seiter, 501 U.S. 294 (1991).

Further, where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, the federal courts are generally

37

reluctant to second guess medical judgment and to constitutionalize claims which sound in state tort law. See Ellison v. Scheipe, 570 F.Supp. 1361, 1363 (E.D.Pa. 1983); Inmates of Allegheny Jail v. Pierce, 612 F.2d 754,762 (3d Cir. 1979); See also Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desired. Farmer v. Carlson, supra, 685 F. Supp. at 1339.

Initially, in this case, the plaintiff has failed to present the requisite expert medical opinion testimony required to establish that any or all of his conditions were "serious" medical needs. Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987).

Moreover, with respect to the Eighth Amendment claims against defendants Long, Hoffman, and Baker, the Wexford Defendants' materials establish that the plaintiff's medical conditions were reviewed by physicians and other medical personnel at SCI-Smithfield on virtually a weekly basis. The plaintiff's conditions were also evaluated through the use of laboratory tests, including liver profiles and referrals to outside specialists and facilities. In addition, the plaintiff was evaluated as a candidate and received dual drug therapy in accordance with the Hepatitis C protocol implemented by the DOC.

The Wexford Defendants' materials further provide that at all times during his incarceration at SCI-Smithfield, the medical staff exercised sound,

professional judgment with respect to the evaluation and treatment of the plaintiff's conditions; that the plaintiff received appropriate medical treatment within acceptable medical standards; and that no Wexford personnel exhibited deliberate indifference to the plaintiff's medical needs.

In essence, the plaintiff is merely disagreeing with the medical treatment which was provided to him. As previously discussed, where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, the federal courts are generally reluctant to second guess medical judgment and to constitutionalize claims which sound in state tort law. See Ellison v. Scheipe, supra.; Inmates of Allegheny Jail v. Pierce, supra.; See also Westlake v. Lucas, supra. Here, the Wexford Defendants' materials establish that the plaintiff was provided with some type of treatment for all of conditions, regardless of whether it was the type of treatment which the plaintiff desired. Thus, the plaintiff has failed to establish that the aforementioned Wexford Defendants' were deliberately indifferent to his medical needs, and his Eighth Amendment claims against these defendants fail as a matter of law.

With respect to defendant Wright, the Wexford Defendants' materials establish that, as the Healthcare Unit Administrator, this defendant was a paralegal/administrator, not a physician. As discussed in depth above, as a non-physician defendant, she cannot be considered deliberately indifferent for failing to respond to the plaintiff's medical complaints when he was already

39

receiving treatment by the prison's medical staff.  See also Thomas v. Zinkel, 155 F.Supp.2d 408, 413 (E.D.Pa. 2001)(A prison healthcare administrator "cannot be deliberately indifferent when an inmate is receiving care from a doctor.")  Thus, summary judgment should be granted in favor of defendant Wright as well.

Finally, with respect to defendant Wexford Health Sources, Inc., when a private entity contracts with the state government to provide medical services to inmates, it is performing a function traditionally within the exclusive prerogative of the state.  As such, the entity becomes the functional equivalent to a municipal corporation, and cannot be held liable on a § 1983 claim on a theory of respondeat superior.  See Buckner v. Toro, 116 F.3d 450 (11th Cir.), cert. denied 522 U.S. 1018 (1997).  Where a "plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to assure that the municipality is not held liable solely for the actions of its employees."  Board of County Commissioners of Byron County v. Brown, 117 S.Ct. 1382, 1388-89 (1997).  "A private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights."  Austin v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th cir. 1999).

In this case, the plaintiff has failed to allege that an official policy or

40

custom of Wexford Health Sources, Inc., caused the alleged deprivation of his constitutional rights. Moreover, since the plaintiff has failed to establish that defendants Long, Hoffman, or Baker caused him a constitutional injury, the claims against defendant Wexford Health Sources, Inc., should also be dismissed.  See City of Los Angeles v. Heller, 106 S.Ct. 1571 (1986); See also City of Oklahoma v. Tuttle, 105 S.Ct. 2427, 2436 n.8 (1985); Williams v. Borough of West Chester, 892 F.2d 453 (3d Cir. 1989)(If individual doctor defendants did not violate the plaintiff's constitutional rights, then the fact that a policy or practice might have permitted the unconstitutional action is beside the point).

## VI.  PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

In considering a motion for a temporary restraining order, the court must consider: (1) whether the movant has shown probability of success on the merits; (2) whether the movant will be irreparably harmed by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.  Brian B. v. Commonwealth, 230 F.3d 582 (3d Cir. 2000).

Here, because the court is recommending that the Corrections Defendants' motion for summary judgment, (Doc. No. 99), and the Wexford Defendants' motion for summary judgment, (Doc. No. 100), be granted, the

41

plaintiff has not shown a probability of success on the merits, and his motion for a temporary restraining order, (Doc. No. 93), should be denied.

## VII.  CONCLUSION

On the basis of the foregoing,

**IT IS RECOMMENDED THAT:**

**(1)** the plaintiff's motion for temporary restraining order, **(Doc. No. 93)**, be **DENIED**;

**(2)** the Corrections Defendants' motion for summary judgment, **(Doc. No. 99)**, be **GRANTED**; and

**(3)** the Wexford Defendants' motion for summary judgment, **(Doc. No. 100)**, be **GRANTED**

**(4)** the Clerk of Court be directed to amend the caption of this case to include the following individuals as defendants in this action: Edward Mason, Captain Glenny, Dr. Kort, Unit Manager Smith, and Counselor Dunn;

**(5)** the Clerk of Court be directed to amend the caption of this case to terminate the following individuals as defendants in this action: K. Grove, Morgan, Morder, Bivanio, Henry, Catherine C. McVey, Kerstetter, and Wetz; and

**(6)** the Clerk of Court be directed to serve the plaintiff's amended

complaint, (Doc. No. 20), upon defendant Dr. Kort and the matter

be remanded to the undersigned for further pretrial proceedings

related to plaintiff's claim against Dr. Kort, only.

**s/ Malachy E. Mannion**

**MALACHY E. MANNION**
**United States Magistrate Judge**

**Dated:   August 7, 2003**

O:\shared\REPORTS\01-0817.wpd

43