IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Kim Smith                                         :
        Plaintiff                                 :Civil Action No. 1:cv-01-0817
                                                  :
                                                  :(Judge Cadwell)
        vs.                                       :
                                                  :
James Morgan, et al.,                             :
        Defendants                                :
                                                  :

## OBJECTION TO THE REPORT AND RECOMMENDATION

        AND NOW, comes Kim Smith a lay person not lettered in legal matters and without the aid of counsel, prays this honorable Court applies a less stringent standard to this pro-se Objection to Report and Recommendation, avers the following:

1.      28 U.S.C. § 636 (4)(b)(1)(A) clearly states a judge may designate a magistrate to hear and determine any pre-trial matter pending before the Court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.  A Judge of the Court may reconsider and pretrial matter under this subparagraph (A) where it has been shown that magistrate's order is clearly erroneous or contrary to law.  As it is under 28 U.S.C. § 636 (C)(4)(c)(1) plaintiff never gave his consent for magistrate judge is consent to exercise his jurisdiction over this civil matter, or any other part time magistrate plaintiff never gave his consent to exercise jurisdiction.

2.      It is respectfully objected to under Rule 72 (b) Magistrate Judges Pretrial Orders.  A magistrate judge assigned without consent of the parties to hear pretrial

)

matter dispositive of a claim or defense of a party or a prisoner petition challenging the conditions of confinement shall promptly conduct such proceedings as are required. A record shall be made of all the evidentiary proceedings before the magistrate judge, and a record may be made of such other proceedings as the magistrate judges deems necessary.    As Magistrate judge errored in denying discovery or making a record of medical evidence contained in plaintiff's medical records of orders requesting specialized treatment and the health care provider refused such, and then went on to make his diagnosis and treat substandardly.    For a health care provider to determine that specialized treatment was not a necessity is a showing of deliberate indifference to health care, and to know of a condition and refuse to treat it to a standard that would be provided to a person if he was not incarcerated is also a showing of deliberate indifference to serious health care condition.    By their own admitence the gave plaintiff a form of pain medication for his condition, and have since failed to do anything about them, and the fact that they saw the need for pain medication, is a clear showing of the seriousness of the condition.    If an incarcerated person is suffering pain it has been well determined that pain makes a condition serious.    The Magistrate also errored it its determination that plaintiff was not lettered in the medical profession and therefore can not determine the need for treatment.    And that this was just a defference opinion, in which this act straches far beyond a difference of opinion when other medical professions has reviewed x-rays and determine the need for specialized treatment and the health care provider refuses such stating it was not a necessity, then makes a substandard diagnosis to the condition.    In which it fails to be the level of treatment that a person would get if he was in the community.    As their is no transcripts nor any record of any other doctor except the health care provider, even when a different treatment was order it is always denied and then the inmate is subjected to substandard treatment.    The fact that plaintiff was denied his ability to perfect his claim and to obtain records and reports of the doctor who reviewed blood test, and x-rays and ulter sound test, and well as tele-med for the dermatolgist, the only treatment that was given plaintiff is that of the health care provider who main concern is the cutting the cost of health care.

3.      Federal Rules of Evidence, rule 103(a) Effect of Erroneous Ruling, error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and, plan error affecting substantial rights although they were not brought to the attention of the court.    As plaintiff is bring the issue before the court is the matter of discovery, and violation of the freedom of information act as the

