IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| Kim Smith | : |
|     Plaintiff | :Civil Action No. 1:01-0817 |
|  | : |
|  | :(Caldwell, D.J.) |
| vs. | : |
|  | :(Mannion, M.J.) |
| James Morgan, et al., | : |
|     Defendants | : |



### BRIEF IN SUPPORT OF PLAINTIFF'S OBJECTION
### TO MAGISTRATE JUDGES REPORT AND RECOMMENDATION

I.   **Co-Pay Policy,** State Correctional Institution and Fac. Chapter 93, 37 § 93.12 Prison Medical Service Program, as it is no where in this statue does it state that it is left to site doctor to determine a chronic condition. Since this does not appear in statue the Department of Correction and or institutional medical personel can not now come and act as policy makers for this law and state a determination that is not consistent with this law. As no where in this statue is it stated that institutional staff or site doctor has the authority to determine what condition is chronic and what condition is to be charged.

A.   Plaintiff has repeatedly returned to medical either for the same condition, and or to renew his chronic medication and was charge a co-pay for the visit and each medication.

B.   If plaintiff has to repeatedly return to medical for the same condition that either never healed or went away, why must he repeatedly be charged, or subjected to the determination of the Pa. in his writing and making statement that is not the reason why inmate went to medical in the first place. (Example) In August 2003 Plaintiff went to medical for the sores on his body that has never went away, and went because they became painful. As it is plaintiff has these sore on his face, both thigh, and both elbows, and these sore are not a rash, and can not be determined as such by any learned medical professional. According to Ms. Sewell who claims to have talked to the Pa.

1

claimed that I went to medical for a rash not the sores and that the $ 6.00 charge was correct. This take place everytime inmate request to go to medical for the same condition that is never adequately treated. Plaintiff has had these sores on his body for over 7 years, and they have scared his skin. This is not adequate health care nor is it the kind of treatment plaintiff would get if he was in the community. As this statue clearly states: Under 93.12 Prison Medical Service Program (b) Medical Service- The diagnosis, evaluation, treatment or preservation of the health of the human body, including its organ, structures and systems. The term includes diagnostic testing, prescribing and administering medication, surgical procedure, dental care, eye care, the furnishing of prosthetics and any other type of treatment or preventative care, whether performed on an inpatient or outpatient basis. And surely the care that has been provided plaintiff over the last 9 1/2 years can not be considered to meet this standard of health care. In as much if plaintiff is denied discovery and the Court has not produced a record, then it is clear that this level of abuse will continue to go unaddressed. Plaintiff is incarcerated for his crime, and the time he must serve is the punishment, but when the administration, the health care provider, and the D.O.C. couple their efforts to punish an incarcerated person as if he has no right to adequate health care, is a 8 th amendment violation and cruel punishment when a person must go several years or wait until he is released to get adequate health care. The Co-pay policy clearly states the standard that is to be applied, and to step outside of this law shows a mental intent set to deprive and punish an inmate for seeking health care. Since a inmate is only afforded the level of health care and only one health care provider, he can not get a second opinion on his condition or question the health care provider when he has to repeatedly return to medical for the same condition, that never heals or goes away. Then knowing this the inmate is subjected to repeated charges for the same condition, even when these condition last longer then 6 month. The mental state is clear and shown when the inmate has to return to institutional sick call for the same condition and be charged because the condition never went away. The medical staff knows this and half heartedly treat the inmate, and this level of treatment is not what one would get if he was in the community.

c.      In August when at sick call the Pa. made reference to this claim, and stated that plaintiff should not have filed this action. If plaintiff was getting adequate health care then he would have had no need to file this action. Because of this statement plaintiff fears for his safety when seeking health care for any of his condition. As this Pa. indirectly stated that they will not address any of plaintiff

2

complaints adequately, and plaintiff has since had any of his complaints to medical adequately treated, and is in consistent pain in his lower back and left knee and right shoulder. As it is he is often told that their is no treatment forth coming. If plaintiff was being adequately treated for his condition then their would be record of proscribed treatment, and said treatment would be deemed adequate for the condition and the records will reflect that no treatment was given for any of his condition that would be deemed adequate health care.

