IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Kim Smith | :No.: 1:CV-01-0817 |
|     Plaintiff | : |
| | :(Caldwell, J.) |
| vs. | : |
| | :(Mannion, M.J.) |
| Wexford Health Sources, | : |
| Inc., et al., | :JURY TRIAL DEMANDED |
|     Defendants | : |

**PLAINTIFF'S OBJECTION TO WEXFORD DEFENDANTS BRIEF IN OPPOSITION TO
PLAINTIFF'S OBJECTION TO REPORT AND RECOMMENDATION OF
MAGISTRATE JUDGE MANNION**

I.   **STATEMENT OF FACTS AND PROCEDURAL HISTORY:**

On May 10, 2001, the pro se Plaintiff, an inmate at State Correctional Institution Coal Township, filed this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff was previously incarcerated at Sate Correctional Institution Smithfield. Prior to this incarceration plaintiff was at State Correctional Institution Camp Hill. Plaintiff has named various officials and /or employees of the Pennsylvania Department of Corrections as Defendants. The complaint also named Wexford Health Sources, Inc. the contracted medical provider at SCI-Smithfield, as well as various Wexford employees as defendants, who primary function was based on a cost cutting scale for treatment of inmates.

In his complaint plaintiff is stating and asserting a number of claims, including denial of medical care for various ailments and/or condition while incarcerated at SCI-Smithfield; denial of access to his legal mail and permitted to have his legal mail sent out of the institution; denial of access to the courts; denial to educational programs as a rights to comply with proscribed program plan; use of

excessive force with out reason of threat to staff; denial of due process at a misconduct hearing; harassment by prison officials in the fact that a number of institutional staff got in plaintiff faces and stated they knew the victim and his or her family; unlawful search of plaintiff cell; the filing of false reports by prison officials; denial of access to law library at schedule time by C.O. Whysong; denial of specialist treatment for his diabetic condition as Dr. Long is not trained in the profession of diabetes; destruction of personal property; denial of adequate health care for plaintiff left knee condition; denial of adequate health care for plaintiff's right shoulder condition; denial of adequate health care for sores on his body that were painful and would not heal; the denial of adequate health care for plaintiff's sleep apena and the delay in treating such after treatment was ordered; interference by C.O. Ersek of proscribed health care, when he kniowingly and intentionally refused to give and or turn over the C-Pap devise after directed to by medical department, and then punishing plaintiff cause he refused to sign a refusal for; denial of health care by M. Baker, when this Pa. made false statement that plaintiff refused his C-Pap health care and signed several refusal forms; Pa. Hoffman in the denial of health care by telling plaintiff their was nothing wrong with his right shoulder, and refused to treat when x-rays showed bone spurs with arthritis; Hepatitis C virus was diagnosed at SCI-Camp Hill at which time plaintiff was given some treatment April 1995, on July 4, 1995 plaintiff was transfered SCI-Smithfield and at which time any treatment he was getting was terminated. Dr. Long at this time ordered monthly blood test for Hepatitis C evaluation and watched plaintiff's condition progressively worsen until September 2000 at which time he state the DOC now permits him to treat inmates with this virus. This act in itself states a claim of deliberate indifference, as it was deliberate indifferent to watch a condition worsen with very little regard in plaintiff's health care safety, and plaintiff has a constitutional right to be free from this level of abuse. And any condition that is painful can be considered serious. It is common knowledge that arthritis is painful bone condition, it is also common knowledge that bone spurs are painful condition, and the records that the defendants claim as material fact is void of any treatment for these condition that could be considered the kind of treatment plaintiff would have gotten if he were in the community. With very little regard for plaintiff's pain or suffering, these parties knowingly and intentionally denied to adequately treat these condition even though they knew of the condition.