2

Defendants have failed to provide plaintiff with any of the requested information contained in a system of records which is a policy that is in practice. As under rule 72.1 I (c) magistrate judge did not conduct any necessary evidentary hearing or any other appropriate proceeding to make an adequate determination of the facts, but went on to state that plaintiff was not learned in the medical field and what has taken place is a difference of opinion.  This is not the case as their are other medical professions who have reviewed plaintiff's test and x-rays and ordered specialized treatment in which the health care provider refused to do then goes on to make his own diagnosis and treat with the concept to cut cost, side stepping recommended treatment by other doctors. Since this information is contained in the files and plaintiff's medical record their is a disputed issue.  As record will show test and x-rays for right shoulder with bone spurs and arthritis, and cyst behind left knee, foot fungus condition, sores on body, lower back pain. these are presented in record coupled with the denial of hep-c treatment based on a non-existent D.O.C. policy, and recommended treatment was given and the health care provider forclosed on the issue and refused to treat claiming it was not a necessity or that it is his opinion, none the less to see a condition that requires treatment and then being advised by other doctors the need for treatment and refusing to treat is a clear showing of deliberate indifference, and can not be the kind of treatment plaintiff would get if he were in the community.  As any learn medical profession after seeing x-rays would treat the condition, and failure to do so is a showing of deliberate indifference.  These medical staff hide behind the D.O.C. or the Health care provider and state often that certain treatments were not approved, and the delay in the treatment only creates addition problems and more then not the condition will worsen if not treated.  This is more then a difference of opinion between plaintiff and staff doctor, as it is other doctors have stated the condition and additional treatment which plaintiff has been refused and told that their is no treatment forth coming.  Magistrate Judge errored in the granting of summary judgment as the record dose not reflect any of the policy's or any of the other medical professionals diagnosis or recommendation for treatment, only what the institutional medical staff deemed to be adequate treatment and the kind of treatment that a person would get if not incarcerated.  I do not know a doctor on the street who would treat cyst behind the knee with a knee brace, and not see the cause of the damage or reason for the cyst, and it does not take a learned person to see the need for treatment for this condition, and the court errored in not making evidence of record.  More over if the defendants claimed to have several signed refusals as material fact they should produce such.  As this is being the reason for the denial of proscribed health care (namely sleep apena) and the

C-Pap devise.  Since the defendants made such a claim it is the duty of the court to have them produce such evidence, (namely the several signed refusal forms).  In this matter the defendants have not produced any material facts that would support the granting of summary judgment as they have not produced any material facts to dispute plaintiff's claim, but have made false claims and implemented policy in consistent with D.O.C. policy and applied such to plaintiff.  As it is gauze can not be considered a security issue, and their is no D.O.C. policy for the issuing of gauze for medical reasons.  Moreover they have denied plaintiff adequate discovery and violated the freedom of information act, to stop plaintiff from obtaining doctors names and addresses who reviewed x-rays, and blood test and made a diagnosis, and referral for treatment that went unaddressed by institutional doctors, as these doctors orders or referral would support plaintiff's claim and show deliberate indifference to serious painful condition, as the court should have requested a copy of plaintiff's medical records and have reviewed such against the diagnosis by outside doctors to the treatment that has been given to plaintiff for these condition. Before making a determination and supporting the kind of abuse and the concept that this level of treatment is that of such that plaintiff would get if he were in the community, their is no evidence to support this claim and can not be considered a factor in this action.  As this form and level of abuse has been consistent in the state institutions, and correctional system when it comes to health care, as a standard is applied with the concept of cutting cost for health care to the inmates.  As when an outside doctor referrs an inmate for additional treatment or specialized care, institutional doctor in himself will state he can not see the need for treatment, or he will deem this treatment not a necessity, which is often supported by the D.O.C.

Under D.O.C. policy VII. Legal Service section E. Release of Information (DC-Adm.003) 1.  You may seek access to information maintain in your file by sending a DC-135A to the appropriate staff member.  Which I have been denied this by staff and the ability to review the record for reason to obtain names of doctors and request their diagnosis as expert witness, as Ms. Dascani, will advise staff to deny such or tell plaintiff to contact Mr. Talaber in which all request goes unaddressed, or plaintiff is not afforded the right to review records base on this pending action, no matter what at all times upon request for information plaintiff should be afforded the right to review his record under the freedom of information act.  And the above listed parties has repeatedly denied such depriving plaintiff of his due process rights.  Also all request for information to Central Office staff have went unaddressed, as plaintiff has a right to this information. And under the Right - to - Know Act (65 P.S. § 66.1 permits Pennsylvania citizens to

4

inspect and copy certain D.O.C. public records .