### OBJECTION TO THE GRANTING OF SUMMARY JUDGMENT

It is respectfully objected to Fed. R. Civ. P. 56 (c) as long as plaintiff is being denied adequate discovery, and the fact that the defendants have not submitted evidence of material fact to dispute plaintiff's claims, and have made false claims to genuine material fact, and have failed to produce this evidence or material fact leaves the question of dispute. Did plaintiff refuse the health care namely the C-PaP devise ? If he did the produce this claimed material fact and the claimed signed several refusal forms. Or was plaintiff denied this health care because their was no power in the cells plug socket in the RHU at S.C.I. Smithfeild that prevented plaintiff from using the devise. This fact has not been determined the nature and reason for the denial of this health care. Even to this date it is a practice in state institution that the RHU do not have power in the cells which goes to condition of confinement, and a 8 th. amendment violation is shown when a person is in the need of the power for health care reason and their is none. The acting parties knew of this act and failed to correct it, and the affirmative decision to terminate the power without health safety care for the person housed in this unit show a state of mind required for this claim. As the affirmative act that took place by the D.OC. Warden Morgan, Capt. Glenny, M. Baker, Dr. Long, G. Weaver, Dputies Bivanio, Morder, shows a state of mind set to deprive, with little regard to the health safety. As no cell in any state institution should be without power in the plug sockets, and to make these cell in RHU not to have power in the plug sockets took and affirmative act and the state of mind that is required to show liability is shown and summary judgment should not be granted. Moreover Fed. R. Civ. P. 56 (d) should have been applied as the discovery has not been completed and plaintiff has been deny the right to call and request affidavits from doctors who reviewed x-rays and other test and made referral for treatment that was denied either by Wexford Health or the Institutional Doctor. And the D.O.C. Protocol for Hep-C treatment, and any other policy that was requested, to deny plaintiff such information is a violation of the freedom of

information act. Also Fed. R. Civ. P. 56 (g) Affidavits made in bad faith, as the affidavits made regarding the power at S.C.I. Smithfeild did not address the reason why their was no power in the RHU cells for a 7 month period, and reports of the power plant was not requested so the person giving the affidavits did so in bad faith as they had no knowledge about the fact that Security Capt. Glenny and other parties knowingly and intentionally terminated the power in RHU cell as the power plant would not know as such termination can be done by main control. It is also Bad faith by D. Long, M. Baker, G. Weaver, and supporting parties to claim plaintiff signed refusal forms and then not to produce such forms in their defense leaves this claim undisputed and any statement is given in bad faith. See the 1946 amendment to Fed. R. Civ. P. 56 Subdivision (c); The amendment of Rule 56 (c), by the addition of the final sentence, resolves a doubt expressed in Sartor v. Arkansas Natural Gas Corp. 1944, 64 Sct. 724, 321 U.S. 620, 88 Led 967. See also Commentary, Summary Judgment as to damages 1944, 7 Fed Rules Serv. 974; Madeirense Do Brasil S/A v. Stulman-Emrick Lumber Co. C.C.A. 2d. 1945, 65 Sct. 1201, 325 U.S. 861 89 Led. 1982. It makes clear that although the question of recovery depends on the amount of damages, the summary judgment rule is applicable and summary judgment maybe granted in proper case. If case is not fully adjudicated it may be dealt with as provided in subdivision (d) of rule 56 and the right to summary recovery determined by a preliminary order, interlocutory in character, and the precise amount of recovery left for trial. As the defendants have failed to show evidentiary matter sufficient to show that there is no genuine issue of material fact, what they did was denied discovery, to prevent plaintiff from proving his claim, and made false claims of material fact and have failed to produce such. If they went to such a standard as to claim evidence, and not submit this evidence, they not only made a false claim, but violated statue, and made a false swearing. In the defendants objection they claimed plaintiff signed several refusal forms, this is material fact and should be submitted when considering this is what the defendants claimed to be the reason for the denial of this health care. This is material fact and should be a part of record. Since they have failed to produce this evidence, it appears that they made a false claim and may have made false claims to the other evidence and brings root to the bad faith clause of rule 56. Since this is the reason they state for denying plaintiff his C-Pap devise then this evidence should be submitted, as this is the reason plaintiff is still being denied this health care based on a false claim. If the are claiming such then they should be required to produce the evidence to support their claim. The Third Circuit case have taken the view that summary judgment must be denied at least if the averments are well pleaded, and not suppositious conclusory , or ultimate See Frederick Hart & Co. Inc. v.