By order the defendants were to grant and complete discovery and the DOC side

steps the rules of civil procedure for discovery by administrative rules for the release of information depriving plaintiff his ability to complete discovery and review records to see what he needed to have copied as his evidence to his claim. These parties knowingly and intentionally with the intent to deprive plaintiff his discovery denied such threw administrative policy which should not be applied to 1983 action. As it is these parties knew or they should have known without the records plaintiff could not prove his claim or obtain expert testimony form doctors who reviewed the test. The court has supported this action and has denied any and all plaintiff's attempt to obtain record, and have since every request to review his files have been denied by the DOC. As plaintiff has a constitutional right to review his record. Because plaintiff has been denied discovery and it appears that the defendants whole case is dependent on this act, no summary judgment can should be granted as long as their is an issue of discovery under the freedom of information act. AS the Federal Rules of Discovery does not permit for the charging of inmate for their record, or that an inmate can enter into a contract with the DOC for a copy of the record, and his account would be placed in the red for the amount of the copies, and over $ 400.00 or more for copies of a file that plaintiff did not need the whole file seem a bit excessive, and the defendants can not hide their abuse behind this policy as long as it is violative of federal rules of discovery.

The Correction Defendants as well as the Wexford Defendants files summary judgment motion knowing that they deprived plaintiff his right to discovery claiming material fact or any genuine issue of material fact. With no record plaintiff could not prove his claim. The Court must ask themselves why would these parties deny discovery if their was no material fact. Under Local Rule 56.1 as along as their is an issue regarding discovery no summary judgment can be granted and an appeal to the third circuit court has been take under this discovery issue. If plaintiff was and is being denied discovery how can he ever any material fact submitted by the defendants, or obtain expert witnesses if he does not know the doctors to contact who reviewed test.

August 7, 2003 Magistrate Judge Mannion issued a report and recommendation that granted Defendants motion for summary judgment; and denied plaintiff's motion for temporary restraining order; directed the clerk of courts to amend the caption of the case; directed that amended complaint be served upon defendant, Dr. Kort; and remanded this matter to Magistrate Judge for further pre-trial proceedings related to plaintiff's claim against Dr. Kort, only. For the termination of hepatitis C treatment based on

on a non-existent DOC protocol and Wexford Health protocol. At no time is it stated in these protocols that an inmate can be terminated within 120 days of the start of treatment, if he shows a positive response to treatment. Dr. Kort, as well as Ms. Wilma Sewell both stated in their response to grievance that plaintiff was not responsive, when in fact blood test show a 30 % drop in viral load in less then 120 day period, which is a clear showing of a positive response. Treatment was reinstated and at that time what ever the medical staff at SCI-Coal was injecting plaintiff with made the condition worsen, as plaintiff's viral load went from 202,000 to well over 1,000,000 showing a significant change in the condition and that plaintiff sustained an injury to his liver due to the act and premature termination of this treatment by Dr. Kort, supported by Ms. Sewell. If these parties were in the right then the DOC would not have told them to reinstate treatment. Their is a clear showing of deliberate indifference and the mental state required to support this claim as these parties acted as policy makers for the DOC as well as Wexford Health when they terminated plaintiff's Hepatitis C treatment. Mental state of mind is shown by these parties when they made their own policy to deprive plaintiff of this health care, as thius act is not supported by DOC protocol. Warden Gillis as well as the Medical Director at SCI-Coal can also and should be held liable along with Dr. Kort for their supported acts of this level of abuse.

On or about October 16, 2003 plaintiff filed Objection to the Report and Recommendation of Magistrate Judge Mannion and a Brief in Support of said Objection. With the focus based on a depervation of plaintiff's discovery rights since he was not granted discovery and all motion filed for discovery were denied and plaintiff right to freedom of information has since consistently been violated and denied by the CorrectionDefendants and Wexford Health Defendants their can be said no issue of dispute since plaintiff has been and denied discovery, as long as any discovery issues are at question no summary judgment can be granted, and what the defendants have presented plaintiff as a right to discovery fall short of the the Rules of Civil Procedure for Discovery, and Freedom of Information Act. And since the Court has denied plaintiff adrequate discovery or request for protocols plaintiff has been deprive his ability to litigate this issue in Court. The Wexford Defendants submit their Brief in Opposition to Plaintiff's Objection on or about October 30, 2003, and respectfully request this Honorable Court to adopt the Report and Recommendation of Magistrate Judge Mannion in its entirety. But have failed to address the discovery issue raised in plaintiff's objection.

II.  **QUESTION PRESENTED**

    A.  **Standard of Review.**

    B.  Whether the Magistrate Judge abused his discretion when denying plaintiff his right to discovery of the defendants record.