Under Article II Judicial Notice Rule 201 as what the defendants have submitted is subjected to reasonable dispute, and Plaintiff is upon a timely request and opportunity to be heard, and to present his body and condition for the court to observe. Article III Presumptions in Civil Action and Proceedings Rule 301 as the burden of proof should not be shifted to plaintiff, and one must consider his ability and the parties who have authority over him, in which he will more then likely be deprive his right to information. Article IV. Relevancy and its Limits, relevant evidence means evidence having any tendency to make existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. As the doctors who reviewed the x-rays and blood test and skin pictures threw the telea med service, all these parties have relevant information of material fact and can state a level of treatment in which the institutional medical staff refused to follow then the treat according to a cost cutting standard. Rule 402 and all information is relevant and admissible such as expert witness information who reviewed x-rays, blood test skin picture and other test done. Rule 404(a)(1)(2)(3)(b). Rule 406 Habit; Routine Practice as what is being claimed here is an on going practice with a cost cutting concept in mind. Also see Article VI Rule 602 as plaintiff does not lack personal knowledge of treatment that he has gotten on the streets for his condition, and the defendants have produced affidavits and information where the person does not have personal knowledge of the matter like the in house running of institutional RHU as the defendants witness has do idea if the power in RHU was or has been cut off and can not testify to such and is not an expert witness, as this party may have never seen the inside of the RHU housing unit and their for can not attest to the concept of policy that is being applied to this unit, or make statement to the fact if they do not know or have live within the concepts of this standard. As Rule 608 Evidence of Character and Conduct of Witness As the witnesses in question are employed by the D.O.C. or its Health care Provider and may make statement of material fact to a concept to protect their employment or to support the standard in which inmates are subjected to and the condition of confinement. If their was power in the RHU cells at S.C.I. Smithfield why would plaintiff claim their was not. If their was power in these cells, why was plaintiff denied his C-Pap devise, then they claim that plaintiff signed several refusal forms and have failed to produce one as material evidence to dispute this claim. A this is a specfic instance on conduct, along with the claim that the D.O.C. has a policy that gauze is a security issue, and have failed to produce any evidence to support the acts of K. Allen, as when a person makes a non-existent policy and

5

make a false claim all the elements are their to support a sexual harassment claim, along with doctor determination that a condition that last over 6 months is not a chronic condition for reason of the co-pay policy. What learned doctor would make a statement to the affect that a condition that has lasted over 6 months is not a chronic condition, also what doctor would make the same statement about arthritis not being a chronic condition. To make such a statement for reason to charge an inmate a fee, is an abuse of this policy and a showing of deliberate indifference for monetary gain at the expense of the inmate. Moreover if an inmate was getting quality care as that would be offered if not incarcerated their would be no problem. But when a inmate must repeatedly return to medical for the same condition and it never heals or goes away this is neglect, and deliberate indifference as a learned doctor would cure the condition when they are first diagnosis, not experiment with treatment under a cost cutting cap. As plaintiff should be afforded the right to cross examine D.O.C. Policy and the defendants witnesses.

Article VII Opinions of Expert Testimony Rules 701 If the witness is not testifying as an expert, the witness' testimony in the form of opinion or inferences is limited to those opinion or references which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of rule 702. Rule 702 Testimony of Experts, If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data. ( as in this matter the court in its recommendation stated plaintiff was not learned in the medical field, and nor is the court lettered to make a determination of fact as to health care, and is the health care plaintiff has been given is the quality of health care if plaintiff was on the streets.) As a witness qualified in the medical field should make a determination as to the health care that has been provided to inmates by the health care provider and if it meets that standard of community treatment. A what appears in record and what has been refered by doctors who reviewed x-rays, blood test, skin pictures and what the claimed medical professionals of the D.O.C. claimed to be treatment for these condition should be reviewed by an expert medical witness, and the court can not make a judgment on a medical issue if it is not lettered in the medical field. Moreover since plaintiff has been deprive his right to discovery he can not contact the doctor who have diagnosed his condition and requested treatment that institutional medical staff refused

6

to treat.   (2) The testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliable to the facts of the case.  And in this case the principle of adequate health care has not been applied, and the defendants deprived me the discovery material so I could not contact other doctors to obtain their expert statement or testimony and diagnosis of the condition.  Leaving the Correction medical staff the only opinion which does not apply a principle or method reliable to this court, even though their has been other doctors who have made diagnosis of the plaintiff condition and recommended treatment in which these parties refuse to follow. See Rule 703.