Recordgraph Corp. 163 F2d. 580 (3rd. Cir. 1950); United States ex rel. Koltor v. Halpern 260 F2d. 590 (3rd. Cir. 1958); United States ex rel. Nobles v. Ivey Bros. Constr. Co. Inc. 191 F. Supp. 383 (D.Del. 1961).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrates the absence of a genuine issue of material fact. In this case the respondents have fallen short of this burden. (1) Plaintiff did not ask for power house record, what plaintiff asked for was the policy that was in practice in June 2000 threw Jan. 2001 in which permited institutional staff to terminate power in the RHU cells at S.C.I. Smithfield.
The respondents have failed to address this issue. (2) Medical care C-Pap devise the respondents have failed to provided the several signed refusal forms for this health care, this is material fact of a genuine issue and they have failed. The D.O.C. policy that gives correction officers such as C.O. Ersek the authority to deny health care, even after instructed by medical staff to turn plaintiff's devise over to him. Or the authority to interfere with health care and the threat to punish if plaintiff did not obey his order. What authority or practicing policy permits this level and form of abuse where an officer can knowingly and intentionally interfere with health care and deprive an inmate this right and then punish the inmate because he would not comply with his order and sign a refusal form when in fact the inmate was not refusing treatment. Rule 56 (e) as the respondents have presented as evidence was information not pertaining to the question why was the power in the RHU cell cut off from June 2000 to Jan. 2001, and this is still as practice in the D.O.C.

If the moving party has not fully discharged the initial burden of production. Its motion for summary judgment must be denied, and the Court need not consider whether the moving party has met its ultimate burden of persuasion. Rule 56(e) plaintiff repeatedly requested discovery, and that such was necessary as provided in Rule 56(f) as all of plaintiff request for discovery was denied by the court as if plaintiff had no right to the record. One must ask why has the respondents fought so hard to deny discovery is their material fact in the record to dispute their claimed defense.
First National Bank of Arizona v. Cities Service Co. 391 U.S. 253, 289, 88 Sct. 1575, 1592, 20 Led. 2d. 569 (1968). And plaintiff called to the Courts attention claimed evidence that was not in record, namely the seven signed refusal forms in which the defendants state their case for denying health care while in RHU at S.C.I. Smithfeild.
And all of the record submitted by the moving party is under attack by plaintiff, as to

the inadequacy of the evidence in which they claim material fact and the moving party has not satisfied Rule 56 burden of production. As they have submitted not evidence to support the granting of summary judgment. And plaintiff sought the inadequacy of the witnesses who stated the information of the power hose as they had no knowledge of how the institution was run from main control of the control booth in RHU. As in Adickes v. S.H. Kress & Co. supra is fully consistent with these principles. To deny discovery in a 1983 that the denial of discovery material comes from the institutional staff and an act of conspiracy to deprive inmate/plaintiff of his litigational efforts and to submit his claim. As the record contains outside doctor diagnosis to plaintiff illness, and also referrals for treatment in which the medical staff at these institution side step and imposed their opinion in afield that they are not trained in. 393 U.S. at 158, 90 Sct. 1609. Consequently, we held that it was error to grant summary judgment on the basis of this record because respondents had failed to fulfill its initial burdens of demonstrating that there was no evidence in the record, or producing those claimed signed refusal forms in which they base their decision for the denial of health care. And their are elements of a tort claim by way of the D.O.C. and the health care provider Wexford Health. Upon plaintiff being granted discovery he intends to call all the doctors who made referrals and diagnosis of his x-rays and blood test and skin picture to testify, as this is not a difference of opinion between plaintiff and institutional doctor, their are other trained professional who have made diagnosis and institutional doctors and the D.O.C. refused to follow, this information is in the record which plaintiff has been denied, as this evidence would dispute the claim of the D.O.C. and this court. Failure to discharge its initial burden of production under rule 56, and thereby rendered summary judgment improper. The defendants case was based on the proposition that plaintiff could not prevail as long as he was denied discovery, and can not on his own provide or prove his claim. Respondents made an attempt to albeit possibly not an admissible form, But cf. ante, at 2553 ( we do not mean that the nonmoving party must produce
evidence in a form that would be admissible at trial in order to avoid summary judgment. In all of the defendants pleadings they fall short of material evidence to dispute plaintiff's claim or the granting or summary judgment. As they based their defense on the inability of plaintiff to obtain records, as no learned person can review over 3500 pages in a four hour period and how could this be a good faith effort on the part of the defendants to expect plaintiff to do something them their selves are unable to do. And because of the manner in which plaintiff was denied discovery summary judgment should be denied, as the respondents failed in their burden of production of the record and the denial of all plaintiff's discovery motion.