    C.  Whether plaintiff has a constitutional right to discovery.

    D.  Whether plaintiff has a constitutional right under the freedom of information act to be provided with a copy of any material contained in a system of record that pertains to his health care while incarcerated.

    E.  Whether Wexford Defendants are entitled to summary judgment if their is a issue of the nature of discovery of a depervation of this right.

    F.  If plaintiff is being denied discovery how can he be afforded the right to present his case, and the denial of discovery material is like denying plaintiff his access to court for the wrongs and the pain and suffering he has endured over a 9 1/2 year period and continue to suffer at the hands of the Correction Defendants and Wexford Health. As the reason for the denial of health care at this time is based on false evidence of several signed refusal forms and the court failed in its duty to order or direct the defendants to produce these signed refusal forms. This is a material fact of genuine issue of abuse, and how could the court support this claim by the defendants and not request to see such evidence. It appears that the defendants is making a mockery out of the court and the court is supporting such. If they claim evidence they should be required to produce such.

    G.  The Court have determine any condition that causes pain is serious and it is common knowledge by lay person that arthritis, is painful as well as bone spurs, and just this of the pain from sores on body that will no heal, and to either deny or refuse to treat, or have knowledge of a condition and refuse to treat is a showing of deliberate indifference. The Wexford Defendants makes reference to the fact that plaintiff was seen and test were taken, but what they do not make reference to is what treatment was given. If no treatment is given this is not a difference of opinion, between plaintiff and the treating doctor, this is deliberate indifference, to be told

of a condition by other medical professionals and refuse to treat, and this is not a difference of opinion, but a deliberate act. The record if the Court would request the defendants to provide them with a copy the record would show diagnoses of condition, and no recorded treatment, by the site doctors or the DOC.

## III. ARGUMENT

### A. STANDARD OF REVIEW

Pursuant to rule 56 (c) Federal Rules of Civil Procedure, summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. If the case is not fully adjudicated it may be dealt with as provided in subdivision (d) of Rule 56 see also rule 56 (e); Federick Hart & Co. v. Recordgraph Corp. 169 F2d. 580 (3d. Cir. 1948).

The very mission of the summary judgment procedure is to pierce the leadings and assess the proof in order to see whether there is genuine need for trial, See 6 Moore's Federal Practice 2069 ( 2d. ed. 1953). As under Rule 56 (f) plaintiff can not show under this rule that he can not at this time present facts essential to justify his opposition. As all request to medical staff do not get addressed and plaintiff has to endure the pain and suffering because the institutional medical department has refused to treat or examine any of plaintiff's condition, and has deemed it not necessary to seek specialized treatment or professionals. And by the Wexford defendants own admittance plaintiff has failed to produce expert witnesses how could he obtain medical evidence while incarcerated, and the only medical professional he has been permitted to see are those who have since refused to treat so how can he obtain any evidence. And since plaintiff has been denied discovery he can not submit any record. But what is claimed in the record of the Wexford Defendants, is not supported by any sound level of treatment, and the defendants have not submitted any evidence of treatment for any of plaintiff's condition.

Plaintiff is entitled to discovery before ruling on motion for summary judgment is not unlimited, and may be cut off when record shows that requested discovery will not be likely to produce facts needed to withstand summary judgment motion. How can not the production of the signed several refusal forms not withstand the motion for summary judgment, if the defendants in fact have such. How could DOC protocol of facts

and treatment not withstand notion for summary judgment, showing the standard of treatment for Hepatitis C treatment. And that the standard applied to plaintiff was not consistent with this policy and was knowingly and intentionally done. How could not giving plaintiff the listed inmate who were in RHU at SCI-Smithfield from June 2000 to January 2001 to show and prove that their was not power in those cells wherefore plaintiff could not use his C-Pap devise, and that the standard that was applied was deliberate indifference and cruel punishment, and goes to the condition of confinement. The number of inmate housed in this unit could not all be wrong as they were subjected to the same kind of abuse plaintiff was subjected to. Netto v. Amtrak C.A. 5 (La.) 1989, 863 F2d. 1210