Rule 706 Court Appointed Expert (a) as it is requested that this court show reason or cause why an expert witness should not be appointed.  If this court deemed plaintiff educated, and not educated enough to determine the need for treatment then an expert witness should be appointed as if plaintiff does not have this knowledge then it would appear that the court does not have this knowledge to make a determination on medical facts if it is not lettered in that specialized field.  And it is also requested to call all the doctors who have either treated, or reviewed x-rays, blood test, skin sore pictures, and doctors that treated plaintiff in the past for some of the condition that he is now suffering from, which can be obtained upon request.  It is also requested that when and if plaintiff gets released he be permitted to submit expert witness and testimony of the fact of his condition and treatment when released and re open this case.  Article VIII Hearsay (a)(b)(c)(d)(1)(A)(B)(C)(2)(A)(B)(C)(D)(E) The contents of a statement shall be considered but are not alone sufficient to establish the declarant's authority under subdivision (C), The agency or employment relationship and scope thereof under subdivision (D) or the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).  Rule 802 Hearsay Rule (4) statement for purpose of medical diagnosis or treatment as the defendants have not made any reasonable pertinent diagnosis or treatment but only that it has been to the level of quality health care, and a determination need to be made regarding plaintiff's condition and the claimed treatment and any testimony of health care should be void as it contains no material fact in which plaintiff was diagnosised and treated. Also subdivision (8) Public Record in which plaintiff has been denied.  As plaintiff under Rule 806 is attacking the credibility of all declarant in this matter an who so ever offered up testimony of statement to the affect of health care, or the issue of power in RHU at S.C.I. Smithfield, and the false claims that plaintiff signed refusal forms for health care and the defendants have failed to produce such as material fact.  If the made claim

7

to such then they should have to produce such evidence, if they are unable to then it is a clear showing that they are willing to make a false claim to the Court to support the abuses they subject inmates to under the D.O.C. non-existent policy. To make a claim of material evidence and fail to show this claimed evidence is making a mockery out of the Court. As the Court should request the defendants to produce these claimed signed refusal forms. And if the can not then they should not be granted summary judgment as this failure goes to the totality of their case and any claimed material fact. Since they have made claim of material evidence to dispute plaintiff's claim, the court should order the defendants to provide it with the signed refusal forms of plaintiff's, and if this claim is proven to be false their whole defense is false and based on lies, and that the parties named in the complaint and who have submitted evidence conspired to enter false evidence in the court, and deprive plaintiff of his ability to bring this action. Rule 807 as the doctors who made referrals and diagnosis and request for treatment should be requested as plaintiff is not without expert witness and other medical professional that saw the need for treatment and ordered such, and institutional site doctor forclosed on these diagnosis and treated plaintiff according to a cost deprivational standard to cut the cost of health care, and then imposed such treatment that would cut cost with very little regard to inmate health care safety, or the potential of pain or suffering as any condition that causes pain is a serious condition. Requested treatment by other doctors to site doctor should be equivalent circumstantial guarantees of trustworthiness and should not be excluded or denied to inmate see (A)(B)(C) of this rule.

Make a false claim all the elements are their to support a sexual harassment claim, along with the doctor determination that a condition that last over 6 months is not a chronic condition for reason of co-pay policy, even though it is left up to the cite doctor he can not step outside of learned medical knowledge to determine a condition is not chronic, for reason of the co-pay policy to charge inmates a fee. Nor should inmate be subjected to treatment that is centered on them repeatedly having to return to medical for the same condition that never goes away, and is inadequately treated and ever time that the inmate returns to medical for the same condition he is charged a copay for medication and the visit, this is abuse of process and is being deliberately done and the mental desire to do so is their. If a learned doctor knows what a chronic condition is and step outside of this knowledge and makes a determination of a condition that has lasted over 6 months to be a non-chronic

8

condition shows deliberate indifference and the state of mind as it takes an active act set to deprive to apply this application for reason of co-pay for health care.

Article IX Rule 901 as these signed refusal forms should be authenticated by plaintiff. Also see Article XI Rule 1101 (c) Rule of Privilege applied to plaintiff should have taken place when dealing with discovery issues and the request for records or the ability to review his record. That the institutional staff and their counsel knowingly and intentionally deprived plaintiff his ability to review his record, and have since denied plaintiff such based on this action, and as a inmate plaintiff should be able to review his records at any time upon request in which these request have repeatedly been denied by the institutional staff depriving plaintiff his constitutional rights and violating the freedom of information act.