Plaintiff at all time alleges that Pat Yarger, who was employed at S.C.I. Smithfield during the relevant time improperly followed the DOC policy for medical co-pay and supported the determination that site doctor had the authority to determine what condition is to be listed as a chronic condition. As any condition that last more then 6 months is a chronic condition, and to support the claim that site doctor had this authority to alter learned medical jounerals to fit policy to keep inmates paying for the same condition no matter how many times they had to return to medical. Or that the chronic medication for diabetes is to be charged to inmate every time he renews this medication. And to support such a policy goes against legislative intent for the co-pay policy for inmates.

Morgan, The Superintendent of SCI-Smithfield knew or he should have known and failed to correct or intervene in the application of institutional policy which permitted RHU staff the authority to terminate power in the cells, plug sockets, or he knowingly and intentionally approved this deprivation of inmates rights and condition of confinement for those inmate who had the need for power in the plug sockets to use a health care devise. This Warden is liable for acts of his subordinates in the administration of their duties and for official oppression. The co-pay policy is very clear in its statements for co-pay and for what is to be charghed, since the defendents have failed to produce a copy of the policy in which they state it is up to the site doctor to determine what condition are chronic, and what condition are to be payed for by the inmate have fallen short of their burden of proof of violation of the co-pay policy. If it was up to site doctor then this should be stated in statue and policy and I have been unable to find such a claim or statue to determine the site doctor has the authority to determine what is deemed to be a chronic condition.

What inmate would obey an order of a Correction Officer to sign a refusal form when he in fact was not refusing health care, but being deprive his health care, and C.O. Ersek knowingly and intentionally after being directed by medical to turn the devise over to plaintiff refused to do so, and in this act plaintiff had a right to refuse his order to sign a refusal form, as stated in the misconduct issued. Under threat plaintiff refused to sign a refusal form, because this officer was knowingly and intentionally and with deliberate indifference, interfering with plaintiff proscribed health care. As this was in plaintiff exhibits submitted at Doc. No. 146 and 147, what was submitted directly disputes the cruel and unusual punishment plaintiff was subjected to at the hands of DOC employees, and Wexford Health employees.

For the screening of Hepatitis C virus is not the question it is the manner in which plaintiff was treated and the standard that was applied for this treatment termination, and the policy that was being practiced. At no time does the DOC protocol state that an inmate would be terminated in 90 days if their was not a 50 % drop in the viral load, nor does this policy give Correction Health Care Administrator Ms. Sewell the authority to determine a 30 % drop in viral load in a 90 day period was not responsive. If policy was followed why did the DOC direct institutional staff at SCI-Coal Township to reenstate treatment, and from this treatment plaintiff condition worsen his viral load went from 202,000 to over 1,000,000 in less then a 90 day period. That this premature termination of treatment was the cause and reason for injury sustained to plaintiff's liver. That these parties knowingly and intentionally projected a state of mind need to deprive plaintiff of this health care, as what was stated is not policy and they took an affirmative act to step outside of policy to inflict pain and injury.