Summary judgment should be refused where nonmoving party has not had the opportunity to discover information that is essential to its opposition. Burnside-Ott Aviation Training Center Ic. v. U.S. C.A. Fed. 1993, 985 F2d. 1574. And what was presented to plaintiff as means of discovery did not permit him to discover fact needed to present his case and that is why his filing have been in the state of disarray it has been in. And the Court has denied all of plaintiff's motion for discovery denying him of his ability to present his case and set a standard of facts. It also has afforded the defendants to make claims of material issue and not submit any supportive facts such as the claim of several signed refusal forms in which the base their decision to deny health care. If their is no signed refusal forms shows that level of deliberate indifference that was made to deny health care, and to make a false claim of evidence to support the abuse shows the mental requirement needed for this claim. See Medeiros Inc. v. Bogosian, D.R.I. 1994, 868 F. Supp. 412, affirmed in part reversed in part 65 F3d. 198. As discovery would produce evidence of material fact and create genuine issue of material fact to support plaintiff's claim of abuse and denial of health care as the record is void of any level of treatment that would meet the standard that plaintiff would get if he were in the community. What appears in record is a general practioner with no specialized training making diagnosis and treating condition that he is not lettered in. As Dr. Long is not lettered in the treatment of diabetic inmates but he ready makes diagnosos and treats these inmates, and the same with orthopedic treatment as Dr. Long, Pa. Hoffman, Pa. Baker are not trained in orthopedic treatment, and how could they adequately diagnose and treat these condition, even when referred to such these parties refuse claim it not to be necssary and then subject an inmate to their level of treatment. Krim v. Banc Texas Group Inc. C.A. 5 (Tex.) 1993, 989 F2d. 1435; Higgins v. Monsanto Co. N.D.N.Y. 1994, 862 F. Supp. 751.

Discoverable issues exist and material fact of abuse by witnesses who were housed in the RHU at SCI-Smithfield, in the DOC protocol for Hepatitis C treatment, in medical record of requested specialized treatment that was unaddressed, medical records of treatment given to plaintiff for his condition could not be considered sound medical practice, DOC policy that gauze wrap is a security issue, x-ray reports and treatment claimed to have been given, the signed refusal forms claimed by M. Baker in which plaintiff was denied his C-pap Health care, list of inmates that were housed in the RHU at SCI-Smithfield to show and prove that inmates were subjected to 8 th. amendment violation while in RHU as their was no power in the cells, false swearing by institutional staff in their statement that the power was on and providing the court with generator records from power plant, Tape of RHU when plaintiff was forced face first into a wall without reason causeing him to lose his left front caped tooth that resulted in him having to get a bridge, as plaintiff posed no threat to any of the staff at the time of this abuse. And a good cause for the failure of discovery was that plaintiff did not have the funds that was being requested by the DOC discovery material and a copy of the record, as plaintiff should have been permited to completely review the records and see what was needed to be copied. And under the freedom of information act plaintiff has been repeatedly denied the right to review his records by the DOC, Ms. Dascani, Medical Records, Mr. Talaber defendants counsel, and the court. The DOC or Wexford Health permitted to continue to deny plaintiff from reviewing records under the freedom of information act. Mattoon v. City of Pittsburgh C.A. 1 (Mass.) 1992 980 F2d. 1; Resolution Trust Corp. v. North Bridge Association, Inc. C.A. 1 (Mass.) 1994 22 F3d. 1198. A the defendants were not in compliance with for discovery, as the court did not order the defendants to give plaintiff 4 hours to review records, or to place plaintiff in a contractual obligation for copies of the record or place plaintiff account in the red for the amount of copies, court ordered discovery in which the defendants failed to comply with. Molokai Chamber of Commerce v. KuKui (Molokai) Inc. D. Hawai'i 1995 891 F. Supp. 1389; Mauney v. Imperial Delivery Service Inc. S.D.N.Y. 1994 865 F. Supp. 142 opinion corrected.