## OBJECTION

None of the defendants should be dismissed from this action as they all have presented a state of mine set to deprive and hinder an punish plaintiff and deprive him health care, as Lt. Wetlz, K. Allen for the sexual harassment claim have projected the state of mind required for this claim. K. Allen, in her claim that gauze was a security issue, and the defendants have failed to produce any evidence to support that gauze packing was a security issue or any D.O.C. policy to support K. Allens claim. As this being the reason plaintiff had to pull down his pants several times a day to have his but looked at. The state of mind is shown where she created her own D.O.C. policy, and the fact that plaintiff was permited this gause packing two weeks before K. Allen claimed that this gauze packing was now a security issue. This shows a state of mind, then after two weeks permiting plaintiff to now dress his wound and he was give gauze packing once again. Lt Wetlz when him and C.O. Putzak open his door to his cell and stood their while plaintiff was on the tolet yelling at him about he should learn how to respect an officer. Then when C.O. Putzak states let me get a better look if this is not sexual harassment and a showing of the state of mind is their set to deprive hinder plaintiff in his private moments. The fact that they opened the door and stood their yelling shows a state of mind needed for a sexual harassment claim. The fact that they step outside of the normal process of the day to open the door to cell and yell at plaintiff while he was on the tolet show a state of mind and what their intention was when they were advised that plaintiff was on the tolet and in a private moment, why else open the door other then to herass plaintiff.

Deliberate indifference is shown when the cite doctor orders test and the inmate is sent to outside doctor and they make a diagnosis and treatment plan and then the site doctor and the health care provider forclose on this diagnosis and treatment then apply a standard that is cost cutting and a brand of treatment that is not consistent with the diagnosis and treatment given by the doctor that they requested. And the treatment that the site doctor and the health care provider applies falls short of the kind of treatment a person would get if he was in the community. And it does not matter the seriousness of the condition or the amount of pain a person is in as long as they cut the cost of treatment this is the treatment that they claim to be suited for the condition whether if its good medical treatment or not, and they go along with the concept that it is treatment whether it is adequate or not.

Pat Yarger, as well as Hazel Zimmerman, Warden Morgan, George Weaver, Dr. Long, Pa. Baker, Pa. Hoffman, Wendy Wright, knew or they should have known that a condition that last more then six month is deemed a chronic condition and that no one should have the authority to alter this medical concept for reason of the co-pay policy, and to step outside of learned medical practice for the co-pay concept is a showing of deliberate indifference, for the intent to extort funds from inmate using the D.O.C. co-pay policy. Their is a pattern in which inmates are subjected to substandard treatment in which they must repeatedly return to medical for the same condition and are subjected to the co-pay policy each time that they return for the same condition that has not and is not adequately treated. When is it not deliberate indifference when a inmate must return to medical several times for the same condition before it goes away and in some cases it never goes away so every time that inmate returns to the medical for the same condition he is subjected to the co-pay policy. As a medical professional to return to a doctor for the same condition several times shows a deliberate indifference level and standard that is being applied. As this is a learned practice that has been going on for years and a standard of medical treatment that keeps an inmate repeatedly returning to the medical department for the same condition, or the inmate grows tried of being subjected to substandardized treatment that he no longer wishes to go to medical for treatment, in which is substandard and the condition dose not go away and then to be charged for the treatment and visit. Wexford Health condones this level of practice by it employees, and they often refuse specialized treatment, as threw Doctor Long plaintiff was refused treatment and even an operation by the Health Care provider, as the D.O.C. has also stated that certain treatment were not deemed a neccessity. But in the mean time I must suffer the scaring of my face, legs, elbows from these sore

that are painful that will not go away.  Even though I did see a skin doctor the proscribed treatment was over looked by the site doctor, and the health care provider. As it is for years I have had sores on my body that will not heal and is scaring my skin and they have made no  to attempt to treat.  And these sores are to the point that plaintiff as a lay person can see the need for treatment and a medical degree is not required.

Like the acts of discrimination by Dr. Johns, and George Weaver regarding schooling in the night shift cook school, to deny such base on a medical condition that they refused to treat is discrimination and a showing of deliberate indifference to a serious health condition, these parties also have went on to claim that they were not obligated to treat plaintiff sleep apena, if they were not obligated to treat such then they should not be obligated to deny schooling because of a health condition.  Moreover under the 1941 parole act which is a rehabilitative act plaintiff should have been afforded the right to do so, since plaintiff was incarcerated in 1994, May 5.