Fed. R. Civ. P. 56(f) permits a nonmoving party to show that it cannot for reason setfoth and stated present by affidavit facts essential to justify the parties opposition..... In the face of such ( which plaintiff showed in his objection at Doc. 146 and 147 that because of the denial of discovery he is unable to perfect his claim.) In such a showing the district court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had, as the summary judgment motion was not ripe as long as plaintiff was and is being denied adequate discovery See Sames v. Gable 732 F2d. 49, 51 (3rd. Cir. 1984). In this case the defendants have not answered the request for discovery and other documents such as DOC policy and protocol for treatment. This is public policy and plaintiff should not be charged or denied these records requested, as the defendants and the court has done on plaintiff request for discovery. Which denied plaintiff his ability to perfect his claims and submit evidence contained in the record. Magistrate judge improperly found there to be no genuine issue of material fact, and in the same act deprived plaintiff his discovery to perfect his claim. In this act the Magistrate Judge abused his discretion in hearing the defendants motion for summary judgment when denying plaintiff discovery. As a reasonable jury could find for plaintiff on his claim if granted his discovery of the records and protocol, and policy of the DOC, and Wexford Health. Being denied discovery prohibited plaintiff in his burden of proof to make a showing sufficient to establish the existence of every element essential to that parties case. See Equimark 812 F2d. at 144 (quoting Celotex 477 U.S. at 322, 106 Sct. at 2552-53. And the defendants have failed to identify evidence which it believes

demonstrate the absence of a genuine issue of material fact, as they have failed to present evidence consistent with plaintiff deposition to support their claim of material fact. In as much plaintiff sought institutional policy and the reason power was cut off in RHU at SCI-Smithfield for the 7 months he was in the RHU, did not request power house records, which covers the violation of plaintiff's rights and the condition of confinement as they claimed that power house records only showed certain days in which the power was cut off. And this evidence submitted does not show if the power in the RHU cell was cut off, or that main control could cut the power off, or the block officers. As the person giving this affidavit had no knowledge of the working process within the institution or who has control to cut power their for they can not speak on a issue in which they have not knowledge. Moreover any inmate who was housed in the RHU from June 2000, to January 2001 could testify that in those cells their was no power in the plug sockets, and that this lasted for over a 7 month period. The defendants refused to provide plaintiff with a list of inmate who were housed in the RHU for the requested period so he could obtain affidavits. What the defendants did was deny plaintiff ever right and his ability to present evidence to support his claim, by the repeated denial of discovery and the denial by institutional staff to let him review any of his records. The defendants whats this court to believe and justify the condition of confinement and the denial of health care by the repeated violation of the freedom of information act, and plaintiff's right to adequate discovery, and these deprivation can not be justified under the United States Constitution. As the defendants have made false claims of plaintiff signed several refusal forms for health care and they have failed to identify sufficient facts or record to demonstrate that no genuine issue of material fact remains. The defendants have made claims and have failed to produce evidence to support their claim which should be directed to their presenting of their defense, if they made a false claim once then they would do such again and it brings question to the genuine issue and what could be proven in the record. As a nonmoving party can not identify these facts of record as he has been repeatedly denied discovery, in which the court has repeatedly supported this denial of discovery, in which the defendants never complied with the court order to produce record, which would more then likely contradict the facts identified by the movant. See First Nat'l Bank of Pa. v. Lincoln Nat'l Life Ins. Co. 824 F2d. 277, 282 (3rd. Cir. 1987). Plaintiff attempted to conduct additional discovery against the defendants in which he was denied. An issue is genuine only if a reasonable jury, considering the evidence presented could find for the non-moving party. Anderson v. Liberty Lobby Inc. 477 U.S. 242, 249, 106 Sct. 2505, 2510, 91 Led 2d. 202 (1986), what have the defendants