Wherefore attached to this Motion is an Affidavit complying with the rules of court by certifying my need for an opportunity to complete discovery. In this affidavit plaintiff will set forth issues that if proven would support his claims of abuse and 8 th amendment abuse of power, condition of confinement, denial of health care. Kachmarnv. SunGard Data System Inc. C.A. 3, (Pa.) 1997, 109 F3d. 173; Tenenbaum v. Williams E.D.N.Y. 1994, 862 F. Supp. 962;Mass. School of Law at Andover Inc. v. American

Bar Ass'n C.A.1 (Mass) 1998 142 F3d. 26; C.B. Trucking Inc. v. Waste Management Inc. C.A. 1 (Mass.) 1998, 137 F3d. 41; Vance by and Through Hammons v. U.S. C.A. 6 (Ky.) 1996, 90 F3d. 1145, as their is reason to believe that the inmates housed in RHU at SCI-Smithfield can show that their was not power in those cell in which to use plaintiff health care devise, that this is a practice policy. And any inmate housed in this unit for the period of time that plaintiff was from June 2000, to January 2001 can verify this fact. Since the defendants claimed that plaintiff signed several refusal forms for the C-pap devise they should be required to produce these signed refusal forms.

Review of the tape of June 16, 2000 will show that plaintiff did nothing to staff or posed a threat to staff to have his face forced into a wall repeatedly that cause him to lose his left front tooth. Review of medical records and reports will show that Dr. Long, M. Baker, Pa. Hoffman did not in fact give adequate health care for any of plaintiff's condition, as record will show that the treatment given plaintiff would amount to no treatment at all, and record will also show deliberate indifference, as it is deliberate indifferent for a doctor to see and know of a condition and refuse to adequately treat it, as this is not sound medical practice, and plaintiff has a constitutional right to be free from this level of abuse. The DOC protocol for hepatitis C treatment, and for security issue as plaintiff was told after being gauze wrap for two weeks that such wrap is a security issue. As any and all discovery will defeat the defendants motion for summary judgment and their claim of no genuine material fact, since plaintiff was denied his ability for discovery the defendants can now claim anything cause they know that plaintiff does not have any record to support his claim. But records will reflect that plaintiff has a claim and the defendants should not be granted summary judgment. Simmons Oil Corp. v. Tesoro Petroleum Corp. C.A. Fed. (N.M.) 1996, 86 F3d. 1138. A it can be believed that their is discoverable material that is that is required in this case, that will make this matter jury trial worthy. Reid v. State of N.H. C.A.1 (N.H.) 1995, 56, 2 332.

  Plaintiff will explain in the attached affidavit the information sought and how it is to be obtained, and how the defendants genuine issue of material fact will be raised by this information, and all of plaintiff's efforts to obtain discovery has failed and was denied by the court, and it is not clear why these efforts have failed, as affidavits by inmate housed in RHU at SCI-Smithfield would pose relevent information to the condition of confinement and 8 th. amendment violation and condition in which these inmates were confined. The same can be said about the claimed signed refusal forms by plaintiff, defendants should be required to produce them with other request.

Wherefore for these reason contained in plaintiff's affidavit and the inadequte manner in which discovery was conducted, and the fact that their is discoverable material in the record to dispute the granting of summary judgment in the defendants behalf. For theses reason plaintiff prays this honorable court would consider and grant plaintiff his discovery under the freedom of information act to comply with Federal Rule of Civil Procedure for Discovery, as what was presented to plaintiff was and is an inadequate discovery and record will dispute the defendants claim of no genuine issue of material fact. Did Magistrate Judge error in his decision to deny plaintiff's Motion for Discovery.

Wherefore plaintiff prays that this honorable court will consider the facts contain herein as required by Rule 56 when their is a dispute of discovery and that plaintiff affidavit meets the requirement under law for consideration.

Date: 11-13-03

Respectfully Submitted

[signature]

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Kim Smith | :No. 1:cv-01-0817 |
|     Plaintiff | : |
| | :(Caldwell,J) |
| v. | : |
| | :(Mannion, M.J.) |
| Wexford Health Sources, | : |
| Inc., et al., | :Jury Trial Demanded |
|     Defendants | : |
| | : |

## CERTIFICATE OF SERVICE

    I Kim Smith hereby swear/affirm the following facts are true and correct to the best of my knowledge and understanding, and subject to the penalties provided for under 18 Pa. C.S. § 4904 (unsworn falsification). That on or about November 13, 2003 plaintiff turned over to D Block officers envelopes containing plaintiff objection to Wexford Health Objection to plaintiff's objection to report and recommendation, and affidavit, to be forwarded to institutional mail room to be mailed first class mail to the below listed parties. This satisfy service requirement under the rules of this Court.