C.O. Harry Ersek knowingly and intentionally interfered with proscribed health care, when he was directed to turn the c-pap devise over to plaintiff and return him to medical.  This officer refused to do so, then ordered plaintiff to return to medical and sign a refusal form.  If plaintiff did not he would issue a misconduct.  As long as this officer was with holding plaintiff health care devise he had no standing to order plaintiff to sign a refusal form, or issue a misconduct.  This officer in his act showed deliberate indifference, cruel punishment, abuse of power, interfering with proscribed treatment, and knowingly and intentionally did so with the wanton desire to inflict harm or injury.  The mental state is shown when he was told by medical to turn the devise over to plaintiff and return him to medical, which he refuse and then inflicted his own personal judgment to plaintiff proscribed treatment.  Then this Officer conspired with C.O. Officer Whysong  and claimed that George Weaver put a note on the devise that stated for them not to issue.  But this is not supported by the direct order by a health care provider to turn the devise over to plaintiff and return him to medical.  Then C.O. Officer Whysong call plaintiff a nigger then stated that he felt plaintiff had no right to go to his call out at the law library, after words passed this officer issued a misconduct.  The a Sgt. Henny claimed plaintiff made a threat to this officer which plaintiff did not and for these two misconducts plaintiff was given 90 days in the hole, after serving his 90 days he was sent to the control unit based on Angel Zimmermans concept that she wished to see what plaintiff would do

if released to population. This counselor ask plaintiff what his intention were towards this officer and plaintiff told her he plan to file an action against him. She claimed that plaintiff did not have a right to do so. After 45 days on the control unit without reason or provocation plaintiff was placed back in the whole on A/C status pending an administrative transfer, as a transfer is not supported by the record or any evidence that was submitted. Plaintiff was in the hole for over 6 month base on this concept.

Pa. Baker, Dr. Long, Robert Glenny, Hazel Zimmerman, Pat Yarger, James Morgan, Dr. Johns, Sharon Burks, Angel Zimmerman, knowingly and intentionally with deliberate indifference denied proscribed health care when plaintiff was in the RHU at S.C.I. Smithfeild, and while on Control unit based on a concept that plaintiff refused this treatment and that plaintiff signed several refusal forms in which this is what Ms. Sewell, Kandis Dascani Nancy Ambrose, Mary Bernas, Frank Gillis, Dr. Breen, Dr. Kort,Deputy Morder, Deputy Bivanio, Cahterine C. McVey, based their decision for the continue denial of this health care, as at no time did plaintiff sign a refusal form. Also that it is a practice at S.C.I. Smithfield and in most state institution that the power in the plug sockets in RHU's are turned off, at for the period of time plaintiff was in RHU their was no power in the cell plug sockets to use the power, and these plug sockets were so damaged that they could not have been used. The reason for these plug sockets damage, was inmates in the RHU use to light smokes threw the plug sockets by placing objects in them and touching them together, and because of this act the staff at this institution terminated the power in the cells on the concept to make a smoke free environment. this is why plaintiff could not use his devise, and then for the medical staff to fabricate a concept that plaintiff refused and or was not responsive shows a state of mind set to deprive plaintiff of proscribed health care. Threw no fault of his own plaintiff was denied this health care and has since been denied such based on the concept that he refused such. This is not the kind of treatment plaintiff would get if he was in the community, at least where ever plaintiff would be their would be power in the plug sockets.

Frank Gillis, Tim Jordan, John Lear, Lt. Gooler, Wilma Sewell, Nacy Ambrose, Mary Bernas, Lynn Wolfgang, knowingly and intentionally denied adequate health care namely accu chek base on the concept that the D.O.C. had a policy that denied inmates with my type of diabetes from having such. Then after seeing a doctor on or about April 18, 2001 in which plaintiff was order a increase in his diabetic medication on med-line 3,

and at no time was Mary Bernas directed by the doctor to cut medication on med-line-1. Mary Bernas without doctor authority or orders took it upon herself to cut plaintiff's medication, and when showing her the error she refused to correct it, then left medical and went and conspired with Lt. Tim Jordan to issue a misconduct to justify the abuse that this person was subjecting plaintiff to and putting plaintiff at risk for serious harm, and a diabetic coma. Plaintiff was taken out of medical and placed in a hard cell based on the concept of Lt. Gooler that plaintiff had a bad, attitude, and or that plaintiff had a bad behavior or a behavioral problem to justify the cruel punishment they subjected plaintiff to in support of the abuses of Mary Bernas, and to show plaintiff he had no right to question action of the medical staff even if it shows he may come to harm form this action. Their is no evidence on the tape that was taken of this strip search or to warrant the treatment plaintiff was subjected to based on a non-existent attitude or behavior problem by these parties. To punish plaintiff in the manner that they did shows a state of mind, and the fact that this abuse is not supported by any evidence, shows the willingness of these parties to make false statement to support their brand and form of abuse. And in this case all the element are their to support plaintiff's claim.