9

presented was a clear denial of discovery and no sound evidence of material fact demonstrating the absence of a genuine issue of material fact. They make claims that at all time plaintiff has gotten adequate health care but by homes measure was this health care adequate. And what record has been presented to show the adequacy of health care to support the granting of summary judgment and the absence of a genuine issue.Id at 324, 106, Sct. 2553. As plaintiff deposition and admission on file makes a showing sufficient to establish the existence of every element essential to the party's case. Equimark 812 F2d. at 144; Celotex 477 U.S. 322, 106 Sct. at 2552-53. As to deny discovery is to deny plaintiff his right to bring action and be heard, also it appears to be an abuse of discretion See Kane v. Ford Motor Co. 450 F2d. 315, 316 ( 3rd. Cir. 1971) The denial of discovery was the tool in which plaintiff could not identify from record arguable disputed issues of genuine material fact as he was not permitted to obtain such. But their is sufficient factual dispute shown to require a jury or judge to resolve the parties differing verision of the truth at trial 391 U.S. at 288-289, 88 Sct. at 1592, as plaintiff was denied significant probative evidence tending to support the complaint Id. at 290, 88 Sct. at 1593. As the magistrate judged weighed the evidence and considered plaintiff's ability to present the requested evidence to support his claim in his repeatedly denials of discovery knowing that plaintiff could not present his case without a copy of the record, and to continue to violate the freedom of information act and deprive plaintiff his ability to show evidence in this case deprived plaintiff his due process rights to be heard. As long as plaintiff has been denied adequate discovery summary judgment should not lie. This requirement in turn is qualified by rule 56(f) provision that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition. As this granting of summary judgment would require a direct verdict for the moving party Sartor v. Arkanasas Gas Corp. 321 U.S. 620, 624, 64 Sct. 724, 727, 88 Led 967 (1944), as a summary judgment ruling would implicate the substantive evidentiary standard of proof that would apply at the trial on the merits, and in this case plaintiff was denied this standard. Motion for summary judgment the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Adicks, 389 U.S. at 158-159, 90 Sct. at 1608-1609, as their is reason to believe the better course would be to proceed to a full trial in which plaintiff would not be denied discovery. Kennedy v. Silas Mason Co. 334 U.S. 249, 68, Sct. 1031, 92 Led. 1347 (1948), as plaintiff can not present affirmative evidence as long as he has been denied discovery of any record to present his case to the court as he has been repeatedly subjected to the denial to review record./

As plaintiff can not do more then what he has since he has been denied discovery and requested materials, and because of such he can not show sufficient evidence to support a jury verdict in its favor, because he has not been provieded with a copy of the Correction Defendants policys, and procedures regarding this claim, not medical records or copies of testing and diagnosis made by outside doctors who reviewed x-rays and blood test and made a diagnosis for treatment or a referral for specialized treatment in which the site Medical Director of Wexford Health and the DOC deemed not a necessity, and then profrom their own brand of treatment which falls short of the kind of treatment plaintiff has received and could expect if he were in the Community.

Moreover if the magistrate judge on motion for summary judgment really is to weigh the evidence, then in my view grave concerns are raised concerning the constitutional right of civil litigants to a jury trial when the plaintiff is denied discovery, or affidavits are submitted by parties who have no knowledge of the working of the inter structure of a institutional RHU and who has the power and control over those housed in that area, but as long as plaintiff was denied adequate discovery, and his request for protocols, and policy in which his treatment was subjected to that are public record, and be denied the freedom of information under this act, a summary judgment can not be granted. Discovery is a constitutional protection embodied in the Federal Rules of Civil Procedure, and no litigant should be denied discovery. As the defendants hide the discovery behind a policy that is set to deprive or deny an inmate his litigational efforts if he can not afford to pay the defendants fee for records, and under the freedom of information act plaintiff should be provided with a copy of his record, and at any time should be permited review such. Magistrate judge denied discovery and now comes and makes statement that plaintiff has not presented any evidence to dispute his the motion for summary judgment how could he if he was never given the records.