Office of the Clerk, Mary E. D'Andrea, United States District Court for the Middle District of Pennsylvania, Federal Building Room 1060, 228 Walnut St., P.O. Box 983, Harrisburg, Pa. 17108-0983

Robert G. Hanna Jr. Esq., 225 Market St. Suite 304, P.O. Box 1245, Harrisburg, Pa. 17108-1245

John Talaber Esq., Assistant Counsel, Pennsylvania Department of Corrections, Office of Chief Counsel, 55 Utley Dr., Camp Hill Pa. 17011

Kim Smith CT- 2162, 1 Kelley Dr. Coal Township Pa. 17866-1021

_/s/ Kim Smith_                                                          Date: 11-13-03

## AFFIDAVIT

And now comes Kim Smith a lay person not lettered in legal matters and without the aid of counsel, in this Affidavit stating that the evidence contained in the record in which he has been denied will set forth material facts to support his claims and that he has been subjected to Constitutional violation. Below are listed materials or records requested that will dispute the defendants claim for summary judgment.

1. Copies of the claimed signed refusals that Pa. Baker claims plaintiff signed refusal his C-Pap devise, as these claimed signed refusal are what is now being used to deny plaintiff this proscribed health care.

2. A List of inmates housed in RHU at SCI-Smithfield on H Block to show and prove that inmates housed in this unit did not have power in the plug sockets and that this was due to damage in the plug sockets that the defendants knew of such and refuse to repair or correct. The request is for a list of inmates housed in this united from June 2000, to January 2001. That the evidence filed by the defendants about this power issue is not sound evidence as this party had no working knowing of what takes place within the institution and only dealt with power house records not the fact that the plug sockets were damaged and could not be used, this being the reason for no power in the plug sockets, and that this act which violates condition of confinement is a known practice by this administration and the continued deprivation of inmate rights who are housed in these units.

3. All x-ray report for plaintiff left shoulder, lower back, left knee, left wrist, and diagnosis, and any treatment given.

4. DOC policy that prohibits inmates from having gauze wrap in their cell, when they were provided such 2 week prior to the claim that this gauze wrap was a security issue.

5. DOC policy that permitts correction officer to with hold an inmates health care devise then order them to sign a refusal form and if they refuse to do so they would issue a misconduct. A inmate at any time can refuse health care and not be punished for such. And if an inmate health care was being denied by a correctional officer namely C.O. Ersek even after he was directed by the medical department to turn the devise over to plaintiff and return him to medical shows a knowingly and intentional act set to

deprive hinder and interfere with proscribed health care. Since this officer was directed to turn the devise over to plaintiff he should have done such as he had no medical training to determine or request plaintiff to sign a refusal form or threaten him with a misconduct if he did not. As long as this officer was with holding plaintiff's health care devise he had no legal standing to order plaintiff to sign a refusal form.

6.   Pa. Hoffman and Dr. Long diagnoses of plaintiff's left knee and left shoulder and what treatment was given for these condition.

7.   DOC policy or protocol for Hepatitis C treatment, and the standard to be applied to inmate.

8.   Blood test from SCI-Camp Hill, and SCI_Smithfield for hepatitis C virus, and the period of time Dr. Long knowingly and intentionally and with deliberate indifference watch this condition worsen and refuse to treat. From July 1995 to September 2000 this doctor watched this condition worsen before treating such, based on a claim that before September 2000 the DOC prohibited him from treating this type of condition. It is a clear showing of deliberate indifference to know and see and order test for a condition and watch it worsen and refuse to treat such a condition based on the claim that his employers prohibited him from treating such a condition.

9.   The DOC policy that prohibits inmate with type 2 diabetes from having Accu-Cheks on a daily bases.

10.   Skin test that were taken for sores on body that would not heal and the results of this test, in which plaintiff was told by the DOC, Wexford Health Services, that the treatment of these sores were not a necessity, and because of this refusal of treatment plaintiff has black spots that have scared his skin on his face, legs, elbow.

11.   The delay in treating plainitff's sleep apena, and the prolonged period in which his was deprived this health care by Medical Staff at SCI_ Smithfield.

12.   Copy of tape during strip search at SCI-Smithfield in the RHU which will show no reason for the officer to repeatedly force plaintiff's face into the wall causing him to lose his right front caped tooth, also the dental records that will show the removal of the root tip that was left after tooth was broken off.