Plaintiff was given proscribed medication by a doctor and an untrained medical personel determined to cut this medication putting plaintiff at risk for serious diabetic condition, or related injury. The reason for the increase in medication was that plaintiff's blood sugar was unstable and was running very high, to cut plaintiff's would have put plaintiff at risk for serious injury, and any learned medical perosnel should have known not to cut such medication without doctor orders to do so. And to take it upon themselves show a mental state that was set to deprive, hinder, and place a person at risk for serious injury, and knowingly and intentionally doing so. The state of mind is apparent here and it is shown threw the acts of the above listed parties to justify the abuse and action of Mary Bernas who acted without authority and cut medication, and then to take on the presence of a doctor is reflected from her action as she is not lettered as a doctor and should not be afforded the ability to cut medication, and then to enlist the help of institutional staff to support her abuse. And this is not the kind of treatment that plaintiff would get if he was in the community, that a nurse without doctors orders would cut medication on their own and then punish plaintiff when he calls to their attention their error. Nor would plaintiff be subjected to this level of abuse when seeking medical attention. The nurse staff at this institution has caused a number of deaths, by the cutting of proscribed medication and treatment without doctor orders, and stepping outside any and all normal medical practice to cut cost of treatment, with the cost cutting concept in mind.

I as much the same comes into affect when considering plaintiff's Hep-C treatment. Doctor Long advised plaintiff in Sept. 2000, that the treatment would last 6 months, and at that time if their was not a 50 % drop in plaintiff viral load other treatment would be considered. At no time was plaintiff instructed that this treatment would make the condition worsen, or that a 30 % drop in viral load was not a positive response to treatment, or that plaintiff would be terminated in 90 to 120 days from this treatment. As it is Ms. Sewell, Doctor Kort, Nurses Wolfgang, Ambrose, Bernas saw it fit to practice a non-existent D.O.C. protocol claiming policy stated that a person did not have a positive response in 90 to 120 days. As it is plaintiff was terminated in about 100 days after his treatment started, based on a false claim by these parties that plaintiff was not responsive, and that he was to have a 50 viral load drop in 90 days, as this is not the D.O.C. protocol, nor was plaintiff instructed by Dr Long to this affect. That these parties created their own policy and put it into practice to deny health care. A 30 % drop in viral load in a 100 day period is a positive response, and can not be considered non responsive. Protocol call for a 6 month period of treatment not a 100 day period. Their is a showing of the state of mind of these parties and to what extent they would go to deny health care to create a non-existent policy or protocol to deny health care is a clear showing of the state of mind needed for the claim. As it took an active and affirmative act of these parties to make a non-existent policy to cut and or terminate proscribed treatment. A the D.O.C. Protocol states treatment for 6 month for this illness not 100 days, even if it would be considered, a 30 % drop in viral load in 100 days is a clear showing that plaintiff would have made the 50 % drop in a 6 month period. Plaintiff filed a grievance Warden Gillis supported this abuse and non-existent protocol, and appeal was taken to Camp Hill, at which time treatment was reinstated. Because of the premature termination, and the reinstatement of treatment plaintiff sustain an injury to his liver. When treatment was reinstated plaintiff's viral load was 202,000, and in less then a 60 day period his viral load went from this number to over 1,000,000 making a clear showing of injury sustain from the action and premature termination of this treatment. As the termination of this treatment was not supported by D.O.C. Protocol, if it was why would they reinstate treatment. Plaintiff is not sure what they medical staff at S.C.I. Coal was injecting him with but plaintiff's Hep-C got progressively worse ever time he was injected. A premature termination of this treatment is the reason for injury sustained, and the manner in which treatment was terminated shows a state of mind by the health care providers. Any person who would create a non-existent policy for reason to deny and deprive health care projects a state of mind need for the claim in this action.