Therefore only dispute over facts that might affect the out come of the suit under the governing law will properly preclude the entry of summary judgment. As contained in the record is evidence of abuse denial of adequate health care, abuse of power, policy and practice, and protocol violation, as record will show that treatment was ordered and referral requested and institutional doctors refused to address or refer to specialized treatment. And also other doctors diagnosis and request for treatment in which the institutions doctors refused to do, or issued no treatment at all. In as much the record may show injury or condition but what is listed in the record as treatment can not be considered treatment, and it is cruel punishment to see a

)1

condition that is painful and serious and refuse to treat it.

In support of the motion for summary judgment the Correction Defendants have submitted a statment of material facts accompanied by supporting documentation which establish that the plaintiff is a knowledgeable person with some education, in addition plaintiff has obtained no medical expert to testify in this matter regarding the medical claims raised in his complaint. As long as plaintiff is incarcerated his ability to obtain expert testimony is not avaible to him and he is only permited to get site doctor opinion. Even when test are ordered and sent out institution doctors has the last word to what kind of treatment a inmate will get, even referrals for specialized treatment will not be addressed by institutional doctors. As a person does not have to be lettered in the medical field to see the need for treatment, and since plaintiff has been treated for some of his conditions on the street he knows what is to be expected in the treatment of these condition. As an inmate I can not get a second opinion, but be assured upon his release he will be able to obtain expert testimony and witnesses, and treatment for his condition, and then it can be compared with the institutional record to see that while and during his incarceration was the treatment given to plaintiff the kind that would be expected if he was in the community. The DOC Health Care Service has placed into practice a policy based on a cost cutting treatment plaint in which all inmates with get substandard treatment as long as it shows a cut in cost. Since the inmate in not permitted get a second opinion, or when referrals from a doctor who reviews x-rays or other test comes into the institution, the health care provider as well as the DOC, and site doctor will alter this referral to a treatment plan that cuts the cost, but in the long run is more expensive if treated correctly the first time. Example, a referral for a orthopedic specialist is done, the site doctor or mdeical director takes on this specialized training and forms his own opinion, and then set forth a treatment plain, leaving them with the only opinion in record and treatment plan that can not be disputed, while the inmate lays in pain and suffering based on the concept to cut cost. As what is being provided to inmate can not be said to be competent clinical staff. Example a nurse who is trained in the medical field should know better then to inject a inmate with insulin three time one right after the other then send him back to his cell, then when the inmate has problems take their time to come see him, that resulted in his death. If inmates were getting adequate health care then the number of death would drop. this has nothing to do with access the health care what it has to do with is the level and quality of health care, as it is not considered quality health care if a person has to

return to medical several times for the same condition and be charged each time the co-pay before adequately treated.

Wherefore the manner and level in which Wexford Health, and the Correctional Defendants conducted discovery is and was violative of Federal Rules of Civil Procedure, for Discovery, and Federal Rules of Criminal Procedure for Discovery. What was done in the name of discovery falls short of the laws of the United States, and what was given as discovery by the Correction Defendants is a standard inconsistent with the law. As under the discovery statue it is not stated that a defendant or plaintiff can be given 4 hours to review records, or that a plaintiff or defendant is subjected to the standard set by the holder of the records in question. The Corrections Defendants, can not apply a departmental standard to federal rules of discovery, and alter the concept of the statue in cases. As 4 hours to review record can not be considered adequate discovery, and how could learned person expect plaintiff to review some 4,000 pages in 4 hour when they themselves can not do such and they are to be learned. In this concept plaintiff was denied discovery, and then for the court to state that plaintiff has not presented any material fact to dispute the defendants motion for summary judgment it is because he has been denied such and what was granted as discovery falls short of the standards of law, as long as plaintiff has been denied discovery no summary judgment can be granted. Discovery rules does not state that an inmate can sign a contract with the defendants for the cost of discovery material, under the freedom of information act plaintiff is entitled to any information contained in record or a system of record and can not be denied such upon request, which the correction defendants have repeatedly done every time plaintiff requested discovery, and the magistrate judge has since supported this denial of discovery. If plaintiff can not review the record how can he determine what is needed to be copied, and if plaintiff does not need the whole record why should he pay for such as instructed by Ms. Dascani, and the institution record office. As the discovery rule does not provide that level of authority to institutional staff, nor does it provide because of a pending case a inmate is prohibited form reviewing his record, and to deny such is the denial of due process, and a violation of the freedom of information act.