13. Any and all record pertaining to a April 18, 2000 misconduct in which it was stated because plaintiff had a bad attitude Lt. Gooler felt it was his right to punish plaintiff. This comes from an act of Nurse Bernas when she knowingly and intentionally cut plaintiff's diabetic medication without doctors authority. That on April 18 2000 a Doctor Adamson directed Nurse Bernas to increase plaintiff's diabetic medication on medline 3 at no time was this nurse directed to cut this medication on med-line 1 which she did when showing the nurse her error she refused to correct it then claim this is the way we do thing around here. Then leaves the medical department and goes into the compound and get Lt. Jordan directing him that plaintiff was causing a problem, that during the walk Nurse Bernas and Lt. Jordan conspired to issue a misconduct and interfere with health care and knowingly and intentionally with deliberate indifference did so. That Lt. Jordan directed plaintiff to leave the medical department denying him his proscribed diabetic medication, that before plaintiff could get his pass Lt. Jordan hand cuffed plaintiff and issued a misconduct.

14. DOC policy for legal postage and indigent inmates, as plaintiff was denied this policy by Edward Mason when he repeatedly refused to let plaintiff's legal mail leave the institution. An inmate signed and addressed the envelope and permitted plaintiff to send out his legal mail useing his postage. When the letter or legal paper reached the attorney generals office, explaining why this legal mail came to her office in this manner, she contacted Edward Mason and they conspired to issue a misconduct. The act of Mr. Mason denied plaintiff access to the courts, and their is no standing DOC policy to support his action and deny plaintiff account from being placed in the red when plaintiff account was not $ 10.00 in the red, a request for plaintiff monthly statement is requested to show by policy he had a right to send out legal mail and Mason without authority denied such.

15. That Dr. Long claim that plaintiff at all times has gotten adequate health care would come into question, as health care requires more then taking test and making a diagnosis of the condition, it requires treatment to a standard and letter of the law, to know of a condition and refuse to treat and then make claim that this is adequate health care is a showing of deliberate indifference, and what the records would show is Dr. Long ordered test and refused to adequately treat violating inmates rights and subjecting them to cruel punishment under the 8 th. amendment. The cruel punishment comes when the treating doctor see a condition which is painful and refuses to treat, as the record will show diagnosis of condition but no listed record of treatment, and



if plaintiff had to return to medical for the same condition that was not adequately treated he had to repeatedly be subjected to the co-pay policy and pay form the same condition time and time again, because he was not adequately treated in the first place. When a person has to go to medical several times for the same condition and none of what he is being told makes sound medical practice and he is consistently in pain one must question. As it is known that arthritis is a painful condition, as well as bone spurs, and for that much cyst behind the knee, and lower back pain, as well as sores on body that would not health after a time would become painful, and because of the amount of pain connected with these condition they can be considered serious and no expert testimony is require, as the defendants have made claim to condition in record and made diagnosis and have refused to treat as record is void of any level of treatment. A Discoverable material exist in the record and is require in the administration of justice. As the genuine issue of material fact will be raised by the information requested in this affidavit, and plaintiff filed repeated request and motion for discovery and was denied by the court, and all his efforts were unsuccessful.

See: reconsideration granted 814 F. Supp. 655; Kachmar v. SunGard Data Systems Inc. C.A. 3 (Pa.) 1997 109 F3d. 173.; C.B. Trcuking Inc. v. Waste Management Inc. C.A. 1 (Mass) 1998 137 F3d. 41; Vance by and through Hammons v. U.S. C.A. 6 (Ky.) 1996, 90 F3d, 1145;

Sworn to before me this 14 day of November, 2003

Laurie L. Lobos
Notary

Date: 11/14/03

Kim Smith Plaintiff

NOTARIAL SEAL
LAURIE L. LOBOS, Notary Public
Coal Twp., Northumberland County
My Commission Expires Sept.19, 2005

Kim Smith CY8162
Kelly Dr
Coal Township Pa. 17866-1021

Office of The Clerk
Mary E. D'Andrea
United States District Court
Middle District of Pennsylvania
Federal Building, Room 1040
228 Walnut St.
P.O. Box 983
Harrisburg Pa. 17108-0983