At present plaintiff is still enduring pain and suffering and still being denied health care for his foot condition, sore on body, and his lower back, left and right shoulder, his orbital blow out and never damage, his left knee, and the two cyst behind this knee, his sleep apena. Even though these condition are recorded, and plaintiff has been to medical a number of time for these condition, ever time he returns to medical he is repeatedly being chargeda co-pay for the same conditions that has not went away over the years. Moreover when he goes to medical he is subjected to substandard treatment and the Pa. makes diagnosis of a condition without running any test. And if test are ordered, when the referral comes Dr. Breen denies the referral, and assumes his form and brand of treatment or in fact states their is no treatment forth coming, and the inmate has to deal with the pain and suffering, like plaintiff's left knee, lower back, orbital blow out, sores on body that wont go away or heal that has become very painful, and his shoulders in one a A/C joint removal, and bone spurs and arthritist that he has been refused treatment, and the health care provider Wexford Health will always refuse any an all referrals for treatment. And plaintiff has not been adequately treated for any of these condition, and what health care he was getting has since drop to none since the filing of this action, and he is still being denied adequate health care, and what is being projected can not be considered the kind of treatment he would get if he was in the Community. Since plaintiff had an operation on his left shoulder he know what to expect when being adequately treated, and this is the same for his orbital blow out, his back problem, left knee, and even the sores on his body he was treated for on the street and knows what to expect when being adequately treated, and record can be obtained upon request, to show the standard of treatment that is being projected by institutional medical staff, and Wexford Health falls short of any expected treatment a person would get if he was in the community. Since plaintiff was treated for these condition in the past, it can be said that he is a little more then a lay person and experience makes me a learned person in the medical profession. As it is plaintiff has been treated on the street for all these condition over a 20 year period, and plaintiff's personal knowledge can be stated as an expert. Example a person with cancer who has taken treatment and lived can be said to be an expertly knowledgedable in cancer treatment.

Wherefore the treatment has fallen short to the level of treatment that plaintiff has experienced in the past for these condition and can not be said to be to the level of treatment plaintiff would have gotten if in the community. A state of mind is shown when a medical professional see a condition and knows how to treat it or is given a referral to treat and refuses to treat the condition to the letter of law or as the

15

medical profession requires, shows a state of mind, it is also shown by the Health Care providers putting a cost cutting policy of site doctors in the treatment of inmates, or refusing specialized treatment, as this is a policy Wexford Health often practice, as plaintiff has been turned down a number of time for specialized treatment by the Health Care provider, in this case Wexford even though the need for this treatment is apparent and still refused, as not being a necessity as this is what both the D.O.C. has stated in grivances Wexford abuse is supported as if an inmate does not know the difference between sound medical treatment. Therefore the defendants should not be granted summary judgment, nor should any of the defendants be dismissed from this action as all parties have projected a sound mental knowledge in the deprivation of health care to inmate. And any time a person create his or her own policy for reason to inflect harm or punish a person is of sound mind as it takes an affrimative act set to deprive a person to step outside of known policy and practices to deprive or deny a person a right.

Respectfully Submitted

Date: 10-13-03

16

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

Kim Smith                                    :
      Plaintiff                              :Civil Action No. 1:01-0817
                                             :
                                             :(Caldwell, D.J.)
      vs.                                    :
                                             :(Mannion, M.J.)
                                             :
James Morgan, et al.,                        :
      Defendants                             :
                                             :
                                             :
                                             :

## CERTIFICATE OF SERVICE

      I Kim Smith plaintiff hereby swear and affirm that on or about October 16, 2003 I turned over to D Block Officers on the 2 to 10 shift envelopes containing plaintiff's objection to Magistrate Judges Report and Recommendation and Supportive Brief, to be forwarded to the below listed parties by way of first class mail threw the United States Postal Service.   I certify the forgoing is true and correct to the best of my knowledge and understand, and the penalties provided for under 28 U.S.C. § 1746 relating to unsworn statements.

Office of the Clerk United States District Court, Middle District of Pennsylvania,

John J. Talaber, Esq. Pennsylvania Department of Correction, 55 Utley Dr., Camp Hill Pa.  17011

James D. Young, Esq. 225 Market St. Suite 304, P. O. Box 1245, Harrisburg, Pa. 17108-1245

Kim Smith, CT-2162, 1 Kelley Dr. Coal Township Pa. 17866-1021

Date: 10-13-23

                                    Plaintiff/Petitioner