Therefore for this reason the defendants motion for summary judgment should not be granted, and the defendants should not be released from the complaint. As what was submitted as exhibits in plaintiff objection was evidence to show the abuse that plaintiff was subjected to, and the manner in which institutional staff acted as policy

makers for the Department of Correction for reason to punish, hinder and deny an inmate his rights under the United States Constitution, as the misconducts for refusing to sign a refusal form, and Edward Mason and the Attorney general conspiring to hinder alter and deny access to the court when plaintiff sent legal mail that Edward Mason refused to let leave the institution, based on a false claim, as it is policy that any inmate can go $ 10.00 in the red on his account for legal mail. And because plaintiff was denied this right it was the cause of him losing his case. The gauze being a security issue, if it was it would have never been issued in the first place, and then given back, since the institution has not presented the policy to support that gauze was a security issue, then the action of K. Allen had a motive and state of mind need for this claim, as the state of mind is shown by her acting as a policy maker and making a policy that is inconsistent with the D.O.C. for reason to have plaintiff pull down his pants. If a person is willing to make their own policy and know that the D.O.C. does not have such a policy shows a state on mind that is needed for this claim. Where does the affidavits of the power house staff and institutional staff have anything to do with the running of RHU as these parties do not know nor do the have knowledge of the inter structure of this unit or how it is run, or that staff running this unit can cut off power at any time, and these affidavits does not address the claim that at all time during plaintiff's housing in RHU their was not power in the cell to use his C-PaP devise. Since the Correction defendants have failed to produce these claimed signed refusal forms that plaintiff refused this health care shows that all their claimed evidence maybe false, it only takes them once to make a false claim which reflects on any and all evidence that they have submitted in this case to be false. If the had no such record why claim that they did to support the denial of health care. If plaintiff did sign refusal forms why would he now be claiming he did not, and the court should direct the defendants to produce these signed refusal forms, and if they are unable then this case should proceed to jury trial as they have presented false evidence in which the court has made a ruling.

Date: 9-12-03

Respectfully Submitted

14

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Kim Smith | :Civil Action No. 1:01-0817 |
|     Plaintiff | : |
| | :(Caldwell, D.J.) |
| vs. | : |
| | :(Mannion, M.J.) |
| James Morgan, et al., | : |
|     Defendants | : |

## CERTIFICATE OF SERVICE

I Kim Smith plaintiff hereby swear and affirm that on or about October 10, 2003 I turned over to D Block Officers on the 2 to 10 shift envelopes containing plaintiff's objection to Magistrate Judges Report and Recommendation and Supportive Brief, to be forwarded to the below listed parties by way of first class mail threw the United States Postal Service. I certify the forgoing is true and correct to the best of my knowledge and understand, and the penalties provided for under 28 U.S.C. § 1746 relating to unsworn statements.

Office of the Clerk United States District Court, Middle District of Pennsylvania,

John J. Talaber, Esq. Pennsylvania Department of Correction, 55 Utley Dr., Camp Hill Pa. 17011

James D. Young, Esq. 225 Market St. Suite 304, P. O. Box 1245, Harrisburg, Pa. 17108-1245

Kim Smith, CT-2162, 1 Kelley Dr. Coal Township Pa. 17866-1021

Date: 10-13-03

                                                                Plaintiff/Petitioner

Kim Smith CT9163
19 Valley Dr.
Coal Township, Pa. 17866-1021

INMATE MAIL
PA. DEPT OF CORRECTIONS

U.S. POSTAGE $1.52
OCT 14 '03

Mary E. D'Andrea
Clerk of Courts
United States District Court
Middle District
Federal Building, Room 1060
228 Walnut St.
P.O. Box 983
Harrisburg, Pa. 17108-0983

FILED
HARRISBURG, PA
OCT 16 2003
MARY E. D'ANDREA, CLERK
Per